## EXHIBIT 73

**(September 5, 2018 Default Letter)**



66 South Pearl Street, Floor 7
Albany NY 12207

September 5, 2018

**VIA FEDEX AND ELECTRONIC MAIL**

Monolith Solar Associates LLC
444 Washington Street
Rensselaer, NY 12144

SAE Sun and Earth Energy Incorporated
6 Hallenback Hill
East Greenbush, NY 12061

Solar Management Group, LLC
444 Washington Street
Rensselaer, NY 12144

RE:    Loan Agreement dated as of March 8, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "Loan Agreement") by and between Monolith Solar Associates, LLC, SAE Sun and Earth Energy Incorporated and Solar Management Group, LLC (collectively, and each individually, "Borrower") and KeyBank National Association ("Lender").

Ladies and Gentlemen:

All capitalized terms not otherwise defined herein shall have the respective meanings given such terms in the above-referenced Loan Agreement.

Please be advised that we are in receipt of the following (collectively, the "Default Letters"): (i) a letter dated August 24, 2018 from Rotterdam Ventures, Inc. ("Rotterdam") to Monolith Solar Associates LLC ("Monolith") and (ii) a letter dated August 24, 2018 from Northeastern Industrial Park, Inc. ("NIP") to Monolith. The Default Letters provide that Schenectady Hetcheltown Road Solar 1 LLC ("Hetcheltown") has failed to make certain rental payments under that certain Lease Agreement dated as of October 30, 2017 by and between Rotterdam and Hetcheltown, as successor-by-assignment to Monolith, and that certain Lease Agreement dated as of October 30, 2017 by and between NIP and Hetcheltown, as successor-by-assignment to Monolith, and that, as a result thereof, Hetcheltown is in default under the Roof Leases (collectively, the "Roof Lease Defaults"). As a result of the Roof Lease Defaults and the fact the Borrower has indicated that it will be unable to make its regularly scheduled lease payment to Key Equipment Finance due on September 4, 2018 (the "Triggering Events"), Lender hereby notifies you that the Triggering Events constitute Events of Default under the Loan Agreement, including under (i) certain covenants contained in Section 5 (after the lapsing of applicable cure periods), (ii) Section 6.9 (due to these events constituting a Material Adverse Change) and (iii) 6.11 (due to Borrower's inability to pay its debt as they become due).

Please note that, under the terms of the Loan Agreement and the other Loan Documents as well as applicable law, Lender has certain rights and remedies upon an occurrence of a Default under the Loan Agreement. Lender hereby reserves the right to exercise, in such order as Lender elects, any one or more

of the rights and remedies available pursuant to the Loan Agreement or any other Loan Document or otherwise at law or in equity, and nothing contained in this letter shall constitute a waiver or forbearance by Lender to pursue such rights and remedies.  Nothing contained in this letter or any delay on the part of Lender in exercising any of its respective rights and remedies under the Loan Agreement, the other Loan Documents or applicable law shall be considered to be a waiver or modification thereof.

Nothing in this letter constitutes a waiver of any Default or a waiver, release or amendment of any obligation of Borrower under the Loan Agreement (the "Obligations") or any terms of the Loan Agreement or any other Loan Document.  Lender has not agreed to waive any Default or to waive, release or amend any of the Obligations or any terms of the Loan Agreement or any other Loan Document.

Please contact the undersigned if you have any questions regarding any of the matters addressed in this letter.

Very truly yours,

KEYBANK NATIONAL ASSOCIATION

By:_____
Name:   Leslie A. Jones
Title:    Senior Vice President

Doc #06-126991.1

2

# **EXHIBIT 74**

**(October 3, 2018 Default Letter)**



66 South Pearl Street, Floor 7
Albany NY 12207

October 3, 2018

**BY ELECTRONIC MAIL AND REGULAR U.S. MAIL**

Monolith Solar Associates LLC
444 Washington Street
Rensselaer, NY 12144

SAE Sun and Earth Energy Incorporated
6 Hallenback Hill
East Greenbush, NY 12061

Solar Management Group, LLC
444 Washington Street
Rensselaer, NY 12144

Re:     Loan Agreement dated as of March 8, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Loan Agreement**") by and between Monolith Solar Associates, LLC ("**Monolith**"), SAE Sun and Earth Energy Incorporated ("**SAE**") and Solar Management Group, LLC ("**Solar Management**" and collectively with Monolith and SAE, the "**Borrowers**" and each individually, a "**Borrower**") and KeyBank National Association ("**Lender**").

Ladies and Gentlemen:

Reference is hereby made to (i) the above-referenced Loan Agreement, (ii) that certain Promissory Note, in the face amount of $5,000,000, dated March 8, 2018 (the "**Revolving Note**"), (iii) that certain Promissory Note, in the face amount of $850,000, dated March 30, 2018 (the "**$850K Term Note**"), (iv) that certain Promissory Note, in the face amount of $488,000, dated as of June 30, 2015 (the "**$488K Term Note**"), (v) that certain Promissory Note, in the face amount of $24,547, dated as of December 12, 2013 (the "**24K Term Note**") and together with the Revolving Note, the $850K Term Note, and the $488K Term Note, collectively, the "**Notes**"), (vi) the Security Agreement, dated March 8, 2018, between Lender and Monolith (the "**Monolith Security Agreement (March 8, 2018)**"), (vii) the Security Agreement, dated March 8, 2018, between Lender and SAE (the "**SAE Security Agreement (March 8, 2018)**"), (viii) the Security Agreement, dated March 8, 2018, between Lender and Solar Management (the "**Solar Management Security Agreement (March 8, 2018)**" and together with the Monolith Security Agreement (March 8, 2018) and the SAE Security Agreement (March 8, 2018) the "**Security Agreements (March 8, 2018)**"), (ix) the Commercial Security Agreement, dated March 30, 2018, between Lender and Monolith (the "**Monolith Security Agreement (March 30, 2018)**"), (x) the Commercial Security Agreement, dated March 30, 2018, between Lender and SAE (the "**SAE Security Agreement (March 30, 2018)**"), and (xi) the Commercial Security Agreement, dated March 30, 2018, between Lender and Solar Management (the "**Solar Management Security Agreement (March 30, 2018)**"), and (xii) Commercial Security Agreement, dated June 30, 2015, among the Lender, Monolith and SAE (the "**Security Agreement (June 30, 2015)**",

(xiii) Commercial Security Agreement, dated as of December 12, 2013, among the Lender and Monolith (the "**Security Agreement (December 12, 2013)**") and together with the Monolith Security Agreement (March 30, 2018) and the SAE Security Agreement (March 30, 2018) the "**Security Agreements**" and together with the Loan Agreement, the Notes, the Security Agreements (March 8, 2018) and any other document delivered pursuant thereto, the "**Loan Documents**"). Capitalized terms used herein but not defined herein shall have the meanings given to them in the Loan Agreement.

This letter shall constitute formal notice that the following Events of Default have occurred and are continuing under the Loan Agreement and the Loan Documents, as applicable:

**1.) Interest Payment Default – Revolving Note.** Pursuant to the Revolving Note, the Borrowers are required to make monthly interest payments on the first day of each month. The Borrowers failed to make the interest payment that was due on September 1, 2018, in the amount of $28,693.36. The Borrowers' failure to make the interest payment when due constitutes an Event of Default under the Revolving Note and Section 6.1 of the Loan Agreement (the "**Revolving Note Payment Default**").

**2.) Principal and Interest Payment Default – $850K Term Note.** Pursuant to the Term Note, the Borrowers are required to make monthly principal and interest payments on the first day of each month. The Borrowers failed to make the payment that was due on September 1, 2018, in the amount of $39,360.99. The Borrowers' failure to make the payment when due constitutes an Event of Default under the Term Note (the "**Term Note Payment Default**" and together with the Revolving Note Payment Default the "**Specified Defaults**").

**3.) Material Adverse Change Default.** Borrowers have advised the Lender of the Borrowers' failure to generally pay their debts as they become due, the significant deterioration of the Borrowers' financial performance and the recent commencement of litigation against one or more of the Borrowers seeking aggregate damages of approximately $1.2 million in the New York Supreme Court for Albany County styled as *Couch White LLP v. Monolith Solar Associates LLC*, Case No. 18-05851 and *Consolidated Electrical Distributors Inc. v. SAE Sun and Earth Energy Inc., et al.*, Case No. 18-905845 (the "**MAC Default**").

**4.) Solvency Default.** As a result of the Borrowers' failure to generally pay their debts as they become due, the Borrowers have breached Section 6.11 (Solvency) of the Loan Agreement (the "**Solvency Default**" and together with the Revolving Note Payment Default, the Term Note Payment Default, and the MAC Default, collectively, the "**Specified Defaults**").

Pursuant to Section 5.1(a) and (b) of the Loan Agreement, at the times specified therein, the Borrowers are required to provide the Lender with certain financial statements and other accounting documents, which, pursuant to Section 5.1(c) of the Loan Agreement, are to be delivered with a certificate by the chief financial officer or other authorized officer that contains specific statements including, among other things, whether an Event of Default or Potential Default exists (the "**Compliance Certificate**"). The Lender requests that the Borrowers promptly deliver the Compliance Certificate and the other documents, reports and information that the Borrowers are required to provide pursuant to Sections 5.1(a) and (b) of the Loan Agreement for the fiscal quarter ended June 30, 2018. Additionally, the Lender requires the

Borrowers to promptly provide any other information that the Borrowers are required to provide the Lender under the Loan Documents, including without limitation, the documents and information that the Borrowers are required to furnish the Lender pursuant to Sections 5.1(f), (h) and (i). Please be advised that the Borrowers failures to satisfy their obligations under Section 5.1 of the Loan Agreement constitute Potential Defaults under the Loan Agreement (the "**Specified Potential Defaults**").

Pursuant to Section 2(a) of the Security Agreements (March 8, 2018), the Borrowers are required to endorse, assign and deliver promissory notes to the Lender unless such note(s) are less than $20,000.00 individually or $100,000.00 in the aggregate. It is the Lender's understanding that one or more of the Borrowers holds, or is in possession of, one or more promissory notes that the Borrowers are required to endorse, assign and deliver to Lender pursuant to Section 2(a) of the Security Agreements (March 8, 2018). In accordance with Section 2(a) of the Security Agreements (March 8, 2018), the Lender hereby directs the Borrowers to promptly deliver such promissory note to the Lender along with instruments of transfer or assignment, which shall be in form and substance satisfactory to the Lender.

The identification of the foregoing Specified Potential Defaults and Specified Defaults does not imply that other defaults, Potential Defaults or Events of Default under the Loan Agreement, the Security Agreements, the Notes or the other Loan Documents do not exist on the date hereof.

Without waiving any of its rights or remedies under the Loan Agreement, the Security Agreements, the Notes, the other Loan Documents or applicable law, the Lender hereby (i) elects to impose, effective as of the date hereof, the default rates of interest prescribed in the applicable Notes and Loan Documents, and (ii) declares all of the Borrowers' Obligations to the Lender (whether arising under the Loan Agreement, the Security Agreements, the Notes or the other Loan Documents) to be immediately due and payable to the Lender.

Notwithstanding anything to the contrary contained in this letter, and irrespective of the Lender's receipt and acceptance of any payment by or on behalf of the Borrowers on account of the outstanding indebtedness, the Lender specifically does not waive, and does not agree to forbear, with respect to any one or more of its rights and remedies under the Loan Agreement, the Security Agreements, the Notes, any other Loan Document or applicable law and reserve all of their rights under the Loan Agreement, the Security Agreements, the Notes, any other Loan Document and applicable law with respect to the Specified Potential Defaults, the Specified Defaults, and any other default, Potential Default or Event of Default which may have occurred, or the occurrence of any events which with the passage of time or the giving of notice, or both, would constitute a default, Potential Default or Event of Default under the Loan Agreement, the Security Agreements, the Notes or any other Loan Document. Nothing contained herein shall establish any course of dealing among Borrowers and Lender that is inconsistent with the express terms of the Loan Agreement, the Security Agreements, the Notes or the provisions of any other Loan Documents.

Please be advised that delivery of this notice does not mean that (i) the Lender will provide the Borrowers notice of any other default, Potential Default or Event of Default that has occurred or may occur under any Loan Document, or (ii) the Borrowers are entitled to receive or

will receive notice in advance of the Lender exercising remedies under the Loan Agreement, the Security Agreements, the Notes, the Loan Documents, or applicable law.

All of the existing obligations of the Borrowers under the Loan Agreement, the Security Agreements, the Notes and the other Loan Documents shall remain in full force and effect.

Very truly yours,

KEYBANK NATIONAL ASSOCIATION

By: _____
    Name:  Leslie A. Jones
    Title: Senior Vice President

**<u>EXHIBIT 75</u>**

**(Original Forbearance Agreement)**

EXECUTION VERSION

## FORBEARANCE AGREEMENT

This Forbearance Agreement (the "**Forbearance Agreement**") is entered into as of November 9, 2018, by and between Monolith Solar Associates LLC ("**Monolith Solar**"), Solar Management Group, LLC ("**Solar Management**"), SAE Sun and Earth Energy Incorporated ("**SAE**"), Schenectady Hetcheltown Road Solar 1 LLC ("**Schenectady Hetcheltown 1**"), Schenectady Hetcheltown Road Solar 2 LLC ("**Schenectady Hetcheltown 2**"), Schenectady Ice Rink Solar 1 LLC ("**Ice Rink Solar**"), Craryville Two Town Road Solar 1 LLC ("**Craryville Solar 1**"), Craryville Two Town Road Solar 2 LLC ("**Craryville Solar 2**"), Marion Warner Road Solar 1 LLC ("**Marion Warner Solar**"), City of Albany Solar 1 LLC ("**Albany Solar**"), Scotia Glenville CSD Solar 1 LLC ("**Scotia Solar**"), Mayfield CSD Solar 1 LLC ("**Mayfield Solar**") Rensselaer County Solar 1 LLC ("**Rensselaer County 1**"), Rensselaer County Solar 2 LLC ("**Rensselaer County 2**"), Seward Pine Hill Road Solar 1 LLC ("**Seward Pine 1**"), Seward Pine Hill Road Solar 2 LLC ("**Seward Pine 2**"), Schuylerville CSD I LLC ("**Schuylerville 1**"), and Johnsonville Route 7 Solar 1 LLC ("**Johnsonville Route 7**" and together with Monolith Solar, Solar Management, SAE, Schenectady Hetcheltown 1, Schenectady Hetcheltown 2, Ice Rink Solar, Craryville Solar 1, Craryville Solar 2, Marion Warner Solar, Albany Solar, Scotia Solar, Mayfield Solar, Rensselaer County 1, Rensselaer County 2, Seward Pine 1, and Schuylerville 1, collectively, "**Monolith**") and KeyBank National Association ("**KeyBank**") and Key Equipment Finance, a division of KeyBank ("**KEF**" and together with KeyBank, collectively, the "**Key Parties**" and each individually a "**Key Party**"). The aforementioned parties are hereinafter referred to collectively as "**Parties**" and each individually a "**Party**").

## RECITALS

WHEREAS, Monolith and KeyBank or KEF, as applicable, entered into (i) that certain Loan Agreement dated as of March 8, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Loan Agreement**"); (ii) that certain Promissory Note, in the face amount of $5,000,000, dated March 8, 2018 (the "**Revolving Note**"); (iii) that certain Promissory Note, in the face amount of $850,000, dated March 30, 2018 (the "**$850K Term Note**"); (iv) that certain Promissory Note, in the face amount of $488,000, dated as of June 30, 2015 (the "**$488K Term Note**"); (v) that certain Promissory Note, in the face amount of $24,547, dated as of December 12, 2013 (the "**24K Term Note**") and together with the Revolving Note, the $850K Term Note, and the $488K Term Note, collectively, the "**Notes**"); (vi) Master Equipment Lease Agreement dated as of July 24, 2015 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 24, 2015 Lease Agreement**"); (vii) Master Equipment Lease Agreement dated as of February 15, 2016 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 15, 2016 Lease Agreement**"); (viii) Master Equipment Lease Agreement dated as of March 1, 2016 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 1, 2016 Lease Agreement**"); (ix) Master Equipment Lease Agreement dated as of November 16, 2016 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**November 16, 2016 Lease Agreement**") (x) Master Equipment Lease Agreement dated as of November 20, 2016 (together with all exhibits, schedules, addenda, attachments, amendments

and modifications thereto, the "**November 20, 2016 Lease Agreement**"); (xi) Master Equipment Lease Agreement dated as of February 16, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 16, 2017 Lease Agreement**"); (xii) Master Equipment Lease Agreement dated as of February 17, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 17, 2017 Lease Agreement**"); (xiii) Master Equipment Lease Agreement dated as of March 16, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Albany Lease Agreement**"); (xiv) Master Equipment Lease Agreement dated as of March 16, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Scotia Lease Agreement**"); (xv) Master Equipment Lease Agreement dated as of April 14, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**April 14, 2017 Lease Agreement**"); (xvi) Master Equipment Lease Agreement dated as of May 3, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**May 3, 2017 Lease Agreement**"); (xvii) Master Equipment Lease Agreement dated as of June 27, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**June 27, 2017 Lease Agreement**"); (xviii) Master Equipment Lease Agreement dated as of July 17, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 17, 2017 Lease Agreement**"); (xix) Master Equipment Lease Agreement dated as of August 4, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**August 4, 2017 Lease Agreement**"); (xx) Master Equipment Lease Agreement dated as of September 14, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**September 14, 2017 Lease Agreement**" and collectively with the July 24, 2015 Lease Agreement, the February 15, 2016 Lease Agreement, the March 1, 2016 Lease Agreement, the November 16, 2016 Lease Agreement, the November 20, 2016 Lease Agreement, the February 16, 2017 Lease Agreement, the February 17, 2017 Lease Agreement, the March 16, 2017 Albany Lease Agreement, the March 16, 2017 Scotia Lease Agreement, the April 14, 2017 Lease Agreement, the May 3, 2017 Lease Agreement; the June 27, 2017 Lease Agreement, the July 17, 2017 Lease Agreement, and the August 4, 2017 Lease Agreement, the "**Master Lease Agreements**"), and (xxi) the Equipment Financing Agreement No. 18804 by and between Key Equipment Finance, as successor to First Niagara Leasing, Inc. and SAE (the "**First Niagara Equipment Financing Agreement**" and collectively with the Loan Agreement, the Notes, the Master Lease Agreements any other loan agreement or lease between KeyBank and/or KEF and Monolith, and all documents and other agreements related to any of the foregoing (including the Loan Documents as defined in the Loan Agreement and the guaranties executed in connection with the Master Lease Agreements), the "**Agreements**" and each individually an "**Agreement**");

WHEREAS, Monolith is in default of certain terms and conditions of the Agreements and is in receipt of the following related notices of default:

i.   Notice of default dated August 31, 2018 issued by KEF regarding the Lease Agreement (the "**August 31 Notice of Default**");

ii.     Notice of default dated September 5, 2018 issued by KeyBank regarding the Loan Agreement (the "**September 5 Notice of Default**");

iii.    Notice of default dated October 3, 2018 issued by KeyBank regarding the Loan Agreement (the "**October 3 Notice of Default**" and together with the August 31 Notice of Default and the September 5 Notice of Default, the "**Key/KEF Notices of Default**"); and

iv.     Notice of default issued by KEF, solely in its capacity as servicer for Hancock Whitney (as herein defined) dated October 11, 2018 regarding (a) that certain Master Equipment Lease Agreement, dated as of May 18, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Schenectady Hetcheltown 2 Lease Agreement**") by and between Hancock Whitney Equipment Finance and Leasing, LLC ("**Hancock Whitney**") and Schenectady Hetcheltown 2; (b) that certain Master Equipment Lease Agreement, dated as of July 26, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Rensselaer County 2 Lease Agreement**") by and between Hancock Whitney and Rensselaer County 2; (c) that certain Master Equipment Lease Agreement, dated as of June 7, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Seward Pine 2 Lease Agreement**") by and between Hancock Whitney and Seward Pine 2; and (d) those certain Corporate Guaranties executed by Monolith Solar for the benefit of Hancock Whitney pursuant to which Monolith Solar guaranties certain obligations of Schenectady Hetcheltown 2, Rensselaer County 2 and Seward Pine 2, including the obligations of the foregoing under the Schenectady Hetcheltown 2 Lease Agreement, the Rensselaer County 2 Lease Agreement and the Seward Pine 2 Lease Agreement (collectively, the "**Hancock Whitney Lease Agreements**" and each individually a "**Hancock Whitney Lease Agreement**"), and various Equipment Schedules incorporating the terms thereof, and other documents executed in connection therewith (collectively, with the Hancock Whitney Lease Agreements, the "**Hancock Whitney Lease Documents**"); and

WHEREAS, Monolith is currently negotiating a series of financing facilities and completing a business plan;

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.     <u>Recitals</u>.  Each Party acknowledges and confirms that the recitals set forth above are true and correct and that by this reference the recitals are incorporated into and made a part of the body of this Forbearance Agreement.

2.     <u>Definitions</u>.  Unless otherwise defined above or elsewhere in this Forbearance Agreement, capitalized terms used herein shall have the meanings ascribed to them in the Agreements.

3.     <u>Scope of Forbearance Agreement</u>.  For the avoidance of doubt, this Forbearance Agreement only relates to the Agreements.  This Forbearance Agreement does not relate to, alter or amend in any way, any other agreements, leases, documents or writings to which either Key

Party is not a party, including without limitation the Hancock Whitney Lease Documents. This Forbearance Agreement shall not limit, restrict or otherwise affect KeyBank's rights and remedies as servicer for Hancock Whitney under the Hancock Whitney Lease Documents.

4. <u>Confirmation of Specified Defaults</u>. Monolith acknowledges and agrees that: (i) each of the defaults described in the KeyBank/KEF Notices of Default (the "**Specified Defaults**") constitutes an event of default that has occurred and is continuing under the applicable Agreements as of the date hereof, (ii) each of the Specified Defaults is material in nature, (iii) the Key Parties provided, and Monolith received, proper notice of the Specified Defaults, and (iv) the Key Parties are entitled to exercise all of their respective rights and remedies under the Agreements and applicable law as a result of the occurrence and continuation of the Specified Defaults.

5. <u>Acknowledgement of Continuation of Liabilities</u>. The obligations of Monolith under the Agreements shall, except as expressly modified herein, remain in full force and effect, and shall not be released, impaired, diminished or in any other way modified or amended as a result of the execution and delivery of this Forbearance Agreement or by the agreements and undertakings of the Parties contained herein. Monolith hereby ratifies its obligations under and confirms each of the Agreements to which it is a party and the rights granted thereunder in favor of the applicable Key Party. Monolith hereby confirms that any and all security interests and liens granted pursuant to the Agreements continue to secure the obligations of Monolith under the Agreements, whether presently existing or hereafter arising, and that such security interests and liens remain in full force and effect.

6. <u>Forbearance; Forbearance Default Rights and Remedies.</u>

(a) Subject to the terms and conditions hereof, including without limitation, the satisfaction of the conditions precedent described in <u>Section 19</u> of this Forbearance Agreement, the Key Parties agree that until the earlier of (a) November 30, 2018 or (b) the occurrence of a Terminating Event (as defined herein) (the "**Forbearance Period**"), they will forbear from exercising their respective default-related rights and remedies against Monolith solely with respect to the Specified Defaults; provided, however:

(i) from and including August 31, 2018 and at all times thereafter that any default or event of default (including the Specified Defaults) exists and is continuing under any Agreement, the applicable default rates of interest shall continue to apply to all loans and other obligations under any Agreement;

(ii) Monolith shall not request, pursuant to any Agreement, any revolving loan or other loan from the Key Parties, and the Key Parties shall not have any obligation to make any loans of any kind or provide any financial accommodations to Monolith during the Forbearance Period;

(iii) Monolith shall comply with each and every limitation, restriction or prohibition that would otherwise be effective or applicable under any Agreement during the continuance of any default or event of default (including the Specified Defaults);

4

(iv)    Monolith shall pay within ten (10) Business Days of any written demand by the Key Parties, all reasonable costs and expenses of the Key Parties related to or in connection with this Forbearance Agreement and any documents, agreements or instruments referred to herein, including, without limitation, the reasonable fees and expenses of the attorneys retained by the Key Parties and the allocated cost of the Key Parties' internal counsel in connection with the negotiation and preparation of this Forbearance Agreement or the enforcement of the Key Parties' rights and remedies under this Forbearance Agreement, any other Agreement, and applicable law (collectively, the "**Fees and Expenses**"); provided, however, that Monolith hereby authorizes the Key Parties to debit any one or more deposit accounts of Monolith for the Fees and Expenses if Monolith fails to remit the Fees and Expenses to the Key Parties within the time provided in this section.   Nothing in this Forbearance Agreement shall be intended or construed to hold the Key Parties liable or responsible for any expense, liability or obligation of any kind or nature whatsoever (including, without limitation, attorneys' fees and expenses, other professionals' fees, including those of Monolith's Financial Advisor (as defined herein), and expenses, wages, salaries, payroll taxes, withholdings, benefits or other amounts payable) by or on behalf of the Monolith;

(v)    nothing herein shall restrict, impair or otherwise affect the Key Parties' right to file, record, publish or deliver a notice of default.

(b)    The obligation of the Key Parties to forbear from exercising their respective default-related rights and remedies against Monolith during the Forbearance Period, solely with respect to the Specified Defaults, as provided herein, shall terminate upon the occurrence of any one or more of the following events (each, a "**Terminating Event**"):

(i)    Monolith shall have failed to comply in all material respects with any term, condition, or covenant set forth in this Forbearance Agreement; and/or

(ii)    the occurrence of any default or event of default under any Agreement other than the Specified Defaults; and/or

(iii)    the failure of any representation or warranty made by Monolith under or in connection with this Forbearance Agreement, to be true and complete in all material respects as of the date when made or any other breach of any such representation or warranty; and/or

(iv)    there shall be a negative variance of more than 10% between the actual result for any line item for the week ending on the immediately preceding Friday compared to the forecasted result for such line item from the 13 Week Cash Consolidated Cash Forecast (as defined herein); and/or

(v)    the repudiation and/or assertion of any defense by Monolith with respect to this Forbearance Agreement, any other Agreement or the pursuit of any claim by Monolith against the Key Parties.

(c)     Notwithstanding any provision of any Agreement to the contrary, upon the occurrence of a Terminating Event, which shall constitute a default and an event of default under the Loan Agreement, the Notes, the Lease Agreement and the other Agreements: (x) the agreement of the Key Parties hereunder to forbear from exercising their respective default-related rights and remedies shall immediately terminate without the requirement of any demand, presentment, protest, or notice of any kind, all of which the Monolith hereby waives, and (y) the Key Parties may exercise any and all of their respective rights and remedies under the Agreements and applicable law including, without limitation, their respective rights and remedies with respect to the Specified Defaults.

(d)     Any agreement by the Key Parties to extend the Forbearance Period, if any, must be set forth in writing and signed by a duly authorized signatory of each Key Party.

(e)     Monolith acknowledges that neither of the Key Parties has made any assurances concerning (i) any possibility of an extension of the Forbearance Period, (ii) the manner in which or whether the Specified Defaults may be resolved or (iii) any additional forbearance, waiver, restructuring or other accommodations.

(f)     The Parties agree that the running of all statutes of limitation and the doctrine of laches applicable to all claims or causes of action that the Key Parties may be entitled to take or bring in order to enforce its rights and remedies against Monolith are, to the fullest extent permitted by law, tolled and suspended during the Forbearance Period.

7.     <u>13 Week Consolidated Cash Forecast/Other Information</u>.

(a)     Monolith shall deliver to the Key Parties, no later than 5:00 pm Eastern Time on Monday of each week, a rolling 13 week consolidated cash forecast (the "**13 Week Consolidated Cash Forecast**") for Monolith, in form and substance acceptable to the Key Parties. Monolith shall deliver with the 13 Week Consolidated Cash Forecast, a written report in form and substance acceptable to the Key Parties: (A) comparing actual results with forecasted results, (B) identifying for each line item in the 13 Week Consolidated Cash Forecast, any variance in excess of 10% (whether positive or negative) between the actual result for the week ending on the immediately preceding Friday compared to the forecasted result for such line item from the immediately preceding 13 Week Cash Consolidated Cash Forecast, and (C) providing a detailed explanation for the cause of any variance.

(b)     Monolith shall provide any other information that the Key Parties request relating to its business.

8.     <u>Financial Advisor</u>.  On or before November 2, 2018, Monolith shall retain a financial advisor (the "**Financial Advisor**") acceptable to the Key Parties pursuant to an engagement letter in form and substance satisfactory to the Key Parties (including, without limitation, the fees and expenses to be paid to the Financial Advisor).  For the avoidance of doubt, Monolith shall be responsible to pay all of the Financial Advisor's fees and expenses. Monolith has informed the Key Parties that it intends to retain MorrisAnderson as its Financial Advisor.  MorrisAnderson is an acceptable Financial Advisor to the Key Parties.  Among other things, the Financial Advisor shall:

(a)     assist Monolith in creating the 13 Week Consolidated Cash Forecast and accompanying written report that is to be delivered to the Key Parties pursuant to <u>Section 7</u> of this Forbearance Agreement;

(b)     assist Monolith in creating a budget for 2019, which budget shall be delivered to the Key Parties no later than November 30, 2018;

(c)     assist Monolith in developing a turnaround plan, which plan shall be delivered to the Key Parties no later than November 30, 2018;

(d)     immediately notify the Key Parties in writing of any disbursement made by Monolith that is inconsistent with the 13 Week Cash Consolidated Cash Forecast;

(e)     provide to the Key Parties on or before the fifth Business Day of every month a written report, in form and detail satisfactory to the Key Parties, summarizing the operational and financial performance of Monolith;

(f)     consider and develop various strategic initiatives and alternatives to improve Monolith's liquidity and financial and operational performance; and

(g)     have full authority over Monolith's cash and shall manage payments in accordance with the 13 Week Cash Consolidated Cash Forecast.

9.      <u>Cooperation with the Key Parties' Consultant</u>.

(a)     Monolith shall cooperate with, and provide access to the third party-contractor or consultant retained by the Key Parties or counsel to the Key Parties (the "**Key Parties' Consultant**").  Among other things, Monolith shall provide the Key Parties' Consultant with (a) access to the solar projects that are subject to the equipment leases owned by the Key Parties within five (5) business days after written request from the Key Parties or counsel to the Key Parties, to enable the Key Parties' Consultant to conduct an on-site review and inspection of each solar project, including all equipment located at each solar project (b) reasonable assistance in conducting each on-site review, (c) access to data and other information related to any of the solar projects, and (d) such other services and information as the Key Parties' Consultant may reasonably request.

(b)     Monolith acknowledges and agrees that it shall reimburse the Key Parties for all of the reasonable fees and expenses of the Key Parties' Consultant (the "**Key Parties' Consultant Fees**").  Monolith shall reimburse the Key Parties for the Key Parties' Consultant Fees within ten (10) Business Days of receiving any written demand from the Key Parties for reimbursement.  If Monolith fails to remit the Key Parties' Consultant fees to the Key Parties within the time provided in this section, Monolith hereby authorizes Key Parties to debit any one or more deposit accounts of Monolith for the Key Parties' Consultant Fees.

10.     <u>Asset Sales.</u>  Without the prior written approval of Key Parties, Monolith shall not convey, sell or otherwise dispose of any of its property or assets.

11.  Note/Loan Repayments.  Monolith shall not agree or otherwise take any action to discount or otherwise reduce the obligations or indebtedness owed to Monolith pursuant to any note, loan agreement or other financial instrument.

12.  Lease Payment.  Monolith shall timely remit to the Key Parties in immediately available funds the lease payments due in November 2018 under the Key Lease Agreements (as defined herein).

13.  Restricted Account.

(a)  On or before November 30, 2018, Monolith shall establish a Restricted Account ("Restricted Account"), on terms acceptable to the Key Parties, for remittances from power offtakers or other customers (the "**Offtakers**") under any power purchase agreement subject to the Master Lease Agreements and the First Niagara Equipment Financing Agreement, or any other lease between the Key Parties and Monolith (collectively, the "**Key Lease Agreements**"). Monolith will send remittance advices directing the Offtakers to remit all future payments due under a power purchase agreement to the Restricted Account.  All amounts deposited in the Restricted Account shall be under the sole and exclusive control of the Key Parties pursuant to a Control, Restrictive or Lock Box Agreement in form and substance satisfactory to the Key Parties.

(b)  Repayment of Collateral Sale Proceeds.  During and after the Forbearance Period, Monolith agrees that all collections and other proceeds of Collateral or the Equipment shall be deposited into the Restricted Account immediately following receipt by Monolith.

(c)  Amounts deposited in the Restricted Account shall be used to satisfy the monthly lease payments and other obligations due and owing under the Key Lease Agreements (collectively the "**Monthly KEF Lease Payments**"), with all remaining amounts held in the Restricted Account, provided, however that during the Forbearance Period after a Monthly KEF Lease Payment is paid, Monolith shall be permitted to have access to any remaining amounts in the Restricted Account solely for disbursements in accordance with the 13 Week Consolidated Cash Forecast, and all remaining funds shall remain in the Restricted Account.

14.  Notice of Default/Terminating Event.  Monolith shall promptly, and in any event within one Business Day, notify the Key Parties in writing of the existence of any event of default under any Agreement (other than the Specified Defaults) or any Terminating Event under this Forbearance Agreement of which Monolith becomes aware.

15.  Deposit Accounts.  On or before November 9, 2018, Monolith shall provide the Key Parties with a list of all deposit accounts owned by Monolith.  On or before November 16, 2018, Monolith will provide for the execution of deposit account control agreements, in form and substance satisfactory to the Key Parties, for all such deposit accounts that are not maintained with the KeyBank.  Monolith shall deposit in accounts maintained with KeyBank immediately upon receipt all cash or other funds received by Monolith, directly or indirectly, in connection with the operation of its business; *provided, however*, that cash or other funds that are required to be deposited in an account with another financial institution pursuant to a valid and enforceable agreement to which Monolith is party as of the date of this Agreement shall only be subject to

8

this requirement to the extent of cash or other funds in such other account that Monolith has the right to withdraw, transfer, or otherwise utilize.

16.     <u>Payments/Deposits</u>.  Monolith shall not (i) make any payment, incur any liability or provide other consideration to any person or entity, for the purchase, acquisition, redemption, repurchase, payment or retirement of any capital stock or other equity interest of Monolith or as a dividend, return of capital or other distribution in respect of any Monolith capital stock or other equity interest, (ii) satisfy any federal or state tax obligations of any Monolith shareholders unless otherwise agreed to in advance in writing by the Key Parties, (iii) increase the amount of total compensation (including, without limitation, wages, insurance and other fringe benefits) in effect as of November 2, 2018 of any officer, manager, or member of Monolith, or (vii) deposit any funds payable to or received by Monolith, or hereafter received by Monolith in an account (deposit, securities or otherwise) maintained at a bank or other financial institution other than KeyBank.

17.     <u>Payments Limited to 13 Week Consolidated Cash Forecast</u>.  Monolith shall not make any payment or distribution of any kind that is not expressly provided for in the 13 Week Consolidated Cash Forecast.

18.     <u>Security Interest in Additional Collateral</u>.  Not later than November 9, 2019, Monolith shall have delivered to the Key Parties evidence, in form and detail satisfactory to the Key Parties, of the proper notation of the Key Parties' first priority security interest and duly perfected lien on the titles of all vehicles owned by Monolith.

19.     <u>Conditions Precedent to Effectiveness</u>.

This Forbearance Agreement and the agreement of the Key Parties described herein will not be effective unless and until all of the following have occurred or been satisfied on or before the date of this Forbearance Agreement, or such later time as the Key Parties may agree, in writing, in their sole discretion (the "**Forbearance Effective Date**"):

(a)     Monolith shall have executed and delivered this Agreement;

(b)     Monolith shall have delivered to the Key Parties the 13 Week Cash Flow Forecast, which shall be in form and substance satisfactory to the Key Parties;

(c)     No default or event of default (other than the Specified Defaults) or Material Adverse Change shall have occurred; and

(d)     All representations and warranties contained in this Agreement shall be true and correct in all material respects.

20.     <u>Representations and Warranties</u>.

(a)     Monolith hereby acknowledges and confirms that (i) all of the Recitals set forth above are true and correct; (ii) the Agreements are in full force and effect and are enforceable in accordance with their respective terms; (iii) Monolith does not have any claims, defenses, causes

of action, counterclaims or offsets against the Key Parties or any of their respective current or former officers, employees, agents, representatives, consultants, directors, parents, subsidiaries, affiliates, members, managers, consultants or attorneys of any kind or nature whatsoever; and (iv) as of the date hereof, all liens, security interests, assignments and pledges encumbering the Collateral or the Equipment, created pursuant to and/or referred to in the Agreements, are valid and enforceable first priority liens, security interests, assignments and pledges, continue unimpaired, are in full force and effect and secure and shall continue to secure all of the obligations described in the respective instruments in which such interests were granted;

(b)      Monolith hereby further represents and warrants that:

(i)      After giving effect to this Forbearance Agreement, and except for those matters constituting Specified Defaults, all of the respective representations and warranties of Monolith in the Agreements are true and complete in all material respects on the date hereof with the same force and effect as if made on such date;

(ii)      Except for the Specified Defaults, no default, violation or event of default under the Agreements, and no event which, with the passage of time or the giving of notice, or both, could constitute any such default, violation or event of default, has occurred and is continuing;

(iii)      After giving effect to this Forbearance Agreement, no representation or warranty by Monolith contained in this Forbearance Agreement or any document, agreement or instrument to be executed or delivered herewith contains any untrue statements of material fact or omits to state a material fact necessary to make such representation or warranty not misleading in light of the circumstances under which it was made;

(iv)      The execution, delivery and performance of this Forbearance Agreement, and any document, agreement or instrument to be executed or delivered herewith, by Monolith will not result in the violation of any mortgage, indenture, material contract, instrument, agreement, judgment, decree, order, statute, rule or regulation to which Monolith is subject or by which or any of its respective property is bound;

(v)      This Forbearance Agreement and the documents, agreements and instruments to be executed or delivered herewith constitute the legal, valid and binding obligations of Monolith, are enforceable in accordance with their terms and have been duly authorized, executed and delivered by Monolith, except as the enforceability hereof or thereof may be limited by bankruptcy, insolvency, moratorium, and other similar laws affecting creditors' rights generally and by general principles of equity, whether considered in a proceeding at law or in equity;

(vi)      No consents or approvals are required in connection with the execution, delivery and performance by Monolith of this Forbearance Agreement or any

documents, agreements or instruments to be executed or delivered herewith that have not been previously obtained;

(vii)   Monolith has the corporate power and authority to execute, deliver and carry out the terms and provisions of this Forbearance Agreement and the transactions contemplated hereby and has taken or caused to be taken all necessary corporate action to authorize the execution, delivery and performance of this Forbearance Agreement and the transactions contemplated hereby; and

(viii)   There are no actions, suits or proceedings pending or, to the knowledge of Monolith, threatened with respect to Monolith (A) that have had or could have, if adversely decided, a Material Adverse Change, or (B) that question the validity or enforceability of any of the Agreements or of any action taken by the Key Parties.

(c)   Monolith hereby expressly acknowledges and confirms that the foregoing representations and warranties are being specifically relied upon by the Key Parties as a material inducement to the Key Parties to enter into this Forbearance Agreement and, subject to and in accordance with the terms and conditions of this Agreement, to forbear from exercising the Key Parties' respective rights and remedies during the Forbearance Period, other than the rights and remedies described in this Forbearance Agreement including, without limitation, those set forth in <u>Section 6</u> of this Forbearance Agreement.  The foregoing representations and warranties shall survive the execution and delivery of this Forbearance Agreement.

17.   <u>Miscellaneous</u>

(a)   <u>Disgorgement</u>.  If the Key Parties are, for any reason, compelled by a court or other tribunal of competent jurisdiction to surrender or disgorge any payment, interest or other consideration described hereunder to any person because the same is determined to be void or voidable as a preference, fraudulent conveyance, impermissible set-off or for any other reason, such indebtedness or part thereof intended to be satisfied by virtue of such payment, interest or other consideration shall be revived and continue as if such payment, interest or other consideration had not been received by the Key Parties, and Monolith shall be liable to, and shall indemnify, defend (engaging respective counsel acceptable to the Key Parties, as applicable) and hold the Key Parties harmless for, the amount of such payment or interest surrendered or disgorged.  The provisions of this <u>Section 17</u> shall survive execution and delivery of this Forbearance Agreement.

(b)   <u>No Defenses; Reliance</u>.

(i)   Monolith hereby acknowledges and confirms that there are no existing defenses, claims, counterclaims or rights of recoupment or set-off (x) against the Key Parties in connection with the obligations and indebtedness owed to the Key Parties under the Agreements or in connection with the negotiation, preparation, execution, performance or any other matters relating to the Agreements.

(ii)   Monolith further acknowledges and agrees that, notwithstanding anything to the contrary set forth in this Agreement, the Key Parties do not have, nor shall

11

have, an obligation to: (a) amend any one or more of the Agreements or otherwise further restructure the obligations described therein; (b) make any further loans, advances or extension of credit to or for the benefit of Monolith, (c) extend the Forbearance Period; (d) refrain from terminating the Forbearance Period upon the occurrence of any Terminating Event or (e) enter into any other instruments, agreements or documents regarding any of the same with Monolith, and that neither the Key Parties nor and any of their respective representatives have made any agreements with, or commitments or representations or warranties to, Monolith (either in writing or orally), other than as expressly stated in this Forbearance Agreement.

(iii)     Monolith expressly understands and further agrees that the Key Parties are relying on all terms, covenants, conditions, warranties and representations set forth in this Forbearance Agreement as a material inducement to the Key Parties to enter into this Agreement.

(c)     <u>Cumulative Remedies; Non-Waiver</u>.

(i)     Except as otherwise specifically provided in this Forbearance Agreement, the rights, powers, authorities, remedies, interests and benefits conferred upon the Key Parties by and as provided in this Forbearance Agreement are intended to supplement, and be in addition to (and shall not in any way replace, supersede, amend, limit or restrict), the rights, powers, authorities, remedies, interests, and benefits conferred by the Agreements.

(ii)     Except as otherwise specifically provided in this Forbearance Agreement, each Key Party's execution of or performance under this Agreement does not (and it shall not be construed so as to) waive, relinquish, restrict or limit in any way any of the respective rights, remedies, claims or causes of action that each Key Party has or may have under or with respect to the Agreements or applicable law (all of which are expressly reserved) regardless of whether any of the foregoing relate to or arise out of acts, omissions, events or transactions occurring before or after the date hereof.   Except as otherwise specifically provided in this Forbearance Agreement, each Key Party hereby expressly reserves all rights to take any and all actions, and exercise any and all remedies, authorized under the Agreements or at law or in equity as a result of or with respect to the occurrence and continuance of any defaults, violations or events of default that have or may have heretofore occurred thereunder and any defaults, violations or events of default that may hereafter occur or exist thereunder.   Nothing contained herein, and no action taken by either Key Party pursuant hereto or as provided herein, shall be deemed to be a waiver of any of such defaults, violations or events of default.

(iii)     No delay on the part of either Key Party in the exercise of any power, right or remedy under this Forbearance Agreement or the Agreements at any time shall operate as a waiver thereof, and no single or partial exercise by either Key Party

of any power, right or remedy shall preclude other or further exercise thereof or the exercise of any other power, right or remedy.

(d)     Release and Acknowledgement.   In consideration of the accommodations being made available by the Key Parties to or for the benefit of Monolith under this Forbearance Agreement, including, without limitation, the forbearance on the part of the Key Parties:

(i)     Monolith, for itself and its present, former and future agents, employees, representatives, officers, directors, shareholders, parents, affiliates, members, managers, subsidiaries, successors and assigns, does hereby unconditionally remise, release, waive and discharge each Key Party and their present, former and future shareholders, parents, subsidiaries, affiliates, predecessors in interest, members, managers, officers, directors, servants, agents, employees, financial advisors, consultants, representatives, attorneys and their respective successors and assigns (collectively, "**Released Parties**", and individually, a "**Released Party**") of and from any and all claims, counterclaims, demands, actions and causes of action of any nature whatsoever, including any right of set-off, whether at law or in equity, including, without limitation, any of the foregoing arising out of or relating to any of the Agreements, any acts or omissions of any Released Party in connection therewith (including, without limitation, extensions of credit and other financial accommodations made or not made to Monolith), the transactions described in this Forbearance Agreement, the return of any checks, or any proposed financing arrangements to or for the benefit of Monolith, or any entities owned by or under the control of Monolith, which it now has or hereafter can or may have for or by reason of any cause, matter or thing whatsoever, against any of the Released Parties, from the beginning of the world to the date hereof;

(e)     Waivers.   In consideration of the accommodations being made available by the Key Parties to or for the benefit of Monolith under this Forbearance Agreement, including, without limitation, the forbearance on the part of the Key Parties:

(i)     Monolith hereby waives the benefit of any theory or statute requiring the marshaling of assets or other similar legal doctrine and agrees that the Key Parties may exercise their respective rights against the Collateral or the Equipment and apply the proceeds thereof to any of the obligations and indebtedness under the Agreements in accordance with the terms thereof, as aforesaid.

(ii)     Monolith hereby agrees that, to the extent Monolith would otherwise have a right of notification of sale under Section 9-611 of the Uniform Commercial Code as enacted in any applicable state, ten (10) days' prior written notice of any sale of the Collateral or the Equipment shall be sufficient to satisfy any such notice requirement under Sections 9-611 and 9-612 of the Uniform Commercial Code.   Monolith hereby renounces any further right of notification of sale that Monolith may have under Section 9-611 of the Uniform Commercial Code. Monolith acknowledges that this renunciation is intended to be a renunciation after default, as described in Section 9-624 of the Uniform Commercial Code.

13

(f)    <u>Relationship</u>.  Monolith agrees that the relationship between the Key Parties, on one hand, and Monolith, on the other hand, is that of creditor and debtor and not that of partners or joint ventures.  This Forbearance Agreement does not constitute a partnership agreement or any other association between either Key Party and Monolith.  Monolith acknowledges that the Key Parties have acted at all times only as creditors to Monolith, in each case, within the normal and usual scope of the activities normally undertaken by a creditor and in no event has either Key Party attempted to exercise any control over Monolith, or its respective businesses or affairs.  Monolith further acknowledges that the Key Parties have not taken or failed to take any action under or in connection with their respective rights under the Agreements that in any way or to any extent have interfered with or adversely affect Monolith's ownership of the Collateral or the Equipment.

(g)    <u>Notices</u>.  All notices, requests or other communications required or desired to be given hereunder shall be in writing and, if to Monolith, sent by facsimile or overnight or certified mail, return receipt requested, postage prepaid, addressed to it at the addresses specified on the signature pages of this Forbearance Agreement, and, if to the Key Parties, sent by facsimile or overnight or certified mail, return receipt requested, postage prepaid, addressed to it at the respective addresses specified on the signature pages of this Forbearance Agreement, or as to each party, at such other address as shall be designated by such party in written notice to the other parties.  All notices, statements, requests, demands and other communications provided for hereunder shall be deemed to be given or made when delivered or three (3) Business Days after being deposited in the mails with postage prepaid by overnight or certified mail, addressed as aforesaid, or sent by facsimile with telephonic confirmation of receipt.

(h)    <u>No Third Party Beneficiaries</u>.  This Agreement is made and entered into for the sole protection and benefit of Monolith and the Key Parties, and no other person or entity shall have any right of action hereon, right to claim any right or benefit from the terms contained herein, or be deemed a third party beneficiary hereunder.

(i)    <u>Severability</u>.  Whenever possible, each provision of this Forbearance Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Forbearance Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement, it being the parties' intention that each and every provision of this Forbearance Agreement be enforced to the fullest extent permitted by applicable law.

(j)    <u>Further Assurances</u>.  At the Key Parties' reasonable request, Monolith shall promptly execute any other document to evidence or further the intent of Monolith or the Key Parties.

(k)    <u>Counterparts</u>.  This Forbearance Agreement may be executed by the Parties in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.  The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by other parties to this Forbearance

Agreement attached thereto.  Delivery of an executed counterpart of the signature page by telecopier or electronic mail shall be as effective as delivery of an original manually executed counterpart.

(l)     Descriptive Headings; Construction.     The headings in this Forbearance Agreement are intended for convenient references only and shall not in any way limit, amplify or be used in interpreting the terms of this Forbearance Agreement.  The masculine, feminine or neutral gender in the singular or plural shall be deemed to include the others wherever the context of this Agreement so requires.  This Forbearance Agreement shall not be construed against any party hereto as the drafters of this Forbearance Agreement.

(m)     Governing Law; Submission to Jurisdiction.  The provisions of this Forbearance Agreement and the respective rights and duties of Parties hereunder shall be governed by and construed in accordance with New York law, without regard to principles of conflicts of laws that would result in the application of the law of any other state.  Monolith hereby irrevocably submits to the non-exclusive jurisdiction of any New York state court sitting in New York County, or the United States District Court for the Southern District of New York over any action or proceeding arising out of or relating to this Forbearance Agreement, other Agreement or any related writing, and Monolith hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New York state or federal court. Monolith hereby irrevocably waives, to the fullest extent permitted by law, any objection it may now or hereafter have to the laying of venue in any such action or proceeding in any such court as well as any right it may now or hereafter have to remove such action or proceeding, once commenced, to another court on the grounds of FORUM NON CONVENIENS or otherwise. Monolith agrees that a final, nonappealable judgment in any such action or proceeding in any state or federal court in the State of New York shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(n)     Time of Essence.     Time is of the essence with respect to this Forbearance Agreement.

(o)     Successors and Assigns.  This Forbearance Agreement shall be binding upon, and shall inure to the benefit of the Key Parties and Monolith, and their respective successors and assigns, except that Monolith may not assign its rights under this Forbearance Agreement or the other Agreements without the prior written consent of the Key Parties.

(p)     Key Parties' Actions.  The authority herein conferred upon the Key Parties, and any action taken by the Key Parties hereunder or under the other Agreements or under the Hancock Whitney Lease Documents, or any document, agreement or instrument referred to herein will be taken by the Key Parties, for the protection of the Key Parties only (and Hancock Whitney, if KeyBank takes any action in its capacity as servicer under the Hancock Whitney Lease Documents), and the Key Parties shall not assume nor shall be deemed to have assumed any responsibility to Monolith or to any other persons with respect to any such action authorized or taken by the Key Parties except as required by applicable law.  No person shall be entitled to rely upon, or claim to have relied upon, any action taken or failed to have been taken by the Key Parties or their respective consultants, agents, employees or representatives.

(q)     <u>Amendments</u>.  This Forbearance Agreement may be amended, supplemented or otherwise modified only by a written agreement signed by Monolith and the Key Parties and none of the provisions hereof may be waived without the written consent of the Key Parties.

(r)     <u>Voluntary Agreement.</u>   Monolith represents and warrants that Monolith is represented by legal counsel of its choice, that it has consulted with such counsel regarding this Forbearance Agreement, that it is fully aware of the terms and provisions contained herein and of their effect and that it has voluntarily and without coercion or duress of any kind entered into this Forbearance Agreement.

(s)     <u>Indemnification</u>.   From and after the date hereof, Monolith shall indemnify, defend and hold harmless the Key Parties, and their respective present, former and future shareholders, subsidiaries, predecessors in interest, members, managers, affiliates, parents, directors, servants, agents, employees, representatives, officers, consultants, attorneys and their respective heirs, personal representatives, successors and assigns (severally and collectively, the "**Indemnified Parties**") against and from any and all liability for, and against and from all losses or damages Indemnified Parties may suffer as a result of, any claim, demand, cost, expense, or judgment of any type, kind, character or nature (including reasonable attorneys' fees and court costs), which Indemnified Parties shall incur or suffer as a result of (a) any act or omission of Monolith or any of its agents or representatives in connection with the transactions described in this Forbearance Agreement, the other Agreements and any of the instruments, agreements and documents referred to in this Agreement, (b) the inaccuracy of any of the representations or warranties of Monolith, or (c) the breach of any of the respective covenants set forth herein of Monolith.   This indemnification shall survive execution and delivery of this Forbearance Agreement.

(t)     <u>Integration</u>.  This Forbearance Agreement and the instruments, agreements and documents referred to in this Forbearance Agreement shall be deemed incorporated into and made a part of the Key Lease Agreements and the Loan Agreement.   This Forbearance Agreement shall be deemed to be a Loan Document as that term is defined in the Loan Agreement and the other Agreements.  All such instruments, agreements and documents, and this Forbearance Agreement, shall be construed as integrated and complementary of each other, and, except as otherwise specifically provided in this Forbearance Agreement, as augmenting and not restricting the Key Parties' rights, remedies, benefits and security.

(u)     <u>Other Terms</u>.  All other terms of the Agreements or any of the documents, agreements or instruments referred to herein, not expressly modified by this Forbearance Agreement shall remain in full force and effect between the parties.

(v)     <u>No Waiver or Impairment</u>.  Nothing in this Forbearance Agreement or any related documents shall constitute a waiver of any existing or future default or event of default or, to the extent not expressly provided herein, any rights and/or remedies of the Key Parties.  Monolith, in consideration of the Key Parties entering into this Forbearance Agreement, hereby irrevocably and specifically waives and releases any and all defenses and/or grounds of avoidance Monolith may have or may believe it has with respect to (x) the Key Parties' security interests in the Collateral or the Equipment and the Key Parties' perfection thereof.

(w)     <u>Bankruptcy Filing.</u>  If Monolith (each individual entity included in the definition of Monolith, a "**Bankruptcy Party**") files or has filed against it a petition in bankruptcy or seeks relief or protection under any of the sections or chapters of the United States Bankruptcy Code (the "**Bankruptcy Code**"), the Key Parties thereupon will have the right (and no Bankruptcy Party will interpose any objection thereto and each hereby waives its rights with respect thereto) to request and receive any one or more of the following: (i) immediate relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or any stay or other restriction on the Key Parties' rights under this Forbearance Agreement, under the documents, instruments or agreements referenced in this Forbearance Agreement, or under any of the court's equitable powers (and, in this regard, each Bankruptcy Party hereby admits that it is unable to adequately protect the interests of the Key Parties), (ii) a termination of the exclusive period under Section 1121 of the Bankruptcy Code, and (iii) a dismissal of the bankruptcy case or proceeding. Nothing in this Forbearance Agreement shall be deemed in any way to limit or restrict any of the Key Parties' rights to seek in a bankruptcy court or any other court of competent jurisdiction any relief the Key Parties may deem appropriate in the event that a voluntary or involuntary petition under any title of the Bankruptcy Code is filed by or against a Bankruptcy Party.  The assets and properties which each Bankruptcy Party have encumbered and which are subject to the security interests and liens of the Key Parties include all cash, cash equivalents, or cash collateral, as the term "cash collateral" is defined in Bankruptcy Code Section 363, which accrues from such properties or is owned by each Bankruptcy Party, and upon the filing of any bankruptcy case naming a Bankruptcy Party or any successor as debtor, such Bankruptcy Party, or such successor debtor, as the case may be, has and shall have no right to use any such cash, cash equivalents or cash collateral, and no method of providing adequate protection for any such use to the Key Parties exists.  Each Bankruptcy Party further acknowledges and agrees that the representations, acknowledgments, agreements and warranties in this Forbearance Agreement have been made by the Bankruptcy Parties as a specifically bargained for, material inducement to the Key Parties to enter into this Forbearance Agreement, that the Key Parties are relying on such representations and warranties, have changed and will continue to change their position in reliance thereon and that the Key Parties would not have entered into this Forbearance Agreement without such representations, acknowledgments, agreements and warranties.  Each Bankruptcy Party has consulted with counsel and relied upon counsel's advice in connection with the negotiation and execution of this Forbearance Agreement.

(x)     <u>Other Defaults or Events of Default</u>.  The acknowledgment of the Specified Defaults does not imply that other defaults or events of default do not exist as of the date hereof.

(y)     <u>Waiver of Jury Trial</u>.  MONOLITH WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS FORBEARANCE AGREEMENT, OR THE OTHER AGREEMENTS, OR RELATING TO OR ARISING FROM THE RELATIONSHIP WHICH IS THE SUBJECT OF THIS FORBEARANCE AGREEMENT, OR THE OTHER AGREEMENTS AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

IN WITNESS WHEREOF, the undersigned have executed this Forbearance Agreement to be effective as of the date first set forth above.

**MONOLITH SOLAR ASSOCIATES LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**SAE SUN AND EARTH ENERGY INCORPORATED**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**SOLAR MANAGEMENT GROUP, LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**SCHENECTADY HETCHELTOWN ROAD SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**SCHENECTADY HETCHELTOWN ROAD SOLAR 2 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**RENSSELAER COUNTY SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

18

**SCHUYLERVILLE  CSD SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**JOHNSONVILLE ROUTE 7 SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**RENSSELAER COUNTY SOLAR 2 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**CRARYVILLE TWO TOWN ROAD SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**SEWARD PINE HILL ROAD SOLAR 2 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 Corporate woods blvd

Albany, NY 12211

**MARION WARNER ROAD SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 Corporate woods blvd

Albany, NY 12211

**SCOTIA-GLENVILLE CSD SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**SEWARD PINE HILL ROAD SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**CRARYVILLE TWO TOWN ROAD SOLAR 2 LLC:**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**SCHENECTADY ICE RINK SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**CITY OF ALBANY SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**MAYFIELD CSD SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**KEYBANK NATIONAL ASSOCIATION**

By: _Leslie A. Jones_

Name: _Leslie A. Jones_

Title: _Senior Vice President_

Address: _66 South Pearl St._
_Albany, NY 12203_

**KEY EQUIPMENT FINANCE, A DIVISION
OF KEYBANK NATIONAL ASSOCIATION**

By: _____

Name: _____

Title: _____

Address: _____

_____

**KEYBANK NATIONAL ASSOCIATION**

By: _____

Name: _____

Title: _____

Address: _____

_____

**KEY EQUIPMENT FINANCE, A DIVISION
OF KEYBANK NATIONAL ASSOCIATION**

By: _____

Name: _Glen Bleeker_____

Title: _VP-Asset Recovery Group____

Address: _1000 South McCaslin Blvd_

_Superior, CO  80027_

21

## **EXHIBIT 76**

**(November 9, 2018 Reaffirmation Agreement)**

REAFFIRMATION OF
AGREEMENTS

In order to induce KeyBank National Association ("**KeyBank**") and Key Equipment Finance, a division of KeyBank ("**KEF**" and together with KeyBank the "**Key Parties**" and each individually a "**Key Party**") to execute and deliver that certain Forbearance Agreement of even date herewith (the "**Forbearance Agreement**"), among the Key Parties, Monolith Solar Associates LLC ("**Monolith Solar**"), Solar Management Group, LLC ("**Solar Management**"), SAE Sun and Earth Energy Incorporated ("**SAE**"), Schenectady Hetcheltown Road Solar 1 LLC ("**Schenectady Hetcheltown 1**"), Schenectady Hetcheltown Road Solar 2 LLC ("**Schenectady Hetcheltown 2**"), Schenectady Ice Rink Solar 1 LLC ("**Ice Rink Solar**"), Craryville Two Town Road Solar 1 LLC ("**Craryville Solar 1**"), Craryville Two Town Road Solar 2 LLC ("**Craryville Solar 2**"), Marion Warner Road Solar 1 LLC ("**Marion Warner Solar**"), City of Albany Solar 1 LLC ("**Albany Solar**"), Scotia Glenville CSD Solar 1 LLC ("**Scotia Solar**"), Mayfield CSD Solar 1 LLC ("**Mayfield Solar**") Rensselaer County Solar 1 LLC ("**Rensselaer County 1**"), Rensselaer County Solar 2 LLC ("**Rensselaer County 2**"), Seward Pine Hill Road Solar 1 LLC ("**Seward Pine 1**"), Seward Pine Hill Road Solar 2 LLC ("**Seward Pine 2**"), Schuylerville CSD Solar 1 LLC ("**Schuylerville 1**"), and Johnsonville Route 7 Solar 1 UCC ("**Johnsonville Route 7**" and together with Monolith Solar, Solar Management, SAE, Schenectady Hetcheltown 1, Schenectady Hetcheltown 2, Ice Rink Solar, Craryville Solar 1, Craryville Solar 2, Marion Warner Solar, Albany Solar, Scotia Solar, Mayfield Solar, Rensselaer County 1, Rensselaer County 2, Seward Pine 1, and Schuylerville 1, collectively, "**Monolith**"), the undersigned hereby consents to and acknowledges the terms of the Forbearance Agreement and reaffirms the undersigned's obligations (the "**Reaffirmation**"), as applicable, under each Commercial Guaranty to which it is a party that was delivered to KeyBank, and any other Agreements (as defined in the Forbearance Agreement) to which the undersigned is a party (including, without limitation, any confession of judgment or cognovit provision pursuant thereto), as any of them may from time to time be amended, restated or otherwise modified (collectively, the "**Key Documents**" and each individually, a "**Key Document**"). A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit A. Except as otherwise defined herein, each capitalized term used herein shall have the meaning given to such term in the Forbearance Agreement.

Each of the undersigned hereby agrees that following the execution and delivery of the Forbearance Agreement (i) each Key Document shall remain in full force and effect, and (ii) all of the undersigned's obligations under the Agreements shall remain in full force and effect.

Each of the undersigned hereby represents and warrants to the Key Parties, and agrees with the Key Parties, that it has no claim or offset against, or defense or counterclaim to, any obligation or liability under the Key Documents, and the undersigned on behalf of itself and any party claiming through it, hereby discharges and releases, unconditionally, absolutely and forever, the Key Parties and all of their parents, subsidiaries and affiliates, and their respective past, present and future officers, directors, managers, members, partners, agents, attorneys, consultants, employees, representatives, successors and assigns, of and liabilities, judgments, rights, claims, cross claims, counterclaims, demands, suits, matters, obligations, damages, debts,

losses, costs, defenses, actions and causes of action of every kind and description, arising under common law, rule, regulation or statute, whether arising under local, state, federal or foreign law, whether presently known or unknown, based upon, relating to or arising out of any act, omission, event or transaction whatsoever with the Key Parties, the Forbearance Agreement, any of the Key Documents, or otherwise, such discharge and release being with full knowledge and understanding of the circumstances and effect thereof and after having consulted legal counsel with respect thereto.

Each of the undersigned further states that the financial accommodations granted to Monolith by the Key Parties, as evidenced by the Forbearance Agreement, are good and valuable consideration to the direct pecuniary benefit of the undersigned.

This Reaffirmation shall be binding upon the undersigned and each of the undersigned's respective successors and assigns and shall inure to the benefit of the Key Parties and their successors and assigns. The successors and assigns of such parties shall include, without limitation, their respective conservators, receivers, trustees, debtors in possession or other estate representatives under any insolvency laws.

Each of the undersigned hereby agrees from time to time, as and when requested by the Key Parties, to execute and deliver or cause to be executed and delivered, all such documents, instruments and agreements and to take, or cause to be taken, such further or other action as the Key Parties may reasonably deem necessary in order to carry out the intent and purposes of this Reaffirmation and the Key Documents.

THIS REAFFIRMATION SHALL BE GOVERNED BY, CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF THAT WOULD REQUIRE THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION, EXCEPT AS REQUIRED BY MANDATORY PROVISIONS OF LAW AND EXCEPT TO THE EXTENT THAT THE VALIDITY AND PERFECTION OR THE PERFECTION AND THE EFFECT OF PERFECTION OR NON-PERFECTION OF THE SECURITY INTEREST REAFFIRMED HEREBY, OR REMEDIES HEREUNDER, IN RESPECT OF ANY PARTICULAR COLLATERAL ARE GOVERNED BY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF NEW YORK.

EACH OF THE UNDERSIGNED HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS REAFFIRMATION, OR UNDER ANY AMENDMENT, WAIVER, CONSENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION HEREWITH, AND AGREES THAT ANY SUCH ACTION, PROCEEDING OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. EACH OF THE UNDERSIGNED CERTIFIES THAT NO OFFICER, REPRESENTATIVE, AGENT OR ATTORNEY OF THE KEY PARTIES HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE KEY PARTIES WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS. EACH OF THE

UNDERSIGNED HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE AGENT ENTERING INTO THIS REAFFIRMATION.

Any provision of this Reaffirmation which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

This Reaffirmation, together with the existing Key Documents, reflects the entire understanding of the parties with respect to the transactions contemplated hereby and shall not be contradicted or qualified by any other agreement, oral or written, before the date hereof.

This Reaffirmation of Agreements is dated as of the date of the Forbearance Agreement.


MARK FOBARE

_____

STEVE ERBY

_____

<u>EXHIBIT A</u>

(Forbearance Agreement)

EXECUTION VERSION

# FORBEARANCE AGREEMENT

This Forbearance Agreement (the "**Forbearance Agreement**") is entered into as of November 9, 2018, by and between Monolith Solar Associates LLC ("**Monolith Solar**"), Solar Management Group, LLC ("**Solar Management**"), SAE Sun and Earth Energy Incorporated ("**SAE**"), Schenectady Hetcheltown Road Solar 1 LLC ("**Schenectady Hetcheltown 1**"), Schenectady Hetcheltown Road Solar 2 LLC ("**Schenectady Hetcheltown 2**"), Schenectady Ice Rink Solar 1 LLC ("**Ice Rink Solar**"), Craryville Two Town Road Solar 1 LLC ("**Craryville Solar 1**"), Craryville Two Town Road Solar 2 LLC ("**Craryville Solar 2**"), Marion Warner Road Solar 1 LLC ("**Marion Warner Solar**"), City of Albany Solar 1 LLC ("**Albany Solar**"), Scotia Glenville CSD Solar 1 LLC ("**Scotia Solar**"), Mayfield CSD Solar 1 LLC ("**Mayfield Solar**")  Rensselaer County Solar 1 LLC ("**Rensselaer County 1**"), Rensselaer County Solar 2 LLC ("**Rensselaer County 2**"), Seward Pine Hill Road Solar 1 LLC ("**Seward Pine 1**"), Seward Pine Hill Road Solar 2 LLC ("**Seward Pine 2**"), Schuylerville CSD I LLC ("**Schuylerville 1**"), and Johnsonville Route 7 Solar 1 LLC ("**Johnsonville Route 7**" and together with Monolith Solar, Solar Management, SAE, Schenectady Hetcheltown 1, Schenectady Hetcheltown 2, Ice Rink Solar, Craryville Solar 1, Craryville Solar 2, Marion Warner Solar, Albany Solar, Scotia Solar, Mayfield Solar, Rensselaer County 1, Rensselaer County 2, Seward Pine 1, and Schuylerville 1, collectively, "**Monolith**") and KeyBank National Association ("**KeyBank**") and Key Equipment Finance, a division of KeyBank ("**KEF**" and together with KeyBank, collectively, the "**Key Parties**" and each individually a "**Key Party**"). The aforementioned parties are hereinafter referred to collectively as "**Parties**" and each individually a "**Party**").

## RECITALS

WHEREAS, Monolith and KeyBank or KEF, as applicable, entered into (i) that certain Loan Agreement dated as of March 8, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Loan Agreement**"); (ii) that certain Promissory Note, in the face amount of $5,000,000, dated March 8, 2018 (the "**Revolving Note**"); (iii) that certain Promissory Note, in the face amount of $850,000, dated March 30, 2018 (the "**$850K Term Note**"); (iv) that certain Promissory Note, in the face amount of $488,000, dated as of June 30, 2015 (the "**$488K Term Note**"); (v) that certain Promissory Note, in the face amount of $24,547, dated as of December 12, 2013 (the "**24K Term Note**") and together with the Revolving Note, the $850K Term Note, and the $488K Term Note, collectively, the "**Notes**"); (vi) Master Equipment Lease Agreement dated as of July 24, 2015 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 24, 2015 Lease Agreement**"); (vii) Master Equipment Lease Agreement dated as of February 15, 2016 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 15, 2016 Lease Agreement**"); (viii) Master Equipment Lease Agreement dated as of March 1, 2016 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 1, 2016 Lease Agreement**"); (ix) Master Equipment Lease Agreement dated as of November 16, 2016 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**November 16, 2016 Lease Agreement**")  (x) Master Equipment Lease Agreement dated as of November 20, 2016 (together with all exhibits, schedules, addenda, attachments, amendments

and modifications thereto, the "**November 20, 2016 Lease Agreement**"); (xi) Master Equipment Lease Agreement dated as of February 16, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 16, 2017 Lease Agreement**"); (xii) Master Equipment Lease Agreement dated as of February 17, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 17, 2017 Lease Agreement**"); (xiii) Master Equipment Lease Agreement dated as of March 16, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Albany Lease Agreement**"); (xiv) Master Equipment Lease Agreement dated as of March 16, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Scotia Lease Agreement**"); (xv) Master Equipment Lease Agreement dated as of April 14, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**April 14, 2017 Lease Agreement**"); (xvi) Master Equipment Lease Agreement dated as of May 3, 2017 (together with all exhibits, schedules, addenda, amendments and modifications thereto, the "**May 3, 2017 Lease Agreement**"); (xvii) Master Equipment Lease Agreement dated as of June 27, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**June 27, 2017 Lease Agreement**"); (xviii) Master Equipment Lease Agreement dated as of July 17, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 17, 2017 Lease Agreement**"); (xix) Master Equipment Lease Agreement dated as of August 4, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**August 4, 2017 Lease Agreement**"); (xx) Master Equipment Lease Agreement dated as of September 14, 2017 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**September 14, 2017 Lease Agreement**" and collectively with the July 24, 2015 Lease Agreement, the February 15, 2016 Lease Agreement, the March 1, 2016 Lease Agreement, the November 16, 2016 Lease Agreement, the November 20, 2016 Lease Agreement, the February 16, 2017 Lease Agreement, the February 17, 2017 Lease Agreement, the March 16, 2017 Albany Lease Agreement, the March 16, 2017 Scotia Lease Agreement, the April 14, 2017 Lease Agreement, the May 3, 2017 Lease Agreement; the June 27, 2017 Lease Agreement, the July 17, 2017 Lease Agreement, and the August 4, 2017 Lease Agreement, the "**Master Lease Agreements**"), and (xxi) the Equipment Financing Agreement No. 18804 by and between Key Equipment Finance, as successor to First Niagara Leasing, Inc. and SAE (the "**First Niagara Equipment Financing Agreement**" and collectively with the Loan Agreement, the Notes, the Master Lease Agreements any other loan agreement or lease between KeyBank and/or KEF and Monolith, and all documents and other agreements related to any of the foregoing (including the Loan Documents as defined in the Loan Agreement and the guaranties executed in connection with the Master Lease Agreements), the "**Agreements**" and each individually an "**Agreement**");

WHEREAS, Monolith is in default of certain terms and conditions of the Agreements and is in receipt of the following related notices of default:

i.    Notice of default dated August 31, 2018 issued by KEF regarding the Lease Agreement (the "**August 31 Notice of Default**");

2

ii.      Notice of default dated September 5, 2018 issued by KeyBank regarding the Loan Agreement (the "**September 5 Notice of Default**");

iii.     Notice of default dated October 3, 2018 issued by KeyBank regarding the Loan Agreement (the "**October 3 Notice of Default**" and together with the August 31 Notice of Default and the September 5 Notice of Default, the "**Key/KEF Notices of Default**"); and

iv.      Notice of default issued by KEF, solely in its capacity as servicer for Hancock Whitney (as herein defined) dated October 11, 2018 regarding (a) that certain Master Equipment Lease Agreement, dated as of May 18, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Schenectady Hetcheltown 2 Lease Agreement**") by and between Hancock Whitney Equipment Finance and Leasing, LLC ("**Hancock Whitney**") and Schenectady Hetcheltown 2; (b) that certain Master Equipment Lease Agreement, dated as of July 26, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Rensselaer County 2 Lease Agreement**") by and between Hancock Whitney and Rensselaer County 2; (c) that certain Master Equipment Lease Agreement, dated as of June 7, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Seward Pine 2 Lease Agreement**") by and between Hancock Whitney and Seward Pine 2; and (d) those certain Corporate Guaranties executed by Monolith Solar for the benefit of Hancock Whitney pursuant to which Monolith Solar guaranties certain obligations of Schenectady Hetcheltown 2, Rensselaer County 2 and Seward Pine 2, including the obligations of the foregoing under the Schenectady Hetcheltown 2 Lease Agreement, the Rensselaer County 2 Lease Agreement and the Seward Pine 2 Lease Agreement (collectively, the "**Hancock Whitney Lease Agreements**" and each individually a "**Hancock Whitney Lease Agreement**"), and various Equipment Schedules incorporating the terms thereof, and other documents executed in connection therewith (collectively, with the Hancock Whitney Lease Agreements, the "**Hancock Whitney Lease Documents**"); and

WHEREAS, Monolith is currently negotiating a series of financing facilities and completing a business plan;

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.       Recitals.  Each Party acknowledges and confirms that the recitals set forth above are true and correct and that by this reference the recitals are incorporated into and made a part of the body of this Forbearance Agreement.

2.       Definitions.  Unless otherwise defined above or elsewhere in this Forbearance Agreement, capitalized terms used herein shall have the meanings ascribed to them in the Agreements.

3.       Scope of Forbearance Agreement.  For the avoidance of doubt, this Forbearance Agreement only relates to the Agreements.  This Forbearance Agreement does not relate to, alter or amend in any way, any other agreements, leases, documents or writings to which either Key

Party is not a party, including without limitation the Hancock Whitney Lease Documents.  This Forbearance Agreement shall not limit, restrict or otherwise affect KeyBank's rights and remedies as servicer for Hancock Whitney under the Hancock Whitney Lease Documents.

4.      Confirmation of Specified Defaults.  Monolith acknowledges and agrees that: (i) each of the defaults described in the KeyBank/KEF Notices of Default (the "**Specified Defaults**") constitutes an event of default that has occurred and is continuing under the applicable Agreements as of the date hereof, (ii) each of the Specified Defaults is material in nature, (iii) the Key Parties provided, and Monolith received, proper notice of the Specified Defaults, and (iv) the Key Parties are entitled to exercise all of their respective rights and remedies under the Agreements and applicable law as a result of the occurrence and continuation of the Specified Defaults.

5.      Acknowledgement of Continuation of Liabilities.  The obligations of Monolith under the Agreements shall, except as expressly modified herein, remain in full force and effect, and shall not be released, impaired, diminished or in any other way modified or amended as a result of the execution and delivery of this Forbearance Agreement or by the agreements and undertakings of the Parties contained herein.  Monolith hereby ratifies its obligations under and confirms each of the Agreements to which it is a party and the rights granted thereunder in favor of the applicable Key Party.  Monolith hereby confirms that any and all security interests and liens granted pursuant to the Agreements continue to secure the obligations of  Monolith under the Agreements, whether presently existing or hereafter arising, and that such security interests and liens remain in full force and effect.

6.      Forbearance; Forbearance Default Rights and Remedies.

(a)      Subject to the terms and conditions hereof, including without limitation, the satisfaction of the conditions precedent described in Section 19 of this Forbearance Agreement, the Key Parties agree that until the earlier of (a) November 30, 2018 or (b) the occurrence of a Terminating Event (as defined herein) (the "**Forbearance Period**"), they will forbear from exercising their respective default-related rights and remedies against Monolith solely with respect to the Specified Defaults; provided, however:

(i)      from and including August 31, 2018 and at all times thereafter that any default or event of default (including the Specified Defaults) exists and is continuing under any Agreement, the applicable default rates of interest shall continue to apply to all loans and other obligations under any Agreement;

(ii)      Monolith shall not request, pursuant to any Agreement, any revolving loan or other loan from the Key Parties, and the Key Parties shall not have any obligation to make any loans of any kind or provide any financial accommodations to Monolith during the Forbearance Period;

(iii)      Monolith shall comply with each and every limitation, restriction or prohibition that would otherwise be effective or applicable under any Agreement during the continuance of any default or event of default (including the Specified Defaults);

4

(iv)     Monolith shall pay within ten (10) Business Days of any written demand by the Key Parties, all reasonable costs and expenses of the Key Parties related to or in connection with this Forbearance Agreement and any documents, agreements or instruments referred to herein, including, without limitation, the reasonable fees and expenses of the attorneys retained by the Key Parties and the allocated cost of the Key Parties' internal counsel in connection with the negotiation and preparation of this Forbearance Agreement or the enforcement of the Key Parties' rights and remedies under this Forbearance Agreement, any other Agreement, and applicable law (collectively, the "**Fees and Expenses**"); provided, however, that Monolith hereby authorizes the Key Parties to debit any one or more deposit accounts of Monolith for the Fees and Expenses if Monolith fails to remit the Fees and Expenses to the Key Parties within the time provided in this section.   Nothing in this Forbearance Agreement shall be intended or construed to hold the Key Parties liable or responsible for any expense, liability or obligation of any kind or nature whatsoever (including, without limitation, attorneys' fees and expenses, other professionals' fees, including those of Monolith's Financial Advisor (as defined herein), and expenses, wages, salaries, payroll taxes, withholdings, benefits or other amounts payable) by or on behalf of the Monolith;

(v)     nothing herein shall restrict, impair or otherwise affect the Key Parties' right to file, record, publish or deliver a notice of default.

(b)     The obligation of the Key Parties to forbear from exercising their respective default-related rights and remedies against Monolith during the Forbearance Period, solely with respect to the Specified Defaults, as provided herein, shall terminate upon the occurrence of any one or more of the following events (each, a "**Terminating Event**"):

(i)     Monolith shall have failed to comply in all material respects with any term, condition, or covenant set forth in this Forbearance Agreement; and/or

(ii)     the occurrence of any default or event of default under any Agreement other than the Specified Defaults; and/or

(iii)     the failure of any representation or warranty made by Monolith under or in connection with this Forbearance Agreement, to be true and complete in all material respects as of the date when made or any other breach of any such representation or warranty; and/or

(iv)     there shall be a negative variance of more than 10% between the actual result for any line item for the week ending on the immediately preceding Friday compared to the forecasted result for such line item from the 13 Week Cash Consolidated Cash Forecast (as defined herein); and/or

(v)     the repudiation and/or assertion of any defense by Monolith with respect to this Forbearance Agreement, any other Agreement or the pursuit of any claim by Monolith against the Key Parties.

5

(c)     Notwithstanding any provision of any Agreement to the contrary, upon the occurrence of a Terminating Event, which shall constitute a default and an event of default under the Loan Agreement, the Notes, the Lease Agreement and the other Agreements: (x) the agreement of the Key Parties hereunder to forbear from exercising their respective default-related rights and remedies shall immediately terminate without the requirement of any demand, presentment, protest, or notice of any kind, all of which the Monolith hereby waives, and (y) the Key Parties may exercise any and all of their respective rights and remedies under the Agreements and applicable law including, without limitation, their respective rights and remedies with respect to the Specified Defaults.

(d)     Any agreement by the Key Parties to extend the Forbearance Period, if any, must be set forth in writing and signed by a duly authorized signatory of each Key Party.

(e)     Monolith acknowledges that neither of the Key Parties has made any assurances concerning (i) any possibility of an extension of the Forbearance Period, (ii) the manner in which or whether the Specified Defaults may be resolved or (iii) any additional forbearance, waiver, restructuring or other accommodations.

(f)     The Parties agree that the running of all statutes of limitation and the doctrine of laches applicable to all claims or causes of action that the Key Parties may be entitled to take or bring in order to enforce its rights and remedies against Monolith are, to the fullest extent permitted by law, tolled and suspended during the Forbearance Period.

7.     <u>13 Week Consolidated Cash Forecast/Other Information</u>.

(a)     Monolith shall deliver to the Key Parties, no later than 5:00 pm Eastern Time on Monday of each week, a rolling 13 week consolidated cash forecast (the "**13 Week Consolidated Cash Forecast**") for Monolith, in form and substance acceptable to the Key Parties. Monolith shall deliver with the 13 Week Consolidated Cash Forecast, a written report in form and substance acceptable to the Key Parties: (A) comparing actual results with forecasted results, (B) identifying for each line item in the 13 Week Consolidated Cash Forecast, any variance in excess of 10% (whether positive or negative) between the actual result for the week ending on the immediately preceding Friday compared to the forecasted result for such line item from the immediately preceding 13 Week Cash Consolidated Cash Forecast, and (C) providing a detailed explanation for the cause of any variance.

(b)     Monolith shall provide any other information that the Key Parties request relating to its business.

8.     <u>Financial Advisor</u>.  On or before November 2, 2018, Monolith shall retain a financial advisor (the "**Financial Advisor**") acceptable to the Key Parties pursuant to an engagement letter in form and substance satisfactory to the Key Parties (including, without limitation, the fees and expenses to be paid to the Financial Advisor).  For the avoidance of doubt, Monolith shall be responsible to pay all of the Financial Advisor's fees and expenses. Monolith has informed the Key Parties that it intends to retain MorrisAnderson as its Financial Advisor.  MorrisAnderson is an acceptable Financial Advisor to the Key Parties.  Among other things, the Financial Advisor shall:

(a)      assist Monolith in creating the 13 Week Consolidated Cash Forecast and accompanying written report that is to be delivered to the Key Parties pursuant to <u>Section 7</u> of this Forbearance Agreement;

(b)      assist Monolith in creating a budget for 2019, which budget shall be delivered to the Key Parties no later than November 30, 2018;

(c)      assist Monolith in developing a turnaround plan, which plan shall be delivered to the Key Parties no later than November 30, 2018;

(d)      immediately notify the Key Parties in writing of any disbursement made by Monolith that is inconsistent with the 13 Week Cash Consolidated Cash Forecast;

(e)      provide to the Key Parties on or before the fifth Business Day of every month a written report, in form and detail satisfactory to the Key Parties, summarizing the operational and financial performance of Monolith;

(f)      consider and develop various strategic initiatives and alternatives to improve Monolith's liquidity and financial and operational performance; and

(g)      have full authority over Monolith's cash and shall manage payments in accordance with the 13 Week Cash Consolidated Cash Forecast.

9.      <u>Cooperation with the Key Parties' Consultant</u>.

(a)      Monolith shall cooperate with, and provide access to the third party-contractor or consultant retained by the Key Parties or counsel to the Key Parties (the "**Key Parties' Consultant**").  Among other things, Monolith shall provide the Key Parties' Consultant with (a) access to the solar projects that are subject to the equipment leases owned by the Key Parties within five (5) business days after written request from the Key Parties or counsel to the Key Parties, to enable the Key Parties' Consultant to conduct an on-site review and inspection of each solar project, including all equipment located at each solar project (b) reasonable assistance in conducting each on-site review, (c) access to data and other information related to any of the solar projects, and (d) such other services and information as the Key Parties' Consultant may reasonably request.

(b)      Monolith acknowledges and agrees that it shall reimburse the Key Parties for all of the reasonable fees and expenses of the Key Parties' Consultant (the "**Key Parties' Consultant Fees**").  Monolith shall reimburse the Key Parties for the Key Parties' Consultant Fees within ten (10) Business Days of receiving any written demand from the Key Parties for reimbursement.  If Monolith fails to remit the Key Parties' Consultant fees to the Key Parties within the time provided in this section, Monolith hereby authorizes Key Parties to debit any one or more deposit accounts of Monolith for the Key Parties' Consultant Fees.

10.      <u>Asset Sales.</u>  Without the prior written approval of Key Parties, Monolith shall not convey, sell or otherwise dispose of any of its property or assets.

11.     Note/Loan Repayments.  Monolith shall not agree or otherwise take any action to discount or otherwise reduce the obligations or indebtedness owed to Monolith pursuant to any note, loan agreement or other financial instrument.

12.     Lease Payment.  Monolith shall timely remit to the Key Parties in immediately available funds the lease payments due in November 2018 under the Key Lease Agreements (as defined herein).

13.     Restricted Account.

(a)     On or before November 30, 2018, Monolith shall establish a Restricted Account ("Restricted Account"), on terms acceptable to the Key Parties, for remittances from power offtakers or other customers (the "**Offtakers**") under any power purchase agreement subject to the Master Lease Agreements and the First Niagara Equipment Financing Agreement, or any other lease between the Key Parties and Monolith (collectively, the "**Key Lease Agreements**"). Monolith will send remittance advices directing the Offtakers to remit all future payments due under a power purchase agreement to the Restricted Account.  All amounts deposited in the Restricted Account shall be under the sole and exclusive control of the Key Parties pursuant to a Control, Restrictive or Lock Box Agreement in form and substance satisfactory to the Key Parties.

(b)     Repayment of Collateral Sale Proceeds.  During and after the Forbearance Period, Monolith agrees that all collections and other proceeds of Collateral or the Equipment shall be deposited into the Restricted Account immediately following receipt by Monolith.

(c)     Amounts deposited in the Restricted Account shall be used to satisfy the monthly lease payments and other obligations due and owing under the Key Lease Agreements (collectively the "**Monthly KEF Lease Payments**"), with all remaining amounts held in the Restricted Account, provided, however that during the Forbearance Period after a Monthly KEF Lease Payment is paid, Monolith shall be permitted to have access to any remaining amounts in the Restricted Account solely for disbursements in accordance with the 13 Week Consolidated Cash Forecast, and all remaining funds shall remain in the Restricted Account.

14.     Notice of Default/Terminating Event.  Monolith shall promptly, and in any event within one Business Day, notify the Key Parties in writing of the existence of any event of default under any Agreement (other than the Specified Defaults) or any Terminating Event under this Forbearance Agreement of which Monolith becomes aware.

15.     Deposit Accounts.  On or before November 9, 2018, Monolith shall provide the Key Parties with a list of all deposit accounts owned by Monolith.  On or before November 16, 2018, Monolith will provide for the execution of deposit account control agreements, in form and substance satisfactory to the Key Parties, for all such deposit accounts that are not maintained with the KeyBank.  Monolith shall deposit in accounts maintained with KeyBank immediately upon receipt all cash or other funds received by Monolith, directly or indirectly, in connection with the operation of its business; *provided, however*, that cash or other funds that are required to be deposited in an account with another financial institution pursuant to a valid and enforceable agreement to which Monolith is party as of the date of this Agreement shall only be subject to

this requirement to the extent of cash or other funds in such other account that Monolith has the right to withdraw, transfer, or otherwise utilize.

16.     Payments/Deposits.  Monolith shall not (i) make any payment, incur any liability or provide other consideration to any person or entity, for the purchase, acquisition, redemption, repurchase, payment or retirement of any capital stock or other equity interest of Monolith or as a dividend, return of capital or other distribution in respect of any Monolith capital stock or other equity interest, (ii) satisfy any federal or state tax obligations of any Monolith shareholders unless otherwise agreed to in advance in writing by the Key Parties, (iii) increase the amount of total compensation (including, without limitation, wages, insurance and other fringe benefits) in effect as of November 2, 2018 of any officer, manager, or member of Monolith, or (vii) deposit any funds payable to or received by Monolith, or hereafter received by Monolith in an account (deposit, securities or otherwise) maintained at a bank or other financial institution other than KeyBank.

17.     Payments Limited to 13 Week Consolidated Cash Forecast.  Monolith shall not make any payment or distribution of any kind that is not expressly provided for in the 13 Week Consolidated Cash Forecast.

18.     Security Interest in Additional Collateral.  Not later than November 9, 2019, Monolith shall have delivered to the Key Parties evidence, in form and detail satisfactory to the Key Parties, of the proper notation of the Key Parties' first priority security interest and duly perfected lien on the titles of all vehicles owned by Monolith.

19.     Conditions Precedent to Effectiveness.

This Forbearance Agreement and the agreement of the Key Parties described herein will not be effective unless and until all of the following have occurred or been satisfied on or before the date of this Forbearance Agreement, or such later time as the Key Parties may agree, in writing, in their sole discretion (the "**Forbearance Effective Date**"):

(a)     Monolith shall have executed and delivered this Agreement;

(b)     Monolith shall have delivered to the Key Parties the 13 Week Cash Flow Forecast, which shall be in form and substance satisfactory to the Key Parties;

(c)     No default or event of default (other than the Specified Defaults) or Material Adverse Change shall have occurred; and

(d)     All representations and warranties contained in this Agreement shall be true and correct in all material respects.

20.     Representations and Warranties.

(a)     Monolith hereby acknowledges and confirms that (i) all of the Recitals set forth above are true and correct; (ii) the Agreements are in full force and effect and are enforceable in accordance with their respective terms; (iii) Monolith does not have any claims, defenses, causes

of action, counterclaims or offsets against the Key Parties or any of their respective current or former officers, employees, agents, representatives, consultants, directors, parents, subsidiaries, affiliates, members, managers, consultants or attorneys of any kind or nature whatsoever; and (iv) as of the date hereof, all liens, security interests, assignments and pledges encumbering the Collateral or the Equipment, created pursuant to and/or referred to in the Agreements, are valid and enforceable first priority liens, security interests, assignments and pledges, continue unimpaired, are in full force and effect and secure and shall continue to secure all of the obligations described in the respective instruments in which such interests were granted;

    (b)    Monolith hereby further represents and warrants that:

    (i)    After giving effect to this Forbearance Agreement, and except for those matters constituting Specified Defaults, all of the respective representations and warranties of Monolith in the Agreements are true and complete in all material respects on the date hereof with the same force and effect as if made on such date;

    (ii)    Except for the Specified Defaults, no default, violation or event of default under the Agreements, and no event which, with the passage of time or the giving of notice, or both, could constitute any such default, violation or event of default, has occurred and is continuing;

    (iii)    After giving effect to this Forbearance Agreement, no representation or warranty by Monolith contained in this Forbearance Agreement or any document, agreement or instrument to be executed or delivered herewith contains any untrue statements of material fact or omits to state a material fact necessary to make such representation or warranty not misleading in light of the circumstances under which it was made;

    (iv)    The execution, delivery and performance of this Forbearance Agreement, and any document, agreement or instrument to be executed or delivered herewith, by Monolith will not result in the violation of any mortgage, indenture, material contract, instrument, agreement, judgment, decree, order, statute, rule or regulation to which Monolith is subject or by which or any of its respective property is bound;

    (v)    This Forbearance Agreement and the documents, agreements and instruments to be executed or delivered herewith constitute the legal, valid and binding obligations of Monolith, are enforceable in accordance with their terms and have been duly authorized, executed and delivered by Monolith, except as the enforceability hereof or thereof may be limited by bankruptcy, insolvency, moratorium, and other similar laws affecting creditors' rights generally and by general principles of equity, whether considered in a proceeding at law or in equity;

    (vi)    No consents or approvals are required in connection with the execution, delivery and performance by Monolith of this Forbearance Agreement or any

10

documents, agreements or instruments to be executed or delivered herewith that have not been previously obtained;

(vii)   Monolith has the corporate power and authority to execute, deliver and carry out the terms and provisions of this Forbearance Agreement and the transactions contemplated hereby and has taken or caused to be taken all necessary corporate action to authorize the execution, delivery and performance of this Forbearance Agreement and the transactions contemplated hereby; and

(viii)   There are no actions, suits or proceedings pending or, to the knowledge of Monolith, threatened with respect to Monolith (A) that have had or could have, if adversely decided, a Material Adverse Change, or (B) that question the validity or enforceability of any of the Agreements or of any action taken by the Key Parties.

(c)   Monolith hereby expressly acknowledges and confirms that the foregoing representations and warranties are being specifically relied upon by the Key Parties as a material inducement to the Key Parties to enter into this Forbearance Agreement and, subject to and in accordance with the terms and conditions of this Agreement, to forbear from exercising the Key Parties' respective rights and remedies during the Forbearance Period, other than the rights and remedies described in this Forbearance Agreement including, without limitation, those set forth in Section 6 of this Forbearance Agreement.  The foregoing representations and warranties shall survive the execution and delivery of this Forbearance Agreement.

17.   Miscellaneous

(a)   Disgorgement.  If the Key Parties are, for any reason, compelled by a court or other tribunal of competent jurisdiction to surrender or disgorge any payment, interest or other consideration described hereunder to any person because the same is determined to be void or voidable as a preference, fraudulent conveyance, impermissible set-off or for any other reason, such indebtedness or part thereof intended to be satisfied by virtue of such payment, interest or other consideration shall be revived and continue as if such payment, interest or other consideration had not been received by the Key Parties, and Monolith shall be liable to, and shall indemnify, defend (engaging respective counsel acceptable to the Key Parties, as applicable) and hold the Key Parties harmless for, the amount of such payment or interest surrendered or disgorged.  The provisions of this Section 17 shall survive execution and delivery of this Forbearance Agreement.

(b)   No Defenses; Reliance.

(i)   Monolith hereby acknowledges and confirms that there are no existing defenses, claims, counterclaims or rights of recoupment or set-off (x) against the Key Parties in connection with the obligations and indebtedness owed to the Key Parties under the Agreements or in connection with the negotiation, preparation, execution, performance or any other matters relating to the Agreements.

(ii)   Monolith further acknowledges and agrees that, notwithstanding anything to the contrary set forth in this Agreement, the Key Parties do not have, nor shall

11

have, an obligation to: (a) amend any one or more of the Agreements or otherwise further restructure the obligations described therein; (b) make any further loans, advances or extension of credit to or for the benefit of Monolith, (c) extend the Forbearance Period; (d) refrain from terminating the Forbearance Period upon the occurrence of any Terminating Event or (e) enter into any other instruments, agreements or documents regarding any of the same with Monolith, and that neither the Key Parties nor and any of their respective representatives have made any agreements with, or commitments or representations or warranties to, Monolith (either in writing or orally), other than as expressly stated in this Forbearance Agreement.

(iii)    Monolith expressly understands and further agrees that the Key Parties are relying on all terms, covenants, conditions, warranties and representations set forth in this Forbearance Agreement as a material inducement to the Key Parties to enter into this Agreement.

(c)    <u>Cumulative Remedies; Non-Waiver</u>.

(i)    Except as otherwise specifically provided in this Forbearance Agreement, the rights, powers, authorities, remedies, interests and benefits conferred upon the Key Parties by and as provided in this Forbearance Agreement are intended to supplement, and be in addition to (and shall not in any way replace, supersede, amend, limit or restrict), the rights, powers, authorities, remedies, interests, and benefits conferred by the Agreements.

(ii)    Except as otherwise specifically provided in this Forbearance Agreement, each Key Party's execution of or performance under this Agreement does not (and it shall not be construed so as to) waive, relinquish, restrict or limit in any way any of the respective rights, remedies, claims or causes of action that each Key Party has or may have under or with respect to the Agreements or applicable law (all of which are expressly reserved) regardless of whether any of the foregoing relate to or arise out of acts, omissions, events or transactions occurring before or after the date hereof.   Except as otherwise specifically provided in this Forbearance Agreement, each Key Party hereby expressly reserves all rights to take any and all actions, and exercise any and all remedies, authorized under the Agreements or at law or in equity as a result of or with respect to the occurrence and continuance of any defaults, violations or events of default that have or may have heretofore occurred thereunder and any defaults, violations or events of default that may hereafter occur or exist thereunder.   Nothing contained herein, and no action taken by either Key Party pursuant hereto or as provided herein, shall be deemed to be a waiver of any of such defaults, violations or events of default.

(iii)    No delay on the part of either Key Party in the exercise of any power, right or remedy under this Forbearance Agreement or the Agreements at any time shall operate as a waiver thereof, and no single or partial exercise by either Key Party

of any power, right or remedy shall preclude other or further exercise thereof or the exercise of any other power, right or remedy.

(d)   Release and Acknowledgement.  In consideration of the accommodations being made available by the Key Parties to or for the benefit of Monolith under this Forbearance Agreement, including, without limitation, the forbearance on the part of the Key Parties:

(i)   Monolith, for itself and its present, former and future agents, employees, representatives, officers, directors, shareholders, parents, affiliates, members, managers, subsidiaries, successors and assigns, does hereby unconditionally remise, release, waive and discharge each Key Party and their present, former and future shareholders, parents, subsidiaries, affiliates, predecessors in interest, members, managers, officers, directors, servants, agents, employees, financial advisors, consultants, representatives, attorneys and their respective successors and assigns (collectively, "**Released Parties**", and individually, a "**Released Party**") of and from any and all claims, counterclaims, demands, actions and causes of action of any nature whatsoever, including any right of set-off, whether at law or in equity, including, without limitation, any of the foregoing arising out of or relating to any of the Agreements, any acts or omissions of any Released Party in connection therewith (including, without limitation, extensions of credit and other financial accommodations made or not made to Monolith), the transactions described in this Forbearance Agreement, the return of any checks, or any proposed financing arrangements to or for the benefit of Monolith, or any entities owned by or under the control of Monolith, which it now has or hereafter can or may have for or by reason of any cause, matter or thing whatsoever, against any of the Released Parties, from the beginning of the world to the date hereof;

(e)   Waivers.  In consideration of the accommodations being made available by the Key Parties to or for the benefit of Monolith under this Forbearance Agreement, including, without limitation, the forbearance on the part of the Key Parties:

(i)   Monolith hereby waives the benefit of any theory or statute requiring the marshaling of assets or other similar legal doctrine and agrees that the Key Parties may exercise their respective rights against the Collateral or the Equipment and apply the proceeds thereof to any of the obligations and indebtedness under the Agreements in accordance with the terms thereof, as aforesaid.

(ii)   Monolith hereby agrees that, to the extent Monolith would otherwise have a right of notification of sale under Section 9-611 of the Uniform Commercial Code as enacted in any applicable state, ten (10) days' prior written notice of any sale of the Collateral or the Equipment shall be sufficient to satisfy any such notice requirement under Sections 9-611 and 9-612 of the Uniform Commercial Code.  Monolith hereby renounces any further right of notification of sale that Monolith may have under Section 9-611 of the Uniform Commercial Code. Monolith acknowledges that this renunciation is intended to be a renunciation after default, as described in Section 9-624 of the Uniform Commercial Code.

13

(f)     Relationship.  Monolith agrees that the relationship between the Key Parties, on one hand, and Monolith, on the other hand, is that of creditor and debtor and not that of partners or joint ventures.  This Forbearance Agreement does not constitute a partnership agreement or any other association between either Key Party and Monolith.  Monolith acknowledges that the Key Parties have acted at all times only as creditors to Monolith, in each case, within the normal and usual scope of the activities normally undertaken by a creditor and in no event has either Key Party attempted to exercise any control over Monolith, or its respective businesses or affairs.  Monolith further acknowledges that the Key Parties have not taken or failed to take any action under or in connection with their respective rights under the Agreements that in any way or to any extent have interfered with or adversely affect Monolith's ownership of the Collateral or the Equipment.

(g)     Notices.  All notices, requests or other communications required or desired to be given hereunder shall be in writing and, if to Monolith, sent by facsimile or overnight or certified mail, return receipt requested, postage prepaid, addressed to it at the addresses specified on the signature pages of this Forbearance Agreement, and, if to the Key Parties, sent by facsimile or overnight or certified mail, return receipt requested, postage prepaid, addressed to it at the respective addresses specified on the signature pages of this Forbearance Agreement, or as to each party, at such other address as shall be designated by such party in written notice to the other parties.  All notices, statements, requests, demands and other communications provided for hereunder shall be deemed to be given or made when delivered or three (3) Business Days after being deposited in the mails with postage prepaid by overnight or certified mail, addressed as aforesaid, or sent by facsimile with telephonic confirmation of receipt.

(h)     No Third Party Beneficiaries.  This Agreement is made and entered into for the sole protection and benefit of Monolith and the Key Parties, and no other person or entity shall have any right of action hereon, right to claim any right or benefit from the terms contained herein, or be deemed a third party beneficiary hereunder.

(i)     Severability.  Whenever possible, each provision of this Forbearance Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Forbearance Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement, it being the parties' intention that each and every provision of this Forbearance Agreement be enforced to the fullest extent permitted by applicable law.

(j)     Further Assurances.  At the Key Parties' reasonable request, Monolith shall promptly execute any other document to evidence or further the intent of Monolith or the Key Parties.

(k)     Counterparts.  This Forbearance Agreement may be executed by the Parties in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.  The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by other parties to this Forbearance

Agreement attached thereto.  Delivery of an executed counterpart of the signature page by telecopier or electronic mail shall be as effective as delivery of an original manually executed counterpart.

(l)     Descriptive Headings; Construction.    The headings in this Forbearance Agreement are intended for convenient references only and shall not in any way limit, amplify or be used in interpreting the terms of this Forbearance Agreement.  The masculine, feminine or neutral gender in the singular or plural shall be deemed to include the others wherever the context of this Agreement so requires.  This Forbearance Agreement shall not be construed against any party hereto as the drafters of this Forbearance Agreement.

(m)     Governing Law; Submission to Jurisdiction.  The provisions of this Forbearance Agreement and the respective rights and duties of Parties hereunder shall be governed by and construed in accordance with New York law, without regard to principles of conflicts of laws that would result in the application of the law of any other state.  Monolith hereby irrevocably submits to the non-exclusive jurisdiction of any New York state court sitting in New York County, or the United States District Court for the Southern District of New York over any action or proceeding arising out of or relating to this Forbearance Agreement, other Agreement or any related writing, and Monolith hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New York state or federal court. Monolith hereby irrevocably waives, to the fullest extent permitted by law, any objection it may now or hereafter have to the laying of venue in any such action or proceeding in any such court as well as any right it may now or hereafter have to remove such action or proceeding, once commenced, to another court on the grounds of FORUM NON CONVENIENS or otherwise. Monolith agrees that a final, nonappealable judgment in any such action or proceeding in any state or federal court in the State of New York shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(n)     Time of Essence.    Time is of the essence with respect to this Forbearance Agreement.

(o)     Successors and Assigns.  This Forbearance Agreement shall be binding upon, and shall inure to the benefit of the Key Parties and Monolith, and their respective successors and assigns, except that Monolith may not assign its rights under this Forbearance Agreement or the other Agreements without the prior written consent of the Key Parties.

(p)     Key Parties' Actions.  The authority herein conferred upon the Key Parties, and any action taken by the Key Parties hereunder or under the other Agreements or under the Hancock Whitney Lease Documents, or any document, agreement or instrument referred to herein will be taken by the Key Parties, for the protection of the Key Parties only (and Hancock Whitney, if KeyBank takes any action in its capacity as servicer under the Hancock Whitney Lease Documents), and the Key Parties shall not assume nor shall be deemed to have assumed any responsibility to Monolith or to any other persons with respect to any such action authorized or taken by the Key Parties except as required by applicable law.  No person shall be entitled to rely upon, or claim to have relied upon, any action taken or failed to have been taken by the Key Parties or their respective consultants, agents, employees or representatives.

(q)     <u>Amendments</u>.  This Forbearance Agreement may be amended, supplemented or otherwise modified only by a written agreement signed by Monolith and the Key Parties and none of the provisions hereof may be waived without the written consent of the Key Parties.

(r)     <u>Voluntary Agreement.</u>   Monolith represents and warrants that Monolith is represented by legal counsel of its choice, that it has consulted with such counsel regarding this Forbearance Agreement, that it is fully aware of the terms and provisions contained herein and of their effect and that it has voluntarily and without coercion or duress of any kind entered into this Forbearance Agreement.

(s)     <u>Indemnification</u>.  From and after the date hereof, Monolith shall indemnify, defend and hold harmless the Key Parties, and their respective present, former and future shareholders, subsidiaries, predecessors in interest, members, managers, affiliates, parents, directors, servants, agents, employees, representatives, officers, consultants, attorneys and their respective heirs, personal representatives, successors and assigns (severally and collectively, the "**Indemnified Parties**") against and from any and all liability for, and against and from all losses or damages Indemnified Parties may suffer as a result of, any claim, demand, cost, expense, or judgment of any type, kind, character or nature (including reasonable attorneys' fees and court costs), which Indemnified Parties shall incur or suffer as a result of (a) any act or omission of Monolith or any of its agents or representatives in connection with the transactions described in this Forbearance Agreement, the other Agreements and any of the instruments, agreements and documents referred to in this Agreement, (b) the inaccuracy of any of the representations or warranties of Monolith, or (c) the breach of any of the respective covenants set forth herein of Monolith.   This indemnification shall survive execution and delivery of this Forbearance Agreement.

(t)     <u>Integration</u>.  This Forbearance Agreement and the instruments, agreements and documents referred to in this Forbearance Agreement shall be deemed incorporated into and made a part of the Key Lease Agreements and the Loan Agreement.   This Forbearance Agreement shall be deemed to be a Loan Document as that term is defined in the Loan Agreement and the other Agreements.  All such instruments, agreements and documents, and this Forbearance Agreement, shall be construed as integrated and complementary of each other, and, except as otherwise specifically provided in this Forbearance Agreement, as augmenting and not restricting the Key Parties' rights, remedies, benefits and security.

(u)     <u>Other Terms</u>.  All other terms of the Agreements or any of the documents, agreements or instruments referred to herein, not expressly modified by this Forbearance Agreement shall remain in full force and effect between the parties.

(v)     <u>No Waiver or Impairment</u>.  Nothing in this Forbearance Agreement or any related documents shall constitute a waiver of any existing or future default or event of default or, to the extent not expressly provided herein, any rights and/or remedies of the Key Parties.  Monolith, in consideration of the Key Parties entering into this Forbearance Agreement, hereby irrevocably and specifically waives and releases any and all defenses and/or grounds of avoidance Monolith may have or may believe it has with respect to (x) the Key Parties' security interests in the Collateral or the Equipment and the Key Parties' perfection thereof.

(w)      Bankruptcy Filing.  If Monolith (each individual entity included in the definition of Monolith, a "**Bankruptcy Party**") files or has filed against it a petition in bankruptcy or seeks relief or protection under any of the sections or chapters of the United States Bankruptcy Code (the "**Bankruptcy Code**"), the Key Parties thereupon will have the right (and no Bankruptcy Party will interpose any objection thereto and each hereby waives its rights with respect thereto) to request and receive any one or more of the following: (i) immediate relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or any stay or other restriction on the Key Parties' rights under this Forbearance Agreement, under the documents, instruments or agreements referenced in this Forbearance Agreement, or under any of the court's equitable powers (and, in this regard, each Bankruptcy Party hereby admits that it is unable to adequately protect the interests of the Key Parties), (ii) a termination of the exclusive period under Section 1121 of the Bankruptcy Code, and (iii) a dismissal of the bankruptcy case or proceeding. Nothing in this Forbearance Agreement shall be deemed in any way to limit or restrict any of the Key Parties' rights to seek in a bankruptcy court or any other court of competent jurisdiction any relief the Key Parties may deem appropriate in the event that a voluntary or involuntary petition under any title of the Bankruptcy Code is filed by or against a Bankruptcy Party.  The assets and properties which each Bankruptcy Party have encumbered and which are subject to the security interests and liens of the Key Parties include all cash, cash equivalents, or cash collateral, as the term "cash collateral" is defined in Bankruptcy Code Section 363, which accrues from such properties or is owned by each Bankruptcy Party, and upon the filing of any bankruptcy case naming a Bankruptcy Party or any successor as debtor, such Bankruptcy Party, or such successor debtor, as the case may be, has and shall have no right to use any such cash, cash equivalents or cash collateral, and no method of providing adequate protection for any such use to the Key Parties exists.  Each Bankruptcy Party further acknowledges and agrees that the representations, acknowledgments, agreements and warranties in this Forbearance Agreement have been made by the Bankruptcy Parties as a specifically bargained for, material inducement to the Key Parties to enter into this Forbearance Agreement, that the Key Parties are relying on such representations and warranties, have changed and will continue to change their position in reliance thereon and that the Key Parties would not have entered into this Forbearance Agreement without such representations, acknowledgments, agreements and warranties.  Each Bankruptcy Party has consulted with counsel and relied upon counsel's advice in connection with the negotiation and execution of this Forbearance Agreement.

(x)      Other Defaults or Events of Default.  The acknowledgment of the Specified Defaults does not imply that other defaults or events of default do not exist as of the date hereof.

(y)      Waiver of Jury Trial.  MONOLITH WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS FORBEARANCE AGREEMENT, OR THE OTHER AGREEMENTS, OR RELATING TO OR ARISING FROM THE RELATIONSHIP WHICH IS THE SUBJECT OF THIS FORBEARANCE AGREEMENT, OR THE OTHER AGREEMENTS AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

IN WITNESS WHEREOF, the undersigned have executed this Forbearance Agreement to be effective as of the date first set forth above.

**MONOLITH SOLAR ASSOCIATES LLC**

By: _Mark Fobare_
    144A7C4133EE4AE...

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

    Albany, NY 12211

**SAE SUN AND EARTH ENERGY INCORPORATED**

By: _Mark Fobare_
    144A7C4133EE4AE...

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

    Albany, NY 12211

**SOLAR MANAGEMENT GROUP, LLC**

By: _Mark Fobare_
    144A7C4133EE4AE...

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

    Albany, NY 12211

**SCHENECTADY HETCHELTOWN ROAD SOLAR 1 LLC**

By: _Mark Fobare_
    144A7C4133EE4AE...

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

    Albany, NY 12211

**SCHENECTADY HETCHELTOWN ROAD SOLAR 2 LLC**

By: _Mark Fobare_
    144A7C4133EE4AE...

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

    Albany, NY 12211

**RENSSELAER COUNTY SOLAR 1 LLC**

By: _Mark Fobare_
    144A7C4133EE4AE...

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

    Albany, NY 12211

**SCHUYLERVILLE CSD SOLAR 1 LLC**

By: _____

Name: _____
Mark Fobare

Title: _____
Manager

Address: _____
16 corporate woods blvd

_____
Albany, NY 12211

**JOHNSONVILLE ROUTE 7 SOLAR 1 LLC**

By: _____

Name: _____
Mark Fobare

Title: _____
Manager

Address: _____
16 corporate woods blvd

_____
Albany, NY 12211

**RENSSELAER COUNTY SOLAR 2 LLC**

By: _____

Name: _____
Mark Fobare

Title: _____
Manager

Address: _____
16 corporate woods blvd

_____
Albany, NY 12211

**CRARYVILLE TWO TOWN ROAD SOLAR 1 LLC**

By: _____

Name: _____
Mark Fobare

Title: _____
Manager

Address: _____
16 corporate woods blvd

_____
Albany, NY 12211

**SEWARD PINE HILL ROAD SOLAR 2 LLC**

By: _____

Name: _____
Mark Fobare

Title: _____
Manager

Address: _____
16 Corporate woods blvd

_____
Albany, NY 12211

**MARION WARNER ROAD SOLAR 1 LLC**

By: _____

Name: _____
Mark Fobare

Title: _____
Manager

Address: _____
16 Corporate woods blvd

_____
Albany, NY 12211

19

**SCOTIA-GLENVILLE CSD SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**SEWARD PINE HILL ROAD SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**CRARYVILLE TWO TOWN ROAD SOLAR 2 LLC:**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**SCHENECTADY ICE RINK SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**CITY OF ALBANY SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**MAYFIELD CSD SOLAR 1 LLC**

By: _Mark Fobare_

Name: Mark Fobare

Title: Manager

Address: 16 corporate woods blvd

Albany, NY 12211

**KEYBANK NATIONAL ASSOCIATION**

By: _Leslie A. Jones_

Name: _Leslie A. Jones_

Title: _Senior Vice President_

Address: _66 South Pearl St._
         _Albany, NY 12203_

**KEY EQUIPMENT FINANCE, A DIVISION
OF KEYBANK NATIONAL ASSOCIATION**

By: _____

Name: _____

Title: _____

Address: _____

_____

KEYBANK NATIONAL ASSOCIATION

By: _____

Name: _____

Title: _____

Address: _____

_____


KEY EQUIPMENT FINANCE, A DIVISION
OF KEYBANK NATIONAL ASSOCIATION

By: _*(signature)*_

Name: _Glen Bleeker_

Title: _VP-Asset Recovery Group_

Address: _1000 South McCaslin Blvd_

_Superior, CO  80027_

# **EXHIBIT 77**

**(December 21, 2018 Reaffirmation Agreement)**

REAFFIRMATION OF
AGREEMENTS

In order to induce KeyBank National Association ("**KeyBank**") and Key Equipment Finance, a division of KeyBank ("**KEF**" and together with KeyBank the "**Key Parties**" and each individually a "**Key Party**") to execute and deliver that certain First Amendment to Forbearance Agreement of even date herewith (the "**Amendment**"), among the Key Parties, Monolith Solar Associates LLC ("**Monolith Solar**"), Solar Management Group, LLC ("**Solar Management**"), SAE Sun and Earth Energy Incorporated ("**SAE**"), Schenectady Hetcheltown Road Solar 1 LLC ("**Schenectady Hetcheltown 1**"),  Schenectady Hetcheltown Road Solar 2 LLC ("**Schenectady Hetcheltown 2**"), Schenectady Ice Rink Solar 1 LLC ("**Ice Rink Solar**"), Caryville Two Town Road Solar 1 LLC ("**Craryville Solar 1**"), Caryville Two Town Road Solar 2 LLC ("**Craryville Solar 2**"), Marion Warner Road Solar 1 LLC ("**Marion Warner Solar**"), City of Albany Solar 1 LLC ("**Albany Solar**"), Scotia Glenville CSD Solar 1 LLC ("**Scotia Solar**"), Mayfield CSD Solar 1 LLC ("**Mayfield Solar**")  Rensselaer County Solar 1 LLC ("**Rensselaer County 1**"), Rensselaer County Solar 2 LLC ("**Rensselaer County 2**"), Seward Pine Hill Road Solar 1 LLC ("**Seward Pine 1**"), Seward Pine Hill Road Solar 2 LLC ("**Seward Pine 2**"), Schuylerville CSD Solar 1 LLC ("**Schuylerville 1**"), and Johnsonville Route 7 Solar 1 LLC ("**Johnsonville Route 7**" and together with Monolith Solar, Solar Management, SAE, Schenectady Hetcheltown 1, Schenectady Hetcheltown 2, Ice Rink Solar, Craryville Solar 1, Craryville Solar 2, Marion Warner Solar, Albany Solar, Scotia Solar, Mayfield Solar, Rensselaer County 1, Rensselaer County 2, Seward Pine 1, and Schuylerville 1, collectively, "**Monolith**"), each of the undersigned hereby consents to and acknowledges the terms of the Amendment and the Forbearance Agreement (as defined in the Amendment), as amended thereby, and reaffirms the undersigned's obligations (the "**Reaffirmation**"), as applicable, under each Commercial Guaranty to which it is a party that was delivered to KeyBank, and any other Agreements (as defined in the Amendment) to which the undersigned is a party (including, without limitation, any confession of judgment or cognovit provision pursuant thereto), as any of them may from time to time be amended, restated or otherwise modified (collectively, the "**Key Documents**" and each individually, a "**Key Document**"). A true and correct copy of the Amendment is attached hereto as Exhibit A.  Except as otherwise defined herein, each capitalized term used herein shall have the meaning given to such term in the Amendment.

Each of the undersigned hereby agrees that following the execution and delivery of the Amendment (i) each Key Document shall remain in full force and effect, and (ii) all of the undersigned's obligations under the Key Documents shall remain in full force and effect.

Each of the undersigned hereby represents and warrants to the Key Parties, and agrees with the Key Parties, that it has no claim or offset against, or defense or counterclaim to, any obligation or liability under the Key Documents, and the undersigned on behalf of itself and any party claiming through it, hereby discharges and releases, unconditionally, absolutely and forever, the Key Parties and all of their parents, subsidiaries and affiliates, and their respective past, present and future officers, directors, managers, members, partners, agents, attorneys, consultants, employees, representatives, successors and assigns, of and liabilities, judgments, rights, claims, cross claims, counterclaims, demands, suits, matters, obligations, damages, debts, losses, costs,

defenses, actions and causes of action of every kind and description, arising under common law, rule, regulation or statute, whether arising under local, state, federal or foreign law, whether presently known or unknown, based upon, relating to or arising out of any act, omission, event or transaction whatsoever with the Key Parties, the Amendment, the Forbearance Agreement, any of the Key Documents, or otherwise, such discharge and release being with full knowledge and understanding of the circumstances and effect thereof and after having consulted legal counsel with respect thereto.

Each of the undersigned further states that the financial accommodations granted to Monolith by the Key Parties, as evidenced by the Amendment and the Forbearance Agreement, are good and valuable consideration to the direct pecuniary benefit of the undersigned.

This Reaffirmation shall be binding upon the undersigned and each of the undersigned's respective successors and assigns and shall inure to the benefit of the Key Parties and their successors and assigns. The successors and assigns of such parties shall include, without limitation, their respective conservators, receivers, trustees, debtors in possession or other estate representatives under any insolvency laws.

Each of the undersigned hereby agrees from time to time, as and when requested by the Key Parties, to execute and deliver or cause to be executed and delivered, all such documents, instruments and agreements and to take, or cause to be taken, such further or other action as the Key Parties may reasonably deem necessary in order to carry out the intent and purposes of this Reaffirmation and the Key Documents.

THIS REAFFIRMATION SHALL BE GOVERNED BY, CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF THAT WOULD REQUIRE THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION, EXCEPT AS REQUIRED BY MANDATORY PROVISIONS OF LAW AND EXCEPT TO THE EXTENT THAT THE VALIDITY AND PERFECTION OR THE PERFECTION AND THE EFFECT OF PERFECTION OR NON-PERFECTION OF THE SECURITY INTEREST REAFFIRMED HEREBY, OR REMEDIES HEREUNDER, IN RESPECT OF ANY PARTICULAR COLLATERAL ARE GOVERNED BY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF NEW YORK.

EACH OF THE UNDERSIGNED HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS REAFFIRMATION, OR UNDER ANY AMENDMENT, WAIVER, CONSENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION HEREWITH, AND AGREES THAT ANY SUCH ACTION, PROCEEDING OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. EACH OF THE UNDERSIGNED CERTIFIES THAT NO OFFICER, REPRESENTATIVE, AGENT OR ATTORNEY OF THE KEY PARTIES HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE KEY PARTIES WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS. EACH OF THE

UNDERSIGNED HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE AGENT ENTERING INTO THIS REAFFIRMATION.

Any provision of this Reaffirmation which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

This Reaffirmation, together with the existing Key Documents, reflects the entire understanding of the parties with respect to the transactions contemplated hereby and shall not be contradicted or qualified by any other agreement, oral or written, before the date hereof.

This Reaffirmation of Agreements is dated as of the date of the Amendment.


STEVE ERBY                                                  MARK FOBARE

_____            _____

Smithville Tarbell Road Solar 1 LLC                  Solar Energy Properties LLC
By:  Monolith Solar Associates LLC, managing member

        By: _____            By: _____
        Name: _____            Name: _____
        Title: _____           Title: _____

Load Zone A LLC                                           Load Zone B and C LLC
By:  Solar Energy Properties LLC, member         By:  Solar Energy Properties LLC, member

        By: _____            By: _____
        Name: _____            Name: _____
        Title: _____           Title: _____

Load Zone D and E LLC                                   Load Zone F LLC
By:  Solar Energy Properties LLC, member         By:  Solar Energy Properties LLC, member

        By: _____            By: _____
        Name: _____            Name: _____
        Title: _____           Title: _____

UNDERSIGNED HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE AGENT ENTERING INTO THIS REAFFIRMATION.

Any provision of this Reaffirmation which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

This Reaffirmation, together with the existing Key Documents, reflects the entire understanding of the parties with respect to the transactions contemplated hereby and shall not be contradicted or qualified by any other agreement, oral or written, before the date hereof.

This Reaffirmation of Agreements is dated as of the date of the Amendment.

STEVE ERBY

_____

MARK FOBARE

Smithville Tarbell Road Solar 1 LLC
By:  Monolith Solar Associates LLC, managing member

By: _____
Name:  Mark Fobare
Title: Manager

Solar Energy Properties LLC

By: _____
Name:  Mark Fobare
Title: Manager

Load Zone A LLC
By:  Solar Energy Properties LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Load Zone B and C LLC
By:  Solar Energy Properties LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Load Zone D and E LLC
By:  Solar Energy Properties LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Load Zone F LLC
By:  Solar Energy Properties LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Route 7 Solar Farm 1 LLC
By:  Solar Energy Properties LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Albany CSD Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Amsterdam Reservoir Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

City of Albany Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

City of Albany Solar 2 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

City of Troy Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Johnsonville Route 7 Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Marion Warner Road Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Mayfield CSD Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Rensselaer County Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Russell Sage Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Salem County Route 153 Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Sand Lake Eastern Union Turnpike Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Schenectady Hetcheltown Road Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Schenectady Ice Rink Solar 1 LLC
By: Monolith Solar Associates LLC, member

By: _____
Name: Mark Fobare
Title: Manager

Scotia Glenville CSD Solar 1 LLC
By: Monolith Solar Associates LLC, member

By: _____
Name: Mark Fobare
Title: Manager

Solar Management Group 2013 LLC

By: _____
Name: Mark Fobare
Title: Manager

Load Zone G LLC
By: Solar Energy Properties LLC, member

By: _____
Name: Mark Fobare
Title: Manager

Manheim State Route 167 Solar 1 LLC
By: Monolith Solar Associates LLC, member

By: _____
Name: Mark Fobare
Title: Manager

MSAP 4 LLC
By: Monolith Solar Associates LLC, member

By: _____
Name: Mark Fobare
Title: Manager

Schuylerville CSD Solar 1 LLC
By: Monolith Solar Associates LLC, member

By: _____
Name: Mark Fobare
Title: Manager

Seward Pine Hill Road Solar 1 LLC
By: Monolith Solar Associates LLC, member

By: _____
Name: Mark Fobare
Title: Manager

Solar Vista LLC

By: _____
Name: Mark Fobare
Title: Manager

Vista Management Group LLC
By: Solar Energy Properties LLC, member

By: _____
Name: Mark Fobare
Title: Manager

MSAP 3 LLC
By: Monolith Solar Associates LLC, member

By: _____
Name: Mark Fobare
Title: Manager

MSAP 5 LLC
By: Monolith Solar Associates LLC, member

By: _____
Name: Mark Fobare
Title: Manager

MSAP 6 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

MSAP 7 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

MSAP 8 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

MSAP 9 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

MSAP 10 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

MSAP 11 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

MSAP 12 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

MSAP 13 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Granville CSD Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

Cordell Road Solar 1 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

MSAP 14 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

MSAP 15 LLC
By:  Monolith Solar Associates LLC, member

By: _____
Name:  Mark Fobare
Title: Manager

## EXHIBIT A

(First Amendment to Forbearance Agreement)

# **EXHIBIT 78**

**(Notice of Terminating Events)**



66 South Pearl Street, Floor 7
Albany NY 12207

January 29, 2019

**VIA FEDEX AND EMAIL**

Monolith Solar Associates LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

SAE Sun and Earth Energy Incorporated
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Solar Management Group 2013, LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Schenectady Hetcheltown Road Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Schenectady Hetcheltown Road Solar 2 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Schenectady Ice Rink Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Craryville Two Town Road Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Craryville Two Town Road Solar 2 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Marion Warner Road Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

City of Albany Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Scotia Glenville CSD Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Mayfield CSD Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Rensselaer County Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Rensselaer County Solar 2 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Seward Pine Hill Road Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Seward Pine Hill Road Solar 2 LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Schuylerville CSD Solar I LLC
444 Washington Street
Rensselear, NY 12144
Attn:  Steve Erby, Mark Fobare and Chris Stroud

Johnsonville Route 7 Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn: Steve Erby, Mark Fobare and Chris Stroud

Cordell Road Solar 1 LLC
444 Washington Street
Rensselear, NY 12144
Attn: Steve Erby, Mark Fobare and Chris Stroud

RE:    Forbearance Agreement, by and among Monolith Solar Associates LLC ("**Monolith Solar**"), Solar Management Group, LLC ("**Solar Management**"), SAE Sun and Earth Energy Incorporated ("**SAE**"), Schenectady Hetcheltown Road Solar 1 LLC ("**Schenectady Hetcheltown 1**"), Schenectady Hetcheltown Road Solar 2 LLC ("**Schenectady Hetcheltown 2**"), Schenectady Ice Rink Solar 1 LLC ("**Ice Rink Solar**"), Craryville Two Town Road Solar 1 LLC ("**Craryville Solar 1**"), Craryville Two Town Road Solar 2 LLC ("**Craryville Solar 2**"), Marion Warner Road Solar 1 LLC ("**Marion Warner Solar**"), City of Albany Solar 1 LLC ("**Albany Solar**"), Scotia Glenville CSD Solar 1 LLC ("**Scotia Solar**"), Mayfield CSD Solar 1 LLC ("**Mayfield Solar**") Rensselaer County Solar 1 LLC ("**Rensselaer County 1**"), Rensselaer County Solar 2 LLC ("**Rensselaer County 2**"), Seward Pine Hill Road Solar 1 LLC ("**Seward Pine 1**"), Seward Pine Hill Road Solar 2 LLC ("**Seward Pine 2**"), Schuylerville CSD 1 LLC ("**Schuylerville 1**"), and Johnsonville Route 7 Solar 1 LLC ("**Johnsonville Route 7**" and together with Monolith Solar, Solar Management, SAE, Schenectady Hetcheltown 1, Schenectady Hetcheltown 2, Ice Rink Solar, Craryville Solar 1, Craryville Solar 2, Marion Warner Solar, Albany Solar, Scotia Solar, Mayfield Solar, Rensselaer County 1, Rensselaer County 2, Seward Pine 1, and Schuylerville 1, collectively, the "**Monolith Parties**" and each a "**Monolith Party**") and KeyBank National Association ("**KeyBank**") and Key Equipment Finance, a division of KeyBank ("**KEF**" and together with KeyBank, collectively, the "**Key Parties**" and each individually a "**Key Party**") entered into as of November 9, 2018 (as amended, the "**Forbearance Agreement**"). The aforementioned parties are hereinafter referred to collectively as "**Parties**" and each individually a "**Party**")

Ladies and Gentlemen:

Reference is hereby made to the Forbearance Agreement. Further reference is made to that certain (i) Loan Agreement, dated as of March 8, 2018, by and among Monolith Solar, Solar Management, SAE, and KeyBank (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Loan Agreement**"); (ii) Promissory Note, in the face amount of $5,000,000, dated as of March 8, 2018, from Monolith Solar, Solar Management, and SAE payable to the order of KeyBank (the "**Revolving Note**"); (iii) Promissory Note, in the face amount of $850,000, dated as of March 30, 2018, from Monolith Solar, Solar Management, and SAE payable to the order of KeyBank (the "**$850K Term Note**"); (iv) Promissory Note, in

the face amount of $488,000, dated as of June 30, 2015, from Monolith Solar, Solar Management, and SAE, payable to the order of KeyBank (the "**$488K Term Note**" and together with the Revolving Note, and the $850K Term Note, collectively, the "**Notes**"); (v) Master Equipment Lease Agreement, dated as of July 24, 2015, by and between KEF and Schenectady Hetcheltown 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 24, 2015 Lease Agreement**"); (vi) Master Equipment Lease Agreement, dated as of February 15, 2016, by and between KEF and Johnsonville Route 7 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 15, 2016 Lease Agreement**"); (vii) Master Equipment Lease Agreement, dated as of March 1, 2016, by and between KEF and Craryville Solar 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 1, 2016 Lease Agreement**"); (viii) Master Equipment Lease Agreement, dated as of November 16, 2016, by and between KEF and Ice Rink Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**November 16, 2016 Lease Agreement**"); (ix) Master Equipment Lease Agreement, dated as of November 20, 2016, by and between KEF and Marion Warner Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**November 20, 2016 Lease Agreement**"); (x) Master Equipment Lease Agreement, dated as of February 16, 2017, by and between KEF and Seward Pine 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 16, 2017 Lease Agreement**"); (xi) Master Equipment Lease Agreement, dated as of February 17, 2017, by and between KEF and Craryville Solar 2 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 17, 2017 Lease Agreement**"); (xii) Master Equipment Lease Agreement, dated as of March 16, 2017, by and between KEF and Albany CSD Solar 1 LLC (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Albany CSD Lease Agreement**"); (xiii) Master Equipment Lease Agreement, dated as of March 16, 2017, by and between KEF and Scotia Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Scotia Lease Agreement**"); (xiv) Master Equipment Lease Agreement, dated as of April 14, 2017, by and between KEF and Mayfield Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**April 14, 2017 Lease Agreement**"); (xv) Master Equipment Lease Agreement, dated as of May 3, 2017, by and between KEF and Albany Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**May 3, 2017 Lease Agreement**"); (xvi) Master Equipment Lease Agreement, dated as of June 27, 2017, by and between KEF and Schuylerville 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**June 27, 2017 Lease Agreement**"); (xvii) Master Equipment Lease Agreement, dated as of July 17, 2017, by and between KEF and Rensselaer County 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 17, 2017 Lease Agreement**"); (xviii) Master Equipment Lease Agreement, dated as of August 4, 2017, by and between KEF and Cordell Road Solar 1 LLC (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**August 4, 2017 Lease Agreement**"); (xix) Master Equipment Lease Agreement, dated as of September 14, 2017, by and between KEF and Granville CSD Solar 1 LLC (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**September 14, 2017 Lease Agreement**" and together with the July 24, 2015 Lease Agreement, the February 15, 2016 Lease

Agreement, the March 1, 2016 Lease Agreement, the November 16, 2016 Lease Agreement, the November 20, 2016 Lease Agreement, the February 16, 2017 Lease Agreement, the February 17, 2017 Lease Agreement, the March 16, 2017 Albany CSD Lease Agreement, the March 16, 2017 Scotia Lease Agreement, the April 14, 2017 Lease Agreement, the May 3, 2017 Lease Agreement, the June 27, 2017 Lease Agreement, the July 17, 2017 Lease Agreement, and the August 4, 2017 Lease Agreement, collectively, the "**Master Lease Agreements**"); and (xx) Equipment Financing Agreement No. 18804 by and between First Niagara Leasing, Inc. and SAE (the "**First Niagara Equipment Financing Agreement**" and together with the Loan Agreement, the Notes, the Master Lease Agreements and any other loan agreement or lease between KeyBank and/or KEF and any one or more Monolith Party, and all documents and other agreements related to any of the foregoing (including the Loan Documents as defined in the Loan Agreement and the guaranties executed in connection with the Notes, the Master Lease Agreements, and the First Niagara Equipment Financing Agreement), collectively, the "**Agreements**" and each individually an "**Agreement**"). Each Agreement was entered into by a Monolith Party, and KeyBank, KEF, or First Niagara Leasing, Inc., as applicable. All capitalized terms used in this letter shall have the respective meanings given such terms in the Forbearance Agreement or the Agreements, as appropriate.

Pursuant to Section 10 of the Forbearance Agreement, on or before December 28, 2018 Monolith Solar was required to deliver to the Key Parties a fully-executed, binding and enforceable agreement, in form and substance satisfactory to the Key Parties (the "**3.6 MW Sale Agreement**"), pursuant to which Monolith Solar would sell the substantially completed 3.6 MW solar projects. Monolith Solar failed to deliver the 3.6 MW Sale Agreement to the Key Parties. The Key Parties hereby notify the Monolith Parties that the failure to deliver the 3.6 MW Sale Agreement is a Terminating Event pursuant to Section 6(b)(i) of the Forbearance Agreement (the "**3.6 MW Sale Agreement Terminating Event**").

Pursuant to Section 10 of the Forbearance Agreement, on or before December 28, 2018 Monolith Solar was required to deliver to the Key Parties a binding and enforceable term sheet, in form and substance satisfactory to the Key Parties, executed by Monolith Solar and Generate Capital providing for the disposition of Monolith Solar's solar projects in development (the "**Generate Sale Agreement**"). Monolith Solar failed to deliver the Generate Sale Agreement to the Key Parties. The Key Parties hereby notify the Monolith Parties that the failure to deliver the Generate Sale Agreement is a Terminating Event pursuant to Section 6(b)(i) of the Forbearance Agreement (the "**Generate Sale Agreement Terminating Event**").

Pursuant to Section 10 of the Forbearance Agreement, on or before December 28, 2018 Monolith Solar was required to deliver to the Key Parties a gross profit margin analysis, in form and detail satisfactory to the Key Parties, of Monolith Solar's solar projects in development (the "**Gross Profit Margin Analysis**"). Monolith Solar failed to deliver the Gross Profit Margin Analysis to the Key Parties. The Key Parties hereby notify the Monolith Parties that the failure to deliver the Gross Profit Margin Analysis is a Terminating Event pursuant to Section 6(b)(i) of the Forbearance Agreement (the "**Gross Profit Margin Analysis Terminating Event**").

Pursuant to Section 12 of the Forbearance Agreement, Monolith Solar was required to remit, on each regularly scheduled payment date in the month of in the month of January 2019, a

payment in respect of each Key Lease Agreement in an aggregate amount equal to the sum of the outstanding past-due obligations under such Key Lease Agreement for payments due prior to December 1, 2018 excluding late fees, which fees shall remain outstanding and payable upon demand by KEF (the "**January Rent Payments**"). The Monolith Parties failed to deliver the January Rent Payments to KEF. The Key Parties hereby notify the Monolith Parties that the failure to deliver the January Rent Payments to KEF is a Terminating Event pursuant to Section 6(b)(i) of the Forbearance Agreement (the "**January Rent Payments Terminating Event**").

Pursuant to Section 15 of the Forbearance Agreement, on or before December 31, 2018, the Monolith Parties were required to provide fully executed deposit account control agreements, in form and substance satisfactory to the Key Parties, for all of the Deposit Accounts that are not maintained with KeyBank (collectively, the "**DACAS**"). The Monolith Parties failed to provide executed DACAS to the Key Parties. The Key Parties hereby notify the Monolith Parties that the failure to provide the Key Parties with the executed DACAS is a Terminating Event pursuant to Section 6(b)(i) of the Forbearance Agreement (the "**DACAS Terminating Event**").

Pursuant to Section 18 of the Forbearance Agreement, on or before December 31, 2018, the Monolith Parties were required to deliver to the Key Parties evidence, in form and detail satisfactory to the Key Parties, of the proper notation of the Key Parties' first priority security interest and duly perfected lien on the titles of all vehicles owned by the Monolith Parties (the "**Evidence of Perfected Security Interest in Vehicles**"). The Monolith Parties failed to provide the Evidence of Perfected Security Interest in Vehicles to the Key Parties. The Key Parties hereby notify the Monolith Parties that the failure to provide the Key Parties with the executed Evidence of Perfected Security Interest in Vehicles is a Terminating Event pursuant to Section 6(b)(i) of the Forbearance Agreement (the "**Evidence of Perfected Security Interest in Vehicles Terminating Event**" and together with the 3.6 MW Sale Agreement Terminating Event, the Generate Sale Agreement Terminating Event, the Gross Profit Margin Analysis Terminating Event, the January Rent Payments Terminating Event, the Restricted Account Terminating Event, the Deposit Accounts Terminating Event, and the DACAS Terminating Event, collectively, the "**Specified Terminating Events**").

This letter constitutes formal notice of the existence of the Specified Terminating Events. The Specified Terminating Events have not been waived by the Key Parties or cured by or on behalf of the Monolith Parties. Additionally, the Specified Defaults listed in the Forbearance Agreement have not been waived by the Key Parties or cured by or on behalf of the Monolith Parties.

The identification of the Specified Terminating Events does not imply that other Terminating Events do not exist under the Forbearance Agreement as of the date hereof.

Please note that, under the terms of the Forbearance Agreement and the Agreements, as well as applicable law, the Key Parties have certain rights and remedies upon an occurrence of a Terminating Event under the Forbearance Agreement or a default under one or more of the Agreements. The Key Parties hereby reserve the right to exercise, in such order as the Key Parties elect, any one or more of the rights and remedies available pursuant to the Forbearance Agreement, any Agreement or otherwise at law or in equity, and nothing contained in this letter shall constitute a waiver or forbearance by the Key Parties to pursue such rights and remedies.

Nothing contained in this letter or any delay on the part of the Key Parties in declaring any defaults or exercising any of their respective rights and remedies under the Forbearance Agreement, the Agreements or applicable law shall be considered to be a waiver or modification thereof.

Nothing in this letter constitutes a waiver of any of the Specified Defaults listed in the Forbearance Agreement, the Specified Terminating Events, or any other default or Terminating Event, or a waiver, release or amendment of any obligation of any Monolith Party under the Forbearance Agreement or the Agreements (collectively, the "**Obligations**") or any terms of the Forbearance Agreement or the Agreements. All of the Obligations of the Monolith Parties remain in full force and effect. The Key Parties have not agreed to waive any Terminating Event or any default (including the Specified Defaults listed in the Forbearance Agreement and the Specified Terminating Events) or to waive, release or amend any of the Obligations or any terms of the Forbearance Agreement or the Agreements. The Key Parties expressly reserve any and all of their rights under the Forbearance Agreement, the Agreements, and applicable law.

Very truly yours,

**KEY EQUIPMENT FINANCE, A DIVISION OF KEYBANK NATIONAL ASSOCIATION**

By: _____
Name: Leslie A. Jones
Title: SVP

**KEYBANK NATIONAL ASSOCIATION**

By: _____
Name: Leslie A. Jones
Title: SVP

cc:  Smithville Tarbell Road Solar 1 LLC          Solar Energy Properties LLC
     Load Zone A LLC                              Load Zone B and C LLC
     Load Zone D and E LLC                        Load Zone F LLC
     Route 7 Solar Farm 1 LLC                     Albany CSD Solar 1 LLC
     Amsterdam Reservoir Solar 1 LLC              City of Albany Solar 2 LLC
     City of Troy Solar 1 LLC                     Russell Sage Solar 1 LLC
     Salem County Route 153 Solar 1 LLC           Sand Lake Eastern Union Turnpike Solar 1 LLC
     Solar Vista LLC                              Load Zone G LLC
     Vista Management Group LLC                   Manheim State Route 167 Solar 1 LLC
     MSAP 3 LLC                                   MSAP 4 LLC
     MSAP 5 LLC                                   MSAP 6 LLC
     MSAP 7 LLC                                   MSAP 8 LLC

MSAP 9 LLC                    MSAP 10 LLC
MSAP 11 LLC                   MSAP 12 LLC
MSAP 13 LLC                   MSAP 14 LLC
MSAP 15 LLC                   Granville CSD Solar 1 LLC

# **EXHIBIT 79**

**(Amended and Restated Forbearance Agreement)**

## AMENDED AND RESTATED FORBEARANCE AGREEMENT

This Amended and Restated Forbearance Agreement (the "**Forbearance Agreement**") is entered into as of April 9, 2019, by and between Monolith Solar Associates LLC ("**Monolith Solar**"), Solar Management Group, LLC ("**Solar Management**"), SAE Sun and Earth Energy Incorporated ("**SAE**"), Schenectady Hetcheltown Road Solar 1 LLC ("**Schenectady Hetcheltown 1**"), Schenectady Ice Rink Solar 1 LLC ("**Ice Rink Solar**"), Craryville Two Town Road Solar 1 LLC ("**Craryville Solar 1**"), Craryville Two Town Road Solar 2 LLC ("**Craryville Solar 2**"), Marion Warner Road Solar 1 LLC ("**Marion Warner Solar**"), City of Albany Solar 1 LLC ("**Albany Solar**"), Scotia Glenville CSD Solar 1 LLC ("**Scotia Solar**"), Mayfield CSD Solar 1 LLC ("**Mayfield Solar**"), Rensselaer County Solar 1 LLC ("**Rensselaer County 1**"), Seward Pine Hill Road Solar 1 LLC ("**Seward Pine 1**"), Schuylerville CSD Solar I LLC ("**Schuylerville 1**"), Albany CSD Solar 1 LLC ("**Albany CSD**"), Granville CSD Solar 1 LLC ("**Granville CSD**"), Cordell Road Solar 1 LLC ("**Cordell Road Solar**") and Johnsonville Route 7 Solar 1 LLC ("**Johnsonville Route 7**" and together with Monolith Solar, Solar Management, SAE, Schenectady Hetcheltown 1, Ice Rink Solar, Craryville Solar 1, Craryville Solar 2, Marion Warner Solar, Albany Solar, Scotia Solar, Mayfield Solar, Rensselaer County 1, Rensselaer County 2, Seward Pine 1, Schuylerville 1, Albany CSD, Granville CSD, and Cordell Road Solar collectively, the "**Monolith Parties**" and each a "**Monolith Party**") and KeyBank National Association ("**KeyBank**") and Key Equipment Finance, a division of KeyBank ("**KEF**" and together with KeyBank, collectively, the "**Key Parties**" and each individually a "**Key Party**"). The aforementioned parties are hereinafter referred to collectively as "**Parties**" and each individually a "**Party**").

## RECITALS

WHEREAS, the Monolith Parties and the Key Parties entered into that certain Forbearance Agreement, dated as of November 9, 2018, as amended by that certain First Amendment to Forbearance Agreement, dated as of December 21, 2018 (as amended, the "**Original Forbearance Agreement**");

WHEREAS, the Monolith Parties and the Key Parties desire to amend and restate the Original Forbearance Agreement;

WHEREAS, this Forbearance Agreement amends and restates in its entirety the Original Forbearance Agreement;

WHEREAS, one or more Monolith Parties, and KeyBank, KEF, or First Niagara Leasing, Inc., as applicable, entered into: (i) Loan Agreement, dated as of March 8, 2018, by and among Monolith Solar, Solar Management, SAE, and KeyBank (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Loan Agreement**"); (ii) Promissory Note, in the face amount of $5,000,000, dated as of March 8, 2018, from Monolith Solar, Solar Management, and SAE payable to the order of KeyBank (the "**Revolving Note**"); (iii) Promissory Note, in the face amount of $850,000, dated as of March 30, 2018, from Monolith Solar, Solar Management, and SAE payable to the order of KeyBank (the "**$850K Term Note**"); (iv) Promissory Note, in the face amount of $488,000, dated as of June 30, 2015, from Monolith Solar, Solar Management, and SAE, payable to the order of KeyBank (the

"**$488K Term Note**"); (v) Promissory Note, in the face amount of $1,110,529.00, from Monolith Solar payable to the order of KEF (the "**July 29, 2016 Promissory Note**" and together with the Revolving Note, the $850K Term Note and the June 29, 2016 Promissory Note, collectively, the "**Notes**") (vi) from Monolith Solar Master Equipment Lease Agreement, dated as of July 24, 2015, by and between KEF and Schenectady Hetcheltown 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 24, 2015 Lease Agreement**"); (vii) Master Equipment Lease Agreement, dated as of February 15, 2016, by and between KEF and Johnsonville Route 7 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 15, 2016 Lease Agreement**"); (viii) Master Equipment Lease Agreement, dated as of March 1, 2016, by and between KEF and Craryville Solar 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 1, 2016 Lease Agreement**"); (ix) Master Equipment Lease Agreement, dated as of November 16, 2016, by and between KEF and Ice Rink Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**November 16, 2016 Lease Agreement**"); (x) Master Equipment Lease Agreement, dated as of November 20, 2016, by and between KEF and Marion Warner Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**November 20, 2016 Lease Agreement**"); (xi) Master Equipment Lease Agreement, dated as of February 16, 2017, by and between KEF and Seward Pine 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 16, 2017 Lease Agreement**"); (xii) Master Equipment Lease Agreement, dated as of February 17, 2017, by and between KEF and Craryville Solar 2 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 17, 2017 Lease Agreement**"); (xiii) Master Equipment Lease Agreement, dated as of March 16, 2017, by and between KEF and Albany CSD (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Albany CSD Lease Agreement**"); (xiv) Master Equipment Lease Agreement, dated as of March 16, 2017, by and between KEF and Scotia Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Scotia Lease Agreement**"); (xv) Master Equipment Lease Agreement, dated as of April 14, 2017, by and between KEF and Mayfield Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**April 14, 2017 Lease Agreement**"); (xvi) Master Equipment Lease Agreement, dated as of May 3, 2017, by and between KEF and Albany Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**May 3, 2017 Lease Agreement**"); (xvii) Master Equipment Lease Agreement, dated as of June 27, 2017, by and between KEF and Schuylerville 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**June 27, 2017 Lease Agreement**"); (xviii) Master Equipment Lease Agreement, dated as of July 17, 2017, by and between KEF and Rensselaer County 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 17, 2017 Lease Agreement**"); (xix) Master Equipment Lease Agreement, dated as of August 4, 2017, by and between KEF and Cordell Road Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**August 4, 2017 Lease Agreement**"); (xx) Master Equipment Lease Agreement, dated as of September 14, 2017, by and between KEF and Granville CSD (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**September 14, 2017 Lease Agreement**" and together with the July 24, 2015 Lease

2

Agreement, the February 15, 2016 Lease Agreement, the March 1, 2016 Lease Agreement, the November 16, 2016 Lease Agreement, the November 20, 2016 Lease Agreement, the February 16, 2017 Lease Agreement, the February 17, 2017 Lease Agreement, the March 16, 2017 Albany CSD Lease Agreement, the March 16, 2017 Scotia Lease Agreement, the April 14, 2017 Lease Agreement, the May 3, 2017 Lease Agreement, the June 27, 2017 Lease Agreement, the July 17, 2017 Lease Agreement, and the August 4, 2017 Lease Agreement, collectively, the "**Master Lease Agreements**"); and (xxi)  Equipment Financing Agreement No. 18804 by and between First Niagara Leasing, Inc. and SAE (the "**First Niagara Equipment Financing Agreement**" and together with the Loan Agreement, the Notes, the Master Lease Agreements and any other loan agreement or lease between KeyBank and/or KEF and any one or more Monolith Party, and all documents and other agreements related to any of the foregoing (including the Loan Documents as defined in the Loan Agreement and the guaranties executed in connection with the Notes, the Master Lease Agreements, and the First Niagara Equipment Financing Agreement), collectively, the "**Agreements**" and each individually an "**Agreement**");

WHEREAS, the Monolith Parties are in default of certain terms and conditions of the Agreements and is in receipt of the following related notices of default:

i       Notice of default dated August 31, 2018 issued by KEF regarding the July 24, 2015 Lease Agreements (the "**August 31 Notice of Default**");

ii      Notice of default dated September 4, 2018 issued by KeyBank regarding the Loan Agreement (the "**September 4 Notice of Default**");

iii     Notice of default dated October 3, 2018 issued by KeyBank regarding the Loan Agreement (the "**October 3 Notice of Default**" and together with the August 31 Notice of Default and the September 4 Notice of Default, the "**KeyBank/KEF Notices of Default**");

iv      Notice of Terminating Events dated January 29, 2019 issued by KeyBank and KEF regarding the Agreements (the "**January 29 Notice of Terminating Events**"); and

v       Notice of default issued by KEF, solely in its capacity as servicer for Hancock Whitney (as herein defined) dated October 11, 2018 (the "**Hancock Whitney Lease Notice of Default**") regarding (a) that certain Master Equipment Lease Agreement, dated as of May 18, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Schenectady Hetcheltown 2 Lease Agreement**") by and between Hancock Whitney Equipment Finance and Leasing, LLC ("**Hancock Whitney**") and Schenectady Hetcheltown 2; (b) that certain Master Equipment Lease Agreement, dated as of July 26, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Rensselaer County 2 Lease Agreement**") by and between Hancock Whitney and Rensselaer County 2; (c) that certain Master Equipment Lease Agreement, dated as of June 7, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Seward Pine 2 Lease Agreement**") by and between Hancock Whitney and Seward Pine 2; and (d) those certain Corporate Guaranties executed by Monolith Solar for the benefit of Hancock Whitney pursuant to which Monolith Solar guaranties certain obligations of Schenectady Hetcheltown 2, Rensselaer County 2 and Seward Pine 2, including the obligations of the foregoing under the Schenectady Hetcheltown 2 Lease Agreement, the

3

Rensselaer County 2 Lease Agreement and the Seward Pine 2 Lease Agreement (collectively, the "**Hancock Whitney Lease Agreements**" and each individually a "**Hancock Whitney Lease Agreement**"), and various Equipment Schedules incorporating the terms thereof, and other documents executed in connection therewith (collectively, with the Hancock Whitney Lease Agreements, the "**Hancock Whitney Lease Documents**");

WHEREAS, the Monolith Parties are currently negotiating a series of asset sales, all of which assets serve as collateral security for the Monolith Parties' respective obligations under the Agreements;

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.     <u>Recitals</u>. Each Party acknowledges and confirms that the recitals set forth above are true and correct and that by this reference the recitals are incorporated into and made a part of the body of this Forbearance Agreement.

2.     <u>Definitions</u>. Unless otherwise defined above or elsewhere in this Forbearance Agreement, capitalized terms used herein shall have the meanings ascribed to them in the Agreements.

3.     <u>Scope of Forbearance Agreement</u>. For the avoidance of doubt, this Forbearance Agreement only relates to the Agreements. This Forbearance Agreement does not relate to, alter or amend in any way, any other agreements, leases, documents or writings to which either Key Party is not a party, including without limitation the Hancock Whitney Lease Documents. This Forbearance Agreement shall not limit, restrict or otherwise affect any rights or remedies of Hancock Whitney or its agent under the Hancock Whitney Lease Documents.

4.     <u>Confirmation of Specified Defaults/Terminating Events</u>. The Monolith Parties acknowledge and agree that: (i) each of the defaults described in the KeyBank/KEF Notices of Default (the "**Specified Defaults**") constitutes a Default or an Event of Default, as identified and described therein, that has occurred and is continuing under the applicable Agreements as of the date hereof, (ii) each of the Terminating Events (as defined in the Original Forbearance Agreement) described in the January 29 Notice of Terminating Events  (the "**Specified Terminating Events**") constitutes a Terminating Event that has occurred and is continuing under the Original Forbearance Agreement, (iii) each Specified Default and each Specified Terminating Event is material in nature, (iv) the Key Parties provided, and the Monolith Parties received, proper notice of the Specified Defaults and the Specified Terminating Events, in each case, (v) KEF provided, and the Monolith Parties received, proper notice of the defaults that occurred under the Hancock Whitney Lease Documents as described in the Hancock Whitney Lease Notice of Default, and (vi) the Key Parties are entitled to exercise all of their respective rights and remedies under the Agreements and applicable law as a result of the occurrence and continuation of the Specified Defaults and the Specified Terminating Events.

5.     <u>Acknowledgement of Continuation of Liabilities</u>.  The obligations of the Monolith Parties under the Agreements shall, except as expressly modified herein, remain in full force and effect, and shall not be released, impaired, diminished or in any other way modified or

amended as a result of the execution and delivery of this Forbearance Agreement or by the agreements and undertakings of the Parties contained herein. Each Monolith Party hereby ratifies its respective obligations under and confirms each of the Agreements to which it is a party and the rights granted thereunder in favor of the applicable Key Party. Each Monolith Party hereby confirms that any and all security interests and liens granted pursuant to the Agreements continue to secure the obligations of the Monolith Parties under the Agreements, whether presently existing or hereafter arising, and that such security interests and liens remain in full force and effect.

6.      Forbearance; Forbearance Default Rights and Remedies.

(a)      Subject to the terms and conditions hereof, including without limitation, the satisfaction of the conditions precedent described in <u>Section 26</u> of this Forbearance Agreement, the Key Parties agree that until the earlier of (a) May 31, 2019 or (b) the occurrence of a Terminating Event (as defined in Section 6(b) herein) (the "**Forbearance Period**"), they will forbear from exercising their respective default-related rights and remedies against the Monolith Parties solely with respect to the Specified Defaults; provided, however:

(i)      from and including August 31, 2018 and at all times thereafter that any Default or Event of Default (including the Specified Defaults and the Specified Terminating Events) exists and is continuing under the applicable Agreement, the applicable default rates of interest provided in such applicable Agreement shall continue to apply;

(ii)      the Monolith Parties shall not request, pursuant to any Agreement or otherwise, any revolving loan or other loan from the Key Parties, and the Key Parties shall not have any obligation to make any loans of any kind or provide any financial accommodations to the Monolith Parties (except as otherwise expressly provided in this Forbearance Agreement) during the Forbearance Period;

(iii)      the Monolith Parties shall comply with each and every limitation, restriction or prohibition that would otherwise be effective or applicable under any Agreement during the continuance of any default or Event of Default (including the Specified Defaults and the Specified Terminating Events);

(iv)      the Monolith Parties shall pay within ten (10) Business Days after any written demand by the Key Parties, all reasonable costs and expenses of the Key Parties related to or in connection with the Original Forbearance Agreement, this Forbearance Agreement and any documents, agreements or instruments referred to herein, including, without limitation, the reasonable fees and expenses of the attorneys retained by the Key Parties and the allocated and documented cost of the Key Parties' internal counsel in connection with the negotiation and preparation of this Forbearance Agreement or the enforcement of the Key Parties' rights and remedies under this Forbearance Agreement, any other Agreement, and applicable law (collectively, the "**Fees and Expenses**"); provided, however, that the Monolith Parties hereby authorize the Key Parties to debit any one or more deposit accounts of the Monolith Parties maintained with KeyBank for the Fees and Expenses if the Monolith Parties fail to remit the Fees and Expenses to the Key Parties within the time provided in this section. Nothing in this Forbearance Agreement shall be intended or construed to hold the Key Parties

liable or responsible for any expense, liability or obligation of any kind or nature whatsoever (including, without limitation, attorneys' fees and expenses, other professionals' fees, including those of the Monolith Parties' CRO (as defined herein), and expenses, wages, salaries, payroll taxes, withholdings, benefits or other amounts payable) by or on behalf of the Monolith Parties; and

(v)     nothing herein shall restrict, impair or otherwise affect the Key Parties' right to file, record, publish or deliver a notice of default.

(b)     The obligation of the Key Parties to forbear from exercising their respective default-related rights and remedies against the Monolith Parties during the Forbearance Period, solely with respect to the Specified Defaults and the Specified Terminating Events, as provided herein, shall terminate upon the occurrence of any one or more of the following events (each, a "**Terminating Event**"):

(i)     any Monolith Party shall have failed to comply in any material respect with any term, condition, or covenant set forth in this Forbearance Agreement; and/or

(ii)     the occurrence of any Default or Event of Default under any Agreement other than the Specified Defaults; and/or

(iii)     the failure of any representation or warranty made by any Monolith Party under or in connection with the Original Forbearance Agreement or this Forbearance Agreement, to be true and complete in all material respects as of the date when made or any other breach of any such representation or warranty; and/or

(iv)     there shall be a negative variance of more than 10% between the actual cash collected and/or any line item of the disbursements, in each case, calculated on a rolling four week basis commencing with the four week period from March 1, 2019 through March 29, 2019, compared to the total forecasted cash collected and each forecasted line item of the disbursements, in each case, from the 13 Week Consolidated Cash Forecast for the same four week time period used to calculate the actual cash collected and each line item of the disbursements; and/or

(v)     the repudiation and/or assertion of any defense by any Monolith Party with respect to the Original Forbearance Agreement, this Forbearance Agreement, any other Agreement or the pursuit of any claim by any Monolith Party against the Key Parties; and/or

(vi)     any Monolith Party shall receive a notice of default from any party after the Forbearance Effective Date that any one or more of the Monolith Parties owes at least $75,000.00; and/or

(vii)     a party shall commence a legal action of any kind after the Forbearance Effective Date against one or more Monolith Parties in which the plaintiff(s) seek damages of more than $50,000.00 or recovery or garnishment of or the execution against any property of any Monolith Party.  A schedule, in form and substance satisfactory to the Key

6

Parties, detailing all legal actions that have been filed against the Monolith Parties is attached hereto as **Exhibit A**; and/or

(viii)    the Monolith Parties shall fail to make any remittance to the Key Parties that is provided in the Initial Budget (as defined herein) by the date specified in the Initial Budget; and/or

(ix)    the Monolith Parties shall fail to remit to KeyBank the Holdback Amounts (as defined herein) received by the Monolith Parties, the amounts noted in Section 14 of this Agreement, or any other amounts required to be remitted to one or more of the Key Parties in accordance with the terms of this Agreement.

(c)    Notwithstanding any provision of any Agreement to the contrary, upon the occurrence of a Terminating Event, which shall constitute a Default and an Event of Default under the Loan Agreement, the Notes, the Master Lease Agreements and other Agreements: (x) the agreement of the Key Parties hereunder to forbear from exercising their respective default-related rights and remedies shall immediately terminate without the requirement of any demand, presentment, protest, or notice of any kind, all of which the Monolith Parties hereby waive, and (y) the Key Parties may exercise any and all of their respective rights and remedies under the Agreements and applicable law including, without limitation, their respective rights and remedies with respect to the Specified Defaults.

(d)    Any agreement by the Key Parties to extend the Forbearance Period, if any, must be set forth in writing and signed by a duly authorized signatory of each Key Party.

(e)    The Monolith Parties acknowledge that neither of the Key Parties has made any assurances concerning (i) any possibility of an extension of the Forbearance Period, (ii) the manner in which or whether the Specified Defaults may be resolved or (iii) any additional forbearance, waiver, restructuring or other accommodations.

(f)    The Parties agree that the running of all statutes of limitation and the doctrine of laches applicable to all claims or causes of action that the Key Parties may be entitled to take or bring in order to enforce its rights and remedies against the Monolith Parties are, to the fullest extent permitted by law, tolled and suspended during the Forbearance Period.

7.    13 Week Consolidated Cash Forecast/Other Information.

(a)    The Monolith Parties shall deliver to the Key Parties, no later than 5:00 pm Eastern Time on the third business day of each month, a rolling 13 week consolidated cash forecast (the "**13 Week Consolidated Cash Forecast**") for the Monolith Parties, in form and substance acceptable to the Key Parties, which shall include cash forecasts that are strictly in conformance with the budget prepared by the Monolith Parties and delivered to the Key Parties that is attached hereto as **Exhibit B** (the "**Initial Budget**"). The Monolith Parties shall deliver no later than 5:00 pm Eastern Time on Tuesday of each week, a written report in form and substance acceptable to the Key Parties: (A) comparing actual results with forecasted results set forth in the Initial Budget, (B) identifying for each line item in the Initial Budget, any variance in excess of 10% (whether positive or negative) between the actual result for the week ending on the immediately preceding Friday compared to the forecasted result for such line item from the

immediately preceding four weeks, and (C) providing a detailed explanation for the cause of any variance. Each 13 Week Consolidated Cash Forecast and each written report this <u>Section 7(a)</u> requires the Monolith Parties to deliver to the Key Parties must be accompanied by a written statement executed by the CRO (as defined herein) of each Monolith Party as being true and correct to the best of his knowledge as and when delivered.

(b)   The Monolith Parties shall provide any other information that the Key Parties reasonably request relating to the Monolith Parties' respective businesses.

8.   <u>Acknowledgement of Debt</u>.   Each Monolith Party hereby acknowledges and confirms that as of the close of business on March 26, 2019 (a) Monolith Solar, Solar Management and SAE, and the Guarantors, are jointly and severally liable to KeyBank under the Loan Agreement, the related Loan Documents and the Notes in an aggregate approximate principal amount of $5,733,642.27, plus accrued but unpaid interest thereon, plus the costs and expenses of KeyBank incurred in connection with the obligations and indebtedness of Monolith Solar, Solar Management and SAE to KeyBank, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, internal counsel) incurred by KeyBank in the negotiation, preparation or enforcement of this Forbearance Agreement, and any documents, agreements or instruments referred to herein, all without offsets, counterclaims or defenses of any kind or nature whatsoever; (b) Monolith Solar and the Guarantors are liable to KEF under the July 29, 2016 Promissory Note and the related Loan Documents in an aggregate approximate principal amount of $821,251.98, plus accrued but unpaid interest thereon, plus the costs and expenses of KEF incurred in connection with the obligations and indebtedness of Monolith Solar and the Guarantors to KEF, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, internal counsel) incurred by KEF in the negotiation, preparation or enforcement of this Forbearance Agreement, and any documents, agreements or instruments referred to herein, all without offsets, counterclaims or defenses of any kind or nature whatsoever; (c) each of the Monolith Parties identified in the Master Leases and the Guarantors are liable to KEF, in each case, under each of the Master Lease Agreements, and the agreements related thereto, in an aggregate approximate amount of $357,705.17, plus the costs and expenses of KEF incurred in connection with the obligations and indebtedness of the Monolith Parties to KEF, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, internal counsel) incurred by KEF in the negotiation, preparation or enforcement of this Forbearance Agreement, and any documents, agreements or instruments referred to herein, all without offsets, counterclaims or defenses of any kind or nature whatsoever; and (d) SAE and the Guarantors are liable to KEF under the First Niagara Equipment Financing Agreement, and the agreements related thereto, in an aggregate approximate amount of $2,392.54, plus the costs and expenses of KEF incurred in connection with the obligations and indebtedness of the Monolith Parties to KEF, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, internal counsel) incurred by KEF in the negotiation, preparation or enforcement of this Forbearance Agreement, and any documents, agreements or instruments referred to herein, all without offsets, counterclaims or defenses of any kind or nature whatsoever.   The foregoing description of certain liabilities and obligations is not comprehensive or all inclusive, and the absence of a description of the other liabilities and obligations that exist does not constitute nor shall be deemed to constitute a waiver of them or any rights associated therewith.

9.      Chief Restructuring Officer.  The Monolith Parties shall continue to retain a chief restructuring officer (the "**CRO**") acceptable to the Key Parties pursuant to an engagement letter in form and substance satisfactory to the Key Parties (including, without limitation, the fees and expenses to be paid to the CRO by the Monolith Parties).  Dan Scouler, Sr., is acceptable to the Key Parties to serve as CRO.  For the avoidance of doubt, the Monolith Parties shall be responsible to pay all of the CRO's fees and expenses.  Among other things, the CRO shall:

(a)      have exclusive authority over the Monolith Parties' business operations including, without limitation, cash disbursements and other financial matters;

(b)      ensure that each of the Monolith Parties strictly adheres to and fully complies with the 13 Week Consolidated Cash Forecast;

(c)      ensure that all required deposits are made in the Offtaker Payment Restricted Account (as defined herein) or the Sale Proceeds Restricted Account (as defined herein) in accordance with this Agreement;

(d)      implement the sale(s) of the Specified Mechanically Complete Projects and the sale(s) of the Specified Development Projects as referenced in Section 10 of this Agreement; and

(e)      negotiate and implement the sale(s) of other solar projects or other assets on which the Key Parties have agreed to release their liens.

10.      Solar Projects.

(a)      The Monolith Parties shall deliver to the Key Parties: (i) on or before April 10, 2019, a fully-executed, binding and enforceable agreement, in form and substance satisfactory to the Key Parties, pursuant to which Monolith shall sell the substantially completed 5.0 MW solar projects identified on **Exhibit C** hereto (collectively, the "**Specified Mechanically Complete Projects**"), and (ii) on or before April 22, 2019, a fully-executed, binding and enforceable agreement, in form and substance satisfactory to the Key Parties, providing for the disposition of the solar projects in development as identified on, or substantially similar to, those listed on **Exhibit D** hereto (collectively, the "**Specified Development Projects**").  The Monolith Parties hereby represent that all of the solar projects of the Monolith Parties, whether complete or in some stage of development, are identified on **Exhibit E** hereto.

(b)      The Monolith Parties shall cause each of the Specified Mechanically Complete Projects identified in the completion schedule attached hereto as **Exhibit F** (the "**Completion Schedule**") to be fully completed and ready for purchase by the specified full completion date set forth in the Completion Schedule for each such Mechanically Complete Project.  In addition, the Monolith Parties shall not fail to fully complete on any given calendar day the work necessary to be performed on such day, in each case, in order for the Monolith Parties to be able to timely meet the applicable full completion date set forth in the Completion Schedule for each Specified Mechanically Complete Project.  In the event the Monolith Parties at any time are behind schedule with respect to the completion of work by more than one calendar day for any one for more of the Specified Mechanically Complete Projects, the Monolith Parties shall immediately report such failure to the Key Parties in writing.  For greater certainty, any

failure by the Monolith Parties to fully comply with the foregoing obligations shall constitute a Terminating Event.

      11.    <u>Cooperation with the Key Parties' Consultant</u>.

      (a)    The Monolith Parties shall cooperate with, and provide access to the third party-contractor or consultant retained by the Key Parties or counsel to the Key Parties (the "**Key Parties' Consultant**"). Among other things, the Monolith Parties shall provide the Key Parties' Consultant with (a) access to the solar projects that are subject to the Master Lease Agreements within five (5) Business Days after written request from the Key Parties or counsel to the Key Parties, to enable the Key Parties' Consultant to conduct an on-site review and inspection of each solar project, including all equipment located at each solar project (b) reasonable assistance in conducting each on-site review, (c) access to data and other information related to any of the solar projects, and (d) such other services and information as the Key Parties' Consultant may reasonably request.

      (b)    The Monolith Parties acknowledge and agree that they shall reimburse the Key Parties for all of the reasonable fees and expenses of the Key Parties' Consultant (the "**Key Parties' Consultant Fees**"). The Monolith Parties shall reimburse the Key Parties for the Key Parties' Consultant Fees within ten (10) Business Days after receiving any written demand from the Key Parties for reimbursement. If the Monolith Parties fail to remit the Key Parties' Consultant Fees to the Key Parties within the time provided in this section, the Monolith Parties hereby authorize the Key Parties to debit any one or more deposit accounts of the Monolith Parties maintained with KeyBank for reimbursement of the Key Parties' Consultant Fees.

      12.    <u>Monolith Parties Assets</u>. Without the prior written approval of the Key Parties, the Monolith Parties shall not convey, sell or otherwise dispose of any of their property or assets or of any Monolith Party's interest therein. Each of the Monolith Parties hereby re-grants and grants a security interest in all of its assets and property, including, without limitation, the following:

      all of its inventory, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, general intangibles, oil, gas, and other minerals before extraction, oil, gas, other minerals and accounts constituting as-extracted collateral, all fixtures, all timber to be cut, and all attachments accessions, accessories, fittings, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property and all additions, replacements of and substitution for all or any part of the foregoing property, all whether now existing or hereafter arising, whether now owned or hereafter acquired, and all products and proceeds of or relating to the foregoing property,

to secure the repayment of any and all liabilities and obligations owed by any one or more of the Monolith Parties to any one or more of the Key Parties.

      13.    <u>Note/Loan Repayments</u>. Without the prior written approval of the Key Parties, the Monolith Parties shall not agree or otherwise take any action to discount or otherwise reduce

the obligations or indebtedness owed to the Monolith Parties pursuant to any note, loan agreement or other financial instrument or arrangement.

14.     Lease Payments.  Notwithstanding anything to the contrary set forth in the Key Lease Agreements (as herein defined), during the Forbearance Period any payments received and processed by KEF during the period commencing at 9:00 am Eastern Time on February 15, 2019 and ending upon the expiration of the Forbearance Period shall be applied to past-due obligations under the Key Lease Agreements in order of maturity, excluding late fees, which fees shall remain outstanding and payable upon demand by KEF.  The Monolith Parties shall remit to KEF, on or before April 15, 2019, a payment in respect of each Key Lease Agreement in an aggregate amount equal to the sum of the outstanding past-due obligations under such Key Lease Agreement for payments due prior to December 1, 2018 (the "**April 15, 2019 Payment**"), excluding late fees, which fees shall remain outstanding and payable upon demand by KEF.  The Monolith Parties have requested KeyBank's consent to the Monolith Parties' sale of certain residential accounts receivable in an amount not to exceed the April 15, 2019 Payment. KeyBank consents to the sale of certain residential accounts receivable, in each case for a sale price that is not less than 70% of the full amount of the residential account receivable, only to the extent necessary to generate aggregate sale proceeds sufficient to satisfy the April 15, 2019 Payment.  For the avoidance of doubt, the Monolith Parties shall not convey, sell or otherwise dispose of any other residential accounts receivable.  On or before May 15, 2019, KeyBank shall transfer from the Sale Proceeds Restricted Account to KEF an amount equal to the sum of the outstanding past-due obligations under each Key Lease Agreement for payments due prior to January 1, 2019, excluding late fees, which fees shall remain outstanding and payable upon demand by KEF.

15.     Restricted Accounts.

(a)     Within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties shall establish a restricted deposit account with KeyBank ("**Offtaker Payment Restricted Account**"), on terms acceptable to the Key Parties, for remittances from power offtakers or other customers (the "**Offtakers**") under any power purchase agreement subject to the Master Lease Agreements or any other lease between the Key Parties and one or more Monolith Parties (collectively, the "**Key Lease Agreements**" and each individually, a "**Key Lease Agreement**"). The Monolith Parties will send remittance advices directing the Offtakers to remit all future payments due under a power purchase agreement subject to any Key Lease Agreement to the Offtaker Payment Restricted Account.  The funds deposited in the Offtaker Payment Restricted Account shall be under the sole and exclusive control of the Key Parties pursuant to an agreement in form and substance satisfactory to the Key Parties, and shall be used to satisfy amounts due and payable under the Key Lease Agreements as provided in such agreement.

(b)     Within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties shall establish a restricted deposit account with KeyBank ("**Sale Proceeds Restricted Account**"), on terms acceptable to the Key Parties, for the deposit of the proceeds of the sale of the Specified Mechanically Complete Projects, the Specified Development Projects and other assets and property of any of the Monolith Parties. The Monolith Parties agree that all collections and other proceeds of Collateral or the Equipment including, without limitation, the

proceeds from the sale of (a) the Specified Mechanically Complete Projects, (b) the Specified Development Projects, and (c) any other projects shall be deposited into the Sale Proceeds Restricted Account immediately following receipt by any Monolith Party. During the Forbearance Period, the funds deposited in the Sale Proceeds Restricted Account may be used by the Monolith Parties for disbursements strictly in accordance with the 13 Week Consolidated Cash Forecast and the Initial Budget, with all remaining funds held in the Sale Proceeds Restricted Account unless otherwise agreed to in writing by the Key Parties; *provided, however*, that the Monolith Parties acknowledge and agree that, notwithstanding the disbursement schedule for the sale proceeds of each of the Specified Mechanically Complete Projects set forth in the Initial Budget, the actual remittances/disbursements to the Key Parties, on one hand, and to GMES, on the other hand, shall be modified to reflect a distribution construct based upon a pro rata sharing of the sale proceeds among the Key Parties and GMES that is calculated based upon $3,000,000 for the Key Parties and $881,000 for GMES. The Monolith Parties hereby grant the Key Parties a security interest in the Sale Proceeds Restricted Account to secure the obligations of the Monolith Parties, in each case, under the Agreements.

16.    Notice of Default/Terminating Event.  The Monolith Parties shall promptly, and in any event within one Business Day, notify the Key Parties in writing of the existence of any Default or Event of Default under any Agreement (other than the Specified Defaults) or any Terminating Event under this Forbearance Agreement of which any of the Monolith Parties becomes aware.

17.    Deposit Accounts.  Within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties will execute and deliver deposit account control agreements, in form and substance satisfactory to the Key Parties, for all deposit accounts of the Monolith Parties including such accounts maintained with KeyBank.  Except for the amounts which Section 15 requires the Monolith Parties to deposit in the Offtaker Payment Restricted Account and Sale Proceeds Restricted Account, in each case, the Monolith Parties shall deposit in deposit accounts maintained with KeyBank immediately upon receipt all cash or other funds received by the Monolith Parties, directly or indirectly, in connection with the operation of its business; *provided, however*, that cash or other funds that are required to be deposited in a deposit account with another financial institution pursuant to a valid and enforceable agreement to which one or more Monolith Party is party as of the date of the Original Forbearance Agreement and which deposit account is subject to a duly executed and delivered deposit account control agreement, in form and substance satisfactory to the Key Parties, shall only be subject to this requirement to the extent of cash or other funds in such other account that the Monolith Parties have the right to withdraw, transfer, or otherwise utilize.  The Monolith Parties hereby grant the Key Parties a security interest in all deposit accounts to secure the obligations of the Monolith Parties, in each case, under the Agreements.

18.    Payments/Deposits.  The Monolith Parties shall not (i) make any payment, incur any liability or provide other consideration to any person or entity, for the purchase, acquisition, redemption, repurchase, payment or retirement of any capital stock, membership interest, or other equity interest of any Monolith Party or as a dividend, return of capital or other distribution in respect of any Monolith Party's capital stock, membership interest, or other equity interest, (ii) satisfy any federal or state tax obligations of any Monolith Party's shareholders or members unless otherwise agreed to in advance in writing by the Key Parties, (iii) increase the amount of

total compensation (including, without limitation, wages, insurance and other fringe benefits) in effect as of November 2, 2018 of any officer, manager, or member of any Monolith Party, or (iv), except as provided in Section 17 above, deposit any funds payable to or received by any Monolith Party, or hereafter received by any Monolith Party in an account (deposit, securities or otherwise) maintained at a bank or other financial institution other than KeyBank.

19.  Payments Limited to 13 Week Consolidated Cash Forecast.  The Monolith Parties shall not make any payment or distribution of any kind during any period that is not expressly provided for in the 13 Week Consolidated Cash Forecast for such period.

20.  Security Interest in Vehicles.  Unless otherwise agreed to in writing by the KEF Parties, within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties shall have delivered to the Key Parties evidence, in form and detail satisfactory to the Key Parties, of the proper notation of the Key Parties' first priority security interest and duly perfected lien on the titles of all vehicles owned by the Monolith Parties that are not otherwise encumbered by an existing lien or security interest. For the vehicles owned by the Monolith Parties that are encumbered by an existing lien or security interest, the Monolith Parties shall not later than within three (3) Business Days of the Forbearance Effective Date unless otherwise agreed to in writing by the KEF Parties, to the extent permissible, deliver to the Key Parties evidence, in form and detail satisfactory to the Key Parties, of the proper notation of the Key Parties' second priority security interest and duly perfected lien on such vehicles.  The vehicles that KeyBank shall have a security interest on are identified on **Exhibit G**.

21.  Security Interest in Real Property.  Within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties shall have delivered to the Key Parties mortgages (or the equivalent), in form and detail satisfactory to the Key Parties, granting the Key Parties a first priority security interest with respect to all real property owned by the Monolith Parties.

22.  Insurance Premiums.  Within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties shall have assigned to the Key Parties all of the Monolith Parties' rights to insurance proceeds under all insurance policies currently in existence, including without limitation any insurance payable by reason of loss or damage to the Collateral or the Equipment, and any return or unearned premium upon any cancellation of insurance, pursuant to assignment documentation in form and substance satisfactory to the Key Parties. In the event that the Monolith Parties receive any insurance proceeds or unearned premiums prior to April 5, 2019, the Monolith Parties shall immediately deposit such insurance proceeds or unearned premiums into the Sale Proceeds Restricted Account.  Notwithstanding anything to the contrary in this Section 22, during the Forbearance Period the Monolith Parties shall be entitled to use for business operations, strictly in accordance with the Initial Budget and the terms of this Agreement, 50% of all unearned premiums actually refunded to the Monolith Parties; provided, however, that upon the occurrence of a Terminating Event, the Monolith Parties shall not be entitled to use any portion of the refund.  All unearned premiums that are received by the Monolith Parties shall be deposited into the Sale Proceeds Restricted Account.

23.  Solar Projects.  The Monolith Parties shall complete an evaluation and assessment of the performance of each of the solar projects that are the subject to one or more of the KEF

Lease Agreements (collectively, the "**KEF Solar Projects**") and properly address in accordance with generally accepted industry standards any issues that are compromising or may compromise the power generation of such solar project, including, without limitation, any component or equipment failures or failure to perform proper maintenance, in order to achieve actual power production necessary to meet the contractual production requirements owed to Offtakers with respect to such solar project (the "**Solar Project Assessment and Power Restoration Process**") in accordance with the following schedule. Not later than April 8, 2019, the Monolith Parties shall have completed the Solar Project Assessment and Power Restoration Process for the KEF Solar Projects identified on **Exhibit H**.  Not later than April 15, 2019, the Monolith Parties shall have completed the Solar Project Assessment and Restoration Process for the KEF Solar Projects identified on **Exhibit I**.

24.     Holdback Amounts.  The Monolith Parties shall promptly, and in any event within two (2) Business Days, deposit into the Sale Proceeds Restricted Account any Holdback Amount (as defined in the GMES APA) that the Monolith Parties receive pursuant to the Asset Purchase Agreement among Monolith Solar Associates LLC, Solar Energy Properties, LLC, GMES Solar 2 LLC and Green Mountain Electric Supply, Inc. (the "**GMES APA**").

25.     Weekly Written Report Regarding Compliance with Completion Schedule.  On or before 5:00 pm Eastern Time on Tuesday of each week, commencing with the first Tuesday following the Forbearance Effective Date and continuing each week thereafter, the CRO shall provide the Key Parties with a written report, in form and substance satisfactory to the Key Parties, containing (a) a description of the work completed in the previous week on the Specified Mechanically Complete Projects, and (b) a statement that the Monolith Parties are in full compliance with and will complete each Specified Mechanically Complete Project by the applicable full completion date set forth in the Completion Schedule, or (c) if the Monolith Parties are not in compliance with or have failed to fully complete the necessary work at any given point in time in order to be able to complete each Specified Mechanically Complete Project by the applicable full completion date set forth in the Completion Schedule, (i) a description of the necessary work that the Monolith Parties failed to complete in accordance with the Completion Schedule, (ii) an explanation of why the Monolith Parties failed to complete the necessary work, and (iii) a plan detailing how the Monolith Parties plan to complete the necessary work that was not completed in accordance with the Completion Schedule.

26.     Conditions Precedent to Effectiveness.

This Forbearance Agreement and the agreement of the Key Parties described herein will not be effective unless and until all of the following have occurred or been satisfied on or before the date of this Forbearance Agreement, or such later time as the Key Parties may agree, in writing, in their sole discretion (the "**Forbearance Effective Date**"):

(a)     the Monolith Parties shall have executed and delivered this Agreement;

(b)     the Monolith Parties shall have delivered to the Key Parties the Initial Budget, which shall be in form and substance satisfactory to the Key Parties;

14

(c)     no Default or Event of Default (other than the Specified Defaults and the Specified Terminating Events) or Material Adverse Change shall have occurred; and

(d)     all representations and warranties of the Monolith Parties contained in this Agreement shall be true and correct in all material respects.

27.     Representations and Warranties.

(a)     The Monolith Parties hereby acknowledge and confirm that (i) all of the Recitals set forth above are true and correct; (ii) the Agreements are in full force and effect and are enforceable in accordance with their respective terms; (iii) the Monolith Parties do not have any claims, defenses, causes of action, counterclaims or offsets against the Key Parties or any of their respective current or former officers, employees, agents, representatives, consultants, directors, parents, subsidiaries, affiliates, members, managers, consultants or attorneys of any kind or nature whatsoever; (iv) Exhibit A lists all legal actions that have been commenced against one or more of the Monolith Parties that have not been dismissed, settled or otherwise resolved;  and (v) as of the date hereof, all liens, security interests, assignments and pledges encumbering the Collateral or the Equipment, created pursuant to and/or referred to in the Agreements, are valid and enforceable first priority liens, security interests, assignments and pledges, continue unimpaired, are in full force and effect and secure and shall continue to secure all of the obligations described in the respective instruments in which such interests were granted;

(b)     The Monolith Parties hereby further represent and warrant that:

(i)     After giving effect to this Forbearance Agreement, and except for those matters constituting Specified Defaults, all of the respective representations and warranties of the Monolith Parties in the Agreements are true and complete in all material respects on the date hereof with the same force and effect as if made on such date;

(ii)     Except for the Specified Defaults and the Specified Terminating Events, no Default, violation or Event of Default under the Agreements (or Terminating Event under the Original Forbearance Agreement), and no event which, with the passage of time or the giving of notice, or both, could constitute any such Default, violation or Event of Default (or Terminating Event under the Original Forbearance Agreement), has occurred and is continuing;

(iii)     After giving effect to this Forbearance Agreement, no representation or warranty by the Monolith Parties contained in this Forbearance Agreement or any document, agreement or instrument to be executed or delivered herewith contains any untrue statements of material fact or omits to state a material fact necessary to make such representation or warranty not misleading in light of the circumstances under which it was made;

(iv)     The execution, delivery and performance of this Forbearance Agreement, and any document, agreement or instrument to be executed or delivered herewith, by the Monolith Parties will not result in the violation of any mortgage, indenture, material contract, instrument, agreement, judgment, decree, order, statute, rule or regulation to which any Monolith Party is subject or by which or any of its respective property is bound;

15

(v)   This Forbearance Agreement and the documents, agreements and instruments to be executed or delivered herewith constitute the legal, valid and binding obligations of the Monolith Parties, are enforceable in accordance with their terms and have been duly authorized, executed and delivered by the Monolith Parties, except as the enforceability hereof or thereof may be limited by bankruptcy, insolvency, moratorium, and other similar laws affecting creditors' rights generally and by general principles of equity, whether considered in a proceeding at law or in equity;

(vi)   No consents or approvals are required in connection with the execution, delivery and performance by the Monolith Parties of this Forbearance Agreement or any documents, agreements or instruments to be executed or delivered herewith that have not been previously obtained;

(vii)   The Monolith Parties have the corporate power and authority to execute, deliver and carry out the terms and provisions of this Forbearance Agreement and the transactions contemplated hereby and have taken or caused to be taken all necessary corporate action to authorize the execution, delivery and performance of this Forbearance Agreement and the transactions contemplated hereby; and

(viii)   There are no actions, suits or proceedings pending or, to the knowledge of any of the Monolith Parties, threatened with respect to any of the Monolith Parties (A) that have had or could have, if adversely decided, a Material Adverse Change, or (B) that question the validity or enforceability of any of the Agreements or of any action taken by the Key Parties.

(c)   The Monolith Parties hereby expressly acknowledge and confirm that the foregoing representations and warranties are being specifically relied upon by the Key Parties as a material inducement to the Key Parties to enter into this Forbearance Agreement and, subject to and in accordance with the terms and conditions of this Agreement, to forbear from exercising the Key Parties' respective rights and remedies during the Forbearance Period, other than the rights and remedies described in this Forbearance Agreement including, without limitation, those set forth in Section 6 of this Forbearance Agreement.   The foregoing representations and warranties shall survive the execution and delivery of this Forbearance Agreement.

28.   Miscellaneous

(a)   Disgorgement.   If the Key Parties are, for any reason, compelled by a court or other tribunal of competent jurisdiction to surrender or disgorge any payment, interest or other consideration described hereunder to any person because the same is determined to be void or voidable as a preference, fraudulent conveyance, impermissible set-off or for any other reason, such indebtedness or part thereof intended to be satisfied by virtue of such payment, interest or other consideration shall be revived and continue as if such payment, interest or other consideration had not been received by the Key Parties, and the Monolith Parties shall be liable to, and shall indemnify, defend (engaging respective counsel acceptable to the Key Parties, as applicable) and hold the Key Parties harmless for, the amount of such payment or interest surrendered or disgorged.   The provisions of this Section 28 shall survive execution and delivery of this Forbearance Agreement.

16

(b)     No Defenses; Reliance.

(i)     The Monolith Parties hereby acknowledge and confirm that there are no existing defenses, claims, counterclaims or rights of recoupment or set-off against the Key Parties in connection with the obligations and indebtedness owed to the Key Parties under the Agreements or in connection with the negotiation, preparation, execution, performance or any other matters relating to the Agreements.

(ii)     The Monolith Parties further acknowledge and agree that, notwithstanding anything to the contrary set forth in this Agreement, the Key Parties do not have, nor shall have, an obligation to: (a) amend any one or more of the Agreements or otherwise further restructure the obligations described therein; (b) make any further loans, advances or extension of credit to or for the benefit of the Monolith Parties, (c) extend the Forbearance Period; (d) refrain from terminating the Forbearance Period upon the occurrence of any Terminating Event or (e) enter into any other instruments, agreements or documents regarding any of the same with the Monolith Parties, and that neither the Key Parties nor and any of their respective representatives have made any agreements with, or commitments or representations or warranties to, the Monolith Parties (either in writing or orally), other than as expressly stated in this Forbearance Agreement.

(iii)     The Monolith Parties expressly understand and further agree that the Key Parties are relying on all terms, covenants, conditions, warranties and representations set forth in this Forbearance Agreement as a material inducement to the Key Parties to enter into this Agreement.

(c)     Cumulative Remedies; Non-Waiver.

(i)     Except as otherwise specifically provided in this Forbearance Agreement, the rights, powers, authorities, remedies, interests and benefits conferred upon the Key Parties by and as provided in this Forbearance Agreement are intended to supplement, and be in addition to (and shall not in any way replace, supersede, amend, limit or restrict), the rights, powers, authorities, remedies, interests, and benefits conferred by the Agreements.

(ii)     Except as otherwise specifically provided in this Forbearance Agreement, each Key Party's execution of or performance under this Agreement does not (and it shall not be construed so as to) waive, relinquish, restrict or limit in any way any of the respective rights, remedies, claims or causes of action that each Key Party has or may have under or with respect to the Agreements or applicable law (all of which are expressly reserved) regardless of whether any of the foregoing relate to or arise out of acts, omissions, events or transactions occurring before or after the date hereof.  Except as otherwise specifically provided in this Forbearance Agreement, each Key Party hereby expressly reserves all rights to take any and all actions, and exercise any and all remedies, authorized under the Agreements or at law or in equity as a result of or with respect to the occurrence and continuance of any defaults, violations or events of default that have or may have heretofore occurred thereunder and any defaults, violations or events of default that may hereafter occur or exist thereunder.  Nothing contained herein, and no action taken by either Key Party pursuant hereto or as provided herein, shall be deemed to be a waiver of any of such defaults, violations or events of default.

(iii)   No delay on the part of either Key Party in the exercise of any power, right or remedy under this Forbearance Agreement or the Agreements at any time shall operate as a waiver thereof, and no single or partial exercise by either Key Party of any power, right or remedy shall preclude other or further exercise thereof or the exercise of any other power, right or remedy.

(d)   Release and Acknowledgement.  In consideration of the accommodations being made available by the Key Parties to or for the benefit of the Monolith Parties under this Forbearance Agreement, including, without limitation, the forbearance on the part of the Key Parties:

(i)   The Monolith Parties, for themselves and their present, former and future agents, employees, representatives, officers, directors, shareholders, parents, affiliates, members, managers, subsidiaries, successors and assigns, do hereby unconditionally remise, release, waive and discharge each Key Party and their present, former and future shareholders, parents, subsidiaries, affiliates, predecessors in interest, members, managers, officers, directors, servants, agents, employees, financial advisors, consultants, representatives, attorneys and their respective successors and assigns (collectively, "**Released Parties**", and individually, a "**Released Party**") of and from any and all claims, counterclaims, demands, actions and causes of action of any nature whatsoever, including any right of set-off, whether at law or in equity, including, without limitation, any of the foregoing arising out of or relating to any of the Agreements or any other agreements between any Monolith Party and any Released Party, including without limitation any agreements in which a Released Party is a purchaser of a solar project, any acts or omissions of any Released Party in connection therewith (including, without limitation, extensions of credit and other financial accommodations made or not made to the Monolith Parties, the transactions described in this Forbearance Agreement, the return of any checks, or any proposed financing arrangements to or for the benefit of the Monolith Parties, or any entities owned by or under the control of the Monolith Parties, which they now have or hereafter can or may have for or by reason of any cause, matter or thing whatsoever, against any of the Released Parties, from the beginning of the world to the date hereof;

(e)   Waivers.  In consideration of the accommodations being made available by the Key Parties to or for the benefit of the Monolith Parties under this Forbearance Agreement, including, without limitation, the forbearance on the part of the Key Parties:

(i)   The Monolith Parties hereby waive the benefit of any theory or statute requiring the marshaling of assets or other similar legal doctrine and agree that the Key Parties may exercise their respective rights against the Collateral or the Equipment and apply the proceeds thereof to any of the obligations and indebtedness under the Agreements in accordance with the terms thereof, as aforesaid.

(ii)   The Monolith Parties hereby agree that, to the extent the Monolith Parties would otherwise have a right of notification of sale under Section 9-611 of the Uniform Commercial Code as enacted in any applicable state, ten (10) days' prior written notice of any sale of the Collateral or the Equipment shall be sufficient to satisfy any such notice requirement under Sections 9-611 and 9-612 of the Uniform Commercial Code.  The Monolith Parties hereby renounce any further right of notification of sale that the Monolith Parties may have under

Section 9-611 of the Uniform Commercial Code.  The Monolith Parties acknowledge that this renunciation is intended to be a renunciation after default, as described in Section 9-624 of the Uniform Commercial Code.

(f)     Relationship.  The Monolith Parties agree that the relationship between the Key Parties, on one hand, and the Monolith Parties, on the other hand, is that of creditor and debtor and not that of partners or joint ventures.  This Forbearance Agreement does not constitute a partnership agreement or any other association between either Key Party and the Monolith Parties.  The Monolith Parties acknowledge that the Key Parties have acted at all times only as creditors to the Monolith Parties, in each case, within the normal and usual scope of the activities normally undertaken by a creditor and in no event has either Key Party attempted to exercise any control over the Monolith Parties or their respective businesses or affairs.   The Monolith Parties further acknowledge that the Key Parties have not taken or failed to take any action under or in connection with their respective rights under the Agreements that in any way or to any extent have interfered with or adversely affect the Monolith Parties' ownership of the Collateral or the Equipment.

(g)     Notices.  All notices, requests or other communications required or desired to be given hereunder shall be in writing and, if to the Monolith Parties, sent by facsimile or overnight or certified mail, return receipt requested, postage prepaid, addressed to it at the addresses specified on the signature pages of this Forbearance Agreement, and, if to the Key Parties, sent by facsimile or overnight or certified mail, return receipt requested, postage prepaid, addressed to it at the respective addresses specified on the signature pages of this Forbearance Agreement, or as to each Party, at such other address as shall be designated by such Party in written notice to the other parties.   All notices, statements, requests, demands and other communications provided for hereunder shall be deemed to be given or made when delivered or three (3) Business Days after being deposited in the mails with postage prepaid by overnight or certified mail, addressed as aforesaid, or sent by facsimile with telephonic confirmation of receipt.

(h)     No Third Party Beneficiaries.  This Agreement is made and entered into for the sole protection and benefit of the Monolith Parties, the Key Parties and the Released Parties, and no other person or entity shall have any right of action hereon, right to claim any right or benefit from the terms contained herein, or be deemed a third party beneficiary hereunder.

(i)     Severability.  Whenever possible, each provision of this Forbearance Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Forbearance Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement, it being the Parties' intention that each and every provision of this Forbearance Agreement be enforced to the fullest extent permitted by applicable law.

(j)     Further Assurances.  At the Key Parties' reasonable request, the Monolith Parties shall promptly execute any other document to evidence or further the intent of the Monolith Parties or the Key Parties as set forth herein.

(k)     Counterparts.   This Forbearance Agreement may be executed by the Parties in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument. The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by other parties to this Forbearance Agreement attached thereto.   Delivery of an executed counterpart of the signature page by telecopier or electronic mail shall be as effective as delivery of an original manually executed counterpart.

(l)     Descriptive Headings; Construction.   The headings in this Forbearance Agreement are intended for convenient references only and shall not in any way limit, amplify or be used in interpreting the terms of this Forbearance Agreement.   The masculine, feminine or neutral gender in the singular or plural shall be deemed to include the others wherever the context of this Agreement so requires.   This Forbearance Agreement shall not be construed against any Party hereto as the drafters of this Forbearance Agreement.

(m)     Governing Law; Submission to Jurisdiction.   The provisions of this Forbearance Agreement and the respective rights and duties of Parties hereunder shall be governed by and construed in accordance with New York law, without regard to principles of conflicts of laws that would result in the application of the law of any other state.   The Monolith Parties hereby irrevocably submit to the non-exclusive jurisdiction of any New York state court sitting in New York County, or the United States District Court for the Southern District of New York over any action or proceeding arising out of or relating to this Forbearance Agreement, other Agreement or any related writing, and the Monolith Parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in such New York state or federal court. The Monolith Parties hereby irrevocably waive, to the fullest extent permitted by law, any objection it may now or hereafter have to the laying of venue in any such action or proceeding in any such court as well as any right it may now or hereafter have to remove such action or proceeding, once commenced, to another court on the grounds of FORUM NON CONVENIENS or otherwise.   The Monolith Parties agree that a final, nonappealable judgment in any such action or proceeding in any state or federal court in the State of New York shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(n)     Time of Essence.   Time is of the essence with respect to this Forbearance Agreement.

(o)     Successors and Assigns.   This Forbearance Agreement shall be binding upon, and shall inure to the benefit of the Key Parties and the Monolith Parties, and their respective successors and assigns, except that the Monolith Parties may not assign their rights under this Forbearance Agreement or the other Agreements without the prior written consent of the Key Parties.

(p)     Key Parties' Actions.   The authority herein conferred upon the Key Parties, and any action taken by the Key Parties hereunder or under the other Agreements, or any other agreement between the Key Parties and/or their affiliates, including without limitation

under the Hancock Whitney Lease Documents, or any document, agreement or instrument referred to herein will be taken by the Key Parties, for the protection of the Key Parties only (and Hancock Whitney, if KeyBank took any action in its capacity as servicer under the Hancock Whitney Lease Documents), and the Key Parties shall not assume nor shall be deemed to have assumed any responsibility to the Monolith Parties or to any other persons with respect to any such action authorized or taken by the Key Parties except as required by applicable law.  No person shall be entitled to rely upon, or claim to have relied upon, any action taken or failed to have been taken by the Key Parties or their respective consultants, agents, employees or representatives.

(q)     Amendments.    This Forbearance Agreement may be amended, supplemented or otherwise modified only by a written agreement signed by the Monolith Parties and the Key Parties and none of the provisions hereof may be waived without the written consent of the Key Parties.

(r)     Voluntary Agreement.  The Monolith Parties represent and warrant that the Monolith Parties are represented by legal counsel of their choice, that they have consulted with such counsel regarding this Forbearance Agreement, that they are fully aware of the terms and provisions contained herein and of their effect and that they have voluntarily and without coercion or duress of any kind entered into this Forbearance Agreement.

(s)     Indemnification.  From and after the date hereof, the Monolith Parties shall indemnify, defend and hold harmless the Key Parties, and their respective present, former and future shareholders, subsidiaries, predecessors in interest, members, managers, affiliates, parents, directors, servants, agents, employees, representatives, officers, consultants, attorneys and their respective heirs, personal representatives, successors and assigns (severally and collectively, the "**Indemnified Parties**") against and from any and all liability for, and against and from all losses or damages Indemnified Parties may suffer as a result of, any claim, demand, cost, expense, or judgment of any type, kind, character or nature (including reasonable attorneys' fees and court costs of the attorneys retained by the Key Parties and the allocated cost of the Key Parties' internal counsel), which Indemnified Parties shall incur or suffer as a result of (a) any act or omission of the Monolith Parties or any of their agents or representatives in connection with the transactions described in this Forbearance Agreement, the other Agreements and any of the instruments, agreements and documents referred to in this Forbearance Agreement, (b) the inaccuracy of any of the representations or warranties of the Monolith Parties, or (c) the breach of any of the respective covenants set forth herein of the Monolith Parties.  This indemnification shall survive execution and delivery of this Forbearance Agreement.

(t)     Integration.  This Forbearance Agreement and the instruments, agreements and documents referred to in this Forbearance Agreement shall be deemed incorporated into and made a part of the Master Lease Agreements, the Niagara Equipment Financing Agreement, the Loan Agreement, and the other Agreements. This Forbearance Agreement shall be deemed to be a Loan Document as that term is defined in the Loan Agreement and a Lease Document as defined in the Master Lease Agreements, the Niagara Equipment Financing Agreement and the other Agreements.  All such instruments, agreements and documents, and this Forbearance Agreement, shall be construed as integrated and complementary of each other, and, except as otherwise specifically provided in this Forbearance Agreement, as augmenting and not restricting

the Key Parties' rights, remedies, benefits and security. To the extent any conflict exists between the terms of this Forbearance Agreement and the terms of any other Agreement, the terms of this Forbearance Agreement shall control.

(u) Other Terms. All other terms of the Agreements or any of the documents, agreements or instruments referred to herein, not expressly modified by this Forbearance Agreement shall remain in full force and effect between the parties.

(v) No Waiver or Impairment. Nothing in this Forbearance Agreement or any related documents shall constitute a waiver of any existing or future Default or Event of Default or, to the extent not expressly provided herein, any rights and/or remedies of the Key Parties. The Monolith Parties, in consideration of the Key Parties entering into this Forbearance Agreement, hereby irrevocably and specifically waive and release any and all defenses and/or grounds of avoidance the Monolith Parties may have or may believe they have with respect to (x) the Key Parties' security interests in the Collateral or the Equipment and the Key Parties' perfection thereof.

(w) Bankruptcy Filing. If one or more Monolith Party (each individual entity included in the definition of a Monolith Party, a "**Bankruptcy Party**") files or has filed against it a petition in bankruptcy or seeks relief or protection under any of the sections or chapters of the United States Bankruptcy Code (the "**Bankruptcy Code**"), the Key Parties thereupon will have the right (and no Bankruptcy Party will interpose or will cause any other party to interpose any objection thereto and each hereby waives its rights with respect thereto) to request and receive any one or more of the following: (i) immediate relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or any stay or other restriction on the Key Parties' rights under this Forbearance Agreement, under the documents, instruments or agreements referenced in this Forbearance Agreement, or under any of the court's equitable powers (and, in this regard, each Bankruptcy Party hereby admits that it is unable to adequately protect the interests of the Key Parties), (ii) a termination of the exclusive period under Section 1121 of the Bankruptcy Code, and (iii) a dismissal of the bankruptcy case or proceeding. Nothing in this Forbearance Agreement shall be deemed in any way to limit or restrict any of the Key Parties' rights to seek in a bankruptcy court or any other court of competent jurisdiction any relief the Key Parties may deem appropriate in the event that a voluntary or involuntary petition under any title of the Bankruptcy Code is filed by or against a Bankruptcy Party. The assets and properties which each Bankruptcy Party have encumbered and which are subject to the security interests and liens of the Key Parties include all cash, cash equivalents, or cash collateral, as the term "cash collateral" is defined in Bankruptcy Code Section 363, which accrues from such properties or is owned by each Bankruptcy Party, and upon the filing of any bankruptcy case naming a Bankruptcy Party or any successor as debtor, such Bankruptcy Party, or such successor debtor, as the case may be, has and shall have no right to use any such cash, cash equivalents or cash collateral, and no method of providing adequate protection for any such use to the Key Parties exists. Each Bankruptcy Party further acknowledges and agrees that the representations, acknowledgments, agreements and warranties in this Forbearance Agreement have been made by the Bankruptcy Parties as a specifically bargained for, material inducement to the Key Parties to enter into this Forbearance Agreement, that the Key Parties are relying on such representations and warranties, have changed and will continue to change their position in reliance thereon and that the Key Parties would not have entered into this Forbearance Agreement without such

representations, acknowledgments, agreements and warranties.   Each Bankruptcy Party has consulted with counsel and relied upon counsel's advice in connection with the negotiation and execution of this Forbearance Agreement.

(x)    Appointment of Receiver or Trustee.   Upon the occurrence of a Terminating Event, Default or Event of Default, the Monolith Parties expressly consent to the appointment of a receiver, trustee, or similar person and waive any and all defenses and objections to the appointment of a receiver, trustee or similar person in any state or federal court.

(y)    Other Defaults or Events of Default.   The acknowledgment of the Specified Defaults does not imply that other Defaults or Events of Default do not exist as of the date hereof.

(z)    Waiver of Jury Trial.   EACH MONOLITH PARTY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS FORBEARANCE AGREEMENT, OR THE OTHER AGREEMENTS, OR RELATING TO OR ARISING FROM THE RELATIONSHIP WHICH IS THE   SUBJECT   OF   THIS   FORBEARANCE   AGREEMENT,   OR   THE   OTHER AGREEMENTS AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned have executed this Amended and Restated Forbearance Agreement to be effective as of the date first set forth above.

**MONOLITH SOLAR ASSOCIATES LLC**

By: _____

Name:  Steven Erby

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**SAE SUN AND EARTH ENERGY INCORPORATED**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**SOLAR MANAGEMENT GROUP, LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**SCHENECTADY HETCHEL TOWN ROAD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**RENSSELAER COUNTY SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**SCHUYLERVILLE CSD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

SCOTIA GLENVILLE CSD SOLAR 1 LLC

By: _____

Name: Mark Fobare

Title: Manager

Address: 444 Washington St
         Rensselaer, NY 12144

SEWARD PINE HILL ROAD SOLAR 1
LLC

By: _____

Name: Mark Fobare

Title: Manager

Address: 444 Washington St
         Rensselaer, NY 12144

CRARYVILLE TWO TOWN ROAD SOLAR 2
LLC:

By: _____

Name: Mark Fobare

Title: Manager

Address: 444 Washington St
         Rensselaer, NY 12144

SCHENECTADY ICE RINK SOLAR 1 LLC

By: _____

Name: Mark Fobare

Title: Manager

Address: 444 Washington St
         Rensselaer, NY 12144

CITY OF ALBANY SOLAR 1 LLC

By: _____

Name: Mark Fobare

Title: Manager

Address: 444 Washington St
         Rensselaer, NY 12144

MAYFIELD CSD SOLAR 1 LLC

By: _____

Name: Mark Fobare

Title: Manager

Address: 444 Washington St
         Rensselaer, NY 12144

ALBANY CSD SOLAR 1 LLC

By: _____

Name: Mark Fobare

Title: Manager

Address: 444 Washington St
         Rensselaer, NY 12144

CORDELL ROAD SOLAR 1 LLC

By: _____

Name: Mark Fobare

Title: Manager

Address: 444 Washington St
         Rensselaer, NY 12144

**GRANVILLE CSD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
          Rensselaer, NY 12144


**CRARYVILLE TWO TOWN ROAD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
          Rensselaer, NY 12144


**JOHNSONVILLE ROUTE 7 SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
          Rensselaer, NY 12144


**MARION WARNER ROAD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
          Rensselaer, NY 12144


**GRANVILLE CSD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
          Rensselaer, NY 12144


**KEY EQUIPMENT FINANCE, A DIVISION OF KEYBANK NATIONAL ASSOCIATION**

By: _____

Name: _____

Title: _____

Address: _____

_____

**KEYBANK NATIONAL ASSOCIATION**

**KEY EQUIPMENT FINANCE, A DIVISION
OF KEYBANK NATIONAL ASSOCIATION**

By: _Leslie A. Jones_

By: _____

Name: _Leslie A. Jones_

Name: _____

Title: _Senior Vice Pres._

Title: _____

Address: _66 South Pearl St_

Address: _____

_Albany NY 12207_

_____

**KEYBANK NATIONAL ASSOCIATION**

**KEY EQUIPMENT FINANCE, A DIVISION OF KEYBANK NATIONAL ASSOCIATION**

By: _____

By: _____

Name: _____

Name:   Glen Bleeker

Title: _____

Title:   Vice President

Address: _____

Address: 1000 South McCaslin Blvd

_____

Superior, CO 80027

## EXHIBIT A

### (Legal Actions)

| Name | Type | Action |
|------|------|--------|
| Ayala v. Monolith | Breach and alleged violation of Labor Law | Lawsuit |
| Szemansco & Sabiani v. Monolith | Breach and alleged violation of Labor Law | Lawsuit |
| CED v. Monolith | Litigation for non-payment to vendor | Lawsuit |
| Couch White v. Monolith | Litigation for non-payment to attorneys | Lawsuit |
| Solar Foundations v. Monolith | Litigation for non-payment to vendor | Lawsuit |
| Creditors Adjustment Bureau v. SAE | Litigation for non-payment to vendor | Lawsuit |
| Monolith v. Russo | Breach of residential purchase agreement and counterclaims | Lawsuit |
| Pioneer Bank v. Monolith Solar | Foreclosure action | Lawsuit |

**<u>EXHIBIT B</u>**

**(Initial Budget)**

## EXHIBIT C

| Project Name | Size |
|---|---|
| Galesi S | 204,000 |
| NYSDOT 3G5 A | 200,600 |
| NYSDOT 3G5 B | 200,600 |
| Rotterdam Main Street | 204,000 |
| Anchor Marine | 200,600 |
| South Glens Falls C | 89,420 |
| Subtotal | 1,099,220 |
| | |
| 401 Creekside | 259,420 |
| 435 Creekside | 667,320 |
| Buffalo Battleground | 598,400 |
| Wisconsin Box | 601,800 |
| Zehnder Rittling | 353,600 |
| Bentley SS A/B | 204,000 |
| Galesi J | 197,340 |
| Galesi K | 197,340 |
| Galesi L | 197,340 |
| Copelin Marina B | 240,040 |
| RJ Valente C | 197,200 |
| RJ Valente D | 197,200 |
| Subtotal | 3,911,000 |
| | |
| Totals | 5,010,220 |

TH COMMENTS 3/31/2019

# EXHIBIT D

| Project Name | Offtaker | Type | Project Type |
|---|---|---|---|
| City of Albany Landfill | City of Albany | Grandfathered RNM | Ground |
| Canaan Self Storage | Granville CSD | Grandfathered RNM | Roof |
| Nelliston B | City of Albany | Grandfathered RNM | Ground |
| 2831 Curry Road | City of Albany | Grandfathered RNM | Ground |
| 2835 Curry Road | City of Albany | Grandfathered RNM | Ground |
| Del Lanes | City of Albany | Grandfathered RNM | Roof |
| City of Troy Landfill | City of Troy | Grandfathered RNM | Ground |
| Galesi E | Rensselaer County | Grandfathered RNM | Roof |
| Tamarac Self Storage | Schuylerville CSD | Grandfathered RNM | Roof |
| Harrison Ave Self Storage | City of Albany | Grandfathered RNM | Roof |

# EXHIBIT E

## ALL SOLAR PROJECTS

| Project Name | Size |
|---|---|
| 401 Creekside | 259,420 |
| 435 Creekside Ave | 677,280 |
| 445 Creekside Ave | 667,320 |
| Albany Landfill A | 200,100 |
| Albany Landfill B | 200,100 |
| Albany Landfill C | 200,100 |
| Anchor Marine | 200,628 |
| Bentley Self Storage A | 204,000 |
| Bentley Self Storage B | 204,000 |
| Buffalo Barks | 650,000 |
| Buffalo Battleground | 598,400 |
| Del Lanes | 195,000 |
| Galesi J | 197,340 |
| Galesi K | 197,340 |
| Galesi L | 197,340 |
| Galesi S | 204,000 |
| NYSDOT 3G5 A (Orangetown) | 195,000 |
| NYSDOT 3G5 B (Orangetown) | 195,000 |
| RJ Valente C | 197,200 |
| RJ Valente D | 133,280 |
| Rotterdam Main Street C | 204,029 |
| South Glens Falls C | 89,432 |
| Wellsville Gordon Road | 319,320 |
| Wisconsin Box | 601,800 |
| Zehnder Rittling | 353,600 |
| 2831 Curry Road | 402,000 |
| 2835 Curry Road | 667,320 |
| 360 Anthony Street | 1,782,000 |
| 545 Mohawk Dr Fonda | 396,000 |
| Albany Colonie St | 396,000 |
| Applied Label | 402,000 |
| Belfast- Mark Palmer | 402,000 |
| Big Blue Self Storage | 402,560 |
| Buffalo Barks | 649,060 |
| Buffalo Niagra Gun | 402,560 |
| Cambridge St Rt 22 | 632,400 |
| Canaan Self Storage | 201,000 |

1

| Project Name | Size |
| --- | ---: |
| Carriage House | 612,000 |
| Central Storage MiddleBurg | 201,000 |
| City Of Albany 35 | 650,000 |
| City Of Albany 36 | 650,000 |
| City Of Albany 37 | 650,000 |
| City of Albany 38 | 650,000 |
| City of Albany 39 | 650,000 |
| City of Troy 2 | 650,000 |
| City of Troy 3 | 650,000 |
| City of Troy 4 | 650,000 |
| City of Troy 5 | 650,000 |
| City of Troy 7 | 150,000 |
| Copelin Marina A | 53,040 |
| County of Schenectady 24 | 200,000 |
| DoT Fish Kill | 623,700 |
| DoT Harrison Landfill | 495,000 |
| DoT Lloyd | 301,500 |
| DoT Mount Pleasant West | 657,360 |
| DoT Sprainbrook | 310,860 |
| DoT Ulster | 301,500 |
| Downsville A | 195,000 |
| Downsville B | 97,600 |
| Friendship White Hall | 316,800 |
| Galesi E | 201,000 |
| Greenwhich H | 446,820 |
| Harrison Ave Self Storage | 657,360 |
| Manhiem B | 198,000 |
| Manhiem C | 195,360 |
| Matter Contracting | 198,960 |
| Metro Movers 4773 Western Trnpk | 516,800 |
| Miller Marquart A-B | 402,000 |
| Nelliston B | 474,360 |
| Newfane C | 201,000 |
| NYSTA Albany | 265,650 |
| NYSTA Manchester | 134,550 |
| NYSTA Waterloo A | 200,100 |
| NYSTA Waterloo B | 200,100 |
| NYSTA Waterloo C | 46,920 |
| NYSTA West Field A | 201,000 |
| NYSTA West Field B | 201,000 |
| NYSTA West Field C | 201,000 |
| NYSTA West Field D | 50,000 |
| Orange C | 200,000 |

| Project Name | Size |
| --- | --- |
| Rensselaer County 12 | 650,000 |
| Rensselaer County 13 | 650,000 |
| Rensselaer County 14 | 650,000 |
| Rensselaer County 15 | 650,000 |
| Rensselaer County 16 | 650,000 |
| Rensselaer County 17 | 650,000 |
| Rensselaer County 18 | 650,000 |
| Rensselaer County 21 | 650,000 |
| Rensselaer County 22 | 650,000 |
| Russel Sage College 3 | 650,000 |
| Russel Sage College 4 | 500,000 |
| Russell Sage 5 (Community Solar RS 40%) | 650,000 |
| Russell Sage 6 (Community Solar RS 40%) | 650,000 |
| Sloansville Esperance | 320,280 |
| Sprafford B | 90,000 |
| Tamarac Self Storage | 140,400 |
| Troy Land Fill | 2,700,000 |
| A Metro Movers (F) - Georgian Motel | 200,100 |
| Academy of the Holy Names | 50,400 |
| Action Sign (Marshall Sign) | 50,760 |
| All Type Professional Window & Door | 27,000 |
| Altamont Agway | 46,750 |
| American Legion | 50,140 |
| Anca's Foreign Auto Parts, Inc | 45,900 |
| Auto Saver Ford (Vittengl Ford (A) - Comstock) | 45,600 |
| Averil Park - Sand Lake Fire Dept. - Exp | 37,620 |
| Benson's Pet Supply (Wolf Rd - Colonie) | 50,400 |
| Berksire Properties - Joe's Garage | 5,650 |
| Best Luther Fire Dept | 8,100 |
| Bethel Full Gospel | 11,960 |
| Blooming Grove Church | 13,155 |
| Boght Fire Dept | 52,140 |
| Brunswick Elks | 49,500 |
| Brunswick Harley | 51,840 |
| Burdeck Street Solar Farm C | 215,280 |
| Burden Lake Country Club | 129,510 |
| Cambridge CSD (A) | 69,300 |
| Cambridge CSD (A) Exp. | 132,000 |
| Cambridge CSD B | 47,190 |
| Cambridge CSD B Expansion | 43,560 |
| Chase Smith Funeral Home (Schaghticoke) | 9,405 |
| Chatham Self Storage (A) | 176,400 |
| Chatham Self Storage (B) | 195,000 |

| Project Name | Size |
|---|---|
| Christopher Tire Co. INC | 12,320 |
| City of Amsterdam - Bus Garage | 46,750 |
| City of Amsterdam - public Safety | 46,750 |
| Clifton Park FD | 51,700 |
| Columbia Greene Comm College | 164,400 |
| Columbia Greene Community College - Billed in SMG | 164,400 |
| Columbia Harriman - BBL (A) - 455 | 50,400 |
| Columbia Harriman - BBL (B) - 455 | 50,400 |
| County of Columbia Humane Society | 76,860 |
| Craig Alexander | 26,290 |
| Craryville B | 207,360 |
| Crawford Window and Door (A) | 50,400 |
| Crawford Window and Door (B) | 50,400 |
| Creative Custom Woodcraft | 37,620 |
| Creative Custom Woodcraft (B) | 14,000 |
| Crosstown Plaza | 195,000 |
| Crosstown Plaza E - BBL (Recovery Sports Grill) | 197,200 |
| Crosstown Plaza F - BBL (Spa Hotel) | 197,200 |
| CWA - Missouri | 24,400 |
| DCG 19 - Billed in SMG | 78,000 |
| DCG 23 | 74,800 |
| DCG Development #17Wood Road | 72,000 |
| DCG Development #21 Wood Road - Billed in MSA | 72,560 |
| DiSiena Furniture (B) Expansion | 27,000 |
| DiSiena Furniture (C) Expansion | 27,000 |
| DiSiena Furniture (D) Outlet Exp | 51,700 |
| DiSiena Furniture D | 52,140 |
| DiSiena Furniture Warehouse Exp | 17,800 |
| DiSienna Furniture A | 50,830 |
| DiSienna Furniture B | 49,680 |
| DiSienna Furniture C | 53,820 |
| Doane Stuart | 25,800 |
| Donald Gowan Inc. | 94,720 |
| Doo Young Pai (Agway Dr.) | 12,540 |
| Dunn Funeral Home | 5,700 |
| East Greenbush Fire (A) | 51,030 |
| East Greenbush Fire (B) | 11,800 |
| East Greenbush Fire (C) | 11,300 |
| East Schodack Fire District | 25,800 |
| Ed Herrington Inc. | 50,400 |
| Ernest Bonnier-Bonniers Auto | 28,320 |
| Erwin Indian Hills Road Solar 1 | 316,800 |
| Excel Hockey Inc | 90,000 |

| Project Name | Size |
|---|---|
| First Methodist Church | 23,400 |
| Fish Creek Rod & Gun | 10,485 |
| Food Pantries of Greater Cap | 23,600 |
| Frear Park (A) | 183,000 |
| Frear Park (B) | 197,640 |
| Fuller Road Fire House | 18,920 |
| Galvan Initiatives (Smith's Commercial Tire Service Inc.)708 | 50,400 |
| Galvan Initiatives (Smith's Commercial Tire Service Inc.)724 | 50,400 |
| Gary's Garage (A) - Fire Companies of Malta | 80,730 |
| Genes Fish Fry | 17,200 |
| Grace (A) | 50,600 |
| Grace (B) | 50,370 |
| Grace (C) | 50,760 |
| Granville Ritchie Road C | 53,820 |
| Greenwich (A) - Hewitts (F) | 52,000 |
| Greenwich (B) - Hewitts (G) | 52,000 |
| Greenwich (C) - Hewitts (C) | 52,000 |
| Greenwich (D) - Hewitts (E) | 52,000 |
| Griffin Motor Sports (A) | 37,455 |
| Griffin Motor Sports (B) | 37,455 |
| H&V Auto (A) - Central Ave | 74,910 |
| H&V Auto (C) - Queensbury | 51,075 |
| H&V Auto (D1) - Troy | 49,940 |
| H&V Auto (D2) - Troy | 23,600 |
| H&V Auto (E) - Saratoga | 51,075 |
| H&V Auto F1 (Collision Experts Auto (A)) | 50,400 |
| H&V Auto F2 (Collision Experts Auto (B)) Schenectady | 33,600 |
| H&V E Expansion | 138,050 |
| Haldane CSD (A) High School | 52,580 |
| Haldane CSD (B) Elementary/Middle | - |
| Haldane CSD (B) Elementary/Middle 2 | 201,600 |
| Haldane CSD (C) Bus Garage | 32,560 |
| Haney's Golf Cars | 25,920 |
| Hartford Vol Fire | 41,940 |
| Hewitt's Garden Center (A) - Queensbury | 45,350 |
| Hewitt's Garden Center (B) - Saratoga | 50,400 |
| Hewitts Garden Center (D) | 41,950 |
| High Bridge Twist | 15,270 |
| Hiland Park Country Club | 26,400 |
| Hildreth's Restaurant - Billed in SMG | 51,300 |
| Hoosick Valley Rescue Squad | 33,550 |
| Hoosick Water Treatment Facility | 50,400 |
| House of Praise (Main Building) | 51,700 |

| Project Name | Size |
|---|---|
| House of Praise (Office / Parsonage) | 7,740 |
| Intelligent Technology Solutions | 28,680 |
| Interstate Laminates (A) | 50,490 |
| Interstate Laminates (B) | 25,190 |
| JA Bradley and Sons INC. | 45,150 |
| Jack Byrne Ford | 119,600 |
| Jack Byrne Ford - Quick Lube - Exp | 22,700 |
| JD Handling | 46,530 |
| JD Marcella | 74,855 |
| Kearney's Service Center Inc. | 16,800 |
| Knickerbacker (A) | 197,640 |
| Knickerbacker (B) | 197,640 |
| Knight auto Works | 26,290 |
| Kwang Pai (A) - 4300 Rt 50 LLC | 26,400 |
| Kwang Pai (B) - 4300 Rt 50 LLC | 26,400 |
| Lapinski Dental | 7,040 |
| Life for the Nations Church (First Assembly of God) | 24,960 |
| Living Resources (A) | 25,650 |
| Living Resources (B) | 26,910 |
| Living Resources (C) | 23,625 |
| Living Resources (D) | 46,600 |
| Local 106 Training (Cyprus Shriners) | 62,695 |
| Loudonville Comm. Church | 51,600 |
| Majestic Pools and Spas Ltd | 44,800 |
| Marios Home Center - Billed in SMG | 25,630 |
| Marios True Value | 200,100 |
| Mario's True Value Expansion | 51,850 |
| Maryann Postava-Davignon (Johnsonville B (PPA Portion)) | 3,575 |
| Master Yang's Martial Arts Center | 37,300 |
| Mckownville United Methodist Church | 28,440 |
| Mechanicville Comm. Center | 17,200 |
| Mechanicville DPW | 51,700 |
| Mechanicville Golf Club Restaurant | 19,032 |
| Mechanicville Golf Maint. Barn | 7,650 |
| Mechanicville Senior Center | 25,800 |
| Mechanicville Water Treatment Plant | 51,700 |
| Mekeel Christian Academy | 25,630 |
| Menneto Powersports (Furniture Theater, Inc.) | 50,400 |
| Nassau Country Value | 47,000 |
| Nassau Free Library | 9,405 |
| Nemer Chrysler Expansion | 34,950 |
| Nemer Chrysler Plymouth Dodge (Queensbury) - Billed in SMG | 50,400 |
| Nemer Volkswagen | 51,700 |

| Project Name | Size |
|---|---|
| Nemer Volkswagen Exp | 25,960 |
| Net Zero Apt. (A) | 66,920 |
| Net Zero Apt. (B) | 66,920 |
| Net Zero Apt. (C) | 66,920 |
| Net Zero Apt. (D) | 66,920 |
| Net Zero Apt. (E) | 66,920 |
| Net Zero Apt. (F) | 66,920 |
| NetZero Apartment Complex (G) | 72,800 |
| NetZero Apartment Complex (H) | 72,800 |
| NetZero Apartment Complex (I) | 72,800 |
| NetZero Apartment Complex (J) | 72,800 |
| NetZero Apartment Complex 11 (K) | 72,800 |
| NetZero Apartment Complex 12 (L) | 66,000 |
| NetZero Apartment Complex 13 (M) | 66,000 |
| New Beginnings Church | 12,825 |
| New Life Assembly of God | 9,633 |
| Niskayuna - Town Hall | 26,352 |
| Niskayuna Fire District 2 | 24,840 |
| Niskayuna Glass (New Way General) | 51,920 |
| Niskayuna Highway Garage - A | 25,200 |
| Niskayuna WWT A | 51,700 |
| Nopper's Collision Repairs Inc | 24,650 |
| North Country Janitorial (A) | 34,200 |
| North Country Janitorial (B) | 30,240 |
| North Greenbush Hwy Garage | 25,380 |
| Northeast Automotive Parts (NAPA Nassau) | 25,480 |
| Northeast Automotive Parts (NAPA-Valatie) | 19,580 |
| Northside Firehouse | 46,800 |
| Northstar Albany Properties (Dr. Gardener - Western Ave Associates) | 33,900 |
| Northumberland Fire District 1 | 25,650 |
| NYS United Teachers - Latham | 201,510 |
| NYS United Teachers - Williamsville A | 50,140 |
| NYS United Teachers- E Syracuse | 51,260 |
| NYSUT - Williamsville (B) Conference Center | 25,960 |
| NYSUT (A) - Vestal | 50,940 |
| NYSUT (B) - Potsdam | 45,400 |
| NYSUT Rochester | 95,025 |
| NYSUT Utica | 23,240 |
| Orange County Rd 16 Solar 1 | 326,400 |
| Pai's Tae Kwon Do - Clifton Park | 44,800 |
| Pai's Tae Kwon Do, Inc (A) | 11,400 |
| Pai's Tae Kwon Do, Inc (B) | 12,540 |
| Phyllis Bornt Library | 16,470 |

| Project Name | Size |
|---|---|
| Poestenkill Fire | 44,580 |
| Poestenkill Fire Dept. Exp. | 7,120 |
| Polish American Citizens Center | 37,840 |
| Polish Community Center | 51,700 |
| Prattsburgh | 204,000 |
| Prime Malta (AAA Northway Storage) | 52,200 |
| Quaker Ford | 51,400 |
| Quaker Ford Expansion | 99,400 |
| Queensbury (A) - Town Hall | 51,075 |
| Queensbury (E) - Highway Dept. | 51,075 |
| Redeemer - Missouri | 16,470 |
| Reliable Storage (A) - 1808 Route 9 | 8,550 |
| Reliable Storage (B) - 950 Route 9 | 6,270 |
| Rens Boys Club (416 Washington St) | 26,840 |
| Rensselaer - (City Hall) | 34,400 |
| Rensselaer City Schools | 201,300 |
| Rensselaer DPW | 50,760 |
| Rensselaer DPW2 | 26,352 |
| Rensselaer Fire Dept | 24,960 |
| Rensselaer Mink Station | 17,200 |
| Rick's Bike Shop | 15,840 |
| Rocky Hill Country Store | 39,600 |
| Rotterdam Fire Bd of Comm | 48,050 |
| Route 9 Auto World - Vittengl Suzuki | 46,600 |
| Salem A - Ed Herrington's (A) | 190,250 |
| Salem B - Ed Herrington's (B) | 153,600 |
| Salem United Methodist Church | 23,900 |
| Sand Lake | 192,000 |
| Saratoga Clay Arts | 15,390 |
| Saunders Transmission | 40,725 |
| Savemore Beverage | 49,680 |
| Savemore Beverage Expan | 49,680 |
| Saxton Sign Co. | 51,700 |
| Schenectady Boys Club | 45,600 |
| Schenectady County  Highway A | 51,700 |
| Schenectady County - Unit 1 | 25,200 |
| Schenectady County - Unit 2 | 25,200 |
| Schenectady County - Unit 4 | 25,200 |
| Schenectady County Rotterdam Branch Library | 50,400 |
| Schenectady Curling Club | 51,700 |
| Schenectady Ice Rink | 51,700 |
| Schodack Bus Garage | 24,840 |
| Schodack Bus Garage (B) Exp. | 24,840 |

| Project Name | Size |
|---|---|
| Schodack Elementary | 47,840 |
| Schodack High School | 49,920 |
| Schodack Middle School | 49,140 |
| Shaker Rd. Loudonville Fire Dept. (Station 2) | 32,940 |
| Shaker Ridge Country Club | 74,060 |
| Shaker Ridge Country Club Expans | 30,100 |
| Shaker Road Loudonville Fire 1 | 161,040 |
| Siena College | 25,200 |
| Smithville 2 | 207,360 |
| Smithville Solar Farm (A) | 197,640 |
| South Colonie CSD - Athletic Field | 12,480 |
| South Colonie CSD Bus Garage | 45,000 |
| Sprague Operating Resources (D) | 23,900 |
| Sprague Operating Resources, LLC (B) | 21,455 |
| Sprague Operating Resources, LLC (B) Expansion | 85,800 |
| St. Annes (A) | 25,650 |
| St. Catherines | 46,750 |
| Steven A Erby, Office | 27,000 |
| Stillwater CSD -  High School | 38,445 |
| Stillwater CSD - Bus Garage | 31,455 |
| Stillwater CSD - Elementary | 38,445 |
| Stillwater CSD - Field Lights | 31,455 |
| Stilsing Electric (A) | 50,400 |
| Stilsing Electric (B) - 507 South St. | 22,650 |
| Stowaway  Storage | 200,100 |
| Stuyvesant - Town Hall | 15,840 |
| Stuyvesant Falls Fire District | 15,390 |
| Stuyvesant Fire District No. 1 | 18,080 |
| T.A. Predel | 197,340 |
| Taconic Hills CSD - Shed | 9,460 |
| Taconic Hills CSD Bus Garage | 51,920 |
| The Breakfast Sport (Legends Restaurant) | 40,815 |
| The Spotted Zebra | 60,000 |
| The Walters Company AC Inc. | 28,105 |
| Third Presbyterian Church | 9,460 |
| TJB Land Corp | 197,340 |
| Town of Greenport Town Hall | 34,950 |
| Town of Horicon - Town Garage | 58,400 |
| Town of Horicon - Town Hall | 35,850 |
| Town of Moreau Town Hall Munici | 59,520 |
| Town of Petersburgh-Town Hall | 28,880 |
| Town of Queensbury (B) - Activities Center | 23,600 |
| Town of Queensbury (C) - Water Dept. | 53,940 |

| Project Name | Size |
|---|---|
| Town of Queensbury (D) - Town Court | 31,960 |
| Town of Queensbury (F) - Rec Field | 15,930 |
| Town of Sand Lake DPW | 33,600 |
| Troy County Waste (A) | 197,340 |
| Troy County Waste (B) | 197,340 |
| Troy DPW | 197,340 |
| Troy Landfill (A) | 202,800 |
| Troy Landfill (B) | 202,800 |
| Troy Landfill (C) | 202,800 |
| United Way GCR | 51,260 |
| Van Kleeck's Tire Inc (A) / (B) | 51,300 |
| Van Kleeck's Tire Warehouse (C) (Lake Katrine) | 14,000 |
| Vanderhyden Hall (A) | 25,200 |
| Village Dodge | 50,400 |
| Village of Hoosick Falls Municipal Building | 15,360 |
| Village of Hoosick Falls WWTP | 15,360 |
| Village of Voorheesville Fire Dept. | 30,860 |
| Voorheesville Garage | 31,740 |
| Walter Elwood Museum | 73,280 |
| Watkins Garden | 13,145 |
| West Cent. Ren. County Lutheran Parish (St. Timothy's Lutheran Church) | 14,640 |
| West Crescent Fire | 38,532 |
| Wilmot Family Farms (B) | 132,600 |
| Wilmot Family Farms C | 200,100 |
| Winding Brook Country club | 26,840 |
| Winding Brook Country Club - Clubhouse | 52,844 |
| Woodland Hill Montessori | 51,700 |
| XC Associates | 50,400 |
| TOTAL | 12,124,175 |

10

## EXHIBIT F

### (Completion Schedule)

| Project | Full Completion Date |
| --- | --- |
| RJ Valente (C) | Complete |
| RJ Valente (D) | Complete |
| Rotterdam Main Street | Complete |
| South Glens Falls (C) | Complete |
| NYSDOT 3G5 A | Complete |
| NYSDOT 3G5 B | Complete |
| Anchor Marine (C) | April 8, 2019 |
| Galesi S | April 14, 2019 |
| Wisconsin Box | April 19, 2019 |
| Zehnder Rittling | April 24, 2091 |
| 401 Creekside Drive | April 28, 2019 |
| Buffalo Battleground | May 11, 2019 |
| Bentley SSA A/B | May 11, 2019 |
| Galesi J | May 11, 2019 |
| Galesi K | May 11, 2019 |
| Galesi L | May 11, 2019 |
| Copelin Marina B | May 11, 2019 |
| 435 Creekside | May 27, 2019 |

| | Vehicle/Equipment | Financier | Kelley Blue Book Est Trade in / Retained Work Listings Heavy Equipment | Loan Balance | Monthly Payment | Equity |
|---|---|---|---|---|---|---|
| 1 | 2014 Ford F350 Truck | Ally | 15450 | 16322 | 721 | -872 |
| 2 | 2015 VW Golf Wagon | Bank of America | 4750 | 6540 | 372 | -1790 |
| 3 | 2018 Acura RDX | CapCom | 25000 | 37097 | 832 | -12097 |
| 4 | Vermeer Forestry Tractor | De Lage Landen | 65000 | 49093 | 2,312 | 15907 |
| 5 | Genie GTH5519 Telehandler - CAP LEASE | De Lage Landen | 40000 | 8414 | 1,253 | 31586 |
| 6 | 2013 Ford E250 | First Niagara/Key Bank | 7500 | 6959 | 385 | 541 |
| 7 | 2013 Ford & Nissan Van | First Niagara/Key Bank | 17900 | 10616 | 1,088 | 7284 |
| 8 | 2016 Ford F550 Dumptruck | Ford Credit | 45000 | 50304 | 1,432 | -5304 |
| 9 | 2016 GMC Sierra 3806 | GM Financial 1 | 24000 | 22674 | 967 | 1326 |
| 10 | 2017 GMC Sierra Denali 3835 | GM Financial 2 | 44000 | 29205 | 1,306 | 14795 |
| 11 | 2016 GMC Sierra 4058 | GM Financial 3 | 24753 | 21510 | 889 | 3243 |
| 12 | 2014 Ford E250 Van | M&T Bank | 11500 | 11441 | 454 | 59 |
| 13 | 2016 Ford F350 Truck | Saratoga National Bank | 22843 | 29468 | 787 | -6625 |
| 14 | 2015 VW Golf GTI | Saratoga National Bank | 11800 | 7804 | 392 | 3996 |
| 15 | 2014 Mercedes B M Class - PMT 790.02 | TD Auto Finance | 22425 | 27557 | Mark is covering pmt | -5132 |
| 16 | 2014 Genie GTH-844 Telehandler | Terex | 60000 | 14636 | 1,664 | 45364 |
| 17 | 2013 Toyota Tundra | Toyota Motor Credit | 12600 | 4811 | 496 | 7789 |
| 18 | 2015 VW Beetle 48 | VW Credit | 6359 | 7693 | 373 | -1334 |
| 19 | 2015 VW Beetle 21 | VW Credit | 6359 | 11398 | 365 | -5039 |
| 20 | 2015 VW Beetle 15 | VW Credit | 6359 | 11482 | 368 | -5123 |
| 21 | 2014 E42 T4 Bobcat Compact Excavator | Wells Fargo | 35000 | 5620 | 937 | 29380 |
| 22 | 2016 Bobcat Mini Excavator | Wells Fargo | 26000 | 22246 | 753 | 3754 |
| 23 | 2016 Bandit Chipper | Wells Fargo | 36000 | 30486 | 1,095 | 5514 |
| 24 | 2018 Bobcat T595 Compact Track Loader | Wells Fargo | 55000 | 60580 | 1,442 | -5580 |

# **EXHIBIT G**

## **(Vehicles)**

# EXHIBIT H

**Albany CSD Solar 1 LLC**

| Ls# | Project Location Street | City | Site | |
|---|---|---|---|---|
| 1800113469 | 1428 NY 9P | Saratoga Springs | Saratoga Boat N RV (1) - aka Saratoga Boat & RV A | Albany CSD - Giffen Elementary |
| 1800118954 | 1025 U.S. Route 9 | Queensbury | A2000 B | Albany CSD - New Scotland Elementary |
| 1800118955 | 1025 U.S. Route 9 | Queensbury | A2000 C | Albany CSD - Montessori School |
| 1800118956 | 755 Columbia Turnpike | East Greenbush | Reliable 755 Columbia TRPK | Albany CSD - North Albany Academy |

**City of Albany Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800114042 | 810 Clinton Ave | Albany | Swinburne Ice Rink | City of Albany Maintenance 45 |

**Craryville Two Town Road Solar 2 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800118943 | 1025 U.S. Route 9 | Queensbury | A2000 A | Fort Plain CSD - Bus Garage |

**Granville CSD Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800116305 | 53 Ritchie Road | Granville | Granville Ritchie Road CSD (2) - aka Granville System A & B | Granville CSD - High School & MJ Tanner Elem. |
| 1800116306 | 53 Ritchie Road | Granville | | |

**Marion Warner Road Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800110439 | 4034 Warner Road | Marion | Marion Solar Farm - aka Marion CSD (A) | Marion CSD - High School & Bus Garage |

**Rensselaer County Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800115433 | 525 Campbell Ave | Troy | Campbell Ave  A & B | Van Renss. Manor Nursing Home (1) & (2) |
| 1800115434 | 525 Campbell Ave | Troy | | |
| 1800115435 | 1010 Luther Road | East Greenbush | Luther Road Self Storage | Van Renss. Manor Nursing Home (3) |
| 1800115436 | 950 US 9 | Castleton-On-Hudson | Reliable Properties B | Van Renss. Manor Nursing Home (4) |

**Schenectady Hetcheltown Road Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800116301 | Burdeck Street | Schenectady | Burdeck St - aka Burdeck Solar Farm A & B | Co. of Schenectady 7,8,9 |
| 1800116302 | Burdeck Street | Schenectady | | |

1

**Schuylerville CSD Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|-----|------|------|------|----------|
| 1800115067 | 1740 State Route 30 | Mayfield | Reet's Boat Works | Schuylerville CSD - High School |

**Scotia Glenville CSD Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|-----|------|------|------|----------|
| 1800113472 | 2839 State Route 9 | Lake George | English Brook | Scotia Glenville Bus Garage |
| 1800115063 | 151 Wade Road | Latham | Room to Spare (2) A&B aka Campbell Ave A & B | Scotia Glenville Sacandaga/Lincoln |
| 1800115064 | 151 Wade Road | Latham | | |
| 1800115065 | 5 Apollo Drive | Albany | Gary's Garage (2) B & C | Scotia Glenville Glendaal/Glen Worden |
| 1800115066 | 9 Apollo Drive | Albany | | |
| 1800118576 | 2330 Watt Street #21 | Schenectady | Crosstown G - Scotia Glenville Middle School | Scotia Glenville Middle School |

**Seward Pine Hill Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|-----|------|------|------|----------|
| 1800114487 | 1428 NY 9P | Saratoga Springs | Saratoga Boat N RV (2) - aka Saratoga Boat & RV B & C | S. Colonie CSD - Forest Park Lish Kill Middle School |
| 1800114488 | 1428 NY 9P | Saratoga Springs | | |

2

# EXHIBIT I

**Albany CSD Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800113470 | 32 North Street | Menands | Alb. Warehouse - aka Monolith Warehouse | Albany CSD - William Hackett |

**Cordell Road Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800109758 | 120 Cordell Road | Schenectady | Cordell Solar Farm | S. Colonie CSD - Highschool |

**Craryville Two Town Road Solar 1 LLC**

| Ls# | Project Location | | Site | Offtaker |
|---|---|---|---|---|
| 1800106797 | 120 Cordell Road | Schenectady | Craryville Solar Farm - aka Two Town A | Taconic Hills CSD |

**Craryville Two Town Road Solar 2 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800112921 | 74 Big Boom Road | Queensbury | Queensbury Boat N RV (1) - aka Queensbury Boat N RV (A) | Fort Plain CSD |

**Johnsonville Route 7 Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800106796 | 3042 State Route 7 | Johnsonville | Johnsonville Solar Farm | Albany CSD - Meyers Middle School |

**Mayfield CSD Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800113925 | 198 Troy Schenectady Road | Latham | Allstars (2) - aka All Stars Academy B & C | Mayfield CSD - Elementary/ Jr. Sr. High School |
| 1800113926 | 198 Troy Schenectady Road | Latham | | |

**Rensselaer County Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800118947 | 2299 State Route 30A | Johnstown | Checker's Out | Van Renss. Manor Nursing Home (11) |

**Schenectady Hetcheltown Road Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800105546 | 24 Hetcheltown Road | Schenectady | Schenectady Solar Farm (1) - aka Schenectady Solar A & B | County of Schenectady (1) |
| 1800106880 | 24 Hetcheltown Road | Schenectady | Schenectady Solar Farm (2) - aka Schenectady Solar A & B | County of Schenectady (2) (3) |
| 1800114185 | 1396 Hillside Ave | Niskayuna | Hillside Solar Farm - also known as Hillside A | Co. of Schenectady |
| 1800114186 | 1396 Hillside Ave | Niskayuna | Hillside Solar Farm - also known as Hillside B | Co. of Schenectady |
| 1800114187 | 1396 Hillside Ave | Niskayuna | Hillside Solar Farm - also known as Hillside C | Co. of Schenectady |
| 1800118079 | 1106 Wedgewood Heights | Rotterdam | Rotterdam Wedgewood A,B,C | County of Schenectady (4) (5) (6) |
| 1800118081 | 1106 Wedgewood Heights | Rotterdam | | |
| 1800118082 | 1106 Wedgewood Heights | Rotterdam | | |
| 1800119216 | 5850 Depot Road  aka 2 Van Buren Blvd | Altamont | Galesi P & Q - aka Galesi P | County of Schenectady (19) & (20) |
| 1800119218 | Rotterdam Corporate Park aka Rotterdam Industrial Park | Rotterdam | Galesi A, G, H, I - aka Galesi Bldg 3 | County of Schenectady (13) (16) (17) (18) |

**Schenectady Ice Rink Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800111380 | 15 Airport Road | Schenectady | Schenectady Ice Rink Exp | Schenectady Ice Rink Exp |

**Scotia Glenville CSD Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800113471 | 462 Marcellis Ave | Schenectady | Highland - aka Highland self storage | Scotia Glenville High School |

**Seward Pine Hill Solar 1 LLC**

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800113481 | 120 Gardnersville Road | Seward | Seward Solar Farm | S. Colonie CSD - Saddlewood Elementary |
| 1800113888 | 198 Troy Schenectady Road | Latham | Allstars (1) - aka All Stars Academy a | S. Colonie CSD - District Offices |
| 1800112973 | 74 Big Boom Road | Queensbury | Queensbury Boat N RV (2) - - aka Queensbury Boat N RV (B) & (C) | S. Colonie CSD - Roessleville & Sand Creek Elem. |
| 1800112974 | 74 Big Boom Road | Queensbury | | |

# **EXHIBIT 80**

**(April 9, 2019 Reaffirmation of Agreements)**

REAFFIRMATION OF
AGREEMENTS

In order to induce KeyBank National Association ("**KeyBank**") and Key Equipment Finance, a division of KeyBank ("**KEF**" and together with KeyBank the "**Key Parties**" and each individually a "**Key Party**") to execute and deliver that certain Amended and Restated Forbearance Agreement of even date herewith (the "**Agreement**"), among the Key Parties, Monolith Solar Associates LLC ("**Monolith Solar**"), Solar Management Group, LLC ("**Solar Management**"), SAE Sun and Earth Energy Incorporated ("**SAE**"), Schenectady Hetcheltown Road Solar 1 LLC ("**Schenectady Hetcheltown 1**"), Schenectady Ice Rink Solar 1 LLC ("**Ice Rink Solar**"), Craryville Two Town Road Solar 1 LLC ("**Craryville Solar 1**"), Craryville Two Town Road Solar 2 LLC ("**Craryville Solar 2**"), Marion Warner Road Solar 1 LLC ("**Marion Warner Solar**"), City of Albany Solar 1 LLC ("**Albany Solar**"), Scotia Glenville CSD Solar 1 LLC ("**Scotia Solar**"), Mayfield CSD Solar 1 LLC ("**Mayfield Solar**") Rensselaer County Solar 1 LLC ("**Rensselaer County 1**"), Seward Pine Hill Road Solar 1 LLC ("**Seward Pine 1**"), Schuylerville CSD Solar 1 LLC ("**Schuylerville 1**"), Johnsonville Route 7 Solar 1 LLC ("**Johnsonville Route 7**"), Albany CSD Solar 1 LLC ("**Albany CSD Solar**"), Granville CSD Solar 1 LLC ("**Granville CSD**"), and Cordell Road Solar 1 LLC ("**Cordell Road Solar**" and together with Monolith Solar, Solar Management, SAE, Schenectady Hetcheltown 1, Ice Rink Solar, Craryville Solar 1, Craryville Solar 2, Marion Warner Solar, Albany Solar, Scotia Solar, Mayfield Solar, Rensselaer County 1, Rensselaer County 2, Seward Pine 1, Schuylerville 1, Albany CSD Solar, Granville CSD, and Cordell Road Solar collectively, the "**Monolith Parties**" and each individually, a "**Monolith Party**"), each of the undersigned hereby consents to and acknowledges the terms of the Agreement, and reaffirms the undersigned's obligations (the "**Reaffirmation**"), as applicable, under each Commercial Guaranty to which it is a party that was delivered to KeyBank, and any other Agreements (as defined in the Agreement) to which the undersigned is a party (including, without limitation, any confession of judgment or cognovit provision pursuant thereto), as any of them may from time to time be amended, restated or otherwise modified (collectively, the "**Key Documents**" and each individually, a "**Key Document**"). A true and correct copy of the Agreement is attached hereto as Exhibit A. Except as otherwise defined herein, each capitalized term used herein shall have the meaning given to such term in the Agreement.

Each of the undersigned hereby agrees that following the execution and delivery of the Agreement (i) each Key Document shall remain in full force and effect, and (ii) all of the undersigned's obligations under the Key Documents shall remain in full force and effect. Each of the undersigned hereby grants a security interest in all of its assets and property, including, without limitation, the following:

all of its inventory, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, general intangibles, oil, gas, and other minerals before extraction, oil, gas, other minerals and accounts constituting as-extracted collateral, all fixtures, all timber to be cut, and all attachments accessions, accessories, fittings, tools, parts, repairs, supplies, and commingled

goods relating to the foregoing property and all additions, replacements of and substitution for all or any part of the foregoing property, all whether now existing or hereafter arising, whether now owned or hereafter acquired, and all products and proceeds of or relating to the foregoing property,

to secure the repayment of any and all liabilities and obligations owed by any one or more of the undersigned and the Monolith Parties, in each case, to any one or more of the Key Parties.

Each of the undersigned hereby represents and warrants to the Key Parties, and agrees with the Key Parties, that it has no claim or offset against, or defense or counterclaim to, any obligation or liability under the Key Documents, and the undersigned on behalf of itself and any party claiming through it, hereby discharges and releases, unconditionally, absolutely and forever, the Key Parties and all of their parents, subsidiaries and affiliates, and their respective past, present and future officers, directors, managers, members, partners, agents, attorneys, consultants, employees, representatives, successors and assigns, of and liabilities, judgments, rights, claims, cross claims, counterclaims, demands, suits, matters, obligations, damages, debts, losses, costs, defenses, actions and causes of action of every kind and description, arising under common law, rule, regulation or statute, whether arising under local, state, federal or foreign law, whether presently known or unknown, based upon, relating to or arising out of any act, omission, event or transaction whatsoever with the Key Parties, the Agreement, any of the Key Documents, or otherwise, such discharge and release being with full knowledge and understanding of the circumstances and effect thereof and after having consulted legal counsel with respect thereto.

Each of the undersigned further states that the financial accommodations granted to the Monolith Parties by the Key Parties, as evidenced by the Agreement, are good and valuable consideration to the direct pecuniary benefit of the undersigned.

This Reaffirmation shall be binding upon the undersigned and each of the undersigned's respective successors and assigns and shall inure to the benefit of the Key Parties and their successors and assigns. The successors and assigns of such parties shall include, without limitation, their respective conservators, receivers, trustees, debtors in possession or other estate representatives under any insolvency laws.

Each of the undersigned hereby agrees from time to time, as and when requested by the Key Parties, to execute and deliver or cause to be executed and delivered, all such documents, instruments and agreements and to take, or cause to be taken, such further or other action as the Key Parties may reasonably deem necessary in order to carry out the intent and purposes of this Reaffirmation and the Key Documents.

THIS REAFFIRMATION SHALL BE GOVERNED BY, CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF THAT WOULD REQUIRE THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION, EXCEPT AS REQUIRED BY MANDATORY PROVISIONS OF LAW AND EXCEPT TO THE EXTENT THAT THE VALIDITY AND PERFECTION OR THE PERFECTION AND THE EFFECT OF PERFECTION OR NON-PERFECTION OF THE SECURITY INTEREST REAFFIRMED HEREBY, OR REMEDIES HEREUNDER, IN RESPECT OF ANY

PARTICULAR COLLATERAL ARE GOVERNED BY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF NEW YORK.

EACH OF THE UNDERSIGNED HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS REAFFIRMATION, OR UNDER ANY AMENDMENT, WAIVER, CONSENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION HEREWITH, AND AGREES THAT ANY SUCH ACTION, PROCEEDING OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. EACH OF THE UNDERSIGNED CERTIFIES THAT NO OFFICER, REPRESENTATIVE, AGENT OR ATTORNEY OF THE KEY PARTIES HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE KEY PARTIES WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS. EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE AGENT ENTERING INTO THIS REAFFIRMATION.

Any provision of this Reaffirmation which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

This Reaffirmation, together with the existing Key Documents, reflects the entire understanding of the parties with respect to the transactions contemplated hereby and shall not be contradicted or qualified by any other agreement, oral or written, before the date hereof.

This Reaffirmation of Agreements is dated as of the date of the Agreement.

STEVE ERBY

_____

MONOLITH SOLAR ASSOCIATES, LLC[1]

MARK FOBARE

_____


Smithville Tarbell Road Solar 1 LLC
By: Monolith Solar Associates LLC, managing member

By: _____
Name:  MARK FOBARE
Title:  MANAGER

Load Zone A LLC

_____

Solar Energy Properties LLC

By: _____
Name:  MARK FOBARE
Title:  MANAGER

Load Zone B and C LLC

_____

[1] [as guarantor under the KEF Master Leases]

-3-

Load Zone A LLC
By:  Solar Energy Properties LLC, member

By:
Name:  Mark Fobare
Title:  Manager

Load Zone B and C LLC
By:  Solar Energy Properties LLC, member

By:
Name:  Mark Fobare
Title:  Manager

Load Zone D and E LLC
By:  Solar Energy Properties LLC, member

By:
Name:  Mark Fobare
Title:  Manager

Load Zone F LLC
By:  Solar Energy Properties LLC, member

By:
Name:  Mark Fobare
Title:  Manager

Route 7 Solar Farm 1 LLC
By: Solar Energy Properties LLC, member

By:
Name: Mark Fobare
Title: Manager

Amsterdam Reservoir Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

City of Albany Solar 2 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

Johnsonville Route 7 Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

Mayfield CSD Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

Russell Sage Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

Sand Lake Eastern Union Turnpike Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

Albany CSD Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

City of Albany Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

City of Troy Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

Marion Warner Road Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

Rensselaer County Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

Salem County Route 153 Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

Schenectady Hetcheltown Road Solar 1 LLC
By: Monolith Solar Associates LLC, member

By:
Name: Mark Fobare
Title: Manager

Schenectady Ice Rink Solar 1 LLC
By:  Monolith Solar Associates LLC, member

    By:
    Name:  Mark Fobare
    Title:  Manager

Scotia Glenville CSD Solar 1 LLC
By:  Monolith Solar Associates LLC, member

    By:
    Name:  Mark Fobare
    Title:  Manager

Solar Management Group 2013 LLC

    By:
    Name:  Mark Fobare
    Title:  Manager

Load Zone G LLC
By:  Solar Energy Properties LLC, member

    By:
    Name:  Mark Fobare
    Title:  Manager

Schenectady Hetcheltown Road Solar 2, LLC, fka
Manheim State Route 167 Solar 1 LLC
By:  Monolith Solar Associates LLC, member

    By:
    Name:  Mark Fobare
    Title:  Manager

Rensselaer County Solar 2 LLC, fka
MSAP 4 LLC
By:  Monolith Solar Associates LLC, member

    By:
    Name:  Mark Fobare
    Title:  Manager

Schuylerville CSD Solar 1 LLC
By:  Monolith Solar Associates LLC, member

    By:
    Name:  Mark Fobare
    Title:  Manager

Seward Pine Hill Road Solar 1 LLC
By:  Monolith Solar Associates LLC, member

    By:
    Name:  Mark Fobare
    Title:  Manager

Solar Vista LLC

    By:
    Name:  Mark Fobare
    Title:  Manager

Vista Management Group LLC
By:  Solar Energy Properties LLC, member

    By:
    Name:  Mark Fobare
    Title:  Manager

Seward Pine Hill Road Solar 2 LLC, fka
MSAP 3 LLC
By:  Monolith Solar Associates LLC, member

    By:
    Name:  Mark Fobare
    Title:  Manager

NYSDOT 1 LLC, fka
MSAP 5 LLC
By:  Monolith Solar Associates LLC, member

    By:
    Name:  Mark Fobare
    Title:  Manager

-6-

City of Albany Solar 3 LLC, fka .
MSAP 6 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

Key Solar 1 LLC, fka
MSAP 7 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

Community Solar 1 LLC, fka
MSAP 8 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

Albany CSD Solar 2 LLC, fka
MSAP 9 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

MSAP 10 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

MSAP 11 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

MSAP 12 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

MSAP 13 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

Granville CSD Solar 1 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

Cordell Road Solar 1 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

MSAP 14 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

MSAP 15 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

Craryville Two Town Road Solar 1 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

Craryville Two Town Road Solar 2 LLC
By:  Monolith Solar Associates LLC, member

    By: _____
    Name:  Mark Fobare
    Title:  Manager

## EXHIBIT A

(Amended and Restated Forbearance Agreement)

## AMENDED AND RESTATED FORBEARANCE AGREEMENT

This Amended and Restated Forbearance Agreement (the "**Forbearance Agreement**") is entered into as of April 9, 2019, by and between Monolith Solar Associates LLC ("**Monolith Solar**"), Solar Management Group, LLC ("**Solar Management**"), SAE Sun and Earth Energy Incorporated ("**SAE**"), Schenectady Hetcheltown Road Solar 1 LLC ("**Schenectady Hetcheltown 1**"), Schenectady Ice Rink Solar 1 LLC ("**Ice Rink Solar**"), Craryville Two Town Road Solar 1 LLC ("**Craryville Solar 1**"), Craryville Two Town Road Solar 2 LLC ("**Craryville Solar 2**"), Marion Warner Road Solar 1 LLC ("**Marion Warner Solar**"), City of Albany Solar 1 LLC ("**Albany Solar**"), Scotia Glenville CSD Solar 1 LLC ("**Scotia Solar**"), Mayfield CSD Solar 1 LLC ("**Mayfield Solar**"), Rensselaer County Solar 1 LLC ("**Rensselaer County 1**"), Seward Pine Hill Road Solar 1 LLC ("**Seward Pine 1**"), Schuylerville CSD Solar I LLC ("**Schuylerville 1**"), Albany CSD Solar 1 LLC ("**Albany CSD**"), Granville CSD Solar 1 LLC ("**Granville CSD**"), Cordell Road Solar 1 LLC ("**Cordell Road Solar**") and Johnsonville Route 7 Solar 1 LLC ("**Johnsonville Route 7**" and together with Monolith Solar, Solar Management, SAE, Schenectady Hetcheltown 1, Ice Rink Solar, Craryville Solar 1, Craryville Solar 2, Marion Warner Solar, Albany Solar, Scotia Solar, Mayfield Solar, Rensselaer County 1, Rensselaer County 2, Seward Pine 1, Schuylerville 1, Albany CSD, Granville CSD, and Cordell Road Solar collectively, the "**Monolith Parties**" and each a "**Monolith Party**") and KeyBank National Association ("**KeyBank**") and Key Equipment Finance, a division of KeyBank ("**KEF**" and together with KeyBank, collectively, the "**Key Parties**" and each individually a "**Key Party**"). The aforementioned parties are hereinafter referred to collectively as "**Parties**" and each individually a "**Party**").

## RECITALS

WHEREAS, the Monolith Parties and the Key Parties entered into that certain Forbearance Agreement, dated as of November 9, 2018, as amended by that certain First Amendment to Forbearance Agreement, dated as of December 21, 2018 (as amended, the "**Original Forbearance Agreement**");

WHEREAS, the Monolith Parties and the Key Parties desire to amend and restate the Original Forbearance Agreement;

WHEREAS, this Forbearance Agreement amends and restates in its entirety the Original Forbearance Agreement;

WHEREAS, one or more Monolith Parties, and KeyBank, KEF, or First Niagara Leasing, Inc., as applicable, entered into: (i) Loan Agreement, dated as of March 8, 2018, by and among Monolith Solar, Solar Management, SAE, and KeyBank (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Loan Agreement**"); (ii) Promissory Note, in the face amount of $5,000,000, dated as of March 8, 2018, from Monolith Solar, Solar Management, and SAE payable to the order of KeyBank (the "**Revolving Note**"); (iii) Promissory Note, in the face amount of $850,000, dated as of March 30, 2018, from Monolith Solar, Solar Management, and SAE payable to the order of KeyBank (the "**$850K Term Note**"); (iv) Promissory Note, in the face amount of $488,000, dated as of June 30, 2015, from Monolith Solar, Solar Management, and SAE, payable to the order of KeyBank (the

"**$488K Term Note**"); (v) Promissory Note, in the face amount of $1,110,529.00, from Monolith Solar payable to the order of KEF (the "**July 29, 2016 Promissory Note**" and together with the Revolving Note, the $850K Term Note and the June 29, 2016 Promissory Note, collectively, the "**Notes**") (vi) from Monolith Solar Master Equipment Lease Agreement, dated as of July 24, 2015, by and between KEF and Schenectady Hetcheltown 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 24, 2015 Lease Agreement**"); (vii) Master Equipment Lease Agreement, dated as of February 15, 2016, by and between KEF and Johnsonville Route 7 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 15, 2016 Lease Agreement**"); (viii) Master Equipment Lease Agreement, dated as of March 1, 2016, by and between KEF and Craryville Solar 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 1, 2016 Lease Agreement**"); (ix) Master Equipment Lease Agreement, dated as of November 16, 2016, by and between KEF and Ice Rink Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**November 16, 2016 Lease Agreement**"); (x) Master Equipment Lease Agreement, dated as of November 20, 2016, by and between KEF and Marion Warner Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**November 20, 2016 Lease Agreement**"); (xi) Master Equipment Lease Agreement, dated as of February 16, 2017, by and between KEF and Seward Pine 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 16, 2017 Lease Agreement**"); (xii) Master Equipment Lease Agreement, dated as of February 17, 2017, by and between KEF and Craryville Solar 2 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 17, 2017 Lease Agreement**"); (xiii) Master Equipment Lease Agreement, dated as of March 16, 2017, by and between KEF and Albany CSD (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Albany CSD Lease Agreement**"); (xiv) Master Equipment Lease Agreement, dated as of March 16, 2017, by and between KEF and Scotia Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Scotia Lease Agreement**"); (xv) Master Equipment Lease Agreement, dated as of April 14, 2017, by and between KEF and Mayfield Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**April 14, 2017 Lease Agreement**"); (xvi) Master Equipment Lease Agreement, dated as of May 3, 2017, by and between KEF and Albany Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**May 3, 2017 Lease Agreement**"); (xvii) Master Equipment Lease Agreement, dated as of June 27, 2017, by and between KEF and Schuylerville 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**June 27, 2017 Lease Agreement**"); (xviii) Master Equipment Lease Agreement, dated as of July 17, 2017, by and between KEF and Rensselaer County 1 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 17, 2017 Lease Agreement**"); (xix) Master Equipment Lease Agreement, dated as of August 4, 2017, by and between KEF and Cordell Road Solar (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**August 4, 2017 Lease Agreement**"); (xx) Master Equipment Lease Agreement, dated as of September 14, 2017, by and between KEF and Granville CSD (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**September 14, 2017 Lease Agreement**" and together with the July 24, 2015 Lease

Agreement, the February 15, 2016 Lease Agreement, the March 1, 2016 Lease Agreement, the November 16, 2016 Lease Agreement, the November 20, 2016 Lease Agreement, the February 16, 2017 Lease Agreement, the February 17, 2017 Lease Agreement, the March 16, 2017 Albany CSD Lease Agreement, the March 16, 2017 Scotia Lease Agreement, the April 14, 2017 Lease Agreement, the May 3, 2017 Lease Agreement, the June 27, 2017 Lease Agreement, the July 17, 2017 Lease Agreement, and the August 4, 2017 Lease Agreement, collectively, the "**Master Lease Agreements**"); and (xxi)  Equipment Financing Agreement No. 18804 by and between First Niagara Leasing, Inc. and SAE (the "**First Niagara Equipment Financing Agreement**" and together with the Loan Agreement, the Notes, the Master Lease Agreements and any other loan agreement or lease between KeyBank and/or KEF and any one or more Monolith Party, and all documents and other agreements related to any of the foregoing (including the Loan Documents as defined in the Loan Agreement and the guaranties executed in connection with the Notes, the Master Lease Agreements, and the First Niagara Equipment Financing Agreement), collectively, the "**Agreements**" and each individually an "**Agreement**");

WHEREAS, the Monolith Parties are in default of certain terms and conditions of the Agreements and is in receipt of the following related notices of default:

i        Notice of default dated August 31, 2018 issued by KEF regarding the July 24, 2015 Lease Agreements (the "**August 31 Notice of Default**");

ii       Notice of default dated September 4, 2018 issued by KeyBank regarding the Loan Agreement (the "**September 4 Notice of Default**");

iii      Notice of default dated October 3, 2018 issued by KeyBank regarding the Loan Agreement (the "**October 3 Notice of Default**" and together with the August 31 Notice of Default and the September 4 Notice of Default, the "**KeyBank/KEF Notices of Default**");

iv       Notice of Terminating Events dated January 29, 2019 issued by KeyBank and KEF regarding the Agreements (the "**January 29 Notice of Terminating Events**"); and

v        Notice of default issued by KEF, solely in its capacity as servicer for Hancock Whitney (as herein defined) dated October 11, 2018 (the "**Hancock Whitney Lease Notice of Default**") regarding (a) that certain Master Equipment Lease Agreement, dated as of May 18, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Schenectady Hetcheltown 2 Lease Agreement**") by and between Hancock Whitney Equipment Finance and Leasing, LLC ("**Hancock Whitney**") and Schenectady Hetcheltown 2; (b) that certain Master Equipment Lease Agreement, dated as of July 26, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Rensselaer County 2 Lease Agreement**") by and between Hancock Whitney and Rensselaer County 2; (c) that certain Master Equipment Lease Agreement, dated as of June 7, 2018 (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**Seward Pine 2 Lease Agreement**") by and between Hancock Whitney and Seward Pine 2; and (d) those certain Corporate Guaranties executed by Monolith Solar for the benefit of Hancock Whitney pursuant to which Monolith Solar guaranties certain obligations of Schenectady Hetcheltown 2, Rensselaer County 2 and Seward Pine 2, including the obligations of the foregoing under the Schenectady Hetcheltown 2 Lease Agreement, the

3

Rensselaer County 2 Lease Agreement and the Seward Pine 2 Lease Agreement (collectively, the "**Hancock Whitney Lease Agreements**" and each individually a "**Hancock Whitney Lease Agreement**"), and various Equipment Schedules incorporating the terms thereof, and other documents executed in connection therewith (collectively, with the Hancock Whitney Lease Agreements, the "**Hancock Whitney Lease Documents**");

WHEREAS, the Monolith Parties are currently negotiating a series of asset sales, all of which assets serve as collateral security for the Monolith Parties' respective obligations under the Agreements;

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Recitals.  Each Party acknowledges and confirms that the recitals set forth above are true and correct and that by this reference the recitals are incorporated into and made a part of the body of this Forbearance Agreement.

2.      Definitions.  Unless otherwise defined above or elsewhere in this Forbearance Agreement, capitalized terms used herein shall have the meanings ascribed to them in the Agreements.

3.      Scope of Forbearance Agreement.  For the avoidance of doubt, this Forbearance Agreement only relates to the Agreements.  This Forbearance Agreement does not relate to, alter or amend in any way, any other agreements, leases, documents or writings to which either Key Party is not a party, including without limitation the Hancock Whitney Lease Documents.  This Forbearance Agreement shall not limit, restrict or otherwise affect any rights or remedies of Hancock Whitney or its agent under the Hancock Whitney Lease Documents.

4.      Confirmation of Specified Defaults/Terminating Events.  The Monolith Parties acknowledge and agree that: (i) each of the defaults described in the KeyBank/KEF Notices of Default (the "**Specified Defaults**") constitutes a Default or an Event of Default, as identified and described therein, that has occurred and is continuing under the applicable Agreements as of the date hereof, (ii) each of the Terminating Events (as defined in the Original Forbearance Agreement) described in the January 29 Notice of Terminating Events  (the "**Specified Terminating Events**") constitutes a Terminating Event that has occurred and is continuing under the Original Forbearance Agreement, (iii) each Specified Default and each Specified Terminating Event is material in nature, (iv) the Key Parties provided, and the Monolith Parties received, proper notice of the Specified Defaults and the Specified Terminating Events, in each case, (v) KEF provided, and the Monolith Parties received, proper notice of the defaults that occurred under the Hancock Whitney Lease Documents as described in the Hancock Whitney Lease Notice of Default, and (vi) the Key Parties are entitled to exercise all of their respective rights and remedies under the Agreements and applicable law as a result of the occurrence and continuation of the Specified Defaults and the Specified Terminating Events.

5.      Acknowledgement of Continuation of Liabilities.   The obligations of the Monolith Parties under the Agreements shall, except as expressly modified herein, remain in full force and effect, and shall not be released, impaired, diminished or in any other way modified or

amended as a result of the execution and delivery of this Forbearance Agreement or by the agreements and undertakings of the Parties contained herein. Each Monolith Party hereby ratifies its respective obligations under and confirms each of the Agreements to which it is a party and the rights granted thereunder in favor of the applicable Key Party. Each Monolith Party hereby confirms that any and all security interests and liens granted pursuant to the Agreements continue to secure the obligations of the Monolith Parties under the Agreements, whether presently existing or hereafter arising, and that such security interests and liens remain in full force and effect.

6.    Forbearance; Forbearance Default Rights and Remedies.

(a)    Subject to the terms and conditions hereof, including without limitation, the satisfaction of the conditions precedent described in <u>Section 26</u> of this Forbearance Agreement, the Key Parties agree that until the earlier of (a) May 31, 2019 or (b) the occurrence of a Terminating Event (as defined in Section 6(b) herein) (the "**Forbearance Period**"), they will forbear from exercising their respective default-related rights and remedies against the Monolith Parties solely with respect to the Specified Defaults; provided, however:

(i)    from and including August 31, 2018 and at all times thereafter that any Default or Event of Default (including the Specified Defaults and the Specified Terminating Events) exists and is continuing under the applicable Agreement, the applicable default rates of interest provided in such applicable Agreement shall continue to apply;

(ii)    the Monolith Parties shall not request, pursuant to any Agreement or otherwise, any revolving loan or other loan from the Key Parties, and the Key Parties shall not have any obligation to make any loans of any kind or provide any financial accommodations to the Monolith Parties (except as otherwise expressly provided in this Forbearance Agreement) during the Forbearance Period;

(iii)    the Monolith Parties shall comply with each and every limitation, restriction or prohibition that would otherwise be effective or applicable under any Agreement during the continuance of any default or Event of Default (including the Specified Defaults and the Specified Terminating Events);

(iv)    the Monolith Parties shall pay within ten (10) Business Days after any written demand by the Key Parties, all reasonable costs and expenses of the Key Parties related to or in connection with the Original Forbearance Agreement, this Forbearance Agreement and any documents, agreements or instruments referred to herein, including, without limitation, the reasonable fees and expenses of the attorneys retained by the Key Parties and the allocated and documented cost of the Key Parties' internal counsel in connection with the negotiation and preparation of this Forbearance Agreement or the enforcement of the Key Parties' rights and remedies under this Forbearance Agreement, any other Agreement, and applicable law (collectively, the "**Fees and Expenses**"); provided, however, that the Monolith Parties hereby authorize the Key Parties to debit any one or more deposit accounts of the Monolith Parties maintained with KeyBank for the Fees and Expenses if the Monolith Parties fail to remit the Fees and Expenses to the Key Parties within the time provided in this section. Nothing in this Forbearance Agreement shall be intended or construed to hold the Key Parties

5

liable or responsible for any expense, liability or obligation of any kind or nature whatsoever (including, without limitation, attorneys' fees and expenses, other professionals' fees, including those of the Monolith Parties' CRO (as defined herein), and expenses, wages, salaries, payroll taxes, withholdings, benefits or other amounts payable) by or on behalf of the Monolith Parties; and

        (v)     nothing herein shall restrict, impair or otherwise affect the Key Parties' right to file, record, publish or deliver a notice of default.

        (b)     The obligation of the Key Parties to forbear from exercising their respective default-related rights and remedies against the Monolith Parties during the Forbearance Period, solely with respect to the Specified Defaults and the Specified Terminating Events, as provided herein, shall terminate upon the occurrence of any one or more of the following events (each, a "**Terminating Event**"):

        (i)     any Monolith Party shall have failed to comply in any material respect with any term, condition, or covenant set forth in this Forbearance Agreement; and/or

        (ii)     the occurrence of any Default or Event of Default under any Agreement other than the Specified Defaults; and/or

        (iii)     the failure of any representation or warranty made by any Monolith Party under or in connection with the Original Forbearance Agreement or this Forbearance Agreement, to be true and complete in all material respects as of the date when made or any other breach of any such representation or warranty; and/or

        (iv)     there shall be a negative variance of more than 10% between the actual cash collected and/or any line item of the disbursements, in each case, calculated on a rolling four week basis commencing with the four week period from March 1, 2019 through March 29, 2019, compared to the total forecasted cash collected and each forecasted line item of the disbursements, in each case, from the 13 Week Consolidated Cash Forecast for the same four week time period used to calculate the actual cash collected and each line item of the disbursements; and/or

        (v)     the repudiation and/or assertion of any defense by any Monolith Party with respect to the Original Forbearance Agreement, this Forbearance Agreement, any other Agreement or the pursuit of any claim by any Monolith Party against the Key Parties; and/or

        (vi)     any Monolith Party shall receive a notice of default from any party after the Forbearance Effective Date that any one or more of the Monolith Parties owes at least $75,000.00; and/or

        (vii)     a party shall commence a legal action of any kind after the Forbearance Effective Date against one or more Monolith Parties in which the plaintiff(s) seek damages of more than $50,000.00 or recovery or garnishment of or the execution against any property of any Monolith Party.  A schedule, in form and substance satisfactory to the Key

Parties, detailing all legal actions that have been filed against the Monolith Parties is attached hereto as **Exhibit A**; and/or

(viii)    the Monolith Parties shall fail to make any remittance to the Key Parties that is provided in the Initial Budget (as defined herein) by the date specified in the Initial Budget; and/or

(ix)    the Monolith Parties shall fail to remit to KeyBank the Holdback Amounts (as defined herein) received by the Monolith Parties, the amounts noted in <u>Section 14</u> of this Agreement, or any other amounts required to be remitted to one or more of the Key Parties in accordance with the terms of this Agreement.

(c)    Notwithstanding any provision of any Agreement to the contrary, upon the occurrence of a Terminating Event, which shall constitute a Default and an Event of Default under the Loan Agreement, the Notes, the Master Lease Agreements and other Agreements: (x) the agreement of the Key Parties hereunder to forbear from exercising their respective default-related rights and remedies shall immediately terminate without the requirement of any demand, presentment, protest, or notice of any kind, all of which the Monolith Parties hereby waive, and (y) the Key Parties may exercise any and all of their respective rights and remedies under the Agreements and applicable law including, without limitation, their respective rights and remedies with respect to the Specified Defaults.

(d)    Any agreement by the Key Parties to extend the Forbearance Period, if any, must be set forth in writing and signed by a duly authorized signatory of each Key Party.

(e)    The Monolith Parties acknowledge that neither of the Key Parties has made any assurances concerning (i) any possibility of an extension of the Forbearance Period, (ii) the manner in which or whether the Specified Defaults may be resolved or (iii) any additional forbearance, waiver, restructuring or other accommodations.

(f)    The Parties agree that the running of all statutes of limitation and the doctrine of laches applicable to all claims or causes of action that the Key Parties may be entitled to take or bring in order to enforce its rights and remedies against the Monolith Parties are, to the fullest extent permitted by law, tolled and suspended during the Forbearance Period.

7.    13 Week Consolidated Cash Forecast/Other Information.

(a)    The Monolith Parties shall deliver to the Key Parties, no later than 5:00 pm Eastern Time on the third business day of each month, a rolling 13 week consolidated cash forecast (the "**13 Week Consolidated Cash Forecast**") for the Monolith Parties, in form and substance acceptable to the Key Parties, which shall include cash forecasts that are strictly in conformance with the budget prepared by the Monolith Parties and delivered to the Key Parties that is attached hereto as **Exhibit B** (the "**Initial Budget**").  The Monolith Parties shall deliver no later than 5:00 pm Eastern Time on Tuesday of each week, a written report in form and substance acceptable to the Key Parties: (A) comparing actual results with forecasted results set forth in the Initial Budget, (B) identifying for each line item in the Initial Budget, any variance in excess of 10% (whether positive or negative) between the actual result for the week ending on the immediately preceding Friday compared to the forecasted result for such line item from the

7

immediately preceding four weeks, and (C) providing a detailed explanation for the cause of any variance. Each 13 Week Consolidated Cash Forecast and each written report this Section 7(a) requires the Monolith Parties to deliver to the Key Parties must be accompanied by a written statement executed by the CRO (as defined herein) of each Monolith Party as being true and correct to the best of his knowledge as and when delivered.

(b)     The Monolith Parties shall provide any other information that the Key Parties reasonably request relating to the Monolith Parties' respective businesses.

8.     Acknowledgement of Debt.   Each Monolith Party hereby acknowledges and confirms that as of the close of business on March 26, 2019 (a) Monolith Solar, Solar Management and SAE, and the Guarantors, are jointly and severally liable to KeyBank under the Loan Agreement, the related Loan Documents and the Notes in an aggregate approximate principal amount of $5,733,642.27, plus accrued but unpaid interest thereon, plus the costs and expenses of KeyBank incurred in connection with the obligations and indebtedness of Monolith Solar, Solar Management and SAE to KeyBank, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, internal counsel) incurred by KeyBank in the negotiation, preparation or enforcement of this Forbearance Agreement, and any documents, agreements or instruments referred to herein, all without offsets, counterclaims or defenses of any kind or nature whatsoever; (b) Monolith Solar and the Guarantors are liable to KEF under the July 29, 2016 Promissory Note and the related Loan Documents in an aggregate approximate principal amount of $821,251.98, plus accrued but unpaid interest thereon, plus the costs and expenses of KEF incurred in connection with the obligations and indebtedness of Monolith Solar and the Guarantors to KEF, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, internal counsel) incurred by KEF in the negotiation, preparation or enforcement of this Forbearance Agreement, and any documents, agreements or instruments referred to herein, all without offsets, counterclaims or defenses of any kind or nature whatsoever; (c) each of the Monolith Parties identified in the Master Leases and the Guarantors are liable to KEF, in each case, under each of the Master Lease Agreements, and the agreements related thereto, in an aggregate approximate amount of $357,705.17, plus the costs and expenses of KEF incurred in connection with the obligations and indebtedness of the Monolith Parties to KEF, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, internal counsel) incurred by KEF in the negotiation, preparation or enforcement of this Forbearance Agreement, and any documents, agreements or instruments referred to herein, all without offsets, counterclaims or defenses of any kind or nature whatsoever; and (d) SAE and the Guarantors are liable to KEF under the First Niagara Equipment Financing Agreement, and the agreements related thereto, in an aggregate approximate amount of $2,392.54, plus the costs and expenses of KEF incurred in connection with the obligations and indebtedness of the Monolith Parties to KEF, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, internal counsel) incurred by KEF in the negotiation, preparation or enforcement of this Forbearance Agreement, and any documents, agreements or instruments referred to herein, all without offsets, counterclaims or defenses of any kind or nature whatsoever.   The foregoing description of certain liabilities and obligations is not comprehensive or all inclusive, and the absence of a description of the other liabilities and obligations that exist does not constitute nor shall be deemed to constitute a waiver of them or any rights associated therewith.

9.      Chief Restructuring Officer.  The Monolith Parties shall continue to retain a chief restructuring officer (the "**CRO**") acceptable to the Key Parties pursuant to an engagement letter in form and substance satisfactory to the Key Parties (including, without limitation, the fees and expenses to be paid to the CRO by the Monolith Parties).  Dan Scouler, Sr., is acceptable to the Key Parties to serve as CRO.  For the avoidance of doubt, the Monolith Parties shall be responsible to pay all of the CRO's fees and expenses.  Among other things, the CRO shall:

(a)     have exclusive authority over the Monolith Parties' business operations including, without limitation, cash disbursements and other financial matters;

(b)     ensure that each of the Monolith Parties strictly adheres to and fully complies with the 13 Week Consolidated Cash Forecast;

(c)     ensure that all required deposits are made in the Offtaker Payment Restricted Account (as defined herein) or the Sale Proceeds Restricted Account (as defined herein) in accordance with this Agreement;

(d)     implement the sale(s) of the Specified Mechanically Complete Projects and the sale(s) of the Specified Development Projects as referenced in Section 10 of this Agreement; and

(e)     negotiate and implement the sale(s) of other solar projects or other assets on which the Key Parties have agreed to release their liens.

10.     Solar Projects.

(a)     The Monolith Parties shall deliver to the Key Parties: (i) on or before April 10, 2019, a fully-executed, binding and enforceable agreement, in form and substance satisfactory to the Key Parties, pursuant to which Monolith shall sell the substantially completed 5.0 MW solar projects identified on **Exhibit C** hereto (collectively, the "**Specified Mechanically Complete Projects**"), and (ii) on or before April 22, 2019, a fully-executed, binding and enforceable agreement, in form and substance satisfactory to the Key Parties, providing for the disposition of the solar projects in development as identified on, or substantially similar to, those listed on **Exhibit D** hereto (collectively, the "**Specified Development Projects**").  The Monolith Parties hereby represent that all of the solar projects of the Monolith Parties, whether complete or in some stage of development, are identified on **Exhibit E** hereto.

(b)     The Monolith Parties shall cause each of the Specified Mechanically Complete Projects identified in the completion schedule attached hereto as **Exhibit F** (the "**Completion Schedule**") to be fully completed and ready for purchase by the specified full completion date set forth in the Completion Schedule for each such Mechanically Complete Project.  In addition, the Monolith Parties shall not fail to fully complete on any given calendar day the work necessary to be performed on such day, in each case, in order for the Monolith Parties to be able to timely meet the applicable full completion date set forth in the Completion Schedule for each Specified Mechanically Complete Project.  In the event the Monolith Parties at any time are behind schedule with respect to the completion of work by more than one calendar day for any one for more of the Specified Mechanically Complete Projects, the Monolith Parties shall immediately report such failure to the Key Parties in writing.  For greater certainty, any

failure by the Monolith Parties to fully comply with the foregoing obligations shall constitute a Terminating Event.

11.    Cooperation with the Key Parties' Consultant.

(a)    The Monolith Parties shall cooperate with, and provide access to the third party-contractor or consultant retained by the Key Parties or counsel to the Key Parties (the "**Key Parties' Consultant**").  Among other things, the Monolith Parties shall provide the Key Parties' Consultant with (a) access to the solar projects that are subject to the Master Lease Agreements within five (5) Business Days after written request from the Key Parties or counsel to the Key Parties, to enable the Key Parties' Consultant to conduct an on-site review and inspection of each solar project, including all equipment located at each solar project (b) reasonable assistance in conducting each on-site review, (c) access to data and other information related to any of the solar projects, and (d) such other services and information as the Key Parties' Consultant may reasonably request.

(b)    The Monolith Parties acknowledge and agree that they shall reimburse the Key Parties for all of the reasonable fees and expenses of the Key Parties' Consultant (the "**Key Parties' Consultant Fees**").  The Monolith Parties shall reimburse the Key Parties for the Key Parties' Consultant Fees within ten (10) Business Days after receiving any written demand from the Key Parties for reimbursement.  If the Monolith Parties fail to remit the Key Parties' Consultant Fees to the Key Parties within the time provided in this section, the Monolith Parties hereby authorize the Key Parties to debit any one or more deposit accounts of the Monolith Parties maintained with KeyBank for reimbursement of the Key Parties' Consultant Fees.

12.    Monolith Parties Assets.  Without the prior written approval of the Key Parties, the Monolith Parties shall not convey, sell or otherwise dispose of any of their property or assets or of any Monolith Party's interest therein.  Each of the Monolith Parties hereby re-grants and grants a security interest in all of its assets and property, including, without limitation, the following:

all of its inventory, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, general intangibles, oil, gas, and other minerals before extraction, oil, gas, other minerals and accounts constituting as-extracted collateral, all fixtures, all timber to be cut, and all attachments accessions, accessories, fittings, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property and all additions, replacements of and substitution for all or any part of the foregoing property, all whether now existing or hereafter arising, whether now owned or hereafter acquired, and all products and proceeds of or relating to the foregoing property,

to secure the repayment of any and all liabilities and obligations owed by any one or more of the Monolith Parties to any one or more of the Key Parties.

13.    Note/Loan Repayments.  Without the prior written approval of the Key Parties, the Monolith Parties shall not agree or otherwise take any action to discount or otherwise reduce

the obligations or indebtedness owed to the Monolith Parties pursuant to any note, loan agreement or other financial instrument or arrangement.

14.     Lease Payments.  Notwithstanding anything to the contrary set forth in the Key Lease Agreements (as herein defined), during the Forbearance Period any payments received and processed by KEF during the period commencing at 9:00 am Eastern Time on February 15, 2019 and ending upon the expiration of the Forbearance Period shall be applied to past-due obligations under the Key Lease Agreements in order of maturity, excluding late fees, which fees shall remain outstanding and payable upon demand by KEF.  The Monolith Parties shall remit to KEF, on or before April 15, 2019, a payment in respect of each Key Lease Agreement in an aggregate amount equal to the sum of the outstanding past-due obligations under such Key Lease Agreement for payments due prior to December 1, 2018 (the "**April 15, 2019 Payment**"), excluding late fees, which fees shall remain outstanding and payable upon demand by KEF.  The Monolith Parties have requested KeyBank's consent to the Monolith Parties' sale of certain residential accounts receivable in an amount not to exceed the April 15, 2019 Payment. KeyBank consents to the sale of certain residential accounts receivable, in each case for a sale price that is not less than 70% of the full amount of the residential account receivable, only to the extent necessary to generate aggregate sale proceeds sufficient to satisfy the April 15, 2019 Payment.  For the avoidance of doubt, the Monolith Parties shall not convey, sell or otherwise dispose of any other residential accounts receivable.  On or before May 15, 2019, KeyBank shall transfer from the Sale Proceeds Restricted Account to KEF an amount equal to the sum of the outstanding past-due obligations under each Key Lease Agreement for payments due prior to January 1, 2019, excluding late fees, which fees shall remain outstanding and payable upon demand by KEF.

15.     Restricted Accounts.

(a)     Within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties shall establish a restricted deposit account with KeyBank ("**Offtaker Payment Restricted Account**"), on terms acceptable to the Key Parties, for remittances from power offtakers or other customers (the "**Offtakers**") under any power purchase agreement subject to the Master Lease Agreements or any other lease between the Key Parties and one or more Monolith Parties (collectively, the "**Key Lease Agreements**" and each individually, a "**Key Lease Agreement**"). The Monolith Parties will send remittance advices directing the Offtakers to remit all future payments due under a power purchase agreement subject to any Key Lease Agreement to the Offtaker Payment Restricted Account.  The funds deposited in the Offtaker Payment Restricted Account shall be under the sole and exclusive control of the Key Parties pursuant to an agreement in form and substance satisfactory to the Key Parties, and shall be used to satisfy amounts due and payable under the Key Lease Agreements as provided in such agreement.

(b)     Within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties shall establish a restricted deposit account with KeyBank ("**Sale Proceeds Restricted Account**"), on terms acceptable to the Key Parties, for the deposit of the proceeds of the sale of the Specified Mechanically Complete Projects, the Specified Development Projects and other assets and property of any of the Monolith Parties. The Monolith Parties agree that all collections and other proceeds of Collateral or the Equipment including, without limitation, the

11

proceeds from the sale of (a) the Specified Mechanically Complete Projects, (b) the Specified Development Projects, and (c) any other projects shall be deposited into the Sale Proceeds Restricted Account immediately following receipt by any Monolith Party. During the Forbearance Period, the funds deposited in the Sale Proceeds Restricted Account may be used by the Monolith Parties for disbursements strictly in accordance with the 13 Week Consolidated Cash Forecast and the Initial Budget, with all remaining funds held in the Sale Proceeds Restricted Account unless otherwise agreed to in writing by the Key Parties; *provided, however*, that the Monolith Parties acknowledge and agree that, notwithstanding the disbursement schedule for the sale proceeds of each of the Specified Mechanically Complete Projects set forth in the Initial Budget, the actual remittances/disbursements to the Key Parties, on one hand, and to GMES, on the other hand, shall be modified to reflect a distribution construct based upon a pro rata sharing of the sale proceeds among the Key Parties and GMES that is calculated based upon $3,000,000 for the Key Parties and $881,000 for GMES. The Monolith Parties hereby grant the Key Parties a security interest in the Sale Proceeds Restricted Account to secure the obligations of the Monolith Parties, in each case, under the Agreements.

16.    Notice of Default/Terminating Event.  The Monolith Parties shall promptly, and in any event within one Business Day, notify the Key Parties in writing of the existence of any Default or Event of Default under any Agreement (other than the Specified Defaults) or any Terminating Event under this Forbearance Agreement of which any of the Monolith Parties becomes aware.

17.    Deposit Accounts.  Within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties will execute and deliver deposit account control agreements, in form and substance satisfactory to the Key Parties, for all deposit accounts of the Monolith Parties including such accounts maintained with KeyBank.  Except for the amounts which Section 15 requires the Monolith Parties to deposit in the Offtaker Payment Restricted Account and Sale Proceeds Restricted Account, in each case, the Monolith Parties shall deposit in deposit accounts maintained with KeyBank immediately upon receipt all cash or other funds received by the Monolith Parties, directly or indirectly, in connection with the operation of its business; *provided, however*, that cash or other funds that are required to be deposited in a deposit account with another financial institution pursuant to a valid and enforceable agreement to which one or more Monolith Party is party as of the date of the Original Forbearance Agreement and which deposit account is subject to a duly executed and delivered deposit account control agreement, in form and substance satisfactory to the Key Parties, shall only be subject to this requirement to the extent of cash or other funds in such other account that the Monolith Parties have the right to withdraw, transfer, or otherwise utilize.  The Monolith Parties hereby grant the Key Parties a security interest in all deposit accounts to secure the obligations of the Monolith Parties, in each case, under the Agreements.

18.    Payments/Deposits.  The Monolith Parties shall not (i) make any payment, incur any liability or provide other consideration to any person or entity, for the purchase, acquisition, redemption, repurchase, payment or retirement of any capital stock, membership interest, or other equity interest of any Monolith Party or as a dividend, return of capital or other distribution in respect of any Monolith Party's capital stock, membership interest, or other equity interest, (ii) satisfy any federal or state tax obligations of any Monolith Party's shareholders or members unless otherwise agreed to in advance in writing by the Key Parties, (iii) increase the amount of

12

total compensation (including, without limitation, wages, insurance and other fringe benefits) in effect as of November 2, 2018 of any officer, manager, or member of any Monolith Party, or (iv), except as provided in Section 17 above, deposit any funds payable to or received by any Monolith Party, or hereafter received by any Monolith Party in an account (deposit, securities or otherwise) maintained at a bank or other financial institution other than KeyBank.

19.    Payments Limited to 13 Week Consolidated Cash Forecast.  The Monolith Parties shall not make any payment or distribution of any kind during any period that is not expressly provided for in the 13 Week Consolidated Cash Forecast for such period.

20.    Security Interest in Vehicles.  Unless otherwise agreed to in writing by the KEF Parties, within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties shall have delivered to the Key Parties evidence, in form and detail satisfactory to the Key Parties, of the proper notation of the Key Parties' first priority security interest and duly perfected lien on the titles of all vehicles owned by the Monolith Parties that are not otherwise encumbered by an existing lien or security interest. For the vehicles owned by the Monolith Parties that are encumbered by an existing lien or security interest, the Monolith Parties shall not later than within three (3) Business Days of the Forbearance Effective Date unless otherwise agreed to in writing by the KEF Parties, to the extent permissible, deliver to the Key Parties evidence, in form and detail satisfactory to the Key Parties, of the proper notation of the Key Parties' second priority security interest and duly perfected lien on such vehicles.  The vehicles that KeyBank shall have a security interest on are identified on **Exhibit G**.

21.    Security Interest in Real Property.  Within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties shall have delivered to the Key Parties mortgages (or the equivalent), in form and detail satisfactory to the Key Parties, granting the Key Parties a first priority security interest with respect to all real property owned by the Monolith Parties.

22.    Insurance Premiums.  Within three (3) Business Days of the Forbearance Effective Date, the Monolith Parties shall have assigned to the Key Parties all of the Monolith Parties' rights to insurance proceeds under all insurance policies currently in existence, including without limitation any insurance payable by reason of loss or damage to the Collateral or the Equipment, and any return or unearned premium upon any cancellation of insurance, pursuant to assignment documentation in form and substance satisfactory to the Key Parties. In the event that the Monolith Parties receive any insurance proceeds or unearned premiums prior to April 5, 2019, the Monolith Parties shall immediately deposit such insurance proceeds or unearned premiums into the Sale Proceeds Restricted Account.  Notwithstanding anything to the contrary in this Section 22, during the Forbearance Period the Monolith Parties shall be entitled to use for business operations, strictly in accordance with the Initial Budget and the terms of this Agreement, 50% of all unearned premiums actually refunded to the Monolith Parties; provided, however, that upon the occurrence of a Terminating Event, the Monolith Parties shall not be entitled to use any portion of the refund.  All unearned premiums that are received by the Monolith Parties shall be deposited into the Sale Proceeds Restricted Account.

23.    Solar Projects. The Monolith Parties shall complete an evaluation and assessment of the performance of each of the solar projects that are the subject to one or more of the KEF

Lease Agreements (collectively, the "**KEF Solar Projects**") and properly address in accordance with generally accepted industry standards any issues that are compromising or may compromise the power generation of such solar project, including, without limitation, any component or equipment failures or failure to perform proper maintenance, in order to achieve actual power production necessary to meet the contractual production requirements owed to Offtakers with respect to such solar project (the "**Solar Project Assessment and Power Restoration Process**") in accordance with the following schedule. Not later than April 8, 2019, the Monolith Parties shall have completed the Solar Project Assessment and Power Restoration Process for the KEF Solar Projects identified on **Exhibit H**. Not later than April 15, 2019, the Monolith Parties shall have completed the Solar Project Assessment and Restoration Process for the KEF Solar Projects identified on **Exhibit I**.

24.    Holdback Amounts.  The Monolith Parties shall promptly, and in any event within two (2) Business Days, deposit into the Sale Proceeds Restricted Account any Holdback Amount (as defined in the GMES APA) that the Monolith Parties receive pursuant to the Asset Purchase Agreement among Monolith Solar Associates LLC, Solar Energy Properties, LLC, GMES Solar 2 LLC and Green Mountain Electric Supply, Inc. (the "**GMES APA**").

25.    Weekly Written Report Regarding Compliance with Completion Schedule.  On or before 5:00 pm Eastern Time on Tuesday of each week, commencing with the first Tuesday following the Forbearance Effective Date and continuing each week thereafter, the CRO shall provide the Key Parties with a written report, in form and substance satisfactory to the Key Parties, containing (a) a description of the work completed in the previous week on the Specified Mechanically Complete Projects, and (b) a statement that the Monolith Parties are in full compliance with and will complete each Specified Mechanically Complete Project by the applicable full completion date set forth in the Completion Schedule, or (c) if the Monolith Parties are not in compliance with or have failed to fully complete the necessary work at any given point in time in order to be able to complete each Specified Mechanically Complete Project by the applicable full completion date set forth in the Completion Schedule, (i) a description of the necessary work that the Monolith Parties failed to complete in accordance with the Completion Schedule, (ii) an explanation of why the Monolith Parties failed to complete the necessary work, and (iii) a plan detailing how the Monolith Parties plan to complete the necessary work that was not completed in accordance with the Completion Schedule.

26.    Conditions Precedent to Effectiveness.

This Forbearance Agreement and the agreement of the Key Parties described herein will not be effective unless and until all of the following have occurred or been satisfied on or before the date of this Forbearance Agreement, or such later time as the Key Parties may agree, in writing, in their sole discretion (the "**Forbearance Effective Date**"):

(a)    the Monolith Parties shall have executed and delivered this Agreement;

(b)    the Monolith Parties shall have delivered to the Key Parties the Initial Budget, which shall be in form and substance satisfactory to the Key Parties;

14

(c)     no Default or Event of Default (other than the Specified Defaults and the Specified Terminating Events) or Material Adverse Change shall have occurred; and

(d)     all representations and warranties of the Monolith Parties contained in this Agreement shall be true and correct in all material respects.

27.     <u>Representations and Warranties</u>.

(a)     The Monolith Parties hereby acknowledge and confirm that (i) all of the Recitals set forth above are true and correct; (ii) the Agreements are in full force and effect and are enforceable in accordance with their respective terms; (iii) the Monolith Parties do not have any claims, defenses, causes of action, counterclaims or offsets against the Key Parties or any of their respective current or former officers, employees, agents, representatives, consultants, directors, parents, subsidiaries, affiliates, members, managers, consultants or attorneys of any kind or nature whatsoever; (iv) <u>Exhibit A</u> lists all legal actions that have been commenced against one or more of the Monolith Parties that have not been dismissed, settled or otherwise resolved;  and (v) as of the date hereof, all liens, security interests, assignments and pledges encumbering the Collateral or the Equipment, created pursuant to and/or referred to in the Agreements, are valid and enforceable first priority liens, security interests, assignments and pledges, continue unimpaired, are in full force and effect and secure and shall continue to secure all of the obligations described in the respective instruments in which such interests were granted;

(b)     The Monolith Parties hereby further represent and warrant that:

(i)     After giving effect to this Forbearance Agreement, and except for those matters constituting Specified Defaults, all of the respective representations and warranties of the Monolith Parties in the Agreements are true and complete in all material respects on the date hereof with the same force and effect as if made on such date;

(ii)     Except for the Specified Defaults and the Specified Terminating Events, no Default, violation or Event of Default under the Agreements (or Terminating Event under the Original Forbearance Agreement), and no event which, with the passage of time or the giving of notice, or both, could constitute any such Default, violation or Event of Default (or Terminating Event under the Original Forbearance Agreement), has occurred and is continuing;

(iii)     After giving effect to this Forbearance Agreement, no representation or warranty by the Monolith Parties contained in this Forbearance Agreement or any document, agreement or instrument to be executed or delivered herewith contains any untrue statements of material fact or omits to state a material fact necessary to make such representation or warranty not misleading in light of the circumstances under which it was made;

(iv)     The execution, delivery and performance of this Forbearance Agreement, and any document, agreement or instrument to be executed or delivered herewith, by the Monolith Parties will not result in the violation of any mortgage, indenture, material contract, instrument, agreement, judgment, decree, order, statute, rule or regulation to which any Monolith Party is subject or by which or any of its respective property is bound;

15

(v)     This Forbearance Agreement and the documents, agreements and instruments to be executed or delivered herewith constitute the legal, valid and binding obligations of the Monolith Parties, are enforceable in accordance with their terms and have been duly authorized, executed and delivered by the Monolith Parties, except as the enforceability hereof or thereof may be limited by bankruptcy, insolvency, moratorium, and other similar laws affecting creditors' rights generally and by general principles of equity, whether considered in a proceeding at law or in equity;

(vi)     No consents or approvals are required in connection with the execution, delivery and performance by the Monolith Parties of this Forbearance Agreement or any documents, agreements or instruments to be executed or delivered herewith that have not been previously obtained;

(vii)     The Monolith Parties have the corporate power and authority to execute, deliver and carry out the terms and provisions of this Forbearance Agreement and the transactions contemplated hereby and have taken or caused to be taken all necessary corporate action to authorize the execution, delivery and performance of this Forbearance Agreement and the transactions contemplated hereby; and

(viii)     There are no actions, suits or proceedings pending or, to the knowledge of any of the Monolith Parties, threatened with respect to any of the Monolith Parties (A) that have had or could have, if adversely decided, a Material Adverse Change, or (B) that question the validity or enforceability of any of the Agreements or of any action taken by the Key Parties.

(c)     The Monolith Parties hereby expressly acknowledge and confirm that the foregoing representations and warranties are being specifically relied upon by the Key Parties as a material inducement to the Key Parties to enter into this Forbearance Agreement and, subject to and in accordance with the terms and conditions of this Agreement, to forbear from exercising the Key Parties' respective rights and remedies during the Forbearance Period, other than the rights and remedies described in this Forbearance Agreement including, without limitation, those set forth in <u>Section 6</u> of this Forbearance Agreement.   The foregoing representations and warranties shall survive the execution and delivery of this Forbearance Agreement.

28.   <u>Miscellaneous</u>

(a)     <u>Disgorgement</u>.   If the Key Parties are, for any reason, compelled by a court or other tribunal of competent jurisdiction to surrender or disgorge any payment, interest or other consideration described hereunder to any person because the same is determined to be void or voidable as a preference, fraudulent conveyance, impermissible set-off or for any other reason, such indebtedness or part thereof intended to be satisfied by virtue of such payment, interest or other consideration shall be revived and continue as if such payment, interest or other consideration had not been received by the Key Parties, and the Monolith Parties shall be liable to, and shall indemnify, defend (engaging respective counsel acceptable to the Key Parties, as applicable) and hold the Key Parties harmless for, the amount of such payment or interest surrendered or disgorged.   The provisions of this <u>Section 28</u> shall survive execution and delivery of this Forbearance Agreement.

16

(b)     <u>No Defenses; Reliance</u>.

(i)     The Monolith Parties hereby acknowledge and confirm that there are no existing defenses, claims, counterclaims or rights of recoupment or set-off against the Key Parties in connection with the obligations and indebtedness owed to the Key Parties under the Agreements or in connection with the negotiation, preparation, execution, performance or any other matters relating to the Agreements.

(ii)     The Monolith Parties further acknowledge and agree that, notwithstanding anything to the contrary set forth in this Agreement, the Key Parties do not have, nor shall have, an obligation to: (a) amend any one or more of the Agreements or otherwise further restructure the obligations described therein; (b) make any further loans, advances or extension of credit to or for the benefit of the Monolith Parties, (c) extend the Forbearance Period; (d) refrain from terminating the Forbearance Period upon the occurrence of any Terminating Event or (e) enter into any other instruments, agreements or documents regarding any of the same with the Monolith Parties, and that neither the Key Parties nor and any of their respective representatives have made any agreements with, or commitments or representations or warranties to, the Monolith Parties (either in writing or orally), other than as expressly stated in this Forbearance Agreement.

(iii)     The Monolith Parties expressly understand and further agree that the Key Parties are relying on all terms, covenants, conditions, warranties and representations set forth in this Forbearance Agreement as a material inducement to the Key Parties to enter into this Agreement.

(c)     <u>Cumulative Remedies; Non-Waiver</u>.

(i)     Except as otherwise specifically provided in this Forbearance Agreement, the rights, powers, authorities, remedies, interests and benefits conferred upon the Key Parties by and as provided in this Forbearance Agreement are intended to supplement, and be in addition to (and shall not in any way replace, supersede, amend, limit or restrict), the rights, powers, authorities, remedies, interests, and benefits conferred by the Agreements.

(ii)     Except as otherwise specifically provided in this Forbearance Agreement, each Key Party's execution of or performance under this Agreement does not (and it shall not be construed so as to) waive, relinquish, restrict or limit in any way any of the respective rights, remedies, claims or causes of action that each Key Party has or may have under or with respect to the Agreements or applicable law (all of which are expressly reserved) regardless of whether any of the foregoing relate to or arise out of acts, omissions, events or transactions occurring before or after the date hereof.  Except as otherwise specifically provided in this Forbearance Agreement, each Key Party hereby expressly reserves all rights to take any and all actions, and exercise any and all remedies, authorized under the Agreements or at law or in equity as a result of or with respect to the occurrence and continuance of any defaults, violations or events of default that have or may have heretofore occurred thereunder and any defaults, violations or events of default that may hereafter occur or exist thereunder.  Nothing contained herein, and no action taken by either Key Party pursuant hereto or as provided herein, shall be deemed to be a waiver of any of such defaults, violations or events of default.

17

(iii)     No delay on the part of either Key Party in the exercise of any power, right or remedy under this Forbearance Agreement or the Agreements at any time shall operate as a waiver thereof, and no single or partial exercise by either Key Party of any power, right or remedy shall preclude other or further exercise thereof or the exercise of any other power, right or remedy.

(d)     Release and Acknowledgement.  In consideration of the accommodations being made available by the Key Parties to or for the benefit of the Monolith Parties under this Forbearance Agreement, including, without limitation, the forbearance on the part of the Key Parties:

(i)     The Monolith Parties, for themselves and their present, former and future agents, employees, representatives, officers, directors, shareholders, parents, affiliates, members, managers, subsidiaries, successors and assigns, do hereby unconditionally remise, release, waive and discharge each Key Party and their present, former and future shareholders, parents, subsidiaries, affiliates, predecessors in interest, members, managers, officers, directors, servants, agents, employees, financial advisors, consultants, representatives, attorneys and their respective successors and assigns (collectively, "**Released Parties**", and individually, a "**Released Party**") of and from any and all claims, counterclaims, demands, actions and causes of action of any nature whatsoever, including any right of set-off, whether at law or in equity, including, without limitation, any of the foregoing arising out of or relating to any of the Agreements or any other agreements between any Monolith Party and any Released Party, including without limitation any agreements in which a Released Party is a purchaser of a solar project, any acts or omissions of any Released Party in connection therewith (including, without limitation, extensions of credit and other financial accommodations made or not made to the Monolith Parties, the transactions described in this Forbearance Agreement, the return of any checks, or any proposed financing arrangements to or for the benefit of the Monolith Parties, or any entities owned by or under the control of the Monolith Parties, which they now have or hereafter can or may have for or by reason of any cause, matter or thing whatsoever, against any of the Released Parties, from the beginning of the world to the date hereof;

(e)     Waivers.  In consideration of the accommodations being made available by the Key Parties to or for the benefit of the Monolith Parties under this Forbearance Agreement, including, without limitation, the forbearance on the part of the Key Parties:

(i)     The Monolith Parties hereby waive the benefit of any theory or statute requiring the marshaling of assets or other similar legal doctrine and agree that the Key Parties may exercise their respective rights against the Collateral or the Equipment and apply the proceeds thereof to any of the obligations and indebtedness under the Agreements in accordance with the terms thereof, as aforesaid.

(ii)     The Monolith Parties hereby agree that, to the extent the Monolith Parties would otherwise have a right of notification of sale under Section 9-611 of the Uniform Commercial Code as enacted in any applicable state, ten (10) days' prior written notice of any sale of the Collateral or the Equipment shall be sufficient to satisfy any such notice requirement under Sections 9-611 and 9-612 of the Uniform Commercial Code.  The Monolith Parties hereby renounce any further right of notification of sale that the Monolith Parties may have under

Section 9-611 of the Uniform Commercial Code. The Monolith Parties acknowledge that this renunciation is intended to be a renunciation after default, as described in Section 9-624 of the Uniform Commercial Code.

(f)    Relationship. The Monolith Parties agree that the relationship between the Key Parties, on one hand, and the Monolith Parties, on the other hand, is that of creditor and debtor and not that of partners or joint ventures. This Forbearance Agreement does not constitute a partnership agreement or any other association between either Key Party and the Monolith Parties. The Monolith Parties acknowledge that the Key Parties have acted at all times only as creditors to the Monolith Parties, in each case, within the normal and usual scope of the activities normally undertaken by a creditor and in no event has either Key Party attempted to exercise any control over the Monolith Parties or their respective businesses or affairs. The Monolith Parties further acknowledge that the Key Parties have not taken or failed to take any action under or in connection with their respective rights under the Agreements that in any way or to any extent have interfered with or adversely affect the Monolith Parties' ownership of the Collateral or the Equipment.

(g)    Notices. All notices, requests or other communications required or desired to be given hereunder shall be in writing and, if to the Monolith Parties, sent by facsimile or overnight or certified mail, return receipt requested, postage prepaid, addressed to it at the addresses specified on the signature pages of this Forbearance Agreement, and, if to the Key Parties, sent by facsimile or overnight or certified mail, return receipt requested, postage prepaid, addressed to it at the respective addresses specified on the signature pages of this Forbearance Agreement, or as to each Party, at such other address as shall be designated by such Party in written notice to the other parties. All notices, statements, requests, demands and other communications provided for hereunder shall be deemed to be given or made when delivered or three (3) Business Days after being deposited in the mails with postage prepaid by overnight or certified mail, addressed as aforesaid, or sent by facsimile with telephonic confirmation of receipt.

(h)    No Third Party Beneficiaries. This Agreement is made and entered into for the sole protection and benefit of the Monolith Parties, the Key Parties and the Released Parties, and no other person or entity shall have any right of action hereon, right to claim any right or benefit from the terms contained herein, or be deemed a third party beneficiary hereunder.

(i)    Severability. Whenever possible, each provision of this Forbearance Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Forbearance Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement, it being the Parties' intention that each and every provision of this Forbearance Agreement be enforced to the fullest extent permitted by applicable law.

(j)    Further Assurances. At the Key Parties' reasonable request, the Monolith Parties shall promptly execute any other document to evidence or further the intent of the Monolith Parties or the Key Parties as set forth herein.

(k)     Counterparts.   This Forbearance Agreement may be executed by the Parties in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.  The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by other parties to this Forbearance Agreement attached thereto.  Delivery of an executed counterpart of the signature page by telecopier or electronic mail shall be as effective as delivery of an original manually executed counterpart.

(l)     Descriptive Headings; Construction.   The headings in this Forbearance Agreement are intended for convenient references only and shall not in any way limit, amplify or be used in interpreting the terms of this Forbearance Agreement.  The masculine, feminine or neutral gender in the singular or plural shall be deemed to include the others wherever the context of this Agreement so requires.  This Forbearance Agreement shall not be construed against any Party hereto as the drafters of this Forbearance Agreement.

(m)     Governing Law; Submission to Jurisdiction.   The provisions of this Forbearance Agreement and the respective rights and duties of Parties hereunder shall be governed by and construed in accordance with New York law, without regard to principles of conflicts of laws that would result in the application of the law of any other state.  The Monolith Parties hereby irrevocably submit to the non-exclusive jurisdiction of any New York state court sitting in New York County, or the United States District Court for the Southern District of New York over any action or proceeding arising out of or relating to this Forbearance Agreement, other Agreement or any related writing, and the Monolith Parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in such New York state or federal court.  The Monolith Parties hereby irrevocably waive, to the fullest extent permitted by law, any objection it may now or hereafter have to the laying of venue in any such action or proceeding in any such court as well as any right it may now or hereafter have to remove such action or proceeding, once commenced, to another court on the grounds of FORUM NON CONVENIENS or otherwise.  The Monolith Parties agree that a final, nonappealable judgment in any such action or proceeding in any state or federal court in the State of New York shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(n)     Time of Essence.   Time is of the essence with respect to this Forbearance Agreement.

(o)     Successors and Assigns.   This Forbearance Agreement shall be binding upon, and shall inure to the benefit of the Key Parties and the Monolith Parties, and their respective successors and assigns, except that the Monolith Parties may not assign their rights under this Forbearance Agreement or the other Agreements without the prior written consent of the Key Parties.

(p)     Key Parties' Actions.   The authority herein conferred upon the Key Parties, and any action taken by the Key Parties hereunder or under the other Agreements, or any other agreement between the Key Parties and/or their affiliates, including without limitation

under the Hancock Whitney Lease Documents, or any document, agreement or instrument referred to herein will be taken by the Key Parties, for the protection of the Key Parties only (and Hancock Whitney, if KeyBank took any action in its capacity as servicer under the Hancock Whitney Lease Documents), and the Key Parties shall not assume nor shall be deemed to have assumed any responsibility to the Monolith Parties or to any other persons with respect to any such action authorized or taken by the Key Parties except as required by applicable law.  No person shall be entitled to rely upon, or claim to have relied upon, any action taken or failed to have been taken by the Key Parties or their respective consultants, agents, employees or representatives.

(q)     Amendments.     This  Forbearance  Agreement  may  be  amended, supplemented or otherwise modified only by a written agreement signed by the Monolith Parties and the Key Parties and none of the provisions hereof may be waived without the written consent of the Key Parties.

(r)     Voluntary Agreement.  The Monolith Parties represent and warrant that the Monolith Parties are represented by legal counsel of their choice, that they have consulted with such counsel regarding this Forbearance Agreement, that they are fully aware of the terms and provisions contained herein and of their effect and that they have voluntarily and without coercion or duress of any kind entered into this Forbearance Agreement.

(s)     Indemnification.  From and after the date hereof, the Monolith Parties shall indemnify, defend and hold harmless the Key Parties, and their respective present, former and future shareholders, subsidiaries, predecessors in interest, members, managers, affiliates, parents, directors, servants, agents, employees, representatives, officers, consultants, attorneys and their respective heirs, personal representatives, successors and assigns (severally and collectively, the "**Indemnified Parties**") against and from any and all liability for, and against and from all losses or damages Indemnified Parties may suffer as a result of, any claim, demand, cost, expense, or judgment of any type, kind, character or nature (including reasonable attorneys' fees and court costs of the attorneys retained by the Key Parties and the allocated cost of the Key Parties' internal counsel), which Indemnified Parties shall incur or suffer as a result of (a) any act or omission of the Monolith Parties or any of their agents or representatives in connection with the transactions described in this Forbearance Agreement, the other Agreements and any of the instruments, agreements and documents referred to in this Forbearance Agreement, (b) the inaccuracy of any of the representations or warranties of the Monolith Parties, or (c) the breach of any of the respective covenants set forth herein of the Monolith Parties.  This indemnification shall survive execution and delivery of this Forbearance Agreement.

(t)     Integration.  This Forbearance Agreement and the instruments, agreements and documents referred to in this Forbearance Agreement shall be deemed incorporated into and made a part of the Master Lease Agreements, the Niagara Equipment Financing Agreement, the Loan Agreement, and the other Agreements.  This Forbearance Agreement shall be deemed to be a Loan Document as that term is defined in the Loan Agreement and a Lease Document as defined in the Master Lease Agreements, the Niagara Equipment Financing Agreement and the other Agreements.  All such instruments, agreements and documents, and this Forbearance Agreement, shall be construed as integrated and complementary of each other, and, except as otherwise specifically provided in this Forbearance Agreement, as augmenting and not restricting

21

the Key Parties' rights, remedies, benefits and security. To the extent any conflict exists between the terms of this Forbearance Agreement and the terms of any other Agreement, the terms of this Forbearance Agreement shall control.

(u)     Other Terms.  All other terms of the Agreements or any of the documents, agreements or instruments referred to herein, not expressly modified by this Forbearance Agreement shall remain in full force and effect between the parties.

(v)     No Waiver or Impairment.  Nothing in this Forbearance Agreement or any related documents shall constitute a waiver of any existing or future Default or Event of Default or, to the extent not expressly provided herein, any rights and/or remedies of the Key Parties. The Monolith Parties, in consideration of the Key Parties entering into this Forbearance Agreement, hereby irrevocably and specifically waive and release any and all defenses and/or grounds of avoidance the Monolith Parties may have or may believe they have with respect to (x) the Key Parties' security interests in the Collateral or the Equipment and the Key Parties' perfection thereof.

(w)     Bankruptcy Filing.  If one or more Monolith Party (each individual entity included in the definition of a Monolith Party, a "**Bankruptcy Party**") files or has filed against it a petition in bankruptcy or seeks relief or protection under any of the sections or chapters of the United States Bankruptcy Code (the "**Bankruptcy Code**"), the Key Parties thereupon will have the right (and no Bankruptcy Party will interpose or will cause any other party to interpose any objection thereto and each hereby waives its rights with respect thereto) to request and receive any one or more of the following: (i) immediate relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or any stay or other restriction on the Key Parties' rights under this Forbearance Agreement, under the documents, instruments or agreements referenced in this Forbearance Agreement, or under any of the court's equitable powers (and, in this regard, each Bankruptcy Party hereby admits that it is unable to adequately protect the interests of the Key Parties), (ii) a termination of the exclusive period under Section 1121 of the Bankruptcy Code, and (iii) a dismissal of the bankruptcy case or proceeding. Nothing in this Forbearance Agreement shall be deemed in any way to limit or restrict any of the Key Parties' rights to seek in a bankruptcy court or any other court of competent jurisdiction any relief the Key Parties may deem appropriate in the event that a voluntary or involuntary petition under any title of the Bankruptcy Code is filed by or against a Bankruptcy Party. The assets and properties which each Bankruptcy Party have encumbered and which are subject to the security interests and liens of the Key Parties include all cash, cash equivalents, or cash collateral, as the term "cash collateral" is defined in Bankruptcy Code Section 363, which accrues from such properties or is owned by each Bankruptcy Party, and upon the filing of any bankruptcy case naming a Bankruptcy Party or any successor as debtor, such Bankruptcy Party, or such successor debtor, as the case may be, has and shall have no right to use any such cash, cash equivalents or cash collateral, and no method of providing adequate protection for any such use to the Key Parties exists. Each Bankruptcy Party further acknowledges and agrees that the representations, acknowledgments, agreements and warranties in this Forbearance Agreement have been made by the Bankruptcy Parties as a specifically bargained for, material inducement to the Key Parties to enter into this Forbearance Agreement, that the Key Parties are relying on such representations and warranties, have changed and will continue to change their position in reliance thereon and that the Key Parties would not have entered into this Forbearance Agreement without such

22

representations, acknowledgments, agreements and warranties.  Each Bankruptcy Party has consulted with counsel and relied upon counsel's advice in connection with the negotiation and execution of this Forbearance Agreement.

(x)     <u>Appointment of Receiver or Trustee</u>.   Upon the occurrence of a Terminating Event, Default or Event of Default, the Monolith Parties expressly consent to the appointment of a receiver, trustee, or similar person and waive any and all defenses and objections to the appointment of a receiver, trustee or similar person in any state or federal court.

(y)     <u>Other Defaults or Events of Default</u>.   The acknowledgment of the Specified Defaults does not imply that other Defaults or Events of Default do not exist as of the date hereof.

(z)     <u>Waiver of Jury Trial</u>.   EACH MONOLITH PARTY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS FORBEARANCE AGREEMENT, OR THE OTHER AGREEMENTS, OR RELATING TO OR ARISING FROM THE RELATIONSHIP WHICH IS THE SUBJECT OF THIS FORBEARANCE AGREEMENT, OR THE OTHER AGREEMENTS AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned have executed this Amended and Restated Forbearance Agreement to be effective as of the date first set forth above.

**MONOLITH SOLAR ASSOCIATES LLC**

By: _____

Name:  Steven Erby

Title:  Manager

Address:  444 Washington St
            Rensselaer, NY 12144

**SAE SUN AND EARTH ENERGY INCORPORATED**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
            Rensselaer, NY 12144

**SOLAR MANAGEMENT GROUP, LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
            Rensselaer, NY 12144

**SCHENECTADY HETCHEL TOWN ROAD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
            Rensselaer, NY 12144

**RENSSELAER COUNTY SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
            Rensselaer, NY 12144

**SCHUYLERVILLE CSD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
            Rensselaer, NY 12144

**SCOTIA GLENVILLE CSD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**SEWARD PINE HILL ROAD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**CRARYVILLE TWO TOWN ROAD SOLAR 2 LLC:**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**SCHENECTADY ICE RINK SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**CITY OF ALBANY SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**MAYFIELD CSD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**ALBANY CSD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**CORDELL ROAD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
           Rensselaer, NY 12144

**GRANVILLE CSD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
              Rensselaer, NY 12144


**CRARYVILLE TWO TOWN ROAD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
              Rensselaer, NY 12144


**JOHNSONVILLE ROUTE 7 SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
              Rensselaer, NY 12144


**MARION WARNER ROAD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
              Rensselaer, NY 12144


**GRANVILLE CSD SOLAR 1 LLC**

By: _____

Name:  Mark Fobare

Title:  Manager

Address:  444 Washington St
              Rensselaer, NY 12144


**KEY EQUIPMENT FINANCE, A DIVISION OF KEYBANK NATIONAL ASSOCIATION**

By: _____

Name: _____

Title: _____

Address: _____

26

**KEYBANK NATIONAL ASSOCIATION**

**KEY EQUIPMENT FINANCE, A DIVISION OF KEYBANK NATIONAL ASSOCIATION**

By: _Leslie A Jones_     By: _____

Name: _Leslie A. Jones_     Name: _____

Title: _Senior Vice Pres._     Title: _____

Address: _66 South Pearl St_     Address: _____
_Albany NY 12207_     _____

KEYBANK NATIONAL ASSOCIATION

By: _____

Name: _____

Title: _____

Address: _____

_____

KEY EQUIPMENT FINANCE, A DIVISION OF KEYBANK NATIONAL ASSOCIATION

By: _____

Name:   Glen Bleeker

Title:   Vice President

Address:  1000 South McCaslin Blvd
            Superior, CO 80027

## EXHIBIT A

### (Legal Actions)

| Name | Type | Action |
|---|---|---|
| Ayala v. Monolith | Breach and alleged violation of Labor Law | Lawsuit |
| Szemansco & Sabiani v. Monolith | Breach and alleged violation of Labor Law | Lawsuit |
| CED v. Monolith | Litigation for non-payment to vendor | Lawsuit |
| Couch White v. Monolith | Litigation for non-payment to attorneys | Lawsuit |
| Solar Foundations v. Monolith | Litigation for non-payment to vendor | Lawsuit |
| Creditors Adjustment Bureau v. SAE | Litigation for non-payment to vendor | Lawsuit |
| Monolith v. Russo | Breach of residential purchase agreement and counterclaims | Lawsuit |
| Pioneer Bank v. Monolith Solar | Foreclosure action | Lawsuit |

# EXHIBIT B

**(Initial Budget)**

## EXHIBIT C

| Project Name | Size |
|---|---|
| Galesi S | 204,000 |
| NYSDOT 3G5 A | 200,600 |
| NYSDOT 3G5 B | 200,600 |
| Rotterdam Main Street | 204,000 |
| Anchor Marine | 200,600 |
| South Glens Falls C | 89,420 |
| Subtotal | 1,099,220 |
| | |
| 401 Creekside | 259,420 |
| 435 Creekside | 667,320 |
| Buffalo Battleground | 598,400 |
| Wisconsin Box | 601,800 |
| Zehnder Rittling | 353,600 |
| Bentley SS A/B | 204,000 |
| Galesi J | 197,340 |
| Galesi K | 197,340 |
| Galesi L | 197,340 |
| Copelin Marina B | 240,040 |
| RJ Valente C | 197,200 |
| RJ Valente D | 197,200 |
| Subtotal | 3,911,000 |
| | |
| Totals | 5,010,220 |

## EXHIBIT D

| Project Name | Offtaker | Type | Project Type |
|---|---|---|---|
| City of Albany Landfill | City of Albany | Grandfathered RNM | Ground |
| Canaan Self Storage | Granville CSD | Grandfathered RNM | Roof |
| Nelliston B | City of Albany | Grandfathered RNM | Ground |
| 2831 Curry Road | City of Albany | Grandfathered RNM | Ground |
| 2835 Curry Road | City of Albany | Grandfathered RNM | Ground |
| Del Lanes | City of Albany | Grandfathered RNM | Roof |
| City of Troy Landfill | City of Troy | Grandfathered RNM | Ground |
| Galesi E | Rensselaer County | Grandfathered RNM | Roof |
| Tamarac Self Storage | Schuylerville CSD | Grandfathered RNM | Roof |
| Harrison Ave Self Storage | City of Albany | Grandfathered RNM | Roof |

**EXHIBIT E**

**ALL SOLAR PROJECTS**

| Project Name | Size |
|---|---|
| 401 Creekside | 259,420 |
| 435 Creekside Ave | 677,280 |
| 445 Creekside Ave | 667,320 |
| Albany Landfill A | 200,100 |
| Albany Landfill B | 200,100 |
| Albany Landfill C | 200,100 |
| Anchor Marine | 200,628 |
| Bentley Self Storage A | 204,000 |
| Bentley Self Storage B | 204,000 |
| Buffalo Barks | 650,000 |
| Buffalo Battleground | 598,400 |
| Del Lanes | 195,000 |
| Galesi J | 197,340 |
| Galesi K | 197,340 |
| Galesi L | 197,340 |
| Galesi S | 204,000 |
| NYSDOT 3G5 A (Orangetown) | 195,000 |
| NYSDOT 3G5 B (Orangetown) | 195,000 |
| RJ Valente C | 197,200 |
| RJ Valente D | 133,280 |
| Rotterdam Main Street C | 204,029 |
| South Glens Falls C | 89,432 |
| Wellsville Gordon Road | 319,320 |
| Wisconsin Box | 601,800 |
| Zehnder Rittling | 353,600 |
| 2831 Curry Road | 402,000 |
| 2835 Curry Road | 667,320 |
| 360 Anthony Street | 1,782,000 |
| 545 Mohawk Dr Fonda | 396,000 |
| Albany Colonie St | 396,000 |
| Applied Label | 402,000 |
| Belfast- Mark Palmer | 402,000 |
| Big Blue Self Storage | 402,560 |
| Buffalo Barks | 649,060 |
| Buffalo Niagra Gun | 402,560 |
| Cambridge St Rt 22 | 632,400 |
| Canaan Self Storage | 201,000 |

| Project Name | Size |
|---|---|
| Carriage House | 612,000 |
| Central Storage MiddleBurg | 201,000 |
| City Of Albany 35 | 650,000 |
| City Of Albany 36 | 650,000 |
| City Of Albany 37 | 650,000 |
| City of Albany 38 | 650,000 |
| City of Albany 39 | 650,000 |
| City of Troy 2 | 650,000 |
| City of Troy 3 | 650,000 |
| City of Troy 4 | 650,000 |
| City of Troy 5 | 650,000 |
| City of Troy 7 | 150,000 |
| Copelin Marina A | 53,040 |
| County of Schenectady 24 | 200,000 |
| DoT Fish Kill | 623,700 |
| DoT Harrison Landfill | 495,000 |
| DoT Lloyd | 301,500 |
| DoT Mount Pleasant West | 657,360 |
| DoT Sprainbrook | 310,860 |
| DoT Ulster | 301,500 |
| Downsville A | 195,000 |
| Downsville B | 97,600 |
| Friendship White Hall | 316,800 |
| Galesi E | 201,000 |
| Greenwhich H | 446,820 |
| Harrison Ave Self Storage | 657,360 |
| Manhiem B | 198,000 |
| Manhiem C | 195,360 |
| Matter Contracting | 198,960 |
| Metro Movers 4773 Western Trnpk | 516,800 |
| Miller Marquart A-B | 402,000 |
| Nelliston B | 474,360 |
| Newfane C | 201,000 |
| NYSTA Albany | 265,650 |
| NYSTA Manchester | 134,550 |
| NYSTA Waterloo A | 200,100 |
| NYSTA Waterloo B | 200,100 |
| NYSTA Waterloo C | 46,920 |
| NYSTA West Field A | 201,000 |
| NYSTA West Field B | 201,000 |
| NYSTA West Field C | 201,000 |
| NYSTA West Field D | 50,000 |
| Orange C | 200,000 |

| Project Name | Size |
|---|---|
| Rensselaer County 12 | 650,000 |
| Rensselaer County 13 | 650,000 |
| Rensselaer County 14 | 650,000 |
| Rensselaer County 15 | 650,000 |
| Rensselaer County 16 | 650,000 |
| Rensselaer County 17 | 650,000 |
| Rensselaer County 18 | 650,000 |
| Rensselaer County 21 | 650,000 |
| Rensselaer County 22 | 650,000 |
| Russel Sage College 3 | 650,000 |
| Russel Sage College 4 | 500,000 |
| Russell Sage 5 (Community Solar RS 40%) | 650,000 |
| Russell Sage 6 (Community Solar RS 40%) | 650,000 |
| Sloansville Esperance | 320,280 |
| Sprafford B | 90,000 |
| Tamarac Self Storage | 140,400 |
| Troy Land Fill | 2,700,000 |
| A Metro Movers (F) - Georgian Motel | 200,100 |
| Academy of the Holy Names | 50,400 |
| Action Sign (Marshall Sign) | 50,760 |
| All Type Professional Window & Door | 27,000 |
| Altamont Agway | 46,750 |
| American Legion | 50,140 |
| Anca's Foreign Auto Parts, Inc | 45,900 |
| Auto Saver Ford (Vittengl Ford (A) - Comstock) | 45,600 |
| Averil Park - Sand Lake Fire Dept. - Exp | 37,620 |
| Benson's Pet Supply (Wolf Rd - Colonie) | 50,400 |
| Berksire Properties - Joe's Garage | 5,650 |
| Best Luther Fire Dept | 8,100 |
| Bethel Full Gospel | 11,960 |
| Blooming Grove Church | 13,155 |
| Boght Fire Dept | 52,140 |
| Brunswick Elks | 49,500 |
| Brunswick Harley | 51,840 |
| Burdeck Street Solar Farm C | 215,280 |
| Burden Lake Country Club | 129,510 |
| Cambridge CSD (A) | 69,300 |
| Cambridge CSD (A) Exp. | 132,000 |
| Cambridge CSD B | 47,190 |
| Cambridge CSD B Expansion | 43,560 |
| Chase Smith Funeral Home (Schaghticoke) | 9,405 |
| Chatham Self Storage (A) | 176,400 |
| Chatham Self Storage (B) | 195,000 |

| Project Name | Size |
|---|---|
| Christopher Tire Co. INC | 12,320 |
| City of Amsterdam - Bus Garage | 46,750 |
| City of Amsterdam - public Safety | 46,750 |
| Clifton Park FD | 51,700 |
| Columbia Greene Comm College | 164,400 |
| Columbia Greene Community College - Billed in SMG | 164,400 |
| Columbia Harriman - BBL (A) - 455 | 50,400 |
| Columbia Harriman - BBL (B) - 455 | 50,400 |
| County of Columbia Humane Society | 76,860 |
| Craig Alexander | 26,290 |
| Craryville B | 207,360 |
| Crawford Window and Door (A) | 50,400 |
| Crawford Window and Door (B) | 50,400 |
| Creative Custom Woodcraft | 37,620 |
| Creative Custom Woodcraft (B) | 14,000 |
| Crosstown Plaza | 195,000 |
| Crosstown Plaza E - BBL (Recovery Sports Grill) | 197,200 |
| Crosstown Plaza F - BBL (Spa Hotel) | 197,200 |
| CWA - Missouri | 24,400 |
| DCG 19 - Billed in SMG | 78,000 |
| DCG 23 | 74,800 |
| DCG Development #17Wood Road | 72,000 |
| DCG Development #21 Wood Road - Billed in MSA | 72,560 |
| DiSiena Furniture (B) Expansion | 27,000 |
| DiSiena Furniture (C) Expansion | 27,000 |
| DiSiena Furniture (D) Outlet Exp | 51,700 |
| DiSiena Furniture D | 52,140 |
| DiSiena Furniture Warehouse Exp | 17,800 |
| DiSienna Furniture A | 50,830 |
| DiSienna Furniture B | 49,680 |
| DiSienna Furniture C | 53,820 |
| Doane Stuart | 25,800 |
| Donald Gowan Inc. | 94,720 |
| Doo Young Pai (Agway Dr.) | 12,540 |
| Dunn Funeral Home | 5,700 |
| East Greenbush Fire (A) | 51,030 |
| East Greenbush Fire (B) | 11,800 |
| East Greenbush Fire (C) | 11,300 |
| East Schodack Fire District | 25,800 |
| Ed Herrington Inc. | 50,400 |
| Ernest Bonnier-Bonniers Auto | 28,320 |
| Erwin Indian Hills Road Solar 1 | 316,800 |
| Excel Hockey Inc | 90,000 |

| Project Name | Size |
|---|---|
| First Methodist Church | 23,400 |
| Fish Creek Rod & Gun | 10,485 |
| Food Pantries of Greater Cap | 23,600 |
| Frear Park (A) | 183,000 |
| Frear Park (B) | 197,640 |
| Fuller Road Fire House | 18,920 |
| Galvan Initiatives (Smith's Commercial Tire Service Inc.)708 | 50,400 |
| Galvan Initiatives (Smith's Commercial Tire Service Inc.)724 | 50,400 |
| Gary's Garage (A) - Fire Companies of Malta | 80,730 |
| Genes Fish Fry | 17,200 |
| Grace (A) | 50,600 |
| Grace (B) | 50,370 |
| Grace (C) | 50,760 |
| Granville Ritchie Road C | 53,820 |
| Greenwich (A) - Hewitts (F) | 52,000 |
| Greenwich (B) - Hewitts (G) | 52,000 |
| Greenwich (C) - Hewitts (C) | 52,000 |
| Greenwich (D) - Hewitts (E) | 52,000 |
| Griffin Motor Sports (A) | 37,455 |
| Griffin Motor Sports (B) | 37,455 |
| H&V Auto (A) - Central Ave | 74,910 |
| H&V Auto (C) - Queensbury | 51,075 |
| H&V Auto (D1) - Troy | 49,940 |
| H&V Auto (D2) - Troy | 23,600 |
| H&V Auto (E) - Saratoga | 51,075 |
| H&V Auto F1 (Collision Experts Auto (A)) | 50,400 |
| H&V Auto F2 (Collision Experts Auto (B)) Schenectady | 33,600 |
| H&V E Expansion | 138,050 |
| Haldane CSD (A) High School | 52,580 |
| Haldane CSD (B) Elementary/Middle | - |
| Haldane CSD (B) Elementary/Middle 2 | 201,600 |
| Haldane CSD (C) Bus Garage | 32,560 |
| Haney's Golf Cars | 25,920 |
| Hartford Vol Fire | 41,940 |
| Hewitt's Garden Center (A) - Queensbury | 45,350 |
| Hewitt's Garden Center (B) - Saratoga | 50,400 |
| Hewitts Garden Center (D) | 41,950 |
| High Bridge Twist | 15,270 |
| Hiland Park Country Club | 26,400 |
| Hildreth's Restaurant - Billed in SMG | 51,300 |
| Hoosick Valley Rescue Squad | 33,550 |
| Hoosick Water Treatment Facility | 50,400 |
| House of Praise (Main Building) | 51,700 |

| Project Name | Size |
|---|---|
| House of Praise (Office / Parsonage) | 7,740 |
| Intelligent Technology Solutions | 28,680 |
| Interstate Laminates (A) | 50,490 |
| Interstate Laminates (B) | 25,190 |
| JA Bradley and Sons INC. | 45,150 |
| Jack Byrne Ford | 119,600 |
| Jack Byrne Ford - Quick Lube - Exp | 22,700 |
| JD Handling | 46,530 |
| JD Marcella | 74,855 |
| Kearney's Service Center Inc. | 16,800 |
| Knickerbacker (A) | 197,640 |
| Knickerbacker (B) | 197,640 |
| Knight auto Works | 26,290 |
| Kwang Pai (A) - 4300 Rt 50 LLC | 26,400 |
| Kwang Pai (B) - 4300 Rt 50 LLC | 26,400 |
| Lapinski Dental | 7,040 |
| Life for the Nations Church (First Assembly of God) | 24,960 |
| Living Resources (A) | 25,650 |
| Living Resources (B) | 26,910 |
| Living Resources (C) | 23,625 |
| Living Resources (D) | 46,600 |
| Local 106 Training (Cyprus Shriners) | 62,695 |
| Loudonville Comm. Church | 51,600 |
| Majestic Pools and Spas Ltd | 44,800 |
| Marios Home Center - Billed in SMG | 25,630 |
| Marios True Value | 200,100 |
| Mario's True Value Expansion | 51,850 |
| Maryann Postava-Davignon (Johnsonville B (PPA Portion)) | 3,575 |
| Master Yang's Martial Arts Center | 37,300 |
| Mckownville United Methodist Church | 28,440 |
| Mechanicville Comm. Center | 17,200 |
| Mechanicville DPW | 51,700 |
| Mechanicville Golf Club Restaurant | 19,032 |
| Mechanicville Golf Maint. Barn | 7,650 |
| Mechanicville Senior Center | 25,800 |
| Mechanicville Water Treatment Plant | 51,700 |
| Mekeel Christian Academy | 25,630 |
| Menneto Powersports (Furniture Theater, Inc.) | 50,400 |
| Nassau Country Value | 47,000 |
| Nassau Free Library | 9,405 |
| Nemer Chrysler Expansion | 34,950 |
| Nemer Chrysler Plymouth Dodge (Queensbury) - Billed in SMG | 50,400 |
| Nemer Volkswagen | 51,700 |

| Project Name | Size |
|---|---|
| Nemer Volkswagen Exp | 25,960 |
| Net Zero Apt. (A) | 66,920 |
| Net Zero Apt. (B) | 66,920 |
| Net Zero Apt. (C) | 66,920 |
| Net Zero Apt. (D) | 66,920 |
| Net Zero Apt. (E) | 66,920 |
| Net Zero Apt. (F) | 66,920 |
| NetZero Apartment Complex (G) | 72,800 |
| NetZero Apartment Complex (H) | 72,800 |
| NetZero Apartment Complex (I) | 72,800 |
| NetZero Apartment Complex (J) | 72,800 |
| NetZero Apartment Complex 11 (K) | 72,800 |
| NetZero Apartment Complex 12 (L) | 66,000 |
| NetZero Apartment Complex 13 (M) | 66,000 |
| New Beginnings Church | 12,825 |
| New Life Assembly of God | 9,633 |
| Niskayuna - Town Hall | 26,352 |
| Niskayuna Fire District 2 | 24,840 |
| Niskayuna Glass (New Way General) | 51,920 |
| Niskayuna Highway Garage - A | 25,200 |
| Niskayuna WWT A | 51,700 |
| Nopper's Collision Repairs Inc | 24,650 |
| North Country Janitorial (A) | 34,200 |
| North Country Janitorial (B) | 30,240 |
| North Greenbush Hwy Garage | 25,380 |
| Northeast Automotive Parts (NAPA Nassau) | 25,480 |
| Northeast Automotive Parts (NAPA-Valatie) | 19,580 |
| Northside Firehouse | 46,800 |
| Northstar Albany Properties (Dr. Gardener - Western Ave Associates) | 33,900 |
| Northumberland Fire District 1 | 25,650 |
| NYS United Teachers - Latham | 201,510 |
| NYS United Teachers - Williamsville A | 50,140 |
| NYS United Teachers- E Syracuse | 51,260 |
| NYSUT - Williamsville (B) Conference Center | 25,960 |
| NYSUT (A) - Vestal | 50,940 |
| NYSUT (B) - Potsdam | 45,400 |
| NYSUT Rochester | 95,025 |
| NYSUT Utica | 23,240 |
| Orange County Rd 16 Solar 1 | 326,400 |
| Pai's Tae Kwon Do - Clifton Park | 44,800 |
| Pai's Tae Kwon Do, Inc (A) | 11,400 |
| Pai's Tae Kwon Do, Inc (B) | 12,540 |
| Phyllis Bornt Library | 16,470 |

| Project Name | Size |
|---|---|
| Poestenkill Fire | 44,580 |
| Poestenkill Fire Dept. Exp. | 7,120 |
| Polish American Citizens Center | 37,840 |
| Polish Community Center | 51,700 |
| Prattsburgh | 204,000 |
| Prime Malta (AAA Northway Storage) | 52,200 |
| Quaker Ford | 51,400 |
| Quaker Ford Expansion | 99,400 |
| Queensbury (A) - Town Hall | 51,075 |
| Queensbury (E) - Highway Dept. | 51,075 |
| Redeemer - Missouri | 16,470 |
| Reliable Storage (A) - 1808 Route 9 | 8,550 |
| Reliable Storage (B) - 950 Route 9 | 6,270 |
| Rens Boys Club (416 Washington St) | 26,840 |
| Rensselaer - (City Hall) | 34,400 |
| Rensselaer City Schools | 201,300 |
| Rensselaer DPW | 50,760 |
| Rensselaer DPW2 | 26,352 |
| Rensselaer Fire Dept | 24,960 |
| Rensselaer Mink Station | 17,200 |
| Rick's Bike Shop | 15,840 |
| Rocky Hill Country Store | 39,600 |
| Rotterdam Fire Bd of Comm | 48,050 |
| Route 9 Auto World - Vittengl Suzuki | 46,600 |
| Salem A - Ed Herrington's (A) | 190,250 |
| Salem B - Ed Herrington's (B) | 153,600 |
| Salem United Methodist Church | 23,900 |
| Sand Lake | 192,000 |
| Saratoga Clay Arts | 15,390 |
| Saunders Transmission | 40,725 |
| Savemore Beverage | 49,680 |
| Savemore Beverage Expan | 49,680 |
| Saxton Sign Co. | 51,700 |
| Schenectady Boys Club | 45,600 |
| Schenectady County  Highway A | 51,700 |
| Schenectady County - Unit 1 | 25,200 |
| Schenectady County - Unit 2 | 25,200 |
| Schenectady County - Unit 4 | 25,200 |
| Schenectady County Rotterdam Branch Library | 50,400 |
| Schenectady Curling Club | 51,700 |
| Schenectady Ice Rink | 51,700 |
| Schodack Bus Garage | 24,840 |
| Schodack Bus Garage (B) Exp. | 24,840 |

| Project Name | Size |
|---|---|
| Schodack Elementary | 47,840 |
| Schodack High School | 49,920 |
| Schodack Middle School | 49,140 |
| Shaker Rd. Loudonville Fire Dept. (Station 2) | 32,940 |
| Shaker Ridge Country Club | 74,060 |
| Shaker Ridge Country Club Expans | 30,100 |
| Shaker Road Loudonville Fire 1 | 161,040 |
| Siena College | 25,200 |
| Smithville 2 | 207,360 |
| Smithville Solar Farm (A) | 197,640 |
| South Colonie CSD - Athletic Field | 12,480 |
| South Colonie CSD Bus Garage | 45,000 |
| Sprague Operating Resources (D) | 23,900 |
| Sprague Operating Resources, LLC (B) | 21,455 |
| Sprague Operating Resources, LLC (B) Expansion | 85,800 |
| St. Annes (A) | 25,650 |
| St. Catherines | 46,750 |
| Steven A Erby, Office | 27,000 |
| Stillwater CSD -  High School | 38,445 |
| Stillwater CSD - Bus Garage | 31,455 |
| Stillwater CSD - Elementary | 38,445 |
| Stillwater CSD - Field Lights | 31,455 |
| Stilsing Electric (A) | 50,400 |
| Stilsing Electric (B) - 507 South St. | 22,650 |
| Stowaway  Storage | 200,100 |
| Stuyvesant - Town Hall | 15,840 |
| Stuyvesant Falls Fire District | 15,390 |
| Stuyvesant Fire District No. 1 | 18,080 |
| T.A. Predel | 197,340 |
| Taconic Hills CSD - Shed | 9,460 |
| Taconic Hills CSD Bus Garage | 51,920 |
| The Breakfast Sport (Legends Restaurant) | 40,815 |
| The Spotted Zebra | 60,000 |
| The Walters Company AC Inc. | 28,105 |
| Third Presburgh Church | 9,460 |
| TJB Land Corp | 197,340 |
| Town of Greenport Town Hall | 34,950 |
| Town of Horicon - Town Garage | 58,400 |
| Town of Horicon - Town Hall | 35,850 |
| Town of Moreau Town Hall Munici | 59,520 |
| Town of Petersburgh-Town Hall | 28,880 |
| Town of Queensbury (B) - Activities Center | 23,600 |
| Town of Queensbury (C) - Water Dept. | 53,940 |

9

| Project Name | Size |
|---|---:|
| Town of Queensbury (D) - Town Court | 31,960 |
| Town of Queensbury (F) - Rec Field | 15,930 |
| Town of Sand Lake DPW | 33,600 |
| Troy County Waste (A) | 197,340 |
| Troy County Waste (B) | 197,340 |
| Troy DPW | 197,340 |
| Troy Landfill (A) | 202,800 |
| Troy Landfill (B) | 202,800 |
| Troy Landfill (C) | 202,800 |
| United Way GCR | 51,260 |
| Van Kleeck's Tire Inc (A) / (B) | 51,300 |
| Van Kleeck's Tire Warehouse (C) (Lake Katrine) | 14,000 |
| Vanderhyden Hall (A) | 25,200 |
| Village Dodge | 50,400 |
| Village of Hoosick Falls Municipal Building | 15,360 |
| Village of Hoosick Falls WWTP | 15,360 |
| Village of Voorheesville Fire Dept. | 30,860 |
| Voorheesville Garage | 31,740 |
| Walter Elwood Museum | 73,280 |
| Watkins Garden | 13,145 |
| West Cent. Ren. County Lutheran Parish (St. Timothy's Lutheran Church) | 14,640 |
| West Crescent Fire | 38,532 |
| Wilmot Family Farms (B) | 132,600 |
| Wilmot Family Farms C | 200,100 |
| Winding Brook Country club | 26,840 |
| Winding Brook Country Club - Clubhouse | 52,844 |
| Woodland Hill Montessori | 51,700 |
| XC Associates | 50,400 |
| TOTAL | 12,124,175 |

10

## EXHIBIT F

### (Completion Schedule)

| Project | Full Completion Date |
| --- | --- |
| RJ Valente (C) | Complete |
| RJ Valente (D) | Complete |
| Rotterdam Main Street | Complete |
| South Glens Falls (C) | Complete |
| NYSDOT 3G5 A | Complete |
| NYSDOT 3G5 B | Complete |
| Anchor Marine (C) | April 8, 2019 |
| Galesi S | April 14, 2019 |
| Wisconsin Box | April 19, 2019 |
| Zehnder Rittling | April 24, 2091 |
| 401 Creekside Drive | April 28, 2019 |
| Buffalo Battleground | May 11, 2019 |
| Bentley SSA A/B | May 11, 2019 |
| Galesi J | May 11, 2019 |
| Galesi K | May 11, 2019 |
| Galesi L | May 11, 2019 |
| Copelin Marina B | May 11, 2019 |
| 435 Creekside | May 27, 2019 |

| | Vehicle/Equipment | Financier | Kelley Blue Book Est Trade in / Related Web Listings Heavy Equipment | Loan Balance | Monthly Payment | Equity |
|---|---|---|---|---|---|---|
| 1 | 2014 Ford F350 Truck | Ally | 15450 | 16322 | 721 | -872 |
| 2 | 2015 VW Golf Wagon | Bank of America | 4750 | 6540 | 372 | -1790 |
| 3 | 2018 Acura RDX | CapCom | 25000 | 37097 | 832 | -12097 |
| 4 | Vermeer Forestry Tractor | De Lage Landen | 65000 | 49093 | 2,312 | 15907 |
| 5 | Genie GTH5519 Telehandler - CAP LEASE | De Lage Landen | 40000 | 8414 | 1,253 | 31586 |
| 6 | 2013 Ford E250 | First Niagara/Key Bank | 7500 | 6959 | 385 | 541 |
| 7 | 2013 Ford & Nissan Van | First Niagara/Key Bank | 17900 | 10616 | 1,088 | 7284 |
| 8 | 2016 Ford F550 Dumptruck | Ford Credit | 45000 | 50304 | 1,432 | -5304 |
| 9 | 2016 GMC Sierra 3806 | GM Financial 1 | 24000 | 22674 | 967 | 1326 |
| 10 | 2017 GMC Sierra Denali 3835 | GM Financial 2 | 44000 | 29205 | 1,306 | 14795 |
| 11 | 2016 GMC Sierra 4058 | GM Financial 3 | 24753 | 21510 | 889 | 3243 |
| 12 | 2014 Ford E250 Van | M&T Bank | 11500 | 11441 | 454 | 59 |
| 13 | 2016 Ford F350 Truck | Saratoga National Bank | 22843 | 29468 | 787 | -6625 |
| 14 | 2015 VW Golf GTI | Saratoga National Bank | 11800 | 7804 | 392 | 3996 |
| 15 | 2014 Mercedes B M Class - PMT 790.02 | TD Auto Finance | 22425 | 27557 | Mark is covering pmt | -5132 |
| 16 | 2014 Genie GTH-844 Telehandler | Terex | 60000 | 14636 | 1,664 | 45364 |
| 17 | 2013 Toyota Tundra | Toyota Motor Credit | 12600 | 4811 | 496 | 7789 |
| 18 | 2015 VW Beetle 48 | VW Credit | 6359 | 7693 | 373 | -1334 |
| 19 | 2015 VW Beetle 21 | VW Credit | 6359 | 11398 | 365 | -5039 |
| 20 | 2015 VW Beetle 15 | VW Credit | 6359 | 11482 | 368 | -5123 |
| 21 | 2014 E42 T4 Bobcat Compact Excavator | Wells Fargo | 35000 | 5620 | 937 | 29380 |
| 22 | 2016 Bobcat Mini Excavator | Wells Fargo | 26000 | 22246 | 753 | 3754 |
| 23 | 2016 Bandit Chipper | Wells Fargo | 36000 | 30486 | 1,095 | 5514 |
| 24 | 2018 Bobcat T595 Compact Track Loader | Wells Fargo | 55000 | 60580 | 1,442 | -5580 |

# EXHIBIT G

## (Vehicles)

# EXHIBIT H

## Albany CSD Solar 1 LLC

| Ls# | Project Location Street | City | Site | |
|---|---|---|---|---|
| 1800113469 | 1428 NY 9P | Saratoga Springs | Saratoga Boat N RV (1) - aka Saratoga Boat & RV A | Albany CSD - Giffen Elementary |
| 1800118954 | 1025 U.S. Route 9 | Queensbury | A2000 B | Albany CSD - New Scotland Elementary |
| 1800118955 | 1025 U.S. Route 9 | Queensbury | A2000 C | Albany CSD - Montessori School |
| 1800118956 | 755 Columbia Turnpike | East Greenbush | Reliable 755 Columbia TRPK | Albany CSD - North Albany Academy |

## City of Albany Solar 1 LLC

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800114042 | 810 Clinton Ave | Albany | Swinburne Ice Rink | City of Albany Maintenance 45 |

## Craryville Two Town Road Solar 2 LLC

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800118943 | 1025 U.S. Route 9 | Queensbury | A2000 A | Fort Plain CSD - Bus Garage |

## Granville CSD Solar 1 LLC

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800116305 | 53 Ritchie Road | Granville | Granville Ritchie Road CSD (2) - aka Granville System A & B | Granville CSD - High School & MJ Tanner Elem. |
| 1800116306 | 53 Ritchie Road | Granville | | |

## Marion Warner Road Solar 1 LLC

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800110439 | 4034 Warner Road | Marion | Marion Solar Farm - aka Marion CSD (A) | Marion CSD - High School & Bus Garage |

## Rensselaer County Solar 1 LLC

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800115433 | 525 Campbell Ave | Troy | Campbell Ave  A & B | Van Renss. Manor Nursing Home (1) & (2) |
| 1800115434 | 525 Campbell Ave | Troy | | |
| 1800115435 | 1010 Luther Road | East Greenbush | Luther Road Self Storage | Van Renss. Manor Nursing Home (3) |
| 1800115436 | 950 US 9 | Castleton-On-Hudson | Reliable Properties B | Van Renss. Manor Nursing Home (4) |

## Schenectady Hetcheltown Road Solar 1 LLC

| Ls# | Project Location Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800116301 | Burdeck Street | Schenectady | Burdeck St - aka Burdeck Solar Farm A & B | Co. of Schenectady 7,8,9 |
| 1800116302 | Burdeck Street | Schenectady | | |

1

**Schuylerville CSD Solar 1 LLC**

| Ls# | Project Location<br>Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800115067 | 1740 State Route 30 | Mayfield | Reet's Boat Works | Schuylerville CSD - High School |

**Scotia Glenville CSD Solar 1 LLC**

| Ls# | Project Location<br>Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800113472 | 2839 State Route 9 | Lake George | English Brook | Scotia Glenville Bus Garage |
| 1800115063 | 151 Wade Road | Latham | Room to Spare (2) A&B aka Campbell Ave A & B | Scotia Glenville Sacandaga/Lincoln |
| 1800115064 | 151 Wade Road | Latham | | |
| 1800115065 | 5 Apollo Drive | Albany | Gary's Garage (2) B & C | Scotia Glenville Glendaal/Glen Worden |
| 1800115066 | 9 Apollo Drive | Albany | | |
| 1800118576 | 2330 Watt Street #21 | Schenectady | Crosstown G - Scotia Glenville Middle School | Scotia Glenville Middle School |

**Seward Pine Hill Solar 1 LLC**

| Ls# | Project Location<br>Street | City | Site | Offtaker |
|---|---|---|---|---|
| 1800114487 | 1428 NY 9P | Saratoga Springs | Saratoga Boat N RV (2) - aka Saratoga Boat & RV B & C | S. Colonie CSD - Forest Park Lish Kill Middle School |
| 1800114488 | 1428 NY 9P | Saratoga Springs | | |

2

# EXHIBIT I

**Albany CSD Solar 1 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | Street | City | Site | Offtaker |
| 1800113470 | 32 North Street | Menands | Alb. Warehouse - aka Monolith Warehouse | Albany CSD - William Hackett |

**Cordell Road Solar 1 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | Street | City | Site | Offtaker |
| 1800109758 | 120 Cordell Road | Schenectady | Cordell Solar Farm | S. Colonie CSD - Highschool |

**Craryville Two Town Road Solar 1 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | | | Site | Offtaker |
| 1800106797 | 120 Cordell Road | Schenectady | Craryville Solar Farm - aka Two Town A | Taconic Hills CSD |

**Craryville Two Town Road Solar 2 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | Street | City | Site | Offtaker |
| 1800112921 | 74 Big Boom Road | Queensbury | Queensbury Boat N RV (1) - aka Queensbury Boat N RV (A) | Fort Plain CSD |

**Johnsonville Route 7 Solar 1 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | Street | City | Site | Offtaker |
| 1800106796 | 3042 State Route 7 | Johnsonville | Johnsonville Solar Farm | Albany CSD - Meyers Middle School |

**Mayfield CSD Solar 1 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | Street | City | Site | Offtaker |
| 1800113925 | 198 Troy Schenectady Road | Latham | Allstars (2) - aka All Stars Academy B & C | Mayfield CSD - Elementary/ Jr. Sr. High School |
| 1800113926 | 198 Troy Schenectady Road | Latham | | |

**Rensselaer County Solar 1 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | Street | City | Site | Offtaker |
| 1800118947 | 2299 State Route 30A | Johnstown | Checker's Out | Van Renss. Manor Nursing Home (11) |

**Schenectady Hetcheltown Road Solar 1 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | Street | City | Site | Offtaker |
| 1800105546 | 24 Hetcheltown Road | Schenectady | Schenectady Solar Farm (1) - aka Schenectady Solar A & B | County of Schenectady (1) |
| 1800106880 | 24 Hetcheltown Road | Schenectady | Schenectady Solar Farm (2) - aka Schenectady Solar A & B | County of Schenectady (2) (3) |
| 1800114185 | 1396 Hillside Ave | Niskayuna | Hillside Solar Farm - also known as Hillside A | Co. of Schenectady |
| 1800114186 | 1396 Hillside Ave | Niskayuna | Hillside Solar Farm - also known as Hillside B | Co. of Schenectady |
| 1800114187 | 1396 Hillside Ave | Niskayuna | Hillside Solar Farm - also known as Hillside C | Co. of Schenectady |
| 1800118079 | 1106 Wedgewood Heights | Rotterdam | Rotterdam Wedgewood A,B,C | County of Schenectady (4) (5) (6) |
| 1800118081 | 1106 Wedgewood Heights | Rotterdam | | |
| 1800118082 | 1106 Wedgewood Heights | Rotterdam | | |
| 1800119216 | 5850 Depot Road aka 2 Van Buren Blvd | Altamont | Galesi P & Q - aka Galesi P | County of Schenectady (19) & (20) |
| 1800119218 | Rotterdam Corporate Park aka Rotterdam Industrial Park | Rotterdam | Galesi A, G, H, 1 - aka Galesi Bldg 3 | County of Schenectady (13) (16) (17) (18) |

**Schenectady Ice Rink Solar 1 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | Street | City | Site | Offtaker |
| 1800111380 | 15 Airport Road | Schenectady | Schenectady Ice Rink Exp | Schenectady Ice Rink Exp |

**Scotia Glenville CSD Solar 1 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | Street | City | Site | Offtaker |
| 1800113471 | 462 Marcellis Ave | Schenectady | Highland - aka Highland self storage | Scotia Glenville High School |

**Seward Pine Hill Solar 1 LLC**

| | Project Location | | | |
|---|---|---|---|---|
| Ls# | Street | City | Site | Offtaker |
| 1800113481 | 120 Gardnersville Road | Seward | Seward Solar Farm | S. Colonie CSD - Saddlewood Elementary |
| 1800113888 | 198 Troy Schenectady Road | Latham | Allstars (1) - aka All Stars Academy a | S. Colonie CSD - District Offices |
| 1800112973 | 74 Big Boom Road | Queensbury | Queensbury Boat N RV (2) - - aka Queensbury Boat N RV (B) & (C) | S. Colonie CSD - Roessleville & Sand Creek Elem. |
| 1800112974 | 74 Big Boom Road | Queensbury | | |

2

**EXHIBIT 81**

**(Guarantor Financing Statements)**

**415582**      **2019 Apr 10 PM07:35**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **SCHENECTADY HETCHELTOWN ROAD SOLAR 1 LLC** | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE**   X NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any   NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | | All Debtors   Debtor 1   Debtor 2 | |
| 8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE** | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201904108163975**

**415584**     **2019 Apr 10 PM07:37**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | SCHENECTADY HETCHELTOWN ROAD SOLAR 2 LLC | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS 444 Washington Street | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS 66 South Pearl Street | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: [ ] LESSEE/LESSOR [ ] CONSIGNEE/CONSIGNOR [ ] BAILEE/BAILOR [ ] SELLER/BUYER [ ] AG. LIEN [ ] NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]     7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] [ ] All Debtors [ ] Debtor 1 [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163999

**415565**          **2019 Apr 10 PM06:56**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

| |
|---|
| Infinity Professional Services Group Inc.<br>6300 S. Sixth Street<br>Springfield, IL 62712, USA |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  SCHENECTADY ICE RINK SOLAR 1 LLC | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 444 Washington Street | CITY Rensselaer | STATE NY   POSTAL CODE 12144 | COUNTRY USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE   X NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any   NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS 66 South Pearl Street | CITY Albany | STATE NY   POSTAL CODE 12207 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | All Debtors   Debtor 1   Debtor 2 | |
| 8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE** | | | | | | |

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163800

**415566**        **2019 Apr 10 PM06:58**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | SCHUYLERVILLE CSD SOLAR 1 LLC | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| 1c. MAILING ADDRESS 444 Washington Street | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| 3c. MAILING ADDRESS 66 South Pearl Street | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors [ ] Debtor 1 [ ] Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**415567**     **2019 Apr 10 PM07:01**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  SCOTIA GLENVILLE CSD SOLAR 1 LLC | | | |
|---|---|---|---|
| OR  1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS  444 Washington Street | CITY  Rensselaer | STATE NY    POSTAL CODE 12144 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE                  X NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE    POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any             NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|
| OR  3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS  66 South Pearl Street | CITY  Albany | STATE NY    POSTAL CODE 12207 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | | All Debtors   Debtor 1   Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163824

**415568**       **2019 Apr 10 PM07:03**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  SEWARD PINE HILL ROAD SOLAR 1 LLC | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS  444 Washington Street | CITY  Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE   [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any   [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS  66 South Pearl Street | CITY  Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | [ ] LESSEE/LESSOR | [ ] CONSIGNEE/CONSIGNOR | [ ] BAILEE/BAILOR | [ ] SELLER/BUYER | [ ] AG. LIEN | [ ] NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | | | [ ] All Debtors  [ ] Debtor 1  [ ] Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA  **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163836

**415570**      **2019 Apr 10 PM07:05**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | SEWARD PINE HILL ROAD SOLAR 2 LLC | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS 444 Washington Street | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE    X NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any    NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS 66 South Pearl Street | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors ☐ Debtor 1 ☐ Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163850

**415572**       **2019 Apr 10 PM07:08**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME SMITHVILLE TARBELL ROAD SOLAR 1 LLC | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS 444 Washington Street | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE |  X NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |  NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME KEYBANK NATIONAL ASSOCIATION | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS 66 South Pearl Street | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA TO BE FILED WITH THE NEW YORK SECRETARY OF STATE

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163874

**415573**          **2019 Apr 10 PM07:16**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  SOLAR ENERGY PROPERTIES LLC | | | | |
|---|---|---|---|---|
| OR  1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS  444 Washington Street | CITY  Rensselaer | STATE  NY | POSTAL CODE  12144 | COUNTRY  USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  limited liability company | 1f. JURISDICTION OF ORGANIZATION  New York | 1g. ORGANIZATIONAL ID #, if any  NONE          [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any          [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | | |
|---|---|---|---|---|
| OR  3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS  66 South Pearl Street | CITY  Albany | STATE  NY | POSTAL CODE  12207 | COUNTRY  USA |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum          [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]          [optional] | | | All Debtors  Debtor 1  Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**Filing Number-201904108163886**

**415575**   **2019 Apr 10 PM07:20**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **SOLAR MANAGEMENT GROUP 2013 LLC** | | | | | |
|---|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS **444 Washington Street** | | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** | [X] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | [ ] NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | | | |
|---|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE** | | | | | | |

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163901

**415574**       **2019 Apr 10 PM07:18**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | SOLAR MANAGEMENT GROUP, LLC | | | | |
|---|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS 444 Washington Street | | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | KEYBANK NATIONAL ASSOCIATION | | | | |
|---|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS 66 South Pearl Street | | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
All Assets.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | [ ] LESSEE/LESSOR | [ ] CONSIGNEE/CONSIGNOR | [ ] BAILEE/BAILOR | [ ] SELLER/BUYER | [ ] AG. LIEN | [ ] NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | [ ] All Debtors | [ ] Debtor 1 | [ ] Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA TO BE FILED WITH THE NEW YORK SECRETARY OF STATE

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163898

**415577**          **2019 Apr 10 PM07:22**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **SOLAR VISTA LLC** | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** ☒ NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**Filing Number-201904108163925**

**415578**    **2019 Apr 10 PM07:26**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR | 1b. INDIVIDUAL'S LAST NAME **ERBY** | FIRST NAME **STEVEN** | MIDDLE NAME **A** | | SUFFIX |
| 1c. MAILING ADDRESS **6 Hallenbeck Hl** | | CITY **East Greenbush** | STATE **NY** | POSTAL CODE **12061** | COUNTRY **USA** |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | | | |
|---|---|---|---|---|---|
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional]. | | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE** | | | | | | |

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163937

**415585** **2019 Apr 10 PM07:41**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME **ERBY** | FIRST NAME **STEVEN** | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| 1c. MAILING ADDRESS **6 Hallenbeck Hl** | CITY **East Greenbush** | STATE **NY** | POSTAL CODE **12061** | COUNTRY **USA** |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
| | | | | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
| | | | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]: ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108164004

**415579**     **2019 Apr 10 PM07:28**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

> **Infinity Professional Services Group Inc.**
> **6300 S. Sixth Street**
> **Springfield, IL 62712, USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **VISTA MANAGEMENT GROUP LLC** | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** | X NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]:  LESSEE/LESSOR   CONSIGNEE/CONSIGNOR   BAILEE/BAILOR   SELLER/BUYER   AG. LIEN   NON-UCC FILING

6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   All Debtors   Debtor 1   Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163949

**415539**     **2019 Apr 10 PM06:01**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **ALBANY CSD SOLAR 1 LLC** | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE**     [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any   [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors   Debtor 1   Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163545

**415541**     **2019 Apr 10 PM06:03**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  ALBANY CSD SOLAR 2 LLC | | | |
|---|---|---|---|
| OR  1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS  444 Washington Street | CITY  Rensselaer | STATE  NY | POSTAL CODE  12144 | COUNTRY  USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  limited liability company | 1f. JURISDICTION OF ORGANIZATION  New York | 1g. ORGANIZATIONAL ID #, if any  NONE    [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any    [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|
| OR  3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS  66 South Pearl Street | CITY  Albany | STATE  NY | POSTAL CODE  12207 | COUNTRY  USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum  [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# Filing Number-201904108163569

**415543**      **2019 Apr 10 PM06:06**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  AMSTERDAM RESERVOIR SOLAR 1 LLC | | | |
|---|---|---|---|
| OR  1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS  444 Washington Street | CITY  Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE        X NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any        NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|
| OR  3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS  66 South Pearl Street | CITY  Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum                [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]          [optional] | | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163583

**415546**      **2019 Apr 10 PM06:10**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | CITY OF ALBANY SOLAR 1 LLC | | | | |
|---|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS 444 Washington Street | | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | KEYBANK NATIONAL ASSOCIATION | | | | |
|---|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS 66 South Pearl Street | | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: [ ] LESSEE/LESSOR  [ ] CONSIGNEE/CONSIGNOR  [ ] BAILEE/BAILOR  [ ] SELLER/BUYER  [ ] AG. LIEN  [ ] NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]  [ ] All Debtors  [ ] Debtor 1  [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# Filing Number-201904108163610

**415548**     **2019 Apr 10 PM06:12**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME **CITY OF ALBANY SOLAR 2 LLC** | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS **444 Washington Street** | | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** | X NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | | |
|---|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum  [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | | All Debtors  Debtor 1  Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**Filing Number-201904108163634**

**415526**      **2019 Apr 10 PM05:38**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

> **Infinity Professional Services Group Inc.**
> **6300 S. Sixth Street**
> **Springfield, IL 62712, USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **CITY OF ALBANY SOLAR 3 LLC** | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** [X] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: [ ] LESSEE/LESSOR   [ ] CONSIGNEE/CONSIGNOR   [ ] BAILEE/BAILOR   [ ] SELLER/BUYER   [ ] AG. LIEN   [ ] NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   [ ] All Debtors   [ ] Debtor 1   [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201904108163418**

**415527**      **2019 Apr 10 PM05:43**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME  **CITY OF TROY SOLAR 1 LLC**

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS  **444 Washington Street** | CITY  **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** | X NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME  **KEYBANK NATIONAL ASSOCIATION**

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS  **66 South Pearl Street** | CITY  **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING

6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2

8. OPTIONAL FILER REFERENCE DATA  **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**Filing Number-201904108163420**

**415531** **2019 Apr 10 PM05:49**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **COMMUNITY SOLAR 1 LLC** | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** / POSTAL CODE **12144** | COUNTRY **USA** |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** / POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors / Debtor 1 / Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**415533**      **2019 Apr 10 PM05:52**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **CORDELL ROAD SOLAR 1 LLC** | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE**   ☒ NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any   ☐ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201904108163482**

**415536**        **2019 Apr 10 PM05:55**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **CRARYVILLE TWO TOWN ROAD SOLAR 1 LLC** | | | | |
|---|---|---|---|---|
| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS **444 Washington Street** | | CITY **Rensselaer** | STATE **NY** / POSTAL CODE **12144** | COUNTRY **USA** |
| 1d. **SEE INSTRUCTIONS** | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** [X] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE / POSTAL CODE | COUNTRY |
| 2d. **SEE INSTRUCTIONS** | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | | |
|---|---|---|---|---|
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | | CITY **Albany** | STATE **NY** / POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors Debtor 1 Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163519

**415538**    **2019 Apr 10 PM05:59**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **CRARYVILLE TWO TOWN ROAD SOLAR 2 LLC** | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE**   [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any   [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201904108163533**

**415542**       **2019 Apr 10 PM06:04**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **GRANVILLE CSD SOLAR 1 LLC** | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** / POSTAL CODE **12144** | COUNTRY **USA** |
| 1d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR / 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** | [X] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR / 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | [ ] NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** / POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: [ ] LESSEE/LESSOR  [ ] CONSIGNEE/CONSIGNOR  [ ] BAILEE/BAILOR  [ ] SELLER/BUYER  [ ] AG. LIEN  [ ] NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   [ ] All Debtors  [ ] Debtor 1  [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163571

**415544**   **2019 Apr 10 PM06:08**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  JOHNSONVILLE ROUTE 7 SOLAR 1 LLC | | | |
|---|---|---|---|
| OR  1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 444 Washington Street | CITY  Rensselaer | STATE NY  POSTAL CODE 12144 | COUNTRY USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE   [X] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any   [ ] NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|
| OR  3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS 66 South Pearl Street | CITY  Albany | STATE NY  POSTAL CODE 12207 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
All Assets.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | | All Debtors   Debtor 1   Debtor 2 | |
| 8. OPTIONAL FILER REFERENCE DATA TO BE FILED WITH THE NEW YORK SECRETARY OF STATE | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163595

**415547**      **2019 Apr 10 PM06:10**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **KEY SOLAR 1 LLC** | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE**  [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163622

**415549**     **2019 Apr 10 PM06:12**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **LOAD ZONE A LLC** | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163646

**415550**      **2019 Apr 10 PM06:16**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
8554504774

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME  **LOAD ZONE B AND C LLC**

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS 444 Washington Street | CITY  Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE    X NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any    NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME  **KEYBANK NATIONAL ASSOCIATION**

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS 66 South Pearl Street | CITY  Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163658

**415524**        **2019 Apr 10 PM05:26**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME  **LOAD ZONE D AND E LLC**

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS  444 Washington Street | CITY  Rensselaer | STATE  NY | POSTAL CODE  12144 | COUNTRY  USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  limited liability company | 1f. JURISDICTION OF ORGANIZATION  New York | 1g. ORGANIZATIONAL ID #, if any  NONE    [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any    [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME  **KEYBANK NATIONAL ASSOCIATION**

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS  66 South Pearl Street | CITY  Albany | STATE  NY | POSTAL CODE  12207 | COUNTRY  USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]:  LESSEE/LESSOR    CONSIGNEE/CONSIGNOR    BAILEE/BAILOR    SELLER/BUYER    AG. LIEN    NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   All Debtors   Debtor 1   Debtor 2

8. OPTIONAL FILER REFERENCE DATA  **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163393

**415528**          **2019 Apr 10 PM05:43**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
**2176456457**

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

> **Infinity Professional Services Group Inc.**
> **6300 S. Sixth Street**
> **Springfield, IL 62712, USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **LOAD ZONE F LLC** | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** / POSTAL CODE **12144** | COUNTRY **USA** |
| 1d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR / 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** | X NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR / 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** / POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | | All Debtors   Debtor 1   Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163432

**415529**  **2019 Apr 10 PM05:46**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

    Infinity Professional Services Group Inc.
    6300 S. Sixth Street
    Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **LOAD ZONE G LLC** | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163444

**415532**    **2019 Apr 10 PM05:50**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **MARION WARNER ROAD SOLAR 1 LLC** | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** [X] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE** | | | | | | |

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163470

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Infinity Professional Services Group Inc        8554504774

**B. E-MAIL CONTACT AT FILER (optional)**
Megan.Thorson@InfinityPSGI.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

Infinity Professional Services Group Inc
6300 S. Sixth Street
Springfield, IL 62712
US

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:53325381

04/10/19 19:41:45

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| FOBARE | MARK | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 14 Thornbury Avenue | Glen Rock | NJ | 07452 | US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KEYBANK NATIONAL ASSOCIATION | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 66 South Pearl Street | Albany | NY | 12207 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:
All Assets.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
File with the New Jersey Secretary of State

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**415535**     **2019 Apr 10 PM05:54**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

**Infinity Professional Services Group Inc.**
**6300 S. Sixth Street**
**Springfield, IL 62712, USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **MAYFIELD CSD SOLAR 1 LLC** | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE**   [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any   [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163507

**415537**        **2019 Apr 10 PM05:58**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  MONOLITH SOLAR ASSOCIATES LLC | | | | |
|---|---|---|---|---|
| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS  444 Washington Street | CITY  Rensselaer | STATE  NY | POSTAL CODE  12144 | COUNTRY  USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  limited liability company | 1f. JURISDICTION OF ORGANIZATION  New York | 1g. ORGANIZATIONAL ID #, if any  NONE  [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | | |
|---|---|---|---|---|
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS  66 South Pearl Street | CITY  Albany | STATE  NY | POSTAL CODE  12207 | COUNTRY  USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | | All Debtors   Debtor 1   Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA  **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201904108163521**

**415562**          **2019 Apr 10 PM06:47**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  MSAP 10 LLC | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS 444 Washington Street | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE |
|---|---|---|---|---|
| | | | | X NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS 66 South Pearl Street | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163773

**415563**      **2019 Apr 10 PM06:50**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME MSAP 11 LLC | | | |
|---|---|---|---|
| OR  1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 444 Washington Street | CITY  Rensselaer | STATE  NY   POSTAL CODE  12144 | COUNTRY  USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  limited liability company | 1f. JURISDICTION OF ORGANIZATION  New York | 1g. ORGANIZATIONAL ID #, if any  NONE        X NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any        NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|
| OR  3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS 66 South Pearl Street | CITY  Albany | STATE  NY   POSTAL CODE  12207 | COUNTRY  USA |

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE** | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163785

**415564**   **2019 Apr 10 PM06:52**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

  Infinity Professional Services Group Inc.
  6300 S. Sixth Street
  Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | |
|---|---|---|
| 1a. ORGANIZATION'S NAME **MSAP 12 LLC** | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | |
|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  **KEYBANK NATIONAL ASSOCIATION** | | |
|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]:  LESSEE/LESSOR   CONSIGNEE/CONSIGNOR   BAILEE/BAILOR   SELLER/BUYER   AG. LIEN   NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   All Debtors   Debtor 1   Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163797

**415551**      **2019 Apr 10 PM06:22**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  MSAP 13 LLC | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS  444 Washington Street | CITY  Rensselaer | STATE  NY | POSTAL CODE  12144 | COUNTRY  USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  limited liability company | 1f. JURISDICTION OF ORGANIZATION  New York | 1g. ORGANIZATIONAL ID #, if any  NONE  X NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS  66 South Pearl Street | CITY  Albany | STATE  NY | POSTAL CODE  12207 | COUNTRY  USA |

4. This FINANCING STATEMENT covers the following collateral:
All Assets.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA  TO BE FILED WITH THE NEW YORK SECRETARY OF STATE

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201904108163660**

**415553**        **2019 Apr 10 PM06:24**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

    Infinity Professional Services Group Inc.
    6300 S. Sixth Street
    Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  MSAP 14 LLC | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS  444 Washington Street | CITY  Rensselaer | STATE  NY | POSTAL CODE  12144 | COUNTRY  USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  limited liability company | 1f. JURISDICTION OF ORGANIZATION  New York | 1g. ORGANIZATIONAL ID #, if any  NONE  [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS  66 South Pearl Street | CITY  Albany | STATE  NY | POSTAL CODE  12207 | COUNTRY  USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | | All Debtors  Debtor 1  Debtor 2 | |
| 8. OPTIONAL FILER REFERENCE DATA  TO BE FILED WITH THE NEW YORK SECRETARY OF STATE | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163684

**415554**　　**2019 Apr 10 PM06:26**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME MSAP 15 LLC | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS 444 Washington Street | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE  [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS 66 South Pearl Street | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: [ ] LESSEE/LESSOR [ ] CONSIGNEE/CONSIGNOR [ ] BAILEE/BAILOR [ ] SELLER/BUYER [ ] AG. LIEN [ ] NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]　　7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]　[ ] All Debtors [ ] Debtor 1 [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163696

**415555**        **2019 Apr 10 PM06:28**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME NYSDOT SOLAR 1 LLC | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS 444 Washington Street | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE  [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS 66 South Pearl Street | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: [ ] LESSEE/LESSOR   [ ] CONSIGNEE/CONSIGNOR   [ ] BAILEE/BAILOR   [ ] SELLER/BUYER   [ ] AG. LIEN   [ ] NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable]    7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   [ ] All Debtors  [ ] Debtor 1  [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163709

**415557**　　**2019 Apr 10 PM06:30**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | |
|---|---|
| 1a. ORGANIZATION'S NAME | RENSSELAER COUNTY SOLAR 1 LLC |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS 444 Washington Street | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | |
|---|---|
| 2a. ORGANIZATION'S NAME | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | |
|---|---|
| 3a. ORGANIZATION'S NAME | KEYBANK NATIONAL ASSOCIATION |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS 66 South Pearl Street | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163723

**415558**          **2019 Apr 10 PM06:35**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | RENSSELAER COUNTY SOLAR 2 LLC | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS 444 Washington Street | CITY Rensselaer | STATE NY | POSTAL CODE 12144 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION limited liability company | 1f. JURISDICTION OF ORGANIZATION New York | 1g. ORGANIZATIONAL ID #, if any NONE   [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any   [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | KEYBANK NATIONAL ASSOCIATION | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS 66 South Pearl Street | CITY Albany | STATE NY | POSTAL CODE 12207 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors   Debtor 1   Debtor 2 |
|---|---|---|

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163735

**415559**     **2019 Apr 10 PM06:39**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **ROUTE 7 SOLAR FARM 1 LLC** | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163747

**415560**     **2019 Apr 10 PM06:42**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **RUSSELL SAGE SOLAR 1 LLC** | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

5. ALTERNATIVE DESIGNATION [if applicable]: [ ] LESSEE/LESSOR [ ] CONSIGNEE/CONSIGNOR [ ] BAILEE/BAILOR [ ] SELLER/BUYER [ ] AG. LIEN [ ] NON-UCC FILING

6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] [ ] All Debtors [ ] Debtor 1 [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163759

**415561**      **2019 Apr 10 PM06:45**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐ **Infinity Professional Services Group Inc.**
**6300 S. Sixth Street**
**Springfield, IL 62712, USA**

⌐                                                      ⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME  **SAE SUN AND EARTH ENERGY INCORPORATED** | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS  **444 Washington Street** | CITY  **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **corporation** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE**  [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS  **66 South Pearl Street** | CITY  **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163761

**415580**          **2019 Apr 10 PM07:31**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Infinity Professional Services Group Inc.
6300 S. Sixth Street
Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **SALEM COUNTY ROUTE 153 SOLAR 1 LLC** | | | |
|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** [X] NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163951

**415581**    **2019 Apr 10 PM07:33**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> Infinity Professional Services Group Inc.
> 6300 S. Sixth Street
> Springfield, IL 62712, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME **SAND LAKE EASTERN UNION TURNPIKE SOLAR 1 LLC** | | | |
|---|---|---|---|

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS **444 Washington Street** | CITY **Rensselaer** | STATE **NY** | POSTAL CODE **12144** | COUNTRY **USA** |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION **limited liability company** | 1f. JURISDICTION OF ORGANIZATION **New York** | 1g. ORGANIZATIONAL ID #, if any **NONE** ☒ NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **KEYBANK NATIONAL ASSOCIATION** | | | |
|---|---|---|---|

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS **66 South Pearl Street** | CITY **Albany** | STATE **NY** | POSTAL CODE **12207** | COUNTRY **USA** |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
**All Assets.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA **TO BE FILED WITH THE NEW YORK SECRETARY OF STATE**

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201904108163963

**<u>EXHIBIT 82</u>**

**(December 6, 2019 E-mail)**





**From:** Jones, Leslie A <███████████████>
**Sent:** Friday, December 06, 2019 3:56 PM
**To:** Steven Erby <████████████████>
**Cc:** Mark Fobare <████████████████>; Gagnon, Tatia M <████████████████>; Bleeker, Glen <████████████████>; Schafer, Scott <████████████████>
**Subject:** KeyBank response to your emails

**CAUTION EXTERNAL EMAIL**

Dear Steve,

I am confirming receipt of your email below from last Friday as well as your follow up email today.  Please consider this email a response to both.  Of concern: Monolith/SAE continues to ignore and has not responded, either directly or through counsel, to the requirement that a CRO acceptable to KeyBank/KEF be installed at the company on or before end of day Friday, 11/29/2019.   That requirement was relayed clearly to you during out conversation Wednesday, 11/27/2019 with counsel for both the company and KeyBank present.  In addition, the company has not provided the updated cash flow, weekly variance report, updated Troy and Nelliston project specific budgets, and detailed list of direct project sales that were promised in our earlier conversations.

KeyBank/KEF continues to be extremely troubled by Monolith principals' failure to act in the best interests of the company and its creditors.  Steve, you have acted purposefully to undermine and create a challenging and very difficult environment at the company for Bob Salluzzo, which caused him to resign as Chief Restructuring Officer and resulted in Schwartz Heslin discontinuing its financial advisory services.  Consequently, the company again finds itself without experienced and effective leadership for distressed situations to the great detriment of the company's creditors including KeyBank/KEF.

As you have been advised repeatedly, this situation is unacceptable and cannot continue.  KeyBank/KEF has been operating under a reservation of rights with the understanding that the Monolith principals would appoint a Chief Restructuring Officer acceptable to KeyBank/KEF <u>and</u> cooperate with and support the Chief Restructuring Officer in his/her efforts to stabilize the company, maximize the value of the company's assets, and develop and implement a plan to repay the company's long past due indebtedness to KeyBank/KEF and other creditors.  Based on what has transpired, it is clear that you have not proceeded in good faith nor have any intention to do so and, therefore, it will be necessary for KeyBank/KEF to take appropriate steps to protect its interests as Monolith's senior secured creditor.

Without waiving any rights or the numerous continuing defaults under the KeyBank loan documents and KEF lease documents, KeyBank/KEF is prepared to release its liens on the assets identified in the attached Partial Releases, subject to the express terms and conditions set forth therein, in order to allow the sale of those assets to occur and the

proceeds to be remitted directly to KeyBank/KEF restricted account ending in 7396 for application to the outstanding obligations of Monolith as determined by KeyBank/KEF.  KeyBank's/KEF's acceptance of the sale proceeds shall not constitute nor be deemed to constitute a waiver of any defaults or any rights of KeyBank/KEF, all of which are expressly reserved.  Nor will such acceptance constitute or be deemed to constitute an agreement to forbear from exercising any rights or remedies or establish any course of dealing that is inconsistent with the express terms of the KeyBank loan documents or KEF lease documents.

Sincerely,

Leslie

Leslie A. Jones, Senior Vice President
**Regional Team Leader - Specialized Finance**
Key Bank National Association
66 South Pearl St.
Albany, NY 12207
Phone-
Cell-
*"Unlocking Solutions"*

---

**From:** Steven Erby <​                              >
**Sent:** Friday, November 29, 2019 11:27 PM
**To:** Jones, Leslie A <​                          >
**Cc:** Bleeker, Glen <​                      >; Mark Fobare <​                                  >; Schafer, Scott <​                  >
**Subject:** NextEra Progress Payment Attached

Evening Leslie,

Please see wire progress payment from NextEra below.

There will be another payment Next week from NextEra for about $225,000. I will update the plan this weekend mapping out all expenditures that gets us to the next milestone and final PTO.

Few Items:

1.) As we discussed, are we able to keep a small percentage of the SLG transactions 10% (transaction), account balance never to exceed 100k, ADP Payroll wire only. Keep in mind it's in our best interest to take the least amount possible.

2.) I will update all the releases this weekend, the total, $1m commitment, complete breakdown as per customer. We will need releases to start flowing. These transactions were made over the summer and fall months. If you don't want to do the releases, please provide an alternate mailing address so that we can close these accounts. Everyone is ready to close, I will for the short term use the PO box provided so that we don't lose momentum.

*Please also consider that for the next 23 days we are solely focused on Closings and building Troy. This is a very short time frame and we request that Key give us consideration, provided such monetary milestones are

meet and or progressing at such a pace that demonstrates drastic improvements in cash flow and payments to KEY and KEF. Please take a look at the project attached.

3.) SLG is ramping up the size of tranche II, I will update the Payoff Sheet this weekend and get it over to you.

We are on track to reach the commitments presented on Monday before Thanksgiving of $3.6 Million Dollar Pay Down. (Also attached)

Please note none of the NextEra funds were included in this model.

*In closing I will be spending a majority of the weekend customizing a temp roadway and planning snow removal at the landfill. I am praying for it to miss us-however we will have a plan just in case. That being said, my apologies if my responses are slow.


Thank you,

Steven Erby
Monolith Solar Associates, LLC
██████████


-----Original Message-----
From: 00FIBATCHPA <████████████████████>
Sent: Friday, November 29, 2019 7:35 AM
To: Chris Stroud <████████████████████>
Subject: Notice of NextEra Payment: 2000006339 5253 2019

Do not reply to this e-mail address. For questions contact your accounts payable representative.

On 11/29/19 , DG Project Construction will be depositing $370,411.00 in your account at KEYBANK NATIONAL ASSOCIATION .

This is payment for the following invoices:

| Invoice Number | Invoice Date | Document Number | Invoice Amt | Discount Amt | Net Amount |
|---|---|---|---|---|---|
| 19001-6 | 10/28/19 | 5100003629 | 370,411.00 | 0.00 | 370,411.00 |


Payment Total: $370,411.00


This communication may contain privileged and/or confidential information. It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited

from disclosing, copying, distributing or using any of this information. If you received this communication in error, please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy. This communication may contain nonpublic personal information about consumers subject to the restrictions of the Gramm-Leach-Bliley Act. You may not directly or indirectly reuse or redisclose such information for any purpose other than to provide the services for which you are receiving the information.

127 Public Square, Cleveland, OH 44114

If you prefer not to receive future e-mail offers for products or services from Key
send an e-mail to mailto:DNERequests@key.com with 'No Promotional E-mails' in the SUBJECT line.