# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| **KEYBANK NATIONAL ASSOCIATION** | : | CASE NO. 1:19-CV-1562-TJM-ATB |
| Plaintiff, | : | |
| | : | JUDGE THOMAS J. MCAVOY |
| v. | : | |
| | : | |
| **MONOLITH SOLAR ASSOCIATES LLC,** | : | |
| **SAE SUN AND EARTH ENERGY** | : | |
| **INCORPORATED, SOLAR** | : | |
| **MANAGEMENT GROUP, LLC,** | : | **VERIFIED FIRST AMENDED** |
| **SCHENECTADY HETCHELTOWN** | : | **COMPLAINT FOR MONEY,** |
| **ROAD SOLAR 1 LLC, SCHENECTADY** | : | **FORECLOSURE OF SECURITY** |
| **HETCHELTOWN ROAD SOLAR 2 LLC** | : | **INTERESTS, JUDICIAL SALE OF** |
| **(FKA MANHEIM STATE ROUTE 167** | : | **REAL PROPERTY VIA RECEIVER,** |
| **SOLAR 1 LLC), SCHENECTADY ICE** | : | **AND RELATED RELIEF** |
| **RINK SOLAR 1 LLC, CRARYVILLE** | : | |
| **TWO TOWN ROAD SOLAR 1 LLC,** | : | |
| **CRARYVILLE TWO TOWN ROAD** | : | |
| **SOLAR 2 LLC, MARION WARNER** | : | |
| **ROAD SOLAR 1 LLC, CITY OF** | : | |
| **ALBANY SOLAR 1 LLC, ALBANY CSD** | : | |
| **SOLAR 1 LLC, SCOTIA GLENVILLE** | : | |
| **CSD SOLAR 1 LLC, MAYFIELD CSD** | : | |
| **SOLAR 1 LLC, RENSSELAER COUNTY** | : | |
| **SOLAR 1 LLC, RENSSELAER COUNTY** | : | |
| **SOLAR 2 LLC (FKA MSAP 4 LLC),** | : | |
| **SEWARD PINE HILL ROAD SOLAR 1** | : | |
| **LLC, SEWARD PINE HILL ROAD** | : | |
| **SOLAR 2 LLC (FKA MSAP 3 LLC),** | : | |
| **SCHUYLERVILLE CSD SOLAR 1 LLC,** | : | |
| **JOHNSONVILLE ROUTE 7 SOLAR 1** | : | |
| **LLC, CORDELL ROAD SOLAR 1 LLC,** | : | |
| **GRANVILLE CSD SOLAR 1 LLC,** | : | |
| **SMITHVILLE TARBELL ROAD SOLAR** | : | |
| **1 LLC, SOLAR ENERGY PROPERTIES** | : | |
| **LLC, LOAD ZONE A LLC, LOAD ZONE** | : | |
| **B AND C LLC, LOAD ZONE D AND E** | : | |
| **LLC, LOAD ZONE F LLC, LOAD ZONE** | : | |
| **G LLC, ROUTE 7 SOLAR FARM 1 LLC,** | : | |
| **AMSTERDAM RESERVOIR SOLAR 1** | : | |
| **LLC, CITY OF ALBANY SOLAR 2 LLC,** | : | |
| **CITY OF TROY SOLAR 1 LLC,** | : | |

**RUSSELL SAGE SOLAR 1 LLC, SALEM** :
**COUNTY ROUTE 153 SOLAR 1 LLC,** :
**SAND LAKE EASTERN UNION** :
**TURNPIKE SOLAR 1 LLC, SOLAR** :
**VISTA LLC, VISTA MANAGEMENT** :
**GROUP LLC, NYSDOT SOLAR 1 LLC** :
**(FKA MSAP 5 LLC), CITY OF ALBANY** :
**SOLAR 3 LLC (FKA MSAP 6 LLC), KEY** :
**SOLAR 1 LLC (FKA MSAP 7 LLC),** :
**COMMUNITY SOLAR 1 LLC (FKA** :
**MSAP 8 LLC), ALBANY CSD SOLAR 2** :
**LLC (FKA MSAP 9 LLC), MSAP 10 LLC,** :
**MSAP 11 LLC, MSAP 12 LLC, MSAP 14** :
**LLC, SOLAR MANAGEMENT GROUP** :
**2013 LLC, MARK FOBARE, and** :
**STEVEN A. ERBY** :
 :
 Defendants. :

Plaintiff KeyBank National Association ("**KeyBank**"), by and through its undersigned counsel, states its complaint (the "**Complaint**") as follows:

## I. PRELIMINARY STATEMENT

1. KeyBank and the Defendants (as defined below) have an extensive debtor/creditor relationship in which (a) KeyBank made multiple loans to certain Defendants, (b) KeyBank, through its division, Key Equipment Finance ("**KEF**"), entered into several Master Lease Agreements (as defined below) with certain Defendants, pursuant to which the Defendants lease certain solar projects and equipment from KeyBank, and (c) First Niagara Leasing, Inc. (which was acquired by KeyBank) entered into the First Niagara Equipment Financing Agreement (as defined below) with Defendant SAE (as defined below). The assets that support the business and act as collateral for KeyBank's loans and equipment leases are in dire and immediate risk of irreparable harm.

2. The Defendants have been in continuing default under the Agreements (as defined below) for at least fifteen months. Due in large part to the Defendants' mismanagement of their

2

4822-8792-6190

business, the Defendants have been unable, or unwilling, to make principal and interest payments required under the various Notes (as defined below) and Loan Agreement (as defined below), and are severely delinquent on the lease payments that the applicable Defendants are required to make under the Master Lease Agreements (as defined below) and Defendant SAE is behind on the payments it is required to make pursuant to the First Niagara Equipment Financing Agreement.  The Defendants owe KeyBank (i) interest and principal on the Notes in excess of $4.8 million (not including substantial default interest), (ii) over $1 million in overdue lease payments under the Master Lease Agreements and the First Niagara Equipment Financing Agreement, and (iii) legal fees and expenses KeyBank conservatively estimates exceed $300,000.

3.      Despite their repeated promises, the Defendants have been unable to cure the numerous continuing defaults under the Agreements. In addition to the defaults and Events of Default under the Agreements, the Defendants are in default under numerous agreements with third parties and have been sued, or threatened to be sued, by other parties for substantial sums of money. Finally, KeyBank has learned that the Defendants have not properly maintained the solar projects that they lease from KeyBank, and recently the chief restructuring officer that was appointed to, in part, address the mismanagement of the Defendants' business and pursue the sale of assets, resigned because of Defendant Steven A. Erby's continual interference in the operation of the business.

## II. THE PARTIES

4.      Plaintiff, KeyBank National Association, is a national banking association with its principal place of business at 127 Public Square, Cleveland, OH 44114.

5.      Defendant, Monolith Solar Associates LLC ("**Monolith Solar**"), is a New York limited liability company with, on information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

6.      Defendant, SAE Sun and Earth Energy Incorporated ("**SAE**"), is a New York corporation with, upon information and belief, a principal place of business at 6 Hallenback Hill, East Greenbush, New York 12061.

7.      Defendant, Solar Management Group, LLC ("**Solar Management**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

8.      Defendant, Schenectady Hetcheltown Road Solar 1 LLC ("**Schenectady Hetcheltown Road Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

9.      Defendant, Schenectady Hetcheltown Road Solar 2 LLC ("**Schenectady Hetcheltown Road Solar 2**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

10.     Defendant, Schenectady Ice Rink Solar 1 LLC ("**Schenectady Ice Rink Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

11.     Defendant, Craryville Two Town Road Solar 1 LLC ("**Craryville Two Town Road Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

4822-8792-6190

12. Defendant, Craryville Two Town Road Solar 2 LLC ("**Craryville Two Town Road Solar 2**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

13. Defendant, Marion Warner Road Solar 1 LLC ("**Marion Warner Road Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

14. Defendant, City of Albany Solar 1 LLC ("**City of Albany Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

15. Defendant, Albany CSD Solar 1 LLC ("**Albany CSD Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

16. Defendant, Scotia Glenville CSD Solar 1 LLC ("**Scotia Glenville CSD Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

17. Defendant, Mayfield CSD Solar 1 LLC ("**Mayfield CSD Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

18. Defendant, Rensselaer County Solar 1 LLC ("**Rensselaer County Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

4822-8792-6190

19.     Defendant, Rensselaer County Solar 2 LLC ("**Rensselaer County Solar 2**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

20.     Defendant, Seward Pine Hill Road Solar 1 LLC ("**Seward Pine Hill Road Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

21.     Defendant, Seward Pine Hill Road Solar 2 LLC ("**Seward Pine Hill Road Solar 2**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

22.     Defendant, Schuylerville CSD Solar 1 LLC ("**Schuylerville CSD Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

23.     Defendant, Johnsonville Route 7 Solar 1 LLC ("**Johnsonville Route 7 Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

24.     Defendant, Cordell Road Solar 1 LLC ("**Cordell Road Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

25.     Defendant, Granville CSD Solar 1 LLC ("**Granville CSD Solar 1**") is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

26.     Defendant, Smithville Tarbell Road Solar 1 LLC ("**Smithville Tarbell Road Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

27.     Defendant, Solar Energy Properties LLC ("**Solar Energy Properties**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

28.     Defendant, Load Zone A LLC ("**Load Zone A**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

29.     Defendant, Load Zone B and C LLC ("**Load Zone B and C**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

30.     Defendant, Load Zone D and E LLC ("**Load Zone D and E**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

31.     Defendant, Load Zone F LLC ("**Load Zone F**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

32.     Defendant, Load Zone G LLC ("**Load Zone G**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

4822-8792-6190

33.     Defendant, Route 7 Solar Farm 1 LLC ("**Route 7 Solar Farm 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

34.     Defendant, Amsterdam Reservoir Solar 1 LLC ("**Amsterdam Reservoir Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

35.     Defendant, City of Albany Solar 2 LLC ("**City of Albany Solar 2**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

36.     Defendant, City of Troy Solar 1 LLC ("**City of Troy Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

37.     Defendant, Russell Sage Solar 1 LLC ("**Russell Sage Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

38.     Defendant, Salem County Route 153 Solar 1 LLC ("**Salem County Route 153 Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

39.     Defendant, Sand Lake Eastern Union Turnpike Solar 1 LLC ("**Sand Lake Eastern Union Turnpike Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

40.     Defendant, Solar Vista LLC ("**Solar Vista**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

41.     Defendant, Vista Management Group LLC ("**Vista Management Group**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

42.     Defendant, NYSDOT Solar 1 LLC (fka MSAP 5 LLC) ("**NYSDOT**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

43.     Defendant, City of Albany Solar 3 LLC (fka MSAP 6 LLC) ("**City of Albany Solar 3**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

44.     Defendant, Key Solar 1 LLC (fka MSAP 7 LLC) ("**Key Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

45.     Defendant, Community Solar 1 LLC (fka MSAP 8 LLC) ("**Community Solar 1**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

46.     Defendant, Albany CSD Solar 2 LLC (fka MSAP 9 LLC) ("**Albany CSD Solar 2**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

47.     Defendant, MSAP 10 LLC ("**MSAP 10**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

48.     Defendant, MSAP 11 LLC ("**MSAP 11**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

49.     Defendant, MSAP 12 LLC ("**MSAP 12**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

50.     Defendant, MSAP 14 LLC ("**MSAP 14**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

51.     Defendant, Solar Management Group 2013 LLC ("**Solar Management 2013**"), is a New York limited liability company with, upon information and belief, a principal place of business at 444 Washington Street, Rensselaer, New York 12144.

52.     Defendant, Mark Fobare ("**Mr. Fobare**"), is an individual residing at 14 Thornbury Avenue, Glen Rock, New Jersey 07452.

53.     Defendant, Steven A. Erby ("**Mr. Erby**" and collectively with Monolith Solar, SAE, Solar Management, Schenectady Hetcheltown Road Solar 1, Schenectady Hetcheltown Road Solar 2, Schenectady Ice Rink Solar 1, Craryville Two Town Road Solar 1, Craryville Two Town Road Solar 2, Marion Warner Road Solar 1, City of Albany Solar 1, Albany CSD Solar 1, Scotia Glenville CSD Solar 1, Mayfield CSD Solar 1,  Rensselaer County Solar 1, Rensselaer County Solar 2, Seward Pine Hill Road Solar 1, Seward Pine Hill Road Solar 2, Schuylerville

10

CSD Solar 1, Johnsonville Route 7 Solar 1, Cordell Road Solar 1, Granville CSD Solar 1, Smithville Tarbell Road Solar 1, Solar Energy Properties, Load Zone A, Load Zone B and C, Load Zone D and E, Load Zone F, Load Zone G, Route 7 Solar Farm 1, Amsterdam Reservoir Solar 1, City of Albany Solar 2, City of Troy Solar 1, Russell Sage Solar 1, Salem County Route 153 Solar 1, Sand Lake Eastern Union Turnpike Solar 1, Solar Vista, Vista Management Group, NYSDOT, City of Albany Solar 3, Key Solar 1, Community Solar 1, Albany CSD Solar 2, MSAP 10, MSAP 11, MSAP 12, MSAP 14, Solar Management 2013, and Mr. Fobare, the "**Defendants**" and each being a "**Defendant**") is an individual residing at 6 Hallenbeck Hl., East Greenbush, New York 12061.

54.   Upon information and belief, the members of each of the limited liability company Defendants are Messrs. Erby and Fobare and/or other New York corporations or limited liability companies of which Messrs. Erby and Fobare are members and, accordingly, the residence of the limited liability company Defendants is New York for jurisdictional purposes.

55.   Upon information and belief, none of the Defendants are citizens of Ohio and none of the members of any of the limited liability company Defendants are Ohio residents.

## II. JURISDICTION AND VENUE

56.   This dispute arises between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Therefore, this court has diversity-of-citizenship jurisdiction over the subject matter of the dispute pursuant to 28 U.S.C. § 1332.

57.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III. FACTUAL BACKGROUND

**A.   The Defendants' Business**

58.     The Defendants' business primarily consists of developing and operating solar projects.

59.     Similar to many other solar companies, the Defendants' business includes the development and construction of a solar project and, subsequently, the ownership and operation of the solar project or prior to the project going into service, entry into a sale-lease-back transaction with a third party (such as KeyBank), whereby the Defendants sell the solar project and relevant equipment, and then lease the solar project back from the third party.

