UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **KEYBANK NATIONAL ASSOCIATION** | : | CASE NO. 1:19-CV-1562-DNH-ATB |
| Plaintiff, | : | JUDGE DAVID N. HURD |
| v. | : | |
| **MONOLITH SOLAR ASSOCIATES LLC,** *et al.* | : | **RESPONSE OF PLAINTIFF, KEYBANK NATIONAL ASSOCIATION TO MOTION OF DEFENDANT, STEVEN ERBY, TO RECONSIDER UNSPECIFIED ORDER** |
| Defendants. | : | |

    Plaintiff, KeyBank National Association ("**KeyBank**"), files this response ("**Response**") to the "Emergency Motion for Reconsideration" [Doc. 46] (the "**Motion for Reconsideration**") of Defendant, Steven A. Erby ("**Mr. Erby**"). Although Mr. Erby does not specify in his Motion which order he wants the Court to reconsider, based on the general content of the Motion, KeyBank interprets Mr. Erby's submission as a second request for the Court to modify its order appointing Daniel Scouler as receiver of the business and operations of the Receivership Defendants[1]

---

[1] The "**Receivership Defendants**" are: Albany CSD Solar 1 LLC; Albany CSD Solar 2 LLC (FKA MSAP 9 LLC); Amsterdam Reservoir Solar 1 LLC; City of Albany Solar 1 LLC; City of Albany Solar 2 LLC; City of Albany Solar 3 LLC (FKA MSAP 6 LLC); City of Troy Solar 1 LLC; Community Solar 1 LLC (FKA MSAP 8 LLC); Cordell Road Solar 1 LLC; Craryville Two Town Road Solar 1 LLC; Craryville Two Town Road Solar 2 LLC; Granville CSD Solar 1 LLC; Johnsonville Route 7 Solar 1 LLC; Key Solar 1 LLC (FKA MSAP 7 LLC); Load Zone A LLC; Load Zone B and C LLC; Load Zone D and E LLC; Load Zone F LLC; Load Zone G LLC; Marion Warner Road Solar 1 LLC; Mayfield CSD Solar 1 LLC; Monolith Solar Associates LLC; MSAP 10 LLC; MSAP 11 LLC; MSAP 12 LLC; MSAP 14 LLC; NYSDOT Solar 1 LLC (FKA MSAP 5 LLC); Rensselaer County Solar 1 LLC; Rensselaer County Solar 2 LLC (FKA MSAP 4 LLC); Route 7 Solar Farm 1 LLC; Russell Sage Solar 1 LLC; SAE Sun and Earth Energy Incorporated; Sand Lake Eastern Union Turnpike Solar 1 LLC; Schenectady Hetcheltown Road Solar 1 LLC; Schenectady Ice Rink Solar 1 LLC; Schuylerville CSD Solar 1 LLC; Scotia Glenville CSD Solar 1 LLC; Seward Pine Hill Road Solar 1 LLC; Seward Pine Hill Road Solar 2 LLC (FKA MSAP 3 LLC); Smithville Tarbell Road Solar 1 LLC; Solar Energy Properties LLC; Solar Management Group 2013, LLC; Solar Management Group, LLC; Solar Vista LLC; Vista Management Group LLC; Schenectady Hetcheltown Road Solar 2 LLC (FKA Manheim State Route 167 Solar 1 LLC);

("**Receiver**" or "**Mr. Scouler**") pursuant to that certain order of appointment [Doc. 7] (including the amendment thereof [Doc. 30]) (together, the "**Appointment Order**").[2]

## I. INTRODUCTION

Previously, Mr. Erby filed a document he styled *Declaration of Steven A. Erby* [Doc. 14] (together, with associated filings at Docs. 15-18, the "**Initial Response**"). In the Initial Response, Mr. Erby does not contest the need for the appointment of a receiver, nor the Court's appointment of one. Rather, Mr. Erby sought the appointment of a different, unspecified person to act as receiver, in the hopes that he could retain greater control or influence in the Business' operation. While raising some new issues, the Motion for Reconsideration similarly does not challenge the need or entitlement to a receiver; rather, it appears to be an effort to supplement the Initial Response and unjustifiably smear KeyBank and the Receiver for the efforts they have taken to stabilize the Business and preserve the value of the Receivership Property.

