U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
FEB 2 7 2020
AT_____ O'CLOCK_____
John M. Domurad, Clerk - Utica

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KEYBANK NATIONAL ASSOCIATION** | CASE NO. 1:19-CV-1562-DNH-ATB |
| Plaintiff, | |
| v. | |
| **MONOLITH SOLAR ASSOCIATES LLC,** *et al.*[1] | **SECOND ORDER MODIFYING RECEIVERSHIP ORDER** |
| Defendants. | |

This matter came to be heard upon the motion of Plaintiff, KeyBank National Association ("**KeyBank**"), and the memorandum in support attached thereto seeking the appointment of a receiver to take possession and exclusive control of the Defendants' personal property (collectively, the "**Motion**").[2] On December 20, 2019, the Court entered its *Order Appointing*

---

[1] The defendants are: Steven A. Erby ("**Mr. Erby**"); Mark Fobare ("**Mr. Fobare**"); Monolith Solar Associates LLC; SAE Sun and Earth Energy Inc.; Solar Management Group, LLC; Solar Management Group 2013, LLC; Schenectady Hetcheltown Road Solar 1, LLC; Schenectady Hetcheltown Road Solar 2, LLC; Schenectady Ice Rink Solar 1, LLC; Craryville Two Town Road Solar 1, LLC; Craryville Two Town Road Solar 2, LLC; Marion Warner Road Solar 1, LLC; City of Albany Solar 1, LLC; Albany CSD Solar 1, LLC; Scotia Glenville CSD Solar 1, LLC; Mayfield CSD Solar 1, LLC; Rensselaer County Solar 1, LLC; Rensselaer County Solar 2, LLC; Seward Pine Hill Road Solar 1, LLC; Seward Pine Hill Road Solar 2, LLC; Schuylerville CSD Solar 1, LLC; Johnsonville Route 7 Solar 1, LLC; Cordell Road Solar 1, LLC; Granville CSD Solar 1, LLC; Smithville Tarbell Road Solar 1, LLC; Solar Energy Properties, LLC; Load Zone A LLC; Load Zone B and C LLC; Load Zone D and E LLC; Load Zone F LLC; Load Zone G LLC; Route 7 Solar Farm 1, LLC; Amsterdam Reservoir Solar 1, LLC; City of Albany Solar 2, LLC; City of Troy Solar 1, LLC; Russell Sage Solar 1, LLC; Salem County Route 153 Solar 1, LLC; Sand Lake Eastern Union Turnpike Solar 1, LLC; Solar Vista LLC; Vista Management Group LLC; NYSDOT Solar 1 LLC; City of Albany Solar 3 LLC, Key Solar 1 LLC; Community Solar 1 LLC; Albany CSD Solar 2 LLC; MSAP 10 LLC; MSAP 11 LLC; MSAP 12 LLC; and MSAP 14 LLC (collectively, the non-individual entities identified herein are the "**Defendants**" and each is a "**Defendant**").

[2] KeyBank filed its *Verified Complaint for Money, Foreclosure of Security Interests, and Related Relief* (the "**Complaint**") concurrently with the Motion. Thereafter, on January 7, 2020, KeyBank filed its *Verified First Amended Complaint for Money, Foreclosure of Security*

*Receiver* [Doc. 7] (the "**Initial Order**") and on January 9, 2020 entered its *First Order Modifying Receivership Order* [Doc. 30] (the "**First Modification Order**"). The Initial Order appointed Daniel Scouler receiver over the Receivership Property and Business (as defined herein) (together with his designees and representatives, the "**Receiver**") and established a deadline by which the defendants, creditors, and parties-in-interest could raise objections to the appointment of the Receiver.[3] The Receiver caused all such parties to be served with a copy of the Initial Order (and, as applicable, the First Modification Order). Objections were raised by Mr. Erby [Docs. 14-18, 44, 46-48, 67, 69][4] and Capital Communications Federal Credit Union ("**CCFCU**") [Doc. 51].[5]

Having reviewed the pleadings, the Motion, the applicable Agreements, the qualifications of Daniel Scouler as receiver, the declaration of Leslie Jones in support of the Motion (the "**Jones Declaration**") and the objections of Mr. Erby and CCFCU, and otherwise having been duly advised, the Court finds as follows:

A. The Agreements referenced in and incorporated into the Motion and attached to the Complaint and the FAC, together with relevant legal authority, authorize the appointment of a receiver.