60.     Following the sale-lease-back transactions, the Defendants operate the solar projects and sell the solar power generated by the projects to a third-party power offtaker. The relevant Defendants enter into various agreements with the power offtakers that sets forth the terms pursuant to which the relevant Defendant will supply electricity to the power offtaker through the leased solar projects.

61.     For the sale-lease-back transactions, the proceeds that the Defendants receive from the power offtakers are to be used first to make the lease payments on the solar projects and then to cover the other costs of the Defendants' business.

**B.     The Agreements Between the Parties**

62.     KeyBank made several loans to one or more of the Defendants to help finance the Defendants' business operations and KeyBank, through KEF, entered into numerous master lease agreements and related lease documents with various Defendants.

    *i.     The $488K Term Note*

63.     On or about June 30, 2015, Defendant Monolith Solar executed and delivered to KeyBank a certain Promissory Note in the original principal amount of $488,000.00 (the "**$488K Term Note**"). A true and accurate copy of the $488K Term Note is attached hereto as <u>Exhibit 1</u>

and is made an integral part hereof. The monies loaned to Monolith Solar in connection with the $488K Term Note were to be used for commercial and business purposes.

64.     Pursuant to the terms of the $488K Term Note, beginning July 30, 2015, Monolith Solar is required to pay KeyBank $9,180.69 each month for sixty months. The final payment under the $488K Term Note was originally due on June 30, 2020.

ii.     *The July 29, 2016 Note*

65.     On or about July 29, 2016, Defendant Monolith Solar executed and delivered to KeyBank, through KEF, a certain Promissory Note in the original principal amount of $1,110,529.00 (the "**July 29, 2016 Note**"). A true and accurate copy of the July 29, 2016 Note is attached hereto as Exhibit 2 and is made an integral part hereof.

66.     Pursuant to the terms of the July 29, 2016 Note, beginning August 29, 2016, Monolith Solar is required to pay KeyBank $15,774.51 each month for 84 months. The final payment under the July 29, 2016 Note was originally due July 29, 2023.

67.     The monies loaned to Monolith Solar in connection with the July 29, 2016 Note were to be used for commercial and business purposes.

iii.    *The Loan Agreement and Revolving Note*

68.     On or about March 8, 2018, Defendants Monolith Solar, SAE and Solar Management, as borrowers (collectively, the "**Parent Borrowers**" and each individually, a "**Parent Borrower**") and KeyBank, as lender, entered into that certain Loan Agreement (the "**Loan Agreement**") pursuant to which, among other things, KeyBank agreed to make revolving loans to the Parent Borrowers. A true and accurate copy of the Loan Agreement is attached hereto as Exhibit 3 and is made an integral part hereof.

4822-8792-6190

69.     In connection with the Loan Agreement, the Parent Borrowers executed and delivered to KeyBank a certain Promissory Note for Revolving Credit in an amount not to exceed $5,000,000.00 with an effective date of March 8, 2018 (the "**Revolving Note**"). A true and accurate copy of the Revolving Note is attached hereto as Exhibit 4 and is made an integral part hereof.

70.     Pursuant to the terms of the Revolving Note and the Loan Agreement the Parent Borrowers are required to make monthly interest payments to KeyBank on the outstanding balance under the Revolving Note. On the Revolving Note maturity date (or following acceleration) the Parent Borrowers are required to pay the entire principal balance plus all accrued and unpaid interest and fees.

71.     The monies loaned to the Parent Borrowers in connection with the Loan Agreement and the Revolving Note were to be used for commercial and business purposes.

*iv.     The $850K Term Note*

72.     On or about March 30, 2018, Defendants Monolith Solar, SAE and Solar Management (collectively, the "**$850K Term Note Borrowers**") executed and delivered to KeyBank a certain Promissory Note in the original principal amount of $850,000.00 (the "**$850K Term Note**" and together with the $488K Note, the July 29, 2016 Note and the Revolving Note, collectively, the "**Notes**"). A true and accurate copy of the $850K Term Note is attached hereto as Exhibit 5 and is made an integral part hereof. The monies loaned to $850K Term Note Borrowers in connection with the $850K Term Note were to be used for commercial and business purposes.

73.     Pursuant to the terms of the $850K Term Note, beginning May 1, 2018, the $850K Term Note Borrowers agreed to make 23 monthly payments to KeyBank in the amount of

14

$35,395.83 each and a final payment of $36,089.10. The final payment under the $850K Term Note was originally due on April 1, 2020.

v.    *Security Agreements*

74.    To further secure the obligations under the $488K Term Loan, on or about June 30, 2015, Defendants Monolith Solar and SAE executed and delivered to KeyBank a Commercial Security Agreement (the "**$488K Security Agreement**") and thereby granted to KeyBank a security interest in all of the "Collateral" (as that term is defined in the $488K Security Agreement) (the "**$488K Collateral**"). A true and accurate copy of the $488K Security Agreement is attached hereto as Exhibit 6 and is made an integral part hereof.

75.    Pursuant to the $488K Security Agreement, SAE also guaranteed the obligations under the $488K Term Note.

76.    To further secure their obligations under the Loan Agreement, the Revolving Note and "every other liability, now or hereafter owing to [KeyBank]" by the Parent Borrowers, on March 8, 2018, each Parent Borrower executed and delivered to KeyBank a security agreement (collectively, the "**Revolving Security Agreements**" and each being a "**Revolving Security Agreement**") granting KeyBank a security interest in all of the Collateral (as defined in the Revolving Security Agreements) (the "**Revolving Loan Collateral**"). True and accurate copies the Revolving Security Agreements are attached hereto as Exhibit 7 and are made an integral part hereof.

77.    KeyBank perfected its security interest in the Revolving Loan Collateral by filing U.C.C. Financing Statements evidencing its security interest in the Revolving Loan Collateral with the New York Secretary of State on March 8, 2018 (the "**March 8, 2018 Financing**

**Statements**"). True and accurate copies of the March 8, 2018 Financing Statements are attached hereto as <u>Exhibit 8</u> and are made an integral part hereof.

78.    To further secure their obligations under the $850K Note and all other "obligations, debts and liabilities, plus interest thereon" due from the $850K Term Note Borrowers to KeyBank, on March 30, 2018, each of the $850K Term Loan Borrowers executed and delivered to KeyBank a separate security agreement (the "**$850K Security Agreements**" and each an "**$850K Security Agreement,**" together with the $488K Security Agreement and the Revolving Security Agreements, collectively, the "**Security Agreements**" and each individually, a "**Security Agreement**") granting KeyBank a security interest in all of the Collateral (as defined in the $850K Security Agreements) (the "**$850K Collateral**"). True and accurate copies of the $850K Security Agreements are attached hereto as <u>Exhibit 9</u> and are made an integral part hereof.

*vi.    The Unconditional Guaranty*

79.    To further secure the obligations owed to KeyBank, on March 8, 2018, Defendants Mr. Fobare, Mr. Erby, Smithville Tarbell Road Solar 1, Solar Energy Properties, Load Zone A, Load Zone B and C, Load Zone D and E, Load Zone F, Route 7 Solar Farm 1, Albany CSD Solar 1, Amsterdam Reservoir Solar 1, City of Albany Solar 1, City of Albany Solar 2, City of Troy Solar 1, Cordell Road Solar 1, Craryville Two Town Road Solar 1, Johnsonville Route 7 Solar 1, Marion Warner Road Solar 1, Mayfield CSD Solar 1, Rensselaer County Solar 1, Rensselaer County Solar 2, Russell Sage Solar 1, Salem County Route 153 Solar 1, Sand Lake Eastern Union Turnpike Solar 1, Schenectady Hetcheltown Road Solar 1, Schenectady Ice Rink Solar 1, Schuylerville CSD Solar 1, Scotia Glenville SCD Solar 1, Seward Pine Hill Road Solar 1, Solar Management Group 2013, Solar Vista, Load Zone G , Vista

Management Group, NYSDOT, City of Albany Solar 3, Key Solar 1, Community Solar 1, Albany CSD Solar 2, MSAP 10, MSAP 11, MSAP 12, MSAP 14, Craryville Two Town Road Solar 2, and Granville CSD Solar 1 (collectively, the "**Guarantors**") executed and delivered to KeyBank an unconditional guaranty (the "**Unconditional Guaranty**" and together with the Notes, the Loan Agreement, the Security Agreements, the Mortgages (as defined below), and all other related documents and writings, collectively, the "**Loan Documents**") whereby the Guarantors guaranteed the prompt payment in full of "every liability, now or hereafter owing to [KeyBank] by [the Parent Borrowers]" (collectively, the "**Guaranteed Obligations**"). A true and accurate copy of the Unconditional Guaranty is attached hereto as <u>Exhibit 10</u> and is made an integral part hereof.

<em>vii.     Master Lease Agreements and Related Documents</em>

80.     On July 24, 2015, KeyBank and Defendant Schenectady Hetcheltown Road Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 24, 2015 Lease Agreement**"). A true and accurate copy of the July 24, 2015 Lease Agreement is attached hereto as <u>Exhibit 11</u> and is made an integral part hereof.

81.     To secure the obligations under the July 24, 2015 Lease Agreement, Schenectady Hetcheltown Road Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Schenectady Hetcheltown Road Solar 1 Security Agreement**"), and thereby granted to KeyBank a security interest in all of the Collateral (as defined in the Schenectady Hetcheltown Road Solar 1 Security Agreement). A true and accurate copy of the Schenectady Hetcheltown Road Solar 1 Security Agreement is attached hereto as <u>Exhibit 12</u> and is made an integral part hereof.

17

82.     To further secure the obligations under the July 24, 2015 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Schenectady Hetcheltown Road Solar 1 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the July 24, 2015 Lease Agreement and related documents.   A true and accurate copy of the Schenectady Hetcheltown Road Solar 1 Guaranty is attached hereto as Exhibit 13 and is made an integral part hereof.

83.     To further secure the obligations under the July 24, 2015 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Schenectady Hetcheltown Road Solar 1 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Schenectady Hetcheltown Road Solar 1. A true and accurate copy of the Schenectady Hetcheltown Road Solar 1 Pledge Agreement is attached hereto as Exhibit 14 and is made an integral part hereof.

84.     On February 15, 2016, KeyBank and Defendant Johnsonville Route 7 Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 15, 2016 Lease Agreement**"). A true and accurate copy of the February 15, 2016 Lease Agreement is attached hereto as Exhibit 15 and is made an integral part hereof.

85.     To secure the obligations under the February 15, 2016 Lease Agreement, Johnsonville Route 7 Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Johnsonville Route 7 Solar 1 Security Agreement**"), and thereby granted to KeyBank a security interest in all of the Collateral (as defined in the Johnsonville Route 7 Solar

1 Security Agreement). A true and accurate copy of the Johnsonville Route 7 Solar 1 Security Agreement is attached hereto as Exhibit 16 and is made an integral part hereof.

86.     To further secure the obligations under the February 15, 2016 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Johnsonville Route 7 Solar 1 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the February 15, 2016 Lease Agreement and related documents. A true and accurate copy of the Johnsonville Route 7 Solar 1 Guaranty is attached hereto as Exhibit 17 and is made an integral part hereof.

87.     To further secure the obligations under the February 15, 2016 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Johnsonville Route 7 Solar 1 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in its equity interests in Johnsonville Route 7 Solar 1. A true and accurate copy of the Johnsonville Route 7 Solar 1 Pledge Agreement is attached hereto as Exhibit 18 and is made an integral part hereof.

88.     On March 1, 2016, KeyBank and Defendant Craryville Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 1, 2016 Lease Agreement**"). A true and accurate copy of the March 1, 2016 Lease Agreement is attached hereto as Exhibit 19 and is made an integral part hereof.

89.     To secure the obligations under the March 1, 2016 Lease Agreement, Defendant Craryville Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Craryville Solar 1 Security Agreement**"), and thereby granted to KeyBank a security interest in all of the Collateral (as defined in the Craryville Solar 1 Security Agreement). A true and

accurate copy of the Craryville Solar 1 Security Agreement is attached hereto as <u>Exhibit 20</u> and is made an integral part hereof.

90.     To further secure the obligations under the March 1, 2016 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Craryville Solar 1 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the March 1, 2016 Lease Agreement and related documents. A true and accurate copy of the Craryville Solar 1 Guaranty is attached hereto as <u>Exhibit 21</u> and is made an integral part hereof.

91.     To further secure the obligations under the March 1, 2016 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Craryville Solar 1 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Craryville Solar 1. A true and accurate copy of the Craryville Solar 1 Pledge Agreement is attached hereto as <u>Exhibit 22</u> and is made an integral part hereof.

92.     On August 4, 2016, KeyBank and Defendant Cordell Road Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**August 4, 2016 Lease Agreement**"). A true and accurate copy of the August 4, 2016 Lease Agreement is attached hereto as <u>Exhibit 23</u> and is made an integral part hereof.

93.     To secure the obligations under the August 4, 2016 Lease Agreement, Cordell Road Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Cordell Road Solar 1 Security Agreement**"), and thereby granted KeyBank a security interest in all of the Collateral (as defined in the Cordell Road Solar 1 Security Agreement). A true and

20

accurate copy of the Cordell Road Solar 1 Security Agreement is attached hereto as <u>Exhibit 24</u> and is made an integral part hereof.

94.     To further secure the obligations under the August 4, 2016 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Cordell Road Solar 1 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the August 4, 2016 Lease Agreement and related documents. A true and accurate copy of the Cordell Road Solar 1 Guaranty is attached hereto as <u>Exhibit 25</u> and is made an integral part hereof.

95.     To further secure the obligations under the August 4, 2016 Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Cordell Road Solar 1 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Cordell Road Solar 1. A true and accurate copy of the Cordell Road Solar 1 Pledge Agreement is attached hereto as <u>Exhibit 26</u> and is made an integral part hereof.

96.     On November 16, 2016, KeyBank and Defendant Schenectady Ice Rink Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**November 16, 2016 Lease Agreement**").   A true and accurate copy of the November 16, 2016 Lease Agreement is attached hereto as <u>Exhibit 27</u> and is made an integral part hereof.

97.     To secure the obligations under the November 16, 2016 Lease Agreement, Schenectady Ice Rink Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Schenectady Ice Rink Solar 1 Security Agreement**"), and thereby granted to KeyBank a security interest in all of the Collateral (as defined in the Schenectady Ice Rink Solar

1 Security Agreement). A true and accurate copy of the Schenectady Ice Rink Solar 1 Security Agreement is attached hereto as <u>Exhibit 28</u> and is made an integral part hereof.