While fundamentally lacking any merit, Mr. Erby's new allegations also suffer from being something that Mr. Erby could have raised when he first opposed the Appointment Order. For these reasons, as discussed below, KeyBank respectfully requests that the Court deny the Motion for Reconsideration as procedurally improper and for lack of merit.

## II. THE MOTION FOR RECONSIDERATION IS PROCEDURALLY DEFECTIVE

Local Rule 7.1(g) provides in pertinent part:

> **Motion for Reconsideration.** Unless Fed. R. Civ. P. 60 otherwise governs, a party may file and serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order, or decree.

N.D.N.Y. LR 7.1(g) (emphasis in original).

---

and Salem County Route 153 Solar 1 LLC. The "**Defendants**" are the Receivership Defendants, defendant Steven A. Erby, and defendant Mark Fobare.

[2] Unless defined herein, capitalized terms shall have the meaning ascribed to them in the Appointment Order. Unless specified otherwise, citations to the Appointment Order shall be to Doc. 7.

Whether Rule 60 is applicable or not (because, *e.g.*, the order "adjudicate[s] fewer than all the claims or the rights and liabilities of fewer than all the parities"), the standard employed for a motion for reconsideration is generally the same. *Fitzgerald v. City of Troy*, No. 1:10-cv-451-MAD-RFT, 2013 U.S. Dist. LEXIS 139056, **9-10 (N.D.N.Y. Sep. 27, 2013) (alteration in original) (quoting *Frazier v. Turning Stone Casino*, No. 02-131, 2005 U.S. Dist. LEXIS 48067 (N.D.N.Y. Aug. 16, 2005). Specifically, "[a] court may justifiably reconsider its previous ruling if: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995); *see also Official Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (identifying the same three grounds for revisiting a non-final order under Rule 54(b)). "A motion for reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Fitzgerald*, *supra* at *10 (internal quotations omitted) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

In this case, Mr. Erby is asking the Court to reconsider a ruling it has not yet made. The Appointment Order established a deadline by which parties, such as Mr. Erby, could object to the appointment of a receiver, after which the Court could take the objections received into account and rule accordingly. *See Appointment Order*, ¶ 24. Mr. Erby raised his objections in the Initial Response.[3] The Court has not ruled on Mr. Erby's Initial Response. Thus, Mr. Erby's Motion

---

[3] As ordered by the Court, KeyBank filed a reply to Mr. Erby's Response [Doc. 37] (the "**Reply**").

for Reconsideration appears to be more in the nature of an impermissible surreply[4] in which Mr. Erby has included the submission of new contracts, communications, and other papers[5] Mr. Erby feels are supportive of his Initial Response.

But construing the Motion for Reconsideration as a Local Rule 7.1(g) motion to reconsider the Appointment Order is no more helpful to Mr. Erby.  The Motion for Reconsideration is untimely (being filed more than fourteen days after the Appointment Order) and fails to identify (let alone explain) any change in controlling law, any facts based on evidence not previously available when Mr. Erby filed the Initial Response, or clear legal error by the Court.  At best, Mr. Erby has presented different, unsworn "facts" not previously presented or considered.  However, even if those facts are accepted as true, the Motion for Reconsideration fails to explain why those facts were not presented with the Initial Response and, more to the point, how they possibly merit modifying the Appointment Order.