B. The Court has reviewed the docket in this matter, including the Complaint, the FAC, the Motion, and supporting affidavits, declarations, exhibits, objections, and other relevant materials.

---

*Interests, Judicial Sale of Real Property via Receiver, and Related Relief* [Doc. 22] (the "**FAC**"). All capitalized terms used in this Order and not defined herein shall have the meanings ascribed to them in the Motion and FAC, as applicable.

[3] A later deadline was set for objections to the First Modification Order, binding defendant Solar Management Group, LLC and its representatives to the terms of the Initial Order.

[4] Although styled as a "Response," "Answer" and "Motion," the Court construes the arguments in each as objections to the Motion.

[5] Informal objections were also raised by M&T Bank and are addressed herein.

C. Defaults have occurred and are continuing under the operative Agreements.

D. KeyBank holds a security interest in certain Collateral (as that term is used in various security instruments referenced throughout the FAC), is the mortgagee on substantial portions of Defendants' real property (the "**Mortgaged Property**"), and is the owner of the Leased Equipment. Security interests in various assets of the Defendants are also held by CCFCU, M&T Bank and other creditors (collectively with KeyBank, "**Secured Creditors**"). Together, these assets compromise substantially all of the Defendants' owned or leased property.

E. The Receivership Property (as defined herein) is at substantial risk of irreparable harm if Defendant Representatives (as defined herein) are not enjoined from exercising control, managing and disposing of the Receivership Property and from managing the business affairs and operations of the Defendants (the "**Business**"). Absent the appointment of a receiver, the Receivership Property and Business are in danger of material injury and waste because, among other things, (i) Defendants have insufficient funds to develop and construct new Projects, properly maintain and operate existing Projects, and to ensure timely payments to creditors (including KeyBank); (ii) Defendants have created impediments to the proper financial and operational management of the Business by professionals; and (iii) Defendants' funds have been misallocated and mismanaged.

F. KeyBank has requested that a receiver be appointed to take complete custody and control of (i) the operation, management, income, property (real, personal, tangible, intangible) and assets of Defendants of any nature whatsoever; and (ii) all of Messrs. Fobare's and Erby's equity interests in the Defendants (including without limitation the right to exercise exclusive authority and control of such equity interests and all governance, management and other rights associated therewith) (collectively, the "**Receivership Property**") and has further requested that

such order of appointment permanently enjoin and restrain Defendants and their respective management companies, managers, officers, employees, agents, assignees, successors, representatives, attorneys, accountants, members, and all persons who claim under or act in concert with them (collectively, "Defendant Representatives")[6] from directly or indirectly interfering with the use, management, possession, control, and liquidation of the Receivership Property during the pendency of this action.

G. The Defendants have expressly consented to the appointment of a receiver and waived the right to contest the Motion or entry of this Order.

H. Defendants have not paid debts as they mature and are insolvent or in immediate danger of becoming insolvent as evidenced by the Defaults, third-party creditor collection actions and the inability of Defendants to pay the accelerated sums due under the Notes and ongoing payments due under the Master Lease Agreements.

I. The appointment of a receiver is necessary to preserve and protect the Collateral, the Mortgaged Property, the Leased Equipment, and KeyBank's rights in connection therewith.

J. Daniel Scouler is qualified and is willing to act as such receiver and is experienced in distressed property and business management, receiverships, and restructurings. Daniel Scouler is disinterested and the Court finds he/she shall act in the best interest of all parties in preserving the Receivership Property and is willing to accept as compensation for such services the fees and expense reimbursements identified in the terms of this Order.

K. The balance of the equities in this case dictate that the Court appoint a receiver to take immediate and complete control of the Business and Receivership Property.

---

[6] For the avoidance of doubt, Defendant Representative shall include Steven A. Erby and Mark Fobare.

L. The Court is satisfied that the relief requested in KeyBank's Motion, as modified by this Order, is necessary and appropriate for the preservation of the Receivership Property, does not impose an undue or unfair hardship on Defendants, and is in the public interest.

M. All objections to the Motion are hereby overruled to the extent not (1) withdrawn; or (2) rendered moot by virtue of the provisions of this Order addressing the issues raised in such objections.