98. To further secure the obligations under the November 16, 2016 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Schenectady Ice Rink Solar 1 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the November 16, 2016 Lease Agreement and related documents. A true and accurate copy of the Schenectady Ice Rink Solar 1 Guaranty is attached hereto as <u>Exhibit 29</u> and is made an integral part hereof.

99. To further secure the obligations under the November 16, 2016 Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Schenectady Ice Rink Solar 1 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Schenectady Ice Rink Solar 1. A true and accurate copy of the Schenectady Ice Rink Solar 1 Pledge Agreement is attached hereto as <u>Exhibit 30</u> and is made an integral part hereof.

100. On November 30, 2016, KeyBank and Defendant Marion Warner Solar entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**November 30, 2016 Lease Agreement**"). A true and accurate copy of the November 30, 2016 Lease Agreement is attached hereto as <u>Exhibit 31</u> and is made an integral part hereof.

101. To secure the obligations under the November 30, 2016 Lease Agreement, Marion Warner Solar executed and delivered to KeyBank a Continuing Security Agreement (the "**Marion Warner Solar Security Agreement**"), and thereby granted to KeyBank a security interest in all of the Collateral (as defined in the Marion Warner Solar Security Agreement). A

true and accurate copy of the Marion Warner Solar Security Agreement is attached hereto as Exhibit 32 and is made an integral part hereof.

102. To further secure the obligations under the November 30, 2016 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Marion Warner Solar Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the November 30, 2016 Lease Agreement and related documents. A true and accurate copy of the Marion Warner Solar Guaranty is attached hereto as Exhibit 33 and is made an integral part hereof.

103. To further secure the obligations under the November 30, 2016 Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Marion Warner Solar Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in its equity interests in Marion Warner Solar. A true and accurate copy of the Marion Warner Solar Pledge Agreement is attached hereto as Exhibit 34 and is made an integral part hereof.

104. On February 16, 2017, KeyBank and Defendant Seward Pine Hill Road Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 16, 2017 Lease Agreement**"). A true and accurate copy of the February 16, 2017 Lease Agreement is attached hereto as Exhibit 35 and is made an integral part hereof.

105. To secure the obligations under the February 16, 2017 Lease Agreement, Seward Pine Hill Road Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Seward Pine Hill Road Solar 1 Security Agreement**"), and thereby granted to KeyBank a security interest in all of the Collateral (as defined in the Seward Pine Hill Road Solar 1

Security Agreement). A true and accurate copy of the Seward Pine Hill Road Solar 1 Security Agreement is attached hereto as Exhibit 36 and is made an integral part hereof.

106.    To further secure the obligations under the February 16, 2017 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Seward Pine Hill Road Solar 1 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the February 16, 2017 Lease Agreement and related documents. A true and accurate copy of the Seward Pine Hill Road Solar 1 Guaranty is attached hereto as Exhibit 37 and is made an integral part hereof.

107.    To further secure the obligations under the February 16, 2017 Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Seward Pine Hill Road Solar 1 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Seward Pine Hill Road Solar 1. A true and accurate copy of the Seward Pine Hill Road Solar 1 Pledge Agreement is attached hereto as Exhibit 38 and is made an integral part hereof.

108.    On February 17, 2017, KeyBank and Defendant Craryville Solar 2 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**February 17, 2017 Lease Agreement**"). A true and accurate copy of the February 17, 2017 Lease Agreement is attached hereto as Exhibit 39 and is made an integral part hereof.

109.    To secure the obligations under the February 17, 2017 Lease Agreement, Craryville Solar 2 executed and delivered to KeyBank a Continuing Security Agreement (the "**Craryville Solar 2 Security Agreement**"), and thereby granted KeyBank a security interest in all of the Collateral (as defined in the Craryville Solar 2 Security Agreement). A true and

24

accurate copy of the Craryville Solar 2 Security Agreement is attached hereto as <u>Exhibit 40</u> and is made an integral part hereof.

110.     To further secure the obligations under the February 17, 2017 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Craryville Solar 2 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the February 17, 2017 Lease Agreement and related documents. A true and accurate copy of the Craryville Solar 2 Guaranty is attached hereto as <u>Exhibit 41</u> and is made an integral part hereof.

111.     To further secure the obligations under the February 17, 2017 Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Craryville Solar 2 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in its equity interests in Craryville Solar 2. A true and accurate copy of the Craryville Solar 2 Pledge Agreement is attached hereto as <u>Exhibit 42</u> and is made an integral part hereof.

112.     On March 16, 2017, KeyBank and Defendant Albany CSD Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Albany Lease Agreement**"). A true and accurate copy of the March 16, 2017 Albany Lease Agreement is attached hereto as <u>Exhibit 43</u> and is made an integral part hereof.

113.     To secure the obligations under the March 16, 2017 Albany Lease Agreement, Albany CSD Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Albany CSD Solar 1 Security Agreement**"), and thereby granted KeyBank a security interest in all of the Collateral (as defined in the Albany CSD Solar 1 Security Agreement). A true and

accurate copy of the Albany CSD Solar 1 Security Agreement is attached hereto as Exhibit 44 and is made an integral part hereof.

114.   To further secure the obligations under the March 16, 2017 Albany Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Albany CSD Solar 1 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the March 16, 2017 Albany Lease Agreement and related documents. A true and accurate copy of the Albany CSD Solar 1 Guaranty is attached hereto as Exhibit 45 and is made an integral part hereof.

115.   To further secure the obligations under the March 16, 2017 Albany Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Albany CSD Solar 1 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Albany CSD Solar 1. A true and accurate copy of the Albany CSD Solar 1 Pledge Agreement is attached hereto as Exhibit 46 and is made an integral part hereof.

116.   On March 16, 2017, KeyBank and Defendant Scotia Glenville CSD Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**March 16, 2017 Scotia Lease Agreement**"). A true and accurate copy of the March 16, 2017 Scotia Lease Agreement is attached hereto as Exhibit 47 and is made an integral part hereof.

117.   To secure the obligations under the March 16, 2017 Scotia Lease Agreement, Scotia Glenville CSD Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Scotia Solar Security Agreement**"), and thereby granted to KeyBank a security interest in all of the collateral (as defined in the Scotia Solar Security Agreement). A

26

true and accurate copy of the Scotia Solar Security Agreement is attached hereto as <u>Exhibit 48</u> and is made an integral part hereof.

118.    To further secure the obligations under the March 16, 2017 Scotia Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Scotia Solar Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the March 16, 2017 Scotia Lease Agreement and related documents. A true and accurate copy of the Scotia Solar Guaranty is attached hereto as <u>Exhibit 49</u> and is made an integral part hereof.

119.    To further secure the obligations under the March 16, 2017 Scotia Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Scotia Solar Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Scotia Glenville CSD Solar 1. A true and accurate copy of the Scotia Solar Pledge Agreement is attached hereto as <u>Exhibit 50</u> and is made an integral part hereof.

120.    On April 14, 2017, KeyBank and Defendant Mayfield CSD Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**April 14, 2017 Lease Agreement**"). A true and accurate copy of the April 14, 2017 Lease Agreement is attached hereto as <u>Exhibit 51</u> and is made an integral part hereof.

121.    To secure the obligations under the April 14, 2017 Lease Agreement, Mayfield CSD Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Mayfield Solar Security Agreement**"), and thereby granted KeyBank a security interest in all of the Collateral (as defined in the Mayfield Solar Security Agreement). A true and accurate

27

copy of the Mayfield Solar Security Agreement is attached hereto as <u>Exhibit 52</u> and is made an integral part hereof.

122.    To further secure the obligations under the April 14, 2017 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Mayfield Solar Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the April 14, 2017 Lease Agreement and related documents. A true and accurate copy of the Mayfield Solar Guaranty is attached hereto as <u>Exhibit 53</u> and is made an integral part hereof.

123.    To further secure the obligations under the April 14, 2017 Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Mayfield Solar Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Mayfield CSD Solar 1. A true and accurate copy of the Mayfield Solar Pledge Agreement is attached hereto as <u>Exhibit 54</u> and is made an integral part hereof.

124.    On May 3, 2017, KeyBank and Defendant City of Albany Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**May 3, 2017 Lease Agreement**"). A true and accurate copy of the May 3, 2017 Lease Agreement is attached hereto as <u>Exhibit 55</u> and is made an integral part hereof.

125.    To secure the obligations under the May 3, 2017 Lease Agreement, City of Albany Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**City of Albany Solar 1 Security Agreement**"), and thereby granted KeyBank a security interest in all of the Collateral (as defined in the City of Albany Solar 1 Security Agreement). A true and

28

accurate copy of the City of Albany Solar 1 Security Agreement is attached hereto as <u>Exhibit 56</u> and is made an integral part hereof.

126.   To further secure the obligations under the May 3, 2017 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**City of Albany Solar 1 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the May 3, 2017 Lease Agreement and related documents. A true and accurate copy of the City of Albany Solar 1 Guaranty is attached hereto as <u>Exhibit 57</u> and is made an integral part hereof.

127.   To further secure the obligations under the May 3, 2017 Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**City of Albany Solar 1 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in City of Albany Solar 1. A true and accurate copy of the City of Albany Solar 1 Pledge Agreement is attached hereto as <u>Exhibit 58</u> and is made an integral part hereof.

128.   On June 27, 2017, KeyBank and Defendant Schuylerville CSD Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**June 27, 2017 Lease Agreement**"). A true and accurate copy of the June 27, 2017 Lease Agreement is attached hereto as <u>Exhibit 59</u> and is made an integral part hereof.

129.   To secure the obligations under the June 27, 2017 Lease Agreement, Schuylerville CSD Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Schuylerville CSD Solar 1 Security Agreement**"), and thereby granted KeyBank a security interest in all of the Collateral (as defined in the Schuylerville CSD Solar 1 Security

29

Agreement). A true and accurate copy of the Schuylerville CSD Solar 1 Security Agreement is attached hereto as Exhibit 60 and is made an integral part hereof.

130.    To further secure the obligations under the June 27, 2017 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Schuylerville CSD Solar 1 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the June 27, 2017 Lease Agreement and related documents. A true and accurate copy of the Schuylerville CSD Solar 1 Guaranty is attached hereto as Exhibit 61 and is made an integral part hereof.

131.    To further secure the obligations under the June 27, 2017 Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Schuylerville CSD Solar 1 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Schuylerville CSD Solar 1. A true and accurate copy of the Schuylerville CSD Solar 1 Pledge Agreement is attached hereto as Exhibit 62 and is made an integral part hereof.

132.    On July 17, 2017, KeyBank and Defendant Rensselaer County Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**July 17, 2017 Lease Agreement**"). A true and accurate copy of the July 17, 2017 Lease Agreement is attached hereto as Exhibit 63 and is made an integral part hereof.

133.    To secure the obligations under the July 17, 2017 Lease Agreement, Rensselaer County Solar 1 executed and delivered to KeyBank a Continuing Security Agreement (the "**Rensselaer County Solar 1 Security Agreement**"), and thereby granted KeyBank a security interest in all of the Collateral (as defined in the Rensselaer County Solar 1 Security Agreement).

30

A true and accurate copy of the Rensselaer County Solar 1 Security Agreement is attached hereto as Exhibit 64 and is made an integral part hereof.

134.   To further secure the obligations under the July 17, 2017 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Rensselaer County Solar 1 Guaranty**"), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the July 17, 2017 Lease Agreement and related documents. A true and accurate copy of the Rensselaer County Solar 1 Guaranty is attached hereto as Exhibit 65 and is made an integral part hereof.

135.   To further secure the obligations under the July 17, 2017 Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Rensselaer County Solar 1 Pledge Agreement**"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Rensselaer County Solar 1. A true and accurate copy of the Rensselaer County Solar 1 Pledge Agreement is attached hereto as Exhibit 66 and is made an integral part hereof.

136.   On September 14, 2017, KeyBank and Defendant Granville CSD Solar 1 entered into that certain Master Equipment Lease Agreement (together with all exhibits, schedules, addenda, attachments, amendments and modifications thereto, the "**September 14, 2017 Lease Agreement**" and together with the July 24, 2015 Lease Agreement, the February 15, 2016 Lease Agreement, the March 1, 2016 Lease Agreement, the August 4, 2016 Lease Agreement, the November 16, 2016 Lease Agreement, the November 30, 2016 Lease Agreement, the February 16, 2017 Lease Agreement, the February 17, 2017 Lease Agreement, the March 16, 2017 Albany Lease Agreement, the March 16, 2017 Scotia Lease Agreement, the April 14, 2017 Lease Agreement, the May 3, 2017 Lease Agreement, June 27, 2017 Lease Agreement, and the July 17,

2017 Lease Agreement, collectively, the "**Master Lease Agreements**"). A true and accurate copy of the September 14, 2017 Lease Agreement is attached hereto as Exhibit 67 and is made an integral part hereof.

137.   To secure the obligations under the September 14, 2017 Lease Agreement, Granville CSD Solar 1 (Schenectady Hetcheltown Road Solar 1, Johnsonville Route 7 Solar 1, Craryville Solar 1, Schenectady Ice Rink Solar 1, Marion Warner Solar, Seward Pine Hill Road Solar 1, Craryville Solar 2, Albany CSD Solar 1, Scotia Glenville CSD Solar 1, Mayfield CSD Solar 1, City of Albany Solar 1, Schuylerville CSD Solar 1, Rensselaer County Solar 1, Cordell Road Solar 1, and Granville CSD Solar 1 shall be referred to collectively, as the "**Lessees**" and each individually, as a "**Lessee**") executed and delivered to KeyBank a Continuing Security Agreement (the "**Granville CSD Solar 1 Security Agreement**" and together with the Schenectady Hetcheltown Road Solar 1 Security Agreement, Johnsonville Route 7 Solar 1 Security Agreement, Craryville Solar 1 Security Agreement, Cordell Road Solar 1 Security Agreement, Schenectady Ice Rink Solar 1 Security Agreement, Marion Warner Solar Security Agreement, Seward Pine Hill Road Solar 1 Security Agreement, Craryville Solar 2 Security Agreement, Albany CSD Solar 1 Security Agreement, Scotia Solar Solar Security Agreement, Mayfield Solar Security Agreement, City of Albany Solar 1 Security Agreement, Schuylerville CSD Solar 1 Security Agreement, and Rensselaer County Solar 1 Security Agreement, collectively, the **"Lessee Security Agreements"** and each individually, a **"Lessee Security Agreement"**), and thereby granted to KeyBank a security interest in all of the Collateral (as defined in the Granville CSD Solar 1 Security Agreement). A true and accurate copy of the Granville CSD Solar 1 Security Agreement is attached hereto as Exhibit 68 and is made an integral part hereof.