## III.   THE MOTION FOR RECONSIDERATION LACKS MERIT

As noted in KeyBank's Reply, Mr. Erby does not contest the need for the appointment of a receiver.  And although styled as a Motion for Reconsideration, Mr. Erby still does not contend that the appointment of a receiver is unwarranted.  Rather, the Motion for Reconsideration appears to be an effort to support the position Mr. Erby adopted in his Initial Response in which he suggests the receiver should be someone other than Mr. Scouler, *i.e.*, someone who will allow Mr. Erby to

---

[4] N.D.N.Y. LR 7.1(b)(1).

[5] KeyBank questions whether, again, Mr. Erby has considered the confidential nature of the documents he has published in support of his Motion for Reconsideration or the damage that publishing such information may cause the Business. Docs. 47-48.  Several documents that the Motion for Reconsideration appears to be referencing (though not expressly citing) were filed in connection with Mr. Erby's "Answer" [Doc. 44].  Many of those documents have large "CONFIDENTIAL" stamps written across them and others appear to be privileged attorney-client communications of Monolith.  *See, e.g.,* Docs. 44-1 at pp. 5-9 and 44-2 at p. 11.  This would not be the first time Mr. Erby has improperly disclosed potentially commercially sensitive information without taking proper steps to keep it from the public record.  *See* Docs. 19-20.

retain some degree of control over the Business. *See Response*, p. 6 ("Defendants are not requesting that the receiver be removed[,] rather, the request is that a new receiver be appointed by the Court…"); *id.* p. 1 ("Proposal for The Courts [sic] Consideration: Possibly allow defendant to work in a limited capacity, under the direction of the RECEIVER, and only work in a capacity that allows the company to retain its previous value").

In the Initial Response, Mr. Erby attacked Mr. Scouler's prior work as Monolith's Chief Restructuring Officer; now, in the Motion for Reconsideration, Mr. Erby offers what appear to be old emails from Monolith's former counsel seeking payment on overdue legal bills to suggest that Mr. Scouler's prior work was deficient. *See* Doc. 48. What Mr. Erby conveniently overlooks is the later representation of Monolith by Thomas Gleason of Gleason, Dunn, Walsh & O'Shea, whose retention not only undermines Mr. Erby's assertion that Mr. Scouler somehow deprived Monolith of proper representation, but also calls into question his assertion that Monolith was compelled "without proper Legal Representation" to sign an unspecified "contract of adhesion" with KeyBank that it was "impossible" for Monolith to perform. *Motion for Reconsideration*, pp. 1-2.

The Motion for Reconsideration goes on to suggest that Mr. Scouler is acting on some personal vendetta against Mr. Erby by cancelling his health insurance (despite notifying Mr. Erby, like any other terminated employee, of his COBRA and similar benefits) and "openly talking negative about the company [and] founders." *Motion for Reconsideration*, pp. 2-3. Unlike Mr. Erby – who has made the meritless accusation that KeyBank is acting to undermine "National Security" through the exercise of legitimate creditor rights[6] – KeyBank has presented accurate and verifiable facts to the Court demonstrating the harm Mr. Erby has caused to the Receivership

---

[6] *Motion for Reconsideration*, p. 1.

Defendants and the compelling grounds for the Receiver's appointment. As detailed in the First Interim Report (defined below) to the Court, the Receiver is acting consistent with the goal of maximizing enterprise value so that the Receivership Defendants' creditors can obtain the best economic outcome. *See generally First Interim Report of Receiver and Application for Payment of Compensation and Reimbursement of Expenses of Receiver and Receiver's Counsel (For Reporting Period 12/20/19 – 12/31/19)* [Doc. 24] (the "**First Interim Report**"). In undertaking to stabilize the Business and inspire confidence and the support of employees (some of whom have been the subject of threats of physical violence by Mr. Erby) and other stakeholders, it is inevitable that Mr. Erby's mismanagement would come to light and require attention by the Receiver. *Id*.