N. Upon the filing of the Initial Order, the Receiver filed with the Clerk of this Court his oath [Doc. 10] and a receiver's bond in the amount of $10,000 (the "**Bond**") [Doc. 12]. The Court accepts such oath and bond as security for the Receiver's faithful performance of this Order.

IT IS, THEREFORE, ORDERED AS FOLLOWS:

1. Daniel Scouler's appointment as Receiver for the Receivership Property, in existence or coming into existence from and after the Initial Order is hereby affirmed. For the avoidance of doubt, the Receivership Property shall include all of Defendants' assets, cash, pre-paid deposits, choses in action, inventory, accounts, account receivables, operations, rights of action, and rights of management consisting of, arising from, or associated with (a) the Collateral; (b) the Mortgaged Property; (c) the Business and Projects; and (d) the Master Lease Agreements (including the Leased Equipment)[7] and all profits, revenues, proceeds, and products of the foregoing (such profits, revenues, proceeds and products are collectively the "**Revenues**").

2. The Receiver shall take and keep possession, custody and control of the Receivership Property to prevent waste thereto; to apply the same consistently with this Order; to retain the remainder for eventual disposition as further set forth in this Order or as otherwise

---

[7] Nothing in this Order shall impair KeyBank's ownership of the Leased Equipment.

directed by the Court; to arrange for the preservation of the Receivership Property and its operation and maintenance; and is granted all powers necessary and usual in such cases for the protection, possession, control, management and operation of the Receivership Property during the pendency of this receivership, including the power to collect the accounts, income and profits of and from the operation of the Receivership Property. The cost of the Bond shall be an administrative expense of this action, and the Receiver shall be entitled to reimburse himself for the costs associated with obtaining the Bond (including the premium for the Bond) from proceeds from the Collateral. The Bond shall be maintained in full force and effect during the course of the receivership.

3. Subject to the provisions of this Order and any subsequent orders and the supervision of this Court, to the fullest extent permitted by law, the Receiver shall be and is hereby authorized to enter forthwith, take and have complete, immediate and exclusive control, physical possession and custody of the Receivership Property, whether then managed by the Defendants or Defendant Representatives, to the exclusion of the Defendants and the Defendant Representatives so as (a) to be able to take all reasonable steps which, in the Receiver's sole judgment, are appropriate, reasonable, advisable or reasonably necessary to manage, control, operate, maintain, supervise, care for, protect, insure, secure, safeguard, prevent waste of and preserve the Receivership Property on a day-to-day basis (collectively, "**manage the Receivership Property**"); (b) to exercise exclusive authority and control of the equity interests of Messrs. Fobare and Erby in the Defendants, including all rights of governance, management and otherwise; and (c) subject to the provisions of Par. 11, *infra*, to incur such expenses and make such disbursements out of the Revenues as may, in the Receiver's business judgment, be necessary and proper to manage the Receivership Property, including, without limitation, the

actions described in Paragraph 4 below; provided, however that any such disbursement of the proceeds of any sale(s) of any of the Receivership Property shall not occur without the prior written consent of KeyBank (which consent may be provided in the form of a budget submitted by the Receiver to and approved in writing by KeyBank in its sole discretion). The Receiver, by motion, may seek further or other instructions or further powers necessary to enable the Receiver to manage the Receivership Property.

4. Defendants and Defendant Representatives shall fully cooperate with the Receiver to enable the Receiver (subject to the terms and conditions of this Order):

    a. To take immediate possession of, seize, manage, control and protect all of the Defendants' property, wherever located, including all bank and financial accounts, with exclusive authority to sign any bank drafts and other documents necessary to carry out this duty, and all books and records of each of the Defendants, during the pendency of this action;

    b. To enter and occupy all premises of the Defendants, wherever located, whether owned, leased or otherwise, as necessary to carry out the powers granted hereunder;

    c. To inspect, inventory, and value all of the assets, and make a determination of the value of said assets for a possible sale or other disposition;

    d. To collect the revenues and proceeds of all of the Defendants' assets and compromise or give acquittance for profits, payments, collections of accounts receivable, income or proceeds that may become due;

    e. Receive and endorse checks pertaining to the Receivership Property either in the Receiver's name or in the name of the applicable Defendant(s);

    f. To apply the assets of the Defendants toward the payment of expenses, including management and operating expenses, taxes, assessments, and utilities;