138.     To further secure the obligations under the September 14, 2017 Lease Agreement, Defendant Monolith Solar executed and delivered to KeyBank a Corporate Guaranty (the "**Granville CSD Solar 1 Guaranty**" and together with the Schenectady Hetcheltown Road Solar 1 Guaranty, Johnsonville Route 7 Solar 1 Guaranty, Craryville Solar 1 Guaranty, Cordell Road Solar 1 Guaranty, Schenectady Ice Rink Solar 1 Guaranty, Marion Warner Solar Guaranty, Seward Pine Hill Road Solar 1 Guaranty, Craryville Solar 2 Guaranty, Albany CSD Solar 1 Guaranty, Scotia Solar Guaranty, Mayfield Solar Guaranty, City of Albany Solar 1 Guaranty, Schuylerville CSD Solar 1 Guaranty, and Rensselaer County Solar 1 Guaranty, collectively, the **"Monolith Lessee Guaranties"** and each individually, a **"Monolith Lessee Guaranty"**), whereby Monolith Solar guaranteed the performance and prompt payment of the obligations owed to KeyBank under the August 4, 2017 Lease Agreement and related documents. A true and accurate copy of the Granville CSD Solar 1 Guaranty is attached hereto as Exhibit 69 and is made an integral part hereof.

139.     To further secure the obligations under the September 14, 2017 Lease Agreement, Monolith Solar executed and delivered to KeyBank a Pledge Agreement (the "**Granville CSD Solar 1 Pledge Agreement**" and together with the Schenectady Hetcheltown Road Solar 1 Pledge Agreement, Johnsonville Route 7 Solar 1 Pledge Agreement, Craryville Solar 1 Pledge Agreement, Cordell Road Solar 1 Pledge Agreement, Schenectady Ice Rink Solar 1 Pledge Agreement, Marion Warner Solar Pledge Agreement, Seward Pine Hill Road Solar 1 Pledge Agreement, Craryville Solar 2 Pledge Agreement, Albany CSD Solar 1 Pledge Agreement, Scotia Solar Pledge Agreement, Mayfield Solar Pledge Agreement, City of Albany Solar 1 Pledge Agreement, Schuylerville CSD Solar 1 Pledge Agreement, and Rensselaer County Solar 1 Pledge Agreement, collectively, the **"Pledge Agreements"** and each individually, a **"Pledge**

Agreement"), whereby Monolith Solar granted KeyBank a security interest in Monolith Solar's equity interests in Granville CSD Solar 1. A true and accurate copy of the Granville CSD Solar 1 Pledge Agreement is attached hereto as Exhibit 70 and is made an integral part hereof.

> viii.   *Equipment Financing Agreement*

140.   On or around October 28, 2014, KeyBank (as successor in interest to First Niagara Leasing, Inc. and SAE entered into that certain Equipment Financing Agreement No. 18804 (the "**First Niagara Equipment Financing Agreement**" and together with the Loan Agreement, the Notes, the Security Agreements, the Guaranties, the Loan Documents, the Lessee Security Agreements, the Pledge Agreements and the Master Lease Agreements, and all documents relating to one or more of such documents, collectively, the "**Agreements**" and each individually, an "**Agreement**"). A true and accurate copy of the First Niagara Equipment Financing Agreement is attached hereto as Exhibit 71 and is made an integral part hereof.

**C.   History of Defaults and Forbearance Agreements**

141.   As noted above, numerous defaults exist and are continuing under the Agreements. These defaults include payment defaults and defaults of various covenants in the Agreements.

142.   Shortly after making the $850K Term Loan, KeyBank learned that defendants Schenectady Hetcheltown Road Solar 1 and Monolith Solar were in default under certain third-party lease agreements, which constitute cross-defaults under the July 24, 2015 Lease Agreement. As a result, on August 31, 2018, KeyBank issued Defendants Schenectady Hetcheltown Road Solar 1 and Monolith Solar a default letter (the "**August 31, 2018 Default Letter**"), noting, among other things that (a) as a result of continuing defaults under certain lease agreements among third parties and one or more Defendants, a default existed under Section

18(v) of the July 24, 2015 Lease Agreement, and (b) as a result of a change in financial condition, a default existed under Section 18(viii) of the July 24, 2018 Lease Agreement. A true and accurate copy of the August 31, 2018 Default Letter is attached hereto as <u>Exhibit 72</u> and is made an integral part hereof.

143.     Shortly after receipt of the August 31, 2018 Default Letter, the Defendants informed KeyBank that they would be unable to make lease payments due under certain Master Lease Agreements and that they were in breach of certain covenants under the Loan Agreement. Consequently, on September 5, 2018, KeyBank issued Defendants Monolith Solar, SAE and Solar Management a default letter (the "**September 5, 2018 Default Letter**") noting, among other things, that as a result of (a) continuing defaults under certain lease agreements among third parties and one or more Defendants, and (b) Defendants' breaches of certain covenants in Section 5 of the Loan Agreement, Events of Default had occurred and were continuing under Sections 6.9 and 6.11 of the Loan Agreement. A true and accurate copy of the September 5, 2018 Default Letter is attached hereto as <u>Exhibit 73</u> and is made an integral part hereof.

144.     Less than a month later KeyBank became aware of additional defaults.  On October 3, 2018, KeyBank sent Defendants Monolith Solar, SAE and Solar Management a notice of default letter (the "**October 3, 2018 Default Letter**" and together with the August 31, 2018 Default Letter and the September 5, 2018 Default Letter, collectively, the "**Default Letters**") noting, among other things, that as a result of (a) the Defendants' failure to make scheduled interest payments due under the Revolving Note, (b) the Defendants' failure to make scheduled interest and principal payments due under the $850K Term Note, and (c) the commencement of litigation against one or more of the Defendants in which the plaintiff sought aggregate damages of approximately $1.2 million, that Events of Default had occurred and were

continuing under Sections 6.1 and 6.11 of the Loan Agreement. A true and accurate copy of the October 3, 2018 Default Letter is attached hereto as <u>Exhibit 74</u> and is made an integral part hereof.

145.    KeyBank also learned that the Defendants were in default with respect to several agreements with various third parties, including under the terms of certain leases with Hancock Whitney Bank.

146.    Defendants informed KeyBank that they planned to cure the defaults and pay down a significant amount of the indebtedness owed to KeyBank, by among other things, selling certain assets. On November 9, 2018, Defendants Monolith Solar, Solar Management, SAE, Schenectady Hetcheltown Road Solar 1, Schenectady Hetcheltown Road Solar 2, Schenectady Ice Rink Solar 1, Craryville Two Town Road Solar 1, Craryville Two Town Road Solar 2, Marion Warner Road Solar 1, City of Albany Solar 1, Scotia Glenville CSD Solar 1, Mayfield CSD Solar 1, Rensselaer County Solar 1, Rensselaer County Solar 2, Seward Pine Hill Road Solar 1, Seward Pine Hill Road Solar 2, Schuylerville CSD 1, and Johnsonville Route 7 Solar 1 (collectively, the "**Monolith Forbearance Parties**" and KeyBank entered into that certain Forbearance Agreement (as amended by that First Amendment to Forbearance Agreement, dated as of December 21, 2018, the "**Original Forbearance Agreement**"). Pursuant to the Original Forbearance Agreement, among other things, the Monolith Forbearance Parties (a) acknowledged that the defaults described in the Default Letters (the "**Specified Defaults**") constituted defaults and Events of Default under the Agreements, which were continuing and had not been cured or waived, (b) agreed to remit lease payments in accordance with the Master Lease Agreements, and (c) agreed to milestones for certain proposed property sales. A true and

4822-8792-6190

accurate copy of the Original Forbearance Agreement is attached hereto as <u>Exhibit 75</u> and is made an integral part hereof.

147.    In connection with the Original Forbearance Agreement, on November 9, 2018, the Guarantors executed and delivered to KeyBank an agreement reaffirming their obligations under the Agreements (the "**November 9, 2018 Reaffirmation Agreement**"). A true and accurate copy of the November 9, 2018 Reaffirmation Agreement is attached hereto as <u>Exhibit 76</u> and is made an integral part hereof.

148.    In connection with the First Amendment to the Forbearance Agreement dated as of December 21, 2018 noted above, on December 21, 2018, the Guarantors executed an agreement reaffirming their obligations under the Agreements (the "**December 21, 2018 Reaffirmation Agreement**"). A true and accurate copy of the December 21, 2018 Reaffirmation Agreement is attached hereto as <u>Exhibit 77</u> and is made an integral part hereof.

149.    The Monolith Forbearance Parties failed to meet the milestones for the sale of assets, did not cure the defaults, and did not remit the lease payments as required under the Original Forbearance Agreement. Consequently, on January 29, 2019, KeyBank issued the Monolith Forbearance Parties a Notice of Terminating Events (the "**Notice of Terminating Events**") noting, among other things, that as a result of the failure of the Monolith Forbearance Parties to (a) enter into a binding sale agreement to sell 3.6 megawatts of solar projects, the Monolith Forbearance Parties had violated Section 10 of the Original Forbearance Agreement, and as such a Terminating Event had occurred and was continuing pursuant to Section 6(b)(1) of the Original Forbearance Agreement (the "**3.6 MW Sale Agreement Terminating Event**", (b) enter into an enforceable term sheet to sell certain other solar projects, the Monolith Forbearance Parties had violated Section 10 of the Original Forbearance Agreement, and as such a

37

Terminating Event had occurred and was continuing pursuant to Section 6(b)(1) of the Original Forbearance Agreement (the "**Generate Sale Agreement Terminating Event**"), (c) provide KeyBank with a Gross Profit Margin Analysis, the Monolith Forbearance Parties had violated Section 10 of the Original Forbearance Agreement, and as such a Terminating Event had occurred and was continuing pursuant to Section 6(b)(1) of the Original Forbearance Agreement (the "**Gross Profit Margin Analysis Terminating Event**"), (d) remit regularly scheduled payments on account of the Leases, the Monolith Forbearance Parties had violated Section 12 of the Original Forbearance Agreement, and as such a Terminating Event had occurred and was continuing pursuant to Section 6(b)(1) of the Original Forbearance Agreement (the "**January Rent Payments Terminating Event**"), (e) provide fully executed deposit account control agreements for all of their deposit accounts that are not maintained with KeyBank, the Monolith Forbearance Parties had violated Section 12 of the Original Forbearance Agreement, and as such a Terminating Event had occurred and was continuing pursuant to Section 6(b)(1) of the Original Forbearance Agreement (the "**DACAS Terminating Event**"), and (f) deliver to KeyBank evidence of the proper notation of KeyBank's first priority security interest and duly perfected liens on the titles of all vehicles owned by the Defendants, the Monolith Forbearance Parties had violated Section 18 of the Original Forbearance Agreement, and as such a Terminating Event had occurred and was continuing pursuant to Section 6(b)(1) of the Original Forbearance Agreement (the "**Evidence of Perfected Security Interest in Vehicles Terminating Event**" and together with the 3.6 MW Sale Agreement Terminating Event, the Generate Sale Agreement Terminating Event, the Gross Profit Margin Analysis Terminating Event, the January Rent Payments Terminating Event, the Restricted Account Terminating Event, the Deposit Accounts Terminating Event, and the DACAS Terminating Event, collectively, the "**Specified**

**Terminating Events**"). A true and accurate copy of the Notice of Terminating Events is attached hereto as Exhibit 78 and is made an integral part hereof.

150.    Despite the continuing defaults, and Defendants' failure to adhere to the terms of the Original Forbearance Agreement, KeyBank continued to work in good faith with the Defendants. However, given the extensive ongoing payment and non-payment defaults under the Agreements, and the failure to consummate promised asset sales, and the clear mismanagement of the business, KeyBank required that the Defendants hire a chief restructuring officer who would have control of the Defendants' business operations. On March 11, 2019, the Defendants hired Daniel Scouler, of ScoulerKirchein, as their chief restructuring officer.

151.    KeyBank viewed this as a positive development and hoped that Mr. Scouler would be able to stabilize the Defendants' business, complete certain asset sales, in particular, the sale of several mechanically complete solar projects (the "**GMES Sale**") to Green Mountain Electric Supply, Inc. ("**GMES**"), and maximize the value of the Defendants' assets. Defendants informed KeyBank that the proceeds from the GMES Sale would allow them to pay-down more than three million dollars ($3,000,000) of the indebtedness that the Defendants owed to KeyBank.

152.    GMES had an extensive business relationship with the Defendants, and like KeyBank, GMES is owed a significant amount of money by Defendants.

153.    Given that GMES was owed a significant amount of money by the Defendants, and the Defendants' poor track record of completing solar projects on time, GMES demanded that the Defendants continue to retain a chief restructuring officer, who would have control over the Defendants' business, and that KeyBank and the Defendants enter into a new forbearance agreement.

39

154.    On April 9, 2019, the Monolith Forbearance Parties and KeyBank entered into that certain Amended and Restated Forbearance Agreement (the "**Amended and Restated Forbearance Agreement**"). Pursuant to the Amended and Restated Forbearance Agreement, the Defendants, among other things, (a) acknowledged and agreed that each of the Specified Defaults (as defined in the Amended and Restated Forbearance Agreement) constituted a default and Event of Default under the Agreements, were continuing and had not been waived, (b) agreed to continue to retain a chief restructuring officer who would have exclusive authority over the Defendants' business operations, including cash disbursements, (c) agreed to complete the GMES Sale and remit the sale proceeds to KeyBank, (d) agreed to make past due lease payments owed to KeyBank pursuant to the Master Lease Agreements, and (e) granted KeyBank security interests in various additional property including certain real property. A true and accurate copy of the Amended and Restated Forbearance Agreement is attached hereto as Exhibit 79 and is made an integral part hereof.

155.    In connection with the Amended and Restated Forbearance Agreement, the Guarantors executed and delivered to KeyBank that certain Reaffirmation of Agreements (the "**April 9, 2019 Reaffirmation of Agreements**" and together with the Original Forbearance Agreement, the November 9, 2018 Reaffirmation Agreement, the December 21, 2018 Reaffirmation Agreement, the Amended and Restated Forbearance Agreement and all related documents, collectively, the "**Forbearance Agreements**" and each a "**Forbearance Agreement**"), in which among other things, the Guarantors reaffirmed their obligations under the Agreements and Forbearance Agreements, and granted KeyBank a security interest in all of their assets (collectively, the "**Guarantor Collateral**"). A true and accurate copy of the April 9,

2019 Reaffirmation of Agreements is attached hereto as <u>Exhibit 80</u> and is made an integral part hereof.

156.     KeyBank perfected its security interest in the Guarantor Collateral by filing U.C.C. Financing Statements with the New York Secretary of State (collectively, the "**Guarantor Financing Statements**"). True and accurate copies of the Guarantor Financing Statements are attached hereto as <u>Exhibit 81</u> and are made an integral part hereof.