Beyond containing irrelevant aspersions, the Motion for Reconsideration contains numerous other demonstrably false or misleading statements and unfounded allegations. For example, the Motion for Reconsideration erroneously asserts that KeyBank maintained "secret accounts" into which sale proceeds from the sale of Monolith projects to Green Mountain Electrical Supply, Inc. ("**GMES**") were deposited and that Mr. Erby was excluded from the GMES transaction as part of some ill-defined scheme of collusion between GMES and KeyBank. *Motion for Reconsideration*, pp. 1 and 3. The alleged purpose of this process was to exert "UNDUE INFLUENCE" and "an Unconscionable Advantage." *Id.*, p. 2.

Mr. Erby's accusations are baseless. The allegedly "secret" account is expressly identified in the April 9, 2019 Amended and Restated Forbearance Agreement Mr. Erby signed. *See First Amended Complaint*, Ex. 79 (the "**Amended and Restated Forbearance Agreement**"). Specifically, the Amended and Restated Forbearance Agreement required the establishment of a restricted deposit account for the expressly-stated purpose of obtaining possession of the "deposit of the proceeds of the sale of the Specified Mechanically Complete Projects, the Specified

4827-9398-3153                                                6

Development Projects and other assets and property of any of the Monolith Parties." *Amended and Restated Forbearance Agreement*, § 15(b). Likewise, in the Amended and Restated Forbearance Agreement, Mr. Erby agreed to limit his own participation in such sales and allow the CRO to "negotiate and implement the sale(s)" of the completed and development projects. *Id.*, § 9(d) & (e).[7] Far from the result of some secretive, collusive effort, the management of the sales of the Monolith projects were expressly bargained-for rights of KeyBank intended to protect its collateral.[8]

Mr. Erby's assertion that KeyBank withheld the granting of lien releases in the sale process as part of this alleged plot does not withstand scrutiny. Certainly, had KeyBank unjustifiably or improperly failed to grant lien releases to project buyers, one would expect the buyers to be raising concerns. Mr. Erby points to no such instance. Rather, as the experience with GMES demonstrates, the lien release prices have been negotiated at arms-length and successfully reached in many instances.[9] Moreover, Monolith has obtained the benefit of these negotiations in two ways: (1) to the extent a high lien release price is obtained, the debt to KeyBank is accordingly reduced, inuring to the benefit of Monolith; and (2) on numerous occasions, KeyBank has

---

[7] While Mr. Erby may have agreed to limit his participation, the facts show that he was intimately involved in the sales and regularly undermined and interfered with the CRO's efforts to maximize the value of the projects and protect the interests of creditors.

[8] And, like every other assertion Mr. Erby has made about not being provided with documents or information, to the extent this consideration is deemed relevant, KeyBank will be able to demonstrate that Monolith was furnished routine statements on the balance of the restricted deposit accounts.

[9] To the extent that what Mr. Erby is attempting to allege is that KeyBank has withheld lien release *prices* in the sale process, that is categorically false. Not only would such fly in the face of KeyBank's economic incentive to be repaid, it is simply not borne by any demonstrable facts. To the extent the Motion for Reconsideration is supposedly based on newly-discovered evidence, some competent, credible evidence would be required to sustain this allegation. KeyBank is aware of only one instance in which a lien release price was not established, and that was due to the buyer's inability to compromise on other aspects of the deal with NYS Department of Transportation.

authorized (with no duty to do so) Monolith to use sale proceeds to operate the Business rather than repaying KeyBank. Mr. Erby's narrative wherein KeyBank, the Receiver, GMES and other parties are attempting to damage Monolith is not only completely illogical and irrational (as such actions would harm the economic interests of these parties), it ultimately has no basis in fact, let alone in any of the additional "evidence" Mr. Erby has submitted to show as much.

## IV.     CONCLUSION

Based on the foregoing, KeyBank requests that the Court deny the Motion for Reconsideration.

Dated: January 23, 2020        Respectfully submitted,
New York, New York

**THOMPSON HINE LLP**

*/s/ Barry Kazan*
Barry Kazan
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Telephone: 212.908.3921
Facsimile: 212.344.6101
Barry.Kazan@ThompsonHine.com
*Counsel for KeyBank National Association*