    g. To pursue any assets or claims (including fraudulent transfer claims) that belong to the Defendants or that could be brought on behalf of the Defendants' account debtors and to initiate lawsuits for such pursuit(s);

    h. To retain or discharge any employees, independent contractors, or agents of Defendants as the Receiver deems appropriate and consistent with the Receiver's duty to manage the Receivership Property;

i. To pay all appropriate real estate taxes, personal property taxes, and any other taxes or assessments levied or assessed against the Receivership Property;

j. To address matters concerning the PPAs, provided, however, that nothing in this Order shall be deemed to supersede the terms of any loan documents that prevent or require the consent of the holders of any security interests in any affected PPAs;

k. To take any other actions that will maximize the value of the Defendants' property, including, but not limited to, operating and marketing their businesses as a going concern and/or effecting an orderly winddown of their affairs;

l. To identify and verify all debts of the Defendants, as well as security for such debts; and

m. To perform such other and further acts as may be reasonably necessary to preserve the assets, resolve liabilities, and carry out the duties directed by this Court.

5. Defendants and the Defendants' Representatives are hereby enjoined from directly or indirectly doing the following with respect to the Receivership Property:

   a. Interfering with, disrupting, disturbing or impairing the Receiver's possession and ability to manage the Receivership Property;

   b. Removing, destroying or depleting, or concealing the Receivership Property;

   c. Removing, destroying or deleting any documents or records related to the Receivership Property;

   d. Cancelling or modifying any insurance pertaining to the Receivership Property;

   e. Taking any actions to commit or permit waste or to damage or decrease the value of the Receivership Property;

   f. Permitting any acts as to the Receivership Property in violation of law;

   g. Transferring, encumbering, or otherwise disposing of the Receivership Property;

   h. Terminating licenses, permits, leases or contracts related to the Receivership Property;

   i. Withdrawing, using and diverting monies in any bank accounts at any banks holding or related to the Receivership Property; and

   j. Demanding, collecting, receiving, using, transferring, disbursing, assigning, encumbering and diverting Revenues.

6. To enable the Receiver to take possession, custody and control of and receive from all banks all money on deposit in bank accounts at such institutions arising out of the Receivership Property in connection therewith, whether such funds be in an account in the name of the Defendants or in the name of the Defendants' Representatives, all banks are hereby directed to cooperate with the Receiver to enable the Receiver to withdraw the funds from all bank accounts at the banks to the extent provided for under any governing agreements and otherwise applicable law. Subject to the stay under Paragraph 21 below, nothing herein shall modify or impair any bank's rights or security interests under any governing agreements or applicable law, all of which are expressly reserved.

7. The Receiver is authorized to use all improvements at the real property and to use all personal property located therein including, without limitation, fixtures, equipment, machinery, supplies and otherwise, to enable Receiver to carry out Receiver responsibilities.

8. In consultation with KeyBank, Receiver may (but shall not be obligated to) file and prosecute to conclusion property tax appeal(s), challenge any assessment, and negotiate and settle such claims, appeals and assessments affecting or concerning the Receivership Property.

9. The Receiver shall not incur expenditures to make repairs to the Receivership Property without either first obtaining a court order for that purpose or the prior written consent of KeyBank, except for (i) necessary expenditures under $25,000; and (ii) emergency repairs, including repairs immediately necessary for the preservation or safety of the Receivership Property or for the safety of other users or required to avoid the suspension of any necessary service in and to the Receivership Property, any of which remains subject to final approval of the Court.

10. At such times as are advisable and upon notice deemed acceptable, the Receiver shall allow KeyBank, M&T Bank, CCFCU and their respective representatives (including, without limitation, appraisers, real estate brokers, attorneys, environmental and other consultants and otherwise) to inspect and review the Receivership Property and its operations.