157.     While the Defendants were able to sell some solar projects to GMES, the proceeds from those asset sales were substantially less than the amount that the Defendants assured KeyBank would be received and remitted to KeyBank for application to the outstanding indebtedness under the Agreements and Forbearance Agreements. Additionally, the Defendants failed to make the lease payments in accordance with the Amended and Restated Forbearance Agreement. KeyBank also learned that Mr. Erby was interfering with the Chief Restructuring Officer's efforts to stabilize the business, manage liquidity and maximize the value of the assets, in direct violation of the resolutions appointing Mr. Scouler as Chief Restructuring Officer and the terms and conditions of the Amended and Restated Forbearance Agreement.

158.     On May 3, 2019, Mr. Erby informed KeyBank that Messrs. Erby and Fobare, as the directors and managers of the Defendants, had terminated Mr. Scouler as the Chief Restructuring Officer. As a result of Mr. Scouler's termination, a key member Defendants' accounting staff resigned, leaving the business without an experienced person necessary to manage collection of accounts receivable and facilitate proper invoicing to the offtakers receiving power from the solar projects for which the Defendants are responsible for operation and maintenance.

159.    Messrs. Erby and Fobare ultimately retained and appointed Robert Salluzzo of Schwartz Heslin Group, Inc. ("**Schwartz Heslin**") as the new Chief Restructuring Officer for the Defendants.

160.    Pursuant to the retention agreement between Schwartz Heslin and the Defendants and the resolutions appointing Mr. Salluzzo as the Chief Restructuring Officer, Mr. Salluzzo was granted full and exclusive authority over the Defendants' business operations. However, as he did with Mr. Scouler, Mr. Erby interfered in the business operations of the company and undermined Mr. Salluzzo's efforts to discharge his duties as Chief Restructuring Officer.

161.    Mr. Salluzzo repeatedly demanded that Mr. Erby stop interfering in the operation of the Defendants' business and not make payments to third parties without the Chief Restructuring Officer's approval. Despite these requests, Mr. Erby continued to interfere and cause significant chaos at the company as a result of misdirection of personnel and depletion of limited financial resources. Additionally, the Defendants failed to pay Mr. Salluzzo and Schwartz Heslin in a timely manner.

162.    KeyBank recently learned that Mr. Salluzzo resigned as the Chief Restructuring Officer. KeyBank informed Mr. Erby that it was imperative that the Defendants retain a qualified and experienced Chief Restructuring Officer by November 29, 2019. The Defendants did not meet this deadline. On December 6, 2019 KeyBank sent Mr. Erby an e-mail (the "**December 6, 2019 E-mail**") in which KeyBank reiterated that the Defendants needed to appoint a new a qualified Chief Restructuring Officer and that the current status was not acceptable. A true and accurate copy of the December 6, 2019 E-mail is attached hereto as Exhibit 82 and is made an integral part hereof.  As of this date, the Defendants have not appointed a new and qualified Chief Restructuring Officer.

42

163.    While Mr. Salluzzo was the Chief Restructuring Officer, the Defendants made several small asset sales that were helping to reduce the indebtedness owed by the companies. Additionally, although Mr. Erby was negotiating larger deals that have the potential to generate significant proceeds, given Mr. Erby's erratic behavior and the Defendants' poor track record, those potential sales have been jeopardized.

164.    Many of the solar facilities operated by the Defendants under the Master Lease Agreements have been poorly maintained and are not producing the amount of solar power required under the various agreements.  The Defendants are either unwilling or unable to address these issues. As a result, several of the solar projects are not generating enough revenue to even cover the lease payments for those sites.  Additionally, the Defendants failure to adequately maintain the equipment and the solar sites, could result in power offtakers cancelling their agreements to purchase power from the Defendants, which would further damage the Defendants' business.

165.    At this point, the Defendants' business is in free fall.  Without a competent Chief Restructuring Officer the proposed asset sales will likely collapse, and the maintenance issues at the solar sites will not be corrected.  All of these consequences are value destructive and will cause further substantial harm to KeyBank and the Defendants' other creditors.

166.    Numerous payment and non-payment defaults exist and are continuing under the Agreements. As noted above, the Defendants have failed to make the payments required under the Agreements, and currently owe KeyBank over $6 million.  The Defendants' failure to make these payments constitutes defaults and Events of Default under the Agreements (the "**Payment Defaults**"). Additionally, the Defendants' refusal to appoint a proper Chief Restructuring Officer (the "**CRO Default**"), and failure to deliver to KeyBank relevant cash flow information, weekly

43

variance reports, and certain solar project specific budgets (collectively the "**Financial Information Reports Default**") constitute defaults under various Agreements. Finally, the Specified Defaults (as defined in the Amended and Restated Forbearance Agreement) and the Specified Terminating Events (as defined in the Amended and Restated Forbearance Agreement and together with the Payment Defaults, the CRO default, the Financial Information Reports Default and the Specified Defaults, collectively, the "**Defaults**") have not been cured and are continuing.  Additional defaults or Events of Default may also exist and be continuing under the Agreements.

167.    As a result, KeyBank's collateral is at serious risk and diminishing in value.

168.    In conjunction with the execution of the April 9, 2019 Reaffirmation of Agreements, as consideration for KeyBank's covenant to forbear contained therein, and as security for the obligations under the Agreements, certain Defendants executed and delivered to KeyBank certain mortgages (collectively, the "**Mortgages**") granting KeyBank mortgage liens on certain real estate, together with all present and future fixtures, improvements, easements, privileges, appurtenances, tenements, leases, rents, and similar property (in each case, the "**Mortgaged Property**").   Those granting Defendants, the Mortgaged Property, and the obligations secured are identified and described in greater particularity in the Mortgages; specifically:

> a.   Defendant Solar Energy Properties granted KeyBank a mortgage lien on the Mortgaged Property located in Niagara County, New York, commonly known as 1919 Transit Road, Town of Newfane, with a tax map ID of 15.-1-23.111, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Niagara County, New York on May 8, 2019 with a reference of 2019-06956, a copy of which is attached hereto as Exhibit 83 and incorporated herein by reference;

44

b.  Defendant Route 7 Solar Farm 1 granted KeyBank a mortgage lien on the Mortgaged Property located in Rensselaer County, New York, commonly known as NY 7, Town of Pittstown, with a tax map ID of 55.-3-5, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Rensselaer County, New York on May 9, 2019 with a reference of Liber 8824, Page 276, a copy of which is attached hereto as Exhibit 84 and incorporated herein by reference;

c.  Defendant Load Zone A granted KeyBank a mortgage lien on the Mortgaged Property located in Chautauqua County, New York, commonly known as Route 60 – 3563 Luce Road, Town of Charlotte, with a tax map ID of 216.00-2-26, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Chautauqua County, New York on May 7, 2019 with a  reference of MT2019002060, a copy of which is attached hereto as Exhibit 85 and incorporated herein by reference;

d.  Defendant Load Zone B and C granted KeyBank a mortgage lien on the Mortgaged Property located in Steuben County, New York, commonly known as 2061 Indian Hills Road, Town of Erwin, and 10240 State Route 53, Town of Prattsburgh, with a tax map IDs of 351.00-01-009.110 and 060.00-01-018.100, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Steuben County, New York on May 15, 2019 with a reference of Liber 4405, Page 116, a copy of which is attached hereto as Exhibit 86 and incorporated herein by reference;

e.  Defendant Load Zone B and C granted KeyBank a mortgage lien on the Mortgaged Property located in Cayuga County, New York commonly known as 5447 Skinner Hill Road, Town of Moravia, with a tax map ID of 211.00-1-13.1, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Cayuga County, New York on May 9, 2019 with a reference of Book 3720, Page 3, a copy of which is attached hereto as Exhibit 87 and incorporated herein by reference;

f.  Defendant Load Zone B and C granted KeyBank a mortgage lien on the Mortgaged Property located in Schuyler County, New York commonly known as 942 County Road 16, Town of Orange, with a tax map ID of 92.00-1-34.2, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Schuyler County, New York on May 8, 2019 with a reference of Liber 540, Page 514, a copy of which is attached hereto as Exhibit 88 and incorporated herein by reference;

g.  Defendant Load Zone D and E granted KeyBank a mortgage lien on the Mortgaged Property located in Chenango County, New York commonly known as 121 Pearl Street, Town of Smithville, with a tax map ID of 202.-1-18.41, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Chenango County, New York on June 13, 2019 with a reference of 2019-00001026, a copy of which is attached hereto as Exhibit 89 and incorporated herein by reference;

h.  Defendant Load Zone F granted KeyBank a mortgage lien on the Mortgaged Property located in Albany County, New York commonly known as 120 and 120A Cordell Road, Town of Colonie, with a tax map IDs of 16.1-1-47.3 and 16.1-1-47.2, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Albany County, New York on May 6, 2019 with a reference of R2019-8788, a copy of which is attached hereto as Exhibit 90 and incorporated herein by reference;

i.  Defendant Load Zone F granted KeyBank a mortgage lien on the Mortgaged Property located in Columbia County, New York commonly known as County Route 11A, Town of Copake, with a tax map ID of 144.-1-40, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Columbia County, New York on May 7, 2019 with a reference of Liber 884, Page 1857, a copy of which is attached hereto as Exhibit 91 and incorporated herein by reference;

j.  Load Zone F granted KeyBank a mortgage lien on the Mortgaged Property located in Rensselaer County, New York commonly known as 3042 NY 7 and NY 7, Town of Pittstown, with a tax map IDs of 54.-5-2.12 and 54.-5-2.13, all as set forth in that certain Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Rensselaer County, New York on May 1, 2019 with a reference of Liber 8818, Page 167, a copy of which is attached hereto as Exhibit 92 and incorporated herein by reference;

k.  Defendant Load Zone F granted KeyBank a mortgage lien on the Mortgaged Property located in Washington County, New York commonly known as State Route 22 and 35 Ritchie Road, Town of Granville, 331 Spraguetown Road, Town of Greenwich, and 1653 County Route 153, Town of Salem, with tax map IDs of 98.-1-46, 98.-1-47, 98.-1-48, 98.-1-49, 221.-2-1.5 and 193.-1-19.15, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Washington County, New York on May 8, 2019 with a reference of 2019-126353, a copy of which is attached hereto as Exhibit 93 and incorporated herein by reference; and

46

l. Defendant Load Zone F granted KeyBank a mortgage lien on the Mortgaged Property located in Schoharie County, New York commonly known as 120 Gardnersville Road, Town of Seward, with tax map ID of 31.-2-3.13, all as set forth in that certain Collateral Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement, and Fixture Filing, which was recorded in the real property records of Schoharie County, New York on May 7, 2019 with a reference of Liber 1837, Page 51, a copy of which is attached hereto as <u>Exhibit 94</u> and incorporated herein by reference.

169. Concurrently with the initiation of these proceedings and in accordance with the express consents contained in the Mortgages, KeyBank sought the appointment of a receiver to, among other things, market and sell the Mortgaged Property, together with, or separately from, its other collateral, to satisfy the obligations secured thereby.

**FIRST CLAIM FOR RELIEF**
**(MONEY JUDGMENT AGAINST MONOLITH SOLAR – $488K TERM NOTE)**

170. KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

171. KeyBank is in possession of the $488K Term Note and is the current holder and owner of the $488K Term Note.

172. Monolith Solar is liable for the obligations under the $488K Term Note.

173. As a result of the Defaults, including the failure of Monolith Solar to make payments in accordance with the $488K Term Note, and the defaults that have occurred and are continuing under the other Agreements between KeyBank and Monolith Solar, Events of Default (as defined in the $488K Term Note) exist and are continuing under the $488K Term Note.

174. Based on the foregoing, Monolith Solar has materially breached its obligations under the $488K Term Note.

175. Pursuant to the $488K Term Note, KeyBank "may declare the entire unpaid balance under this Note and all accrued unpaid interest immediately due" upon Default.

47

176.    Accordingly, all sums due and owing under the $488K Term Note are hereby accelerated and immediately due and payable.

177.    Accordingly, as of December 31, 2019, Monolith Solar owes KeyBank the following sums under the $488K Term Note:

| Outstanding principal | $192,621.22 |
|---|---|
| Accrued interest | $4,725.64 |
| Late charges | $6,845.64 |
| Other fees | $1,003.24 |
| **TOTAL** | $205,195.74 <br> plus default interest from and after the date of default (the "**$488K Indebtedness**") |

178.    Under the terms of the $488K Term Note, Monolith Solar also now owes KeyBank "all costs and expenses [KeyBank] incurs to collect" the $488K Indebtedness and foreclose the $488K Collateral including, without limitation, reasonable attorneys' fees (the "**$488K Collection Expenses**").

## SECOND CLAIM FOR RELIEF
### (FORECLOSURE OF $488K SECURITY INTEREST AGAINST DEFENDANTS MONOLITH SOLAR AND SAE)

179.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

180.    Pursuant to the $488K Security Agreement, Monolith Solar and SAE granted KeyBank a security interest in the $488K Collateral to secure payment and performance of Monolith Solar's obligations under the $488K Term Note.

181.    KeyBank perfected its security interest in the $488K Collateral by filing the $488K Collateral Financing Statement.

182.    KeyBank has a valid and enforceable first-priority lien on the $488K Collateral.

48

183.    As a result of the Defaults, including the failure of Monolith Solar to make payments in accordance with the $488K Term Note, and the defaults that have occurred and are continuing under the other Agreements among KeyBank and the Defendants, Events of Default (as defined in the $488K Security Agreement) exist and are continuing under the $488K Security Agreement.

184.    The $488K Security Agreement provides that following an Event of Default, KeyBank is entitled to "have a receiver appointed as a matter of right."

185.    As a result of the Events of Default that have occurred and are continuing under the $488K Security Agreement, KeyBank is entitled to immediate possession of the $488K Collateral in order to exercise its rights as a secured party under the terms and provisions of the $488K Security Agreement and other Loan Documents.