11. The Receiver (a) shall forthwith open in his name as receiver one or more operating accounts at KeyBank; (b) shall deposit therein all Revenues collected and received (except as provided below with respect to revenues representing proceeds of collateral of CCFCU and M&T Bank); and (c) shall withdraw therefrom all sums to make payments as authorized herein. The Receiver shall not commingle Revenues with his own funds or the funds of others. To the extent the Receiver receives any Revenues on account of any PPAs associated with any solar project or equipment owned by or leased from M&T Bank, the Receiver shall segregate such funds and remit them to the "Revenue Account" at M&T Bank ending in 9710 in accordance with and subject to the parties' respective rights and obligations under the governing agreements. The Receiver shall (a) forthwith open in his name as receiver a deposit account or accounts with CCFCU and shall segregate and deposit into such account(s) all revenues and proceeds derived from CCFCU collateral[8]; and (b) from time to time (which shall not be less often than quarterly) unless otherwise agreed by the Receiver and CCFCU or ordered by the Court, pay to CCFCU on account of indebtedness CCFCU may be due any net revenues derived from CCFCU collateral after deducting from such revenues payment of lease obligations, preservation and operational expenses, and a reasonable reserve not to exceed $5,000. To the extent the Receiver receives any Revenues on account of any PPAs associated with any solar

---

[8] CCFCU's collateral consists of the sixty-nine (69) PPA's and related equipment identified by Monolith Entity, site name, payor and billing address as set forth in Exhibit "H" to CCFCU's Objection dated and filed on January 17, 2020 [Doc. No. 51] and furnished to the Receiver.

project or equipment owned by or leased from KeyBank, the Receiver shall segregate (and/or continue to allow the segregation of) such funds and remit them (and/or continue to allow the remittance) to the KeyBank depository accounts associated with such PPAs.

12. Each utility company providing services to the Receivership Property, including gas, electricity, water, sewer, trash collection, telephone, cable, communications or similar services (a) shall be prohibited from discontinuing service to the Receivership Property based upon any unpaid bills which the Defendants incurred prior to the date of this Order; (b) shall forthwith transfer any deposits which it holds to the exclusive control of the Receiver and shall be prohibited from demanding that Receiver deposit additional funds in advance to maintain or secure such services; and (c) at the Receiver's request, shall promptly open new accounts under the name of the receivership and shall be prohibited from discontinuing services while the new receivership account is in process of being established.

13. Upon the Receiver's request, the U.S. Postal Service shall enable the Receiver to gain exclusive possession, custody and control of postal boxes which the Defendants may have used prior to receivership and shall direct that mail related to the Collateral be re-directed to the Receiver.

14. Subject to L.R. 54.4, the Receiver shall be compensated by an hourly fee of $250/hour. All travel, courier, express mail, and extraordinary expenses, subject to the other limitations set forth herein, will be considered a receivership administrative expense and may be paid from Revenues on a monthly basis; provided, however, that such expenses shall be itemized and payable in accordance with Paragraph 15 of this Order. With respect to the legal fees and expenses of Receiver's counsel (if any), payments to such counsel shall be subject to Court approval as provided in L.R. 54.4 and Paragraph 15 below, solely from available Revenues.

15. Within 30 days after the conclusion of each of the first three months of the receivership (beginning with the full or partial month during which the receivership begins) and quarterly thereafter, the Receiver shall prepare and file with the Clerk and serve upon all parties a report as to the operations of the prior month or quarter, as applicable, that shall (a) itemize all receipts and all disbursements (including for the Receiver's counsel); (b) itemize receivership actions taken and to be taken; and (c) itemize the condition of the Receivership Property. For purposes of reporting disbursements, the Receiver shall specifically identify those instances in which the sources for such disbursements are from the M&T Bank or CCFCU account(s) described in Paragraph 11 of this Order. Unless a party herein files an objection to a report within 10 days of the filing of a report, such report shall be deemed approved on an interim basis by all parties and by this Court, subject to the Court's final approval at the time that the Court approves the Receiver's final report.

16. The Receiver may, from time to time as the Receiver deems appropriate after forecasting potential needs for reserves, remit any income (not segregated and deposited with CCFCU or M&T Bank as provided in Par. 11 of this Order, *supra*, or the parties' governing agreements) representing proceeds of KeyBank's Collateral in excess of expenses to KeyBank to apply against the amounts which Defendants owe KeyBank.

17. The Receiver is authorized to market and advertise for sale the Receivership Property (in whole, in part, as a going concern, or otherwise) and, in consultation with all affected Secured Creditors and with approval of the Court, employ agents or brokers for such purpose. Any sale of the Receivership Property other than in the ordinary course of business shall only occur upon Court approval after notice and opportunity to be heard has been provided to Defendants and all parties, known to Receiver or ascertainable by reference to public records

where liens and interests are recorded, with an interest in the Receivership Property. The Receiver may, in consultation with KeyBank and all affected Secured Creditors, propose bidding and auction procedures for such sale(s) of the Receivership Property, which may be implemented upon approval by the Court.