186.    Additionally, KeyBank is entitled to exercise all remedies under the $488K Security Agreement, the other Agreements, the Uniform Commercial Code, and applicable law, including, without limitation, obtaining possession of the $488K Collateral, arranging for the sale of the $488K Collateral, and applying the proceeds of the $488K Collateral sale to the indebtedness owing to KeyBank, until such time as the indebtedness is paid in full.

187.    Monolith Solar and SAE are wrongfully detaining the $488K Collateral from KeyBank.

188.    KeyBank is damaged by Monolith Solar and SAE's retention of the $488K Collateral for the reason that the $488K Collateral continues to diminish in value.

### THIRD CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST DEFENDANT SAE – $488K SAE GUARANTY)

189.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

49

190.    Pursuant to the $488K SAE Guaranty, defendant SAE unconditionally and absolutely guaranteed the full and prompt payment when due, of all of the obligations under the $488K Term Note when such obligations become due and payable.

191.    SAE has failed to comply with the terms, conditions, and obligations of the $488K SAE Guaranty and is in default of its obligations thereunder.

192.    By reason of the defaults under the $488K Term Note, the other Agreements, and the $488K SAE Guaranty, and the failure of SAE to cure such defaults, pursuant to the $488K SAE Guaranty, KeyBank is entitled to recover from SAE the full amount of the $488K Indebtedness and the $488K Collection Expenses.

## FOURTH CLAIM FOR RELIEF
### ($488K COLLECTION EXPENSES AGAINST MONOLITH SOLAR, SAE AND THE GUARANTORS)

193.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

194.    Because of the Events of Default that exist and are continuing under the $488K Term Note, and the provisions of the $488K Term Note, the $488K SAE Guaranty and the Unconditional Guaranty, Monolith Solar, SAE and the Guarantors, jointly and severally, also owe KeyBank the $488K Collection Expenses.

## FIFTH CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST PARENT BORROWERS – LOAN AGREEMENT AND REVOLVING NOTE)

195.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

196.    KeyBank is in possession of the Revolving Note and is the current holder and owner of the Revolving Note.

197.    The Parent Borrowers are liable for the obligations under the Revolving Note.

198.    As a result of the Defaults, including the failure of Parent Borrowers to make payments in accordance with the Revolving Note and the Loan Agreement, the defaults and Events of Default that have occurred and are continuing under the other Agreements among KeyBank and the Defendants and the failure of the Parent Borrowers to pay their debts as the come due, Events of Default (as defined in the Loan Agreement and the Revolving Note) have occurred and are continuing under the Loan Agreement and the Revolving Note.

199.    Based on the foregoing, the Parent Borrowers have materially breached their obligations under the Revolving Note and the Loan Agreement.

200.    Pursuant to the Loan Agreement and the Revolving Note, upon the occurrence of an Event of Default, KeyBank may declare all of the obligations of the Parent Borrowers under the Loan Agreement and the Revolving Note to be immediately due and payable."

201.    Accordingly, all sums due and owing under the Loan Agreement and Revolving Note are hereby accelerated and immediately due and payable.

202.    Accordingly, as of December 31, 2019, the Parent Borrowers, jointly and severally, owe KeyBank the following sums under the Revolving Note:

| | |
|---|---|
| Outstanding principal | $3,671,812.72 |
| Accrued interest | $426,569.22 |
| Late charges | $14,482.61 |
| **TOTAL** | $4,112,864.61[1] <br> plus default interest from and after the date of default (the "**Revolving Indebtedness**") |

203.    Under the terms of the Revolving Note, the Parent Borrowers also now owe KeyBank for "all of [KeyBank's] costs, expenses and attorneys' fees" (the "**Revolving Note Collection Expenses**").

---

[1] KeyBank held $684,280.85 as cash collateral as of December 31, 2019.

## SIXTH CLAIM FOR RELIEF
## (FORECLOSURE OF REVOLVING SECURITY AGREEMENTS AGAINST THE PARENT BORROWER DEFENDANTS)

204.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

205.    Pursuant to the Revolving Security Agreements, the Parent Borrowers granted KeyBank a security interest in the Revolving Loan Collateral to secure payment and performance of the of the obligations of Parent Borrowers under the Loan Agreement and the Revolving Note.

206.    KeyBank has a valid and enforceable first-priority lien on the Revolving Loan Collateral.

207.    KeyBank perfected its security interest in the Revolving Loan Collateral by filing the March 8, 2018 Financing Statements.

208.    As a result of the Defaults, including the failure of Parent Borrowers to make payments in accordance with the Revolving Note and the Loan Agreement, the Defaults and Events of Default that have occurred and are continuing under the other Agreements among KeyBank and the Defendants and the failure of the Parent Borrowers to pay their debts as the come due, Events of Default (as defined in the Revolving Security Agreements) have occurred and are continuing under the Revolving Security Agreements.

209.    The Revolving Security Agreements provide that following an Event of Default, KeyBank is entitled to have a receiver appointed.

210.    As a result of the Events of Default that have occurred and are continuing under the Revolving Security Agreements, KeyBank is entitled to immediate possession of the

52

Revolving Collateral in order to exercise its rights as a secured party under the terms and provisions of the Revolving Security Agreements and other Loan Documents.

211.    Additionally, KeyBank is entitled to exercise all remedies under the Revolving Security Agreements, the other Agreements, the Uniform Commercial Code, and applicable law, including, without limitation, obtaining possession of the Revolving Collateral, arranging for the sale of the Revolving Collateral, and applying the proceeds of the Revolving Collateral sale to the indebtedness owing to KeyBank, until such time as the indebtedness is paid in full.

212.    The Parent Borrowers are wrongfully detaining the Revolving Collateral from KeyBank.

213.    KeyBank is damaged by the Parent Borrowers' retention of the Revolving Collateral for the reason that the Revolving Collateral continues to diminish in value.

## SEVENTH CLAIM FOR RELIEF
### (REVOLVING NOTE COLLECTION EXPENSES AGAINST ALL DEFENDANTS)

214.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

215.    Because of the Defaults, including the Defaults and Events of Default under the Loan Agreement and the Revolving Note, and the provisions of the Loan Agreement, the Revolving Note and the Unconditional Guaranty, the Parent Borrowers and the Guarantors, jointly and severally, also owe KeyBank the Revolving Note Collection Expenses.

## EIGHTH CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST $850K TERM NOTE BORROWERS – $850K TERM NOTE)

216.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

217.     KeyBank is in possession of the $850K Term Note and is the current holder and owner of the $850K Term Note.

218.     The $850K Term Note Borrowers are liable for the obligations under the $850K Term Note.

219.     As a result of the Defaults, including the failure of $850K Term Note Borrowers to make payments in accordance with the $850K Term Note, and the defaults and Events of Default that have occurred and are continuing under the other Agreements among KeyBank and the Defendants, Events of Default (as defined in the $850K Term Note) have occurred and are continuing under the $850K Term Note.

220.     Based on the foregoing, $850K Term Note Borrowers have materially breached their obligations under the $850K Term Note.

221.     Pursuant to the $850K Term Note upon the occurrence of an Event of Default, KeyBank may declare all of the obligations of the $850K Term Note Borrowers under the $850K Term Note to be immediately due and payable.

222.     Accordingly, all sums due and owing under the $850K Term Note are hereby accelerated and immediately due and payable.

223.     Accordingly, as of December 31, 2019, the Term Note Borrowers owe KeyBank the following sums under the $850K Term Note:

| Outstanding principal | $505,416.68 |
|---|---|
| Accrued interest | $19,925.94 |
| Late charges | $31,226.51 |
| **TOTAL** | $556,569.13 plus default interest from and after the date of default (the "**$850K Indebtedness**") |

224.     Under the terms of the $850K Term Note, the $850K Term Note Borrowers also owe KeyBank "all costs and expenses [KeyBank] incurs to collect" the $850K Indebtedness and

54

foreclose the $850K Collateral including, without limitation, reasonable attorneys' fees (the "$**850K Collection Expenses**").

## NINTH CLAIM FOR RELIEF
## (FORECLOSURE OF $850K SECURITY INTERESTS)

225.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

226.    Pursuant to the $850K Security Agreements, the $850K Term Note Borrowers granted KeyBank a security interest in the $850K Collateral to secure payment and performance of the obligations of $850K Term Note Borrowers under, among other things, the $850K Term Note.

227.    KeyBank perfected its security interest in the $850K Collateral by filing the March 8, 2018 Financing Statements.

228.    KeyBank has a valid and enforceable first-priority lien on the $850K Collateral.

229.    As a result of the Defaults, including the failure of $850K Term Note Borrowers to make payments in accordance with the $850K Term Note and the Defaults and Events of Default that have occurred and are continuing under the other Agreements among KeyBank and the Defendants, Events of Default (as defined in the $850K Security Agreements) have occurred and are continuing under the $850K Security Agreements.

230.    The $850K Security Agreements provide that following an Event of Default, KeyBank is entitled to have a receiver appointed.

231.    As a result of the Defaults, including the Events of Default that have occurred and are continuing under the $850K Term Note, and the $850K Security Agreements, KeyBank is entitled to immediate possession of the $850K Collateral in order to exercise its rights as a

secured party under the terms and provisions of the $850K Security Agreements and other Loan Documents.

232.    Additionally, KeyBank is entitled to exercise all remedies under the $850K Security Agreements, the other Agreements, the Uniform Commercial Code, and applicable law, including, without limitation, obtaining possession of the $850K Collateral, arranging for the sale of the $850K Collateral, and applying the proceeds of the $850K Collateral sale to the indebtedness owing to KeyBank, until such time as the indebtedness is paid in full.

233.    The $850K Term Note Borrowers are wrongfully detaining the $850K Collateral from KeyBank.

234.    KeyBank is damaged by the $850K Term Note Borrowers' retention of the $850K Collateral for the reason that the $850K Collateral continues to diminish in value.

## TENTH CLAIM FOR RELIEF
### ($850K COLLECTION EXPENSES AGAINST ALL DEFENDANTS)

235.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

236.    Because of the Defaults, including the Defaults and Events of Default under the $850K Term Note, and the provisions of the $850K Term Note, and the Unconditional Guaranty, the $850K Term Note Borrowers and the Guarantors, jointly and severally, also owe KeyBank the $850K Collection Expenses.

## ELEVENTH CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST MONOLITH SOLAR ON THE JULY 29, 2016 NOTE)

237.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

4822-8792-6190

238.    KeyBank is in possession of the July 29, 2016 Note and is the current holder and owner of the July 29, 2016 Note.

239.    Monolith Solar is liable for the obligations under the July 29, 2016 Note.

240.    As a result of the Defaults, including the failure of Monolith Solar to make payments in accordance with the July 29, 2016 Note, and the defaults and Events of Default that have occurred and are continuing under the other Agreements among KeyBank and the Defendants, Events of Default (as defined in the July 29, 2016 Note) have occurred and are continuing under the July 29, 2016 Note.

241.    Based on the foregoing, Monolith Solar has materially breached its obligations under the July 29, 2016 Note.

242.    Pursuant to the July 29, 2016 Note upon the occurrence of an Event of Default, KeyBank may declare all of the obligations of Monolith Solar under the July 29, 2016 Note to be immediately due and payable.

243.    Accordingly, all sums due and owing under the July 29, 2016 Note are hereby accelerated and immediately due and payable.

244.    Accordingly, as of December 29, 2019, Monolith Solar owes KeyBank the following sums under the July 29, 2016 Note:

| Outstanding principal | $820,665.83 |
|---|---|
| Interest | $49,914.24 |
| Late fees | $10,253.49 |
| **TOTAL** | <u>$880,833.58</u><br>plus default interest from and after the date of default (the "**July 29, 2016 Note Indebtedness**" and together with the $488K Indebtedness, the Revolving Indebtedness, and the $850K Indebtedness, collectively, the "**Notes Indebtedness**") |

245.     Under the terms of the July 29, 2016 Note, Monolith Solar also owes KeyBank "all costs and expenses [KeyBank] incurs to collect" the July 29, 2016 Note Indebtedness and foreclose the July 29, 2016 Note Collateral including, without limitation, reasonable attorneys' fees (the "**July 29, 2016 Note Collection Expenses**").

## TWELFTH CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST SCHENECTADY HETCHELTOWN ROAD SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

246.     KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

247.     Pursuant to the July 24, 2015 Lease Agreement, defendant Schenectady Hetcheltown Road Solar 1 is required to make monthly lease payments to KeyBank in the amount of $30,089.80

248.     Schenectady Hetcheltown Road Solar 1 has failed to remit the monthly lease payments for the past thirteen to fourteen months (depending on the applicable lease schedule).

249.     As a result, defaults have occurred and are continuing under the July 24, 2015 Lease Agreement.

250.     Based on the foregoing, Schenectady Hetcheltown Road Solar 1 has materially breached its obligations under the July 24, 2015 Lease Agreement.

251.     As of December 31, 2019, the following sums are currently due and payable to KeyBank under the July 24, 2015 Lease Agreement:

| Outstanding lease payments | $402,517.40 |
|---|---|
| Late charges | $21,630.22 |
| **TOTAL** | $424,147.62 |

## THIRTEENTH CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST JOHNSONVILLE ROUTE 7 SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

4822-8792-6190

252. KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

253. Pursuant to the February 15, 2016 Lease Agreement, Defendant Johnsonville Route 7 Solar 1 is required to make monthly lease payments to KeyBank in the amount of $1,499.38.

254. Johnsonville Route 7 Solar 1 has failed to remit the monthly lease payments for the past fourteen months.

255. As a result, defaults have occurred and are continuing under the February 15, 2016 Lease Agreement.

256. Based on the foregoing, Johnsonville Route 7 Solar 1 has materially breached its obligations under the July 24, 2015 Lease Agreement.

257. As of December 31, 2019, the following sums are currently due and payable to KeyBank under the February 15, 2016 Lease Agreement:

| | |
|---|---|
| Outstanding lease payments | $20,991.32 |
| Late charges | $1,124.55 |
| **TOTAL** | $22,115.87 |

## FOURTEENTH CLAIM FOR RELIEF
## (MONEY JUDGMENT AGAINST CRARYVILLE SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

258. KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

259. Pursuant to March 1, 2016 Lease Agreement, Defendant Craryville Solar 1 is required to make monthly lease payments to KeyBank in the amount of $1,499.74.

260.    Craryville Solar 1 has failed to remit the monthly lease payments for the past thirteen months.

261.    As a result, defaults have occurred and are continuing under the March 1, 2016 Lease Agreement.

262.    Based on the foregoing, Craryville Solar 1 has materially breached its obligations under the March 1, 2016 Lease Agreement.