18. In carrying out duties as set forth in this Order, the Receiver shall be entitled to act in the exercise of sound business judgment as the Receiver deems appropriate within the Receiver's sole discretion and shall not be liable for any action taken or not taken in good faith, for any mistake of fact or error of judgment, or for any acts or omissions of any kind unless caused by the Receiver's willful misconduct or gross negligence. The Receiver may execute and deliver, as agent of any of the Defendants, such documents and instruments as are necessary or appropriate to consummate authorized transactions.

19. Subject to approval by the Court and with notice and opportunity to object furnished to all parties known to Receiver or ascertainable by reference to public records where liens and interests are recorded, with the consent of KeyBank, the Receiver may borrow funds for working capital needs or otherwise on such terms as he deems appropriate.

20. The Receiver may resign at the end of any quarterly reporting period provided that such Receiver furnishes all attorneys of record in this case at least 30 days' written notice of the Receiver's intent to resign, the Receiver has made all accounts as required in this Order, and the Receiver's resignation is accepted and approved by the Court. Removal of the Receiver shall be within the equitable discretion of the Court. Upon removal, a successor receiver may be appointed with the consent of all attorneys of record in this action or upon motion by any party in order of this Court following notice and opportunity for hearing; provided, however, that, other than where the receivership is to be terminated following the disposition of all Receivership

Property (including any proceeds thereof), in no event shall the Receiver's duties be terminated without a successor receiver approved by the Court in position to take immediate possession of and manage the Receivership Property or proceeds thereof.

21. Without first seeking permission of this Court via motion and notice to the parties to this action, all creditors, claimants, bodies politic, parties in interest, and all sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons, firms and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any act to enforce any claim against the Defendants and the Receivership Property without first obtaining an order from this Court permitting such action. All such entities are further stayed from executing or issuing or causing the execution or issuance from any court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession or interfering with, or enforcing any claim or lien upon any property owned by or in the possession of the Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of Receiver's duties in this proceeding. Nothing contained herein shall stay or prohibit (a) M&T Bank from continuing to collect payments due under any PPA and depositing them into the "Revenue Account" at M&T Bank ending in 9710 and applying such proceeds to the Defendants' lease obligations to M&T Bank as they become due; and/or (b) CCFCU from (i) receiving and applying the payments from the Receiver as set forth in Paragraph 11 of this Order and (ii) repossessing, collecting, storing, re-leasing, selling, otherwise disposing of, or exercising any rights CCFCU may have in relation to that certain 2018 Acura RDX bearing VIN 5J8TB4H3LJL021575 (the "Vehicle"), including the initiation of any appropriate legal

proceedings against any person (including Mr. Erby) in possession thereof. All parties' rights, claims and defenses are otherwise reserved.

22. The Court shall retain exclusive jurisdiction and supervision of all matters concerning the Receiver, the receivership created hereby and the Receivership Property. Any and all actions which affect the Receiver or the Receivership Property shall be brought in this Court. The Receiver is subject to the personal jurisdiction of this Court.

23. This Order may be amended for cause shown after a motion or hearing upon prior written notice to KeyBank, the Receiver, M&T Bank, and CCFCU. This Order also may be amended by order agreed to by KeyBank, the Receiver, M&T Bank, and CCFCU.

24. Nothing herein shall operate or be construed as a finding regarding the extent of any Receivership Property or the existence and priority of any rights, liens or security interests in any such property.

25. This Order shall be effective immediately upon its entry and for all purposes, provided, however, that all actions taken pursuant to and consistent with the terms of the Initial Order survive entry of and shall remain unaffected by this Order.

26. The lease or other financing arrangement for the Vehicle shall be deemed rejected. Subject to any applicable defenses of the Receiver (on behalf of the Receivership Property or the Defendants) CCFCU may submit to the Receiver a deficiency claim invoice for damages sustained by CCFCU arising from Defendants' use and occupancy of the vehicle by Defendants without making contractual payments.

**THIS IS A FINAL APPEALABLE ORDER AND THERE IS NO JUST REASON FOR DELAY.**

So Ordered: February 27, 2020

Honorable David N. Hurd
United States District Court Judge