263.    As of December 31, 2019, the following sums are currently due and payable to KeyBank under the March 1, 2016 Lease Agreement:

| Outstanding lease payments | $19,496.62 |
|---|---|
| Late charges | $1,049.86 |
| **TOTAL** | $20,546.48 |

## FIFTEENTH CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST SCHENECTADY ICE RINK SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

264.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

265.    Pursuant to November 16, 2016 Lease Agreement, Defendant Schenectady Ice Rink Solar 1 is required to make monthly lease payments to KeyBank in the amount of $1,300.35.

266.    Schenectady Ice Rink Solar 1 has failed to remit the monthly lease payments for the past fourteen months.

267.    As a result, defaults have occurred and are continuing under the November 16, 2016 Lease Agreement.

268.    Based on the foregoing, Schenectady Ice Rink Solar 1 has materially breached its obligations under November 16, 2016 Lease Agreement.

269.     As of December 31, 2019, the following sums are currently due and payable to KeyBank under the November 16, 2016 Lease Agreement:

| Outstanding lease payments | $18,204.90 |
|---|---|
| Late charges | $975.30 |
| **TOTAL** | $19,180.20 |

## SIXTEENTH CLAIM FOR RELIEF
## (MONEY JUDGMENT AGAINST MARION WARNER SOLAR FOR FAILURE TO MAKE LEASE PAYMENTS)

270.     KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

271.     Pursuant to November 20, 2016 Lease Agreement, Defendant Marion Warner Solar is required to make monthly lease payments to KeyBank in the amount of $2,082.84.

272.     Marion Warner Solar has failed to remit the monthly lease payments for the past fifteen months.

273.     As a result, defaults have occurred and are continuing under the November 20, 2016 Lease Agreement.

274.     Based on the foregoing, Marion Warner Solar has materially breached its obligations under November 20, 2016 Lease Agreement.

275.     As of December 31, 2019, the following sums are currently due and payable to KeyBank under the November 20, 2016 Lease Agreement:

| Outstanding lease payments | $31,242.60 |
|---|---|
| Late charges | $1,666.24 |
| **TOTAL** | $32,908.84 |

## SEVENTEENTH CLAIM FOR RELIEF
## (MONEY JUDGMENT AGAINST SEWARD PINE HILL ROAD SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

276.   KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

277.   Pursuant to February 16, 2017 Lease Agreement, Defendant Seward Pine Hill Road Solar 1 is required to make monthly lease payments to KeyBank in the amount of $7,032.84.

278.   Seward Pine Hill Road Solar 1 has failed to remit the monthly lease payments for the past thirteen to fourteen months (depending on the applicable lease schedule).

279.   As a result, defaults have occurred and are continuing under the February 16, 2017 Lease Agreement.

280.   Based on the foregoing, Seward Pine Hill Road Solar 1 has materially breached its obligations under the February 16, 2017 Lease Agreement.

281.   As of December 31, 2019, the following sums are currently due and payable to KeyBank under the February 16, 2017 Lease Agreement:

| | |
|---|---|
| Outstanding lease payments | $95,050.80 |
| Late charges | $4,959.40 |
| **TOTAL** | $100,010.20 |

**EIGHTEENTH CLAIM FOR RELIEF**
**(MONEY JUDGMENT AGAINST CRARYVILLE SOLAR 2 FOR FAILURE TO MAKE LEASE PAYMENTS)**

282.   KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

283.   Pursuant to February 17, 2017 Lease Agreement, Defendant Craryville Solar 2 is required to make monthly lease payments to KeyBank in the amount of $1,698.83.

284.     Craryville Solar 2 has failed to remit the monthly lease payments for the past fourteen months.

285.     As a result, defaults have occurred and are continuing under the February 17, 2017 Lease Agreement.

286.     Based on the foregoing, Craryville Solar 2 has materially breached its obligations under the February 17, 2017 Lease Agreement.

287.     As of December 31, 2019, the following sums are currently due and payable to KeyBank under the February 17, 2017 Lease Agreement:

| | |
|---|---|
| Outstanding lease payments | $23,783.62 |
| Late charges | $1,274.10 |
| **TOTAL** | <u>$25,057.72</u> |

## NINETEENTH CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST ALBANY CSD SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

288.     KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

289.     Pursuant to March 16, 2017 Albany Lease Agreement, Defendant Albany CSD Solar 1 is required to make monthly lease payments to KeyBank in the amount of $3,821.26.

290.     Albany CSD Solar 1 has failed to remit the monthly lease payments for the past thirteen to fourteen months (depending on the applicable lease schedule).

291.     As a result, defaults have occurred and are continuing under the March 16, 2017 Albany Lease Agreement.

292.     Based on the foregoing, Albany CSD Solar 1 has materially breached its obligations under the March 16, 2017 Albany Lease Agreement.

4822-8792-6190

293.   As of December 31, 2019, the following sums are currently due and payable to KeyBank under the March 16, 2017 Albany Lease Agreement:

| Outstanding lease payments | $51,392.64 |
|---|---|
| Late charges | $2,760.65 |
| **TOTAL** | $54,153.29 |

## TWENTIETH CLAIM FOR RELIEF
## (MONEY JUDGMENT AGAINST SCOTIA GLENVILLE CSD SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

294.   KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

295.   Pursuant to March 16, 2017 Scotia Lease Agreement, Defendant Scotia Glenville CSD Solar 1 is required to make monthly lease payments to KeyBank in the amount of $7,266.71.

296.   Scotia Glenville CSD Solar 1 has failed to remit the monthly lease payments for the past thirteen to fourteen months (depending on the applicable lease schedule).

297.   As a result, defaults have occurred and are continuing under the March 16, 2017 Scotia Lease Agreement.

298.   Based on the foregoing, Scotia Glenville CSD Solar 1 has materially breached its obligations under the March 16, 2017 Scotia Lease Agreement.

299.   As of December 31, 2019, the following sums are currently due and payable to KeyBank under the March 16, 2017 Scotia Lease Agreement:

| Outstanding lease payments | $100,009.23 |
|---|---|
| Late charges | $5,363.86 |
| **TOTAL** | $105,373.09 |

**TWENTY-FIRST CLAIM FOR RELIEF**
**(MONEY JUDGMENT AGAINST MAYFIELD CSD SOLAR 1 FOR FAILURE TO
MAKE LEASE PAYMENTS)**

300.   KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

301.   Pursuant to April 14, 2017 Lease Agreement, Defendant Mayfield CSD Solar 1 is required to make monthly lease payments to KeyBank in the amount of $2,459.18.

302.   Mayfield CSD Solar 1 has failed to remit the monthly lease payments for the past thirteen months.

303.   As a result, defaults have occurred and are continuing under the April 14, 2017 Lease Agreement.

304.   Based on the foregoing, Mayfield CSD Solar 1 has materially breached its obligations under the April 14, 2017 Lease Agreement.

305.   As of December 31, 2019, the following sums are currently due and payable to KeyBank under the April 14, 2017 Lease Agreement:

| | |
|---|---|
| Outstanding lease payments | $31,969.34 |
| Late charges | $1,721.44 |
| **TOTAL** | $33,690.78 |

**TWENTY-SECOND CLAIM FOR RELIEF**
**(MONEY JUDGMENT AGAINST CITY OF ALBANY SOLAR 1 FOR FAILURE TO
MAKE LEASE PAYMENTS)**

306.   KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

307.   Pursuant to May 3, 2017 Lease Agreement, Defendant City of Albany Solar 1 is required to make monthly lease payments to KeyBank in the amount of $862.55.

308.    City of Albany Solar 1 has failed to remit the monthly lease payments for the past thirteen months.

309.    As a result, defaults have occurred and are continuing under the May 3, 2017 Lease Agreement.

310.    Based on the foregoing, City of Albany Solar 1 has materially breached its obligations under the May 3, 2017 Lease Agreement.

311.    As of December 31, 2019, the following sums are currently due and payable to KeyBank under the May 3, 2017 Lease Agreement:

| | |
|---|---|
| Outstanding lease payments | $11,213.15 |
| Late charges | $603.82 |
| **TOTAL** | $11,816.97 |

## <u>TWENTY-THIRD CLAIM FOR RELIEF</u>
### (MONEY JUDGMENT AGAINST SCHUYLERVILLE CSD SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

312.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

313.    Pursuant to June 27, 2017 Lease Agreement, Defendant Schuylerville CSD Solar 1 is required to make monthly lease payments to KeyBank in the amount of $1,321.00.

314.    Schuylerville CSD Solar 1 has failed to remit the monthly lease payments for the past fourteen months.

315.    As a result, defaults have occurred and are continuing under the June 27, 2017 Lease Agreement.

316.    Based on the foregoing, Schuylerville CSD Solar 1 has materially breached its obligations under the June 27, 2017 Lease Agreement.

4822-8792-6190

317.    As of December 31, 2019, the following sums currently are due and payable to KeyBank under the June 27, 2017 Lease Agreement:

| | |
|---|---|
| Outstanding lease payments | $18,494.00 |
| Late charges | $990.75 |
| **TOTAL** | <u>$19,484.75</u> |

## TWENTY-FOURTH CLAIM FOR RELIEF
## (MONEY JUDGMENT AGAINST RENSSELAER COUNTY SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

318.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

319.    Pursuant to July 17, 2017 Lease Agreement, Defendant Rensselaer County Solar 1 is required to make monthly lease payments to KeyBank in the amount of $6,080.00.

320.    Rensselaer County Solar 1 has failed to remit the monthly lease payments for the past thirteen to fourteen months (depending on the applicable lease schedule).

321.    As a result, defaults have occurred and are continuing under the July 17, 2017 Lease Agreement.

322.    Based on the foregoing, Rensselaer County Solar 1 has materially breached its obligations under the July 17, 2017 Lease Agreement.

323.    As of December 31, 2019, the following sums are currently due and payable to KeyBank under the July 17, 2017 Lease Agreement:

| | |
|---|---|
| Outstanding lease payments | $83,975.00 |
| Late charges | $4,560.00 |
| **TOTAL** | <u>$88,535.00</u> |

## TWENTY-FIFTH CLAIM FOR RELIEF
## (MONEY JUDGMENT AGAINST CORDELL ROAD SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

4822-8792-6190

324.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

325.    Pursuant to August 4, 2017 Lease Agreement, Defendant Cordell Road Solar 1 is required to make monthly lease payments to KeyBank in the amount of $1,053.12.

326.    Cordell Road Solar 1 has failed to remit the monthly lease payments for the past fourteen months.

327.    As a result, defaults have occurred and are continuing under the August 4, 2017 Lease Agreement.

328.    Based on the foregoing, Cordell Road Solar 1 has materially breached its obligations under the August 4, 2017 Lease Agreement.

329.    As of December 31, 2019, the following sums currently are due and payable to KeyBank under the August 4, 2017 Lease Agreement:

| | |
|---|---|
| Outstanding lease payments | $14,743.68 |
| Late charges | $789.90 |
| **TOTAL** | <u>$15,533.58</u> |

## TWENTY-SIXTH CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST GRANVILLE CSD SOLAR 1 FOR FAILURE TO MAKE LEASE PAYMENTS)

330.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

331.    Pursuant to September 14, 2017 Lease Agreement, Defendant Granville CSD Solar 1 is required to make monthly lease payments to KeyBank in the amount of $3,500.00.

332.    Granville CSD Solar 1 has failed to remit the monthly lease payments for the past fourteen months.

333.    As a result, defaults have occurred and are continuing under the September 14, 2017 Lease Agreement.

334.    Based on the foregoing, Granville CSD Solar 1 has materially breached its obligations under the September 14, 2017 Lease Agreement.

335.    As of December 31, 2019, the following sums are currently due and payable to KeyBank under the September 14, 2017 Lease Agreement:

| Outstanding lease payments | $49,000.00 |
|---|---|
| Late charges | $2,625.00 |
| **TOTAL** | $51,625.00 |

## TWENTY-SEVENTH CLAIM FOR RELIEF
## (FORECLOSURE OF LESSEE SECURITY INTEREST – LESSEES)

336.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

337.    Pursuant to the Lessee Security Agreements, the Lessees granted KeyBank a security interest in the Collateral (as defined in the Lessee Security Agreements) to secure payment and performance of the of the obligations of Lessees under the Master Lease Agreements and related documents.

338.    KeyBank has a valid and enforceable first-priority lien on the Collateral (as defined in the Lessee Security Agreements).

339.    KeyBank perfected its security interest in the Collateral (as defined in the Lessee Security Agreements) by filing a financing statement.

340.    As a result of the Defaults, including the failure of Lessees to make payments in accordance with the Master Lease Agreements, Defaults (as defined in the Lessee Security Agreements) have occurred and are continuing under the Lessee Security Agreements.

69

341.    As a result of the Defaults that have occurred and are continuing under the Lessee Security Agreements, KeyBank is entitled to immediate possession of the Collateral (as defined in the Lessee Security Agreements) in order to exercise its rights as a secured party under the terms and provisions of the Revolving Security Agreements and other Loan Documents.

342.    Additionally, KeyBank is entitled to exercise all remedies under the Lessee Security Agreements, the other Agreements, the Uniform Commercial Code, and applicable law, including, without limitation, obtaining possession of the Collateral (as defined in the Lessee Security Agreements), arranging for the sale of the Collateral (as defined in the Lessee Security Agreements), and applying the proceeds of the sale to the indebtedness owing to KeyBank, until such time as the indebtedness is paid in full.

343.    The Lessees are wrongfully detaining the Collateral (as defined in the Lessee Security Agreements) from KeyBank.

344.    KeyBank is damaged by the Lessees' retention of the Collateral (as defined in the Lessee Security Agreements) for the reason that the Collateral continues to diminish in value.

**TWENTY-EIGHTH CLAIM FOR RELIEF**
**(MONEY JUDGMENT AGAINST SAE FOR FAILURE TO MAKE PAYMENTS**
**UNDER THE FIRST NIAGARA EQUIPMENT FINANCING AGREEMENT)**

345.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

346.    Pursuant to the First Niagara Equipment Financing Agreement, defendant SAE is required to make monthly lease payments to KeyBank in the amount of $1,087.52.

347.    SAE has failed to remit the monthly lease payments for the past ten months.

348.    As a result, defaults have occurred and are continuing under the First Niagara Financing Agreement.

70

349.     Based on the foregoing, SAE has materially breached its obligations under the First Niagara Financing Agreement.

350.     The following sums are currently due and payable to KeyBank under the First Niagara Financing Agreement:

| Outstanding lease payments | $10,875.20 |
|---|---|
| Late charges | $ 1,087.50 |
| **TOTAL** | <u>$11,962.70</u> |

### TWENTY-NINTH CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST DEFENDANT MONOLITH SOLAR – MONOLITH LESSEE GUARANTIES)

351.     KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

352.     Pursuant to the Monolith Lessee Guaranties, Defendant Monolith Solar unconditionally and absolutely guaranteed the performance and the full and prompt payment when due, of all of the obligations under the Master Lease Agreements when such obligations become due and payable.

353.     Monolith Solar has failed to comply with the terms, conditions, and obligations of the Monolith Lessee Guaranties and is in default of its obligations thereunder.

354.     By reason of the Defaults, including the defaults under the Master Lease Agreements, the other Agreements, and the Monolith Lessee Guaranties, and the failure of Monolith Solar to cure such defaults, pursuant to the Monolith Lessee Guaranties, KeyBank is entitled to recover from Monolith Solar the full amount of the indebtedness owed under the Master Lease Agreements and related documents.

355.    As of December 17, 2019, KeyBank estimates such sum to be no less than $1,036,142.09.

## THIRTIETH CLAIM FOR RELIEF
## (FORECLOSURE ON INTERESTS GRANTED THROUGH PLEDGE AGREEMENTS – DEFENDANT MONOLITH SOLAR)

356.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

357.    Pursuant to the Pledge Agreements, Monolith Solar granted the KeyBank a security interest in all of its equity interests in the Lessees, to secure payment and performance of the of the obligations of the Lessees under the Master Lease Agreements.

358.    KeyBank has a valid and enforceable first-priority lien on the equity interests in the Lessees owned by Monolith Solar.

359.    As a result of the Defaults, including the failure of the Lessees to make the lease payments in accordance with the Master Lease Agreements and the defaults that have occurred and are continuing under the other Agreements among KeyBank and the Defendants, Events of Default (as defined in the Pledge Agreements) have occurred and are continuing under the Pledge Agreements.

360.    As a result of the Events of Default that have occurred and are continuing under the Pledge Agreements, KeyBank is entitled to immediate possession of the collateral pledged in the Pledge Agreements, including Monolith Solar's equity interests in the Lessees, in order to exercise its rights as a secured party under the terms and provisions of the Pledge Agreements and other Agreements.

361.    Additionally, KeyBank is entitled to exercise all remedies under the Pledge Agreements, the other Agreements, and the Uniform Commercial Code, and applicable law,

including, without limitation, obtaining possession of the pledged collateral, arranging for the sale of the pledged collateral, and applying the proceeds of the pledged collateral sale to the indebtedness owing to KeyBank, until such time as the indebtedness is paid in full.

362.    Monolith Solar is wrongfully detaining its equity interests in the Lessees and the other collateral it pledged in the Pledge Agreements from KeyBank.

363.    KeyBank is damaged by Monolith Solar's retention of the its equity interests in the Lessees and the other collateral Monolith Solar pledged to KeyBank pursuant to the Pledge Agreements for the reason that the collateral continues to diminish in value.

### THIRTY-FIRST CLAIM FOR RELIEF
### (MONEY JUDGMENT AGAINST GUARANTORS – REVOLVING NOTE GUARANTY)

364.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

365.    Pursuant to the Unconditional Guaranty, the Guarantors unconditionally and absolutely guaranteed the full and prompt payment when due, of all of the Guaranteed Obligations when such obligations become due and payable.

366.    Pursuant to the Unconditional Guaranty, the Guarantors jointly and severally owe KeyBank the Notes Indebtedness, the Collection Expenses and all other outstanding obligations constituting Guaranteed Obligations.

367.    The Guarantors have failed to comply with the terms, conditions, and obligations of the Unconditional Guaranty and are in default of their obligations thereunder.

368.    By reason of the Defaults under the Loan Agreement, the Revolving Note, the other Agreements, and the Unconditional Guaranty, and the respective failures of Guarantors to cure such defaults, pursuant to the Unconditional Guaranty, KeyBank is entitled to recover from the Guarantors the full amount of the indebtedness owed to KeyBank by the Defendants.

**THIRTY-SECOND CLAIM FOR RELIEF**
**(COLLECTION EXPENSES UNDER THE MASTER LEASE AGREEMENTS –**
**MONOLITH SOLAR AND THE GUARANTORS)**

369.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

370.    Pursuant to the Master Lease Agreements the Lessees are required to pay all reasonable costs of KeyBank, including without limitation, KeyBank's attorneys' and other professional fees, and the costs and expenses incurred by KeyBank in enforcing the terms of the Master Lease Agreements (the "**Master Lease Collection Expenses**").

371.    Because of the Defaults, including the Defaults and Events of Default under the Master Lease Agreements and the Monolith Lessee Guaranties, Monolith Solar and the Guarantors, jointly and severally, also owe KeyBank the Master Lease Collection Expenses.

**THIRTY-THIRD CLAIM FOR RELIEF**
**(FORECLOSURE OF SECURITY INTERESTS UNDER THE APRIL 9, 2019**
**REAFFIRMATION OF AGREEMENTS AGAINST THE GUARANTORS)**

372.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

373.    Pursuant to the April 9, 2019 Reaffirmation of Agreements, the Guarantors granted KeyBank a security interest in all of their assets to secure payment and performance of the obligations of the Guarantors under the Agreements.

374.    KeyBank perfected its security interest in the collateral owned by the Guarantors by filing the Guarantor Financing Statements

375.    KeyBank has a valid and enforceable first-priority lien on the collateral owned by the Guarantors.

376.    As a result of the Defaults, events of default have occurred and are continuing under the Agreements.

377.    As a result of the Defaults that have occurred and are continuing, KeyBank is entitled to immediate possession of the Guarantor Collateral in order to exercise its rights as a secured party under the terms of the Agreements.

378.    Additionally, KeyBank is entitled to exercise all remedies under the Agreements, the Uniform Commercial Code, and applicable law, including, without limitation, obtaining possession of the Guarantor Collateral, arranging for the sale of the Guarantor Collateral, and applying the proceeds of such sale to the indebtedness owing to KeyBank, until such time as the indebtedness is paid in full.

379.    The Guarantors are wrongfully detaining the Guarantor Collateral from KeyBank.

380.    KeyBank is damaged by the Guarantors' retention of the Guarantor Collateral for the reason that the Guarantor Collateral continues to diminish in value.

## THIRTY-FOURTH CLAIM FOR RELIEF
### (RECEIVER SALE OF MORTGAGED PROPERTY FREE AND CLEAR OF LIENS)

381.    KeyBank incorporates the allegations of the preceding paragraphs as if fully set forth herein.

382.    Pursuant to the Mortgages, KeyBank holds a valid, perfected and enforceable lien in the Mortgaged Property.

383.    As a result of the Defaults, the conveyances of the Mortgages have become absolute and, as a consequence, KeyBank is entitled to have the Mortgaged Property sold to satisfy the obligations secured by such Mortgages and to obtain the proceeds of such sales as determined by further order of the Court.

4822-8792-6190

384.    As a result of the consents contained in the Mortgages, principles of equity, and the Court's authority to direct judicial sales of property pursuant to 28 U.S.C. § 2001 *et seq.*, KeyBank is entitled to the appointment of a receiver with appropriate discretion to, *inter alia*, sell the Mortgaged Property (separately or with one another, and with or without other Collateral) free and clear of liens therein without such lienholders' consent and with such liens attaching to the proceeds of such sale(s) in the order of their priority ("**Sale Free and Clear**").

385.    Under the supervision of the Court and with due notice by a Court-appointed receiver to affected parties (including an opportunity to object), the Court should marshal the liens on the Mortgaged Property, authorize a receiver to conduct a Sale Free and Clear, and order the allocation of all proceeds of such Sale Free and Clear to the holders of interests in the Mortgaged Property, including to KeyBank on account of the Notes Indebtedness and other liabilities secured by the Mortgages.

**WHEREFORE**, KeyBank demands judgment in its favor and against the Defendants as follows:

1.    On its First Claim for Relief, against Monolith Solar, for the sum of $205,195.74 plus accrued and accruing pre- and post-judgment interest at the default contract rate until paid;

2.    On its Second Claim for Relief, for an order awarding permanent possession of the $488K Collateral to KeyBank;

3.    On its Third Claim for Relief, against SAE, for the sum of $205,195.74 plus accrued and accruing pre- and post-judgment interest at the default contract rate until paid;

4.    On its Fourth Claim for Relief, against Monolith Solar, SAE and the Guarantors jointly and severally, for the amount of the $488K Collection Expenses that KeyBank has incurred or may hereafter incur, including its reasonable attorney fees and expenses;

5.     On its Fifth Claim for Relief, against the Parent Borrowers, jointly and severally, for the sum of $4,112,864.55 plus accrued and accruing pre- and post-judgment interest at the default contract rate until paid;

6.     On its Sixth Claim for Relief, for an order awarding permanent possession of the Revolving Collateral to KeyBank;

7.     On its Seventh Claim for Relief, against all Defendants, jointly and severally, for the amount of the Revolving Note Collection Expenses that KeyBank has incurred or may hereafter incur, including its reasonable attorney fees and expenses;

8.     On its Eighth Claim for Relief, against $850K Term Note Borrowers, jointly and severally, for the sum of $556,569.13 plus accrued and accruing pre- and post-judgment interest at the default contract rate until paid;

9.     On its Ninth Claim for Relief, for an order awarding permanent possession of the $850K Collateral to KeyBank;

10.     On its Tenth Claim for Relief, against all Defendants, jointly and severally, for the amount of the $850K Collection Expenses that KeyBank has incurred or may hereafter incur, including its reasonable attorney fees and expenses;

11.     On its Eleventh Claim for Relief, against Monolith Solar, for the sum of $880,833.58 plus accrued and accruing pre- and post-judgment interest at the default contract rate until paid;

12.     On its Twelfth Claim for Relief, against Schenectady Hetcheltown Road Solar 1 for the sum of $424,147.62 plus pre- and post-judgment interest until paid;

13.     On its Thirteenth Claim for Relief, against Johnsonville Route 7 Solar 1 for the sum of $22,115.87 plus pre- and post-judgment interest until paid;

14.    On its Fourteenth Claim for Relief, against Craryville Solar 1 for the sum of $20,546.48 plus pre- and post-judgment interest until paid;

15.    On its Fifteenth Claim for Relief, against Schenectady Ice Rink Solar 1 for the sum of $19,180.20 plus pre- and post-judgment interest until paid;

16.    On its Sixteenth Claim for Relief, against Marion Warner Solar for the sum of $32,908.84 plus pre- and post-judgment interest until paid;

17.    On its Seventeenth Claim for Relief, against Seward Pine Hill Road Solar 1 for the sum of $100,010.20 plus pre- and post-judgment interest until paid;

18.    On its Eighteenth Claim for Relief, against Craryville Solar 2 for the sum of $25,057.72 plus pre- and post-judgment interest until paid;

19.    On its Nineteenth Claim for Relief, against Albany CSD Solar 1 for the sum of $54,153.29 plus pre- and post-judgment interest until paid;

20.    On its Twentieth Claim for Relief, against Scotia Glenville CSD Solar 1 for the sum of $105,373.09 plus pre- and post-judgment interest until paid;

21.    On its Twenty-First Claim for Relief, against Mayfield CSD Solar 1 for the sum of $33,690.78 plus pre- and post-judgment interest until paid;

22.    On its Twenty-Second Claim for Relief, against City of Albany Solar 1 for the sum of $11,816.97 plus pre- and post-judgment interest until paid;

23.    On its Twenty-Third Claim for Relief, against Schuylerville CSD Solar 1 for the sum of $19,484.75 plus pre- and post-judgment interest until paid;

24.    On its Twenty-Fourth Claim for Relief, against Rensselaer County Solar 1 for the sum of $88,535.00 plus pre- and post-judgment interest until paid;

25.     On its Twenty-Fifth Claim for Relief, against Cordell Road Solar 1 for the sum of $15,533.58 plus pre- and post-judgment interest until paid;

26.     On its Twenty-Sixth Claim for Relief, against Granville CSD Solar 1 for the sum of $51,625.00 plus pre- and post-judgment interest until paid;

27.     On its Twenty-Seventh Claim for Relief, for an order awarding permanent possession of the Collateral (as defined in the Lessee Security Agreements) to KeyBank;

28.     On its Twenty-Eighth Claim for Relief, against SAE for the sum of $11,962.70 plus pre- and post-judgment interest until paid;

29.     On its Twenty-Ninth Claim for Relief, against Monolith Solar, for the sum of $1,036,142.09 plus pre- and post-judgment interest until paid;

30.     On its Thirtieth Claim for Relief, for an order awarding permanent possession of Monolith Solar's equity interests in the Lessees to KeyBank;

31.     On its Thirty-First Claim for Relief, against the Guarantors, jointly and severally, for a sum to be determined by order of the Court not less than $75,000;

32.     On its Thirty-Second Claim for Relief, against Monolith Solar, and the Guarantors jointly and severally, for the amount of the Master Lease Collection Expenses that KeyBank has incurred or may hereafter incur, including its reasonable attorney fees and expenses;

33.     On its Thirty-Third Claim for Relief, for an order awarding permanent possession of the Guarantor Collateral to KeyBank;

34.     On its Thirty-Fourth Claim for Relief, for an order declaring the Mortgages are valid and subsisting liens on the Mortgaged Property, that all liens on the Mortgaged Property be marshalled, that the Mortgaged Property be sold by a Court-appointed receiver, together with or

4822-8792-6190

separate from one another and/or other property (including any Collateral), free and clear of all

liens and interests of the holders thereof and all Defendants to this action, and that the proceeds

of such sale(s) be applied, as appropriate, to pay sums due KeyBank by virtue of the obligations

secured by such Mortgages;

35.     For KeyBank's court costs; and

36.     For such other and further relief as this Court finds just and equitable.

Dated: January 7, 2020
       New York, New York

Respectfully submitted,

**THOMPSON HINE LLP**

*/s/ Barry Kazan*
Barry Kazan
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Telephone: 212.908.3921
Facsimile: 212.344.6101
Barry.Kazan@ThompsonHine.com

*Counsel for KeyBank National Association*

4822-8792-6190

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

Executed on January 7, 2020.

/s/ *Leslie A. Jones*
Leslie A. Jones
Senior Vice President, KeyBank National Association

81