
U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
FEB 27 2020
AT____O'CLOCK____
John M. Domurad, Clerk - Utica

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KEYBANK NATIONAL ASSOCIATION** | CASE NO. 1:19-CV-1562-DNH-ATB |
| Plaintiff, | JUDGE DAVID N. HURD |
| v. | |
| **MONOLITH SOLAR ASSOCIATES LLC,** *et al.* | **ORDER AUTHORIZING FINANCING** |
| Defendants. | |

THIS MATTER is before the Court upon the Motion (the "**Motion**") of Daniel Scouler in his capacity as receiver of the Receivership Defendants[1] ("**Receiver**") pursuant to those certain Orders appointing and modifying the Order Appointing Receiver [*Doc. No. 7*], including the First Order Modifying Receivership Order [*Doc. No. 30*], and the Second Order Modifying

---

[1] The "**Receivership Defendants**" are: Albany CSD Solar 1 LLC; Albany CSD Solar 2 LLC (FKA MSAP 9 LLC); Amsterdam Reservoir Solar 1 LLC; City of Albany Solar 1 LLC; City of Albany Solar 2 LLC; City of Albany Solar 3 LLC (FKA MSAP 6 LLC); City of Troy Solar 1 LLC; Community Solar 1 LLC (FKA MSAP 8 LLC); Cordell Road Solar 1 LLC; Craryville Two Town Road Solar 1 LLC; Craryville Two Town Road Solar 2 LLC; Granville CSD Solar 1 LLC; Johnsonville Route 7 Solar 1 LLC; Key Solar 1 LLC (FKA MSAP 7 LLC); Load Zone A LLC; Load Zone B and C LLC; Load Zone D and E LLC; Load Zone F LLC; Load Zone G LLC; Marion Warner Road Solar 1 LLC; Mayfield CSD Solar 1 LLC; Monolith Solar Associates LLC; MSAP 10 LLC; MSAP 11 LLC; MSAP 12 LLC; MSAP 14 LLC; NYSDOT Solar 1 LLC (FKA MSAP 5 LLC); Rensselaer County Solar 1 LLC; Rensselaer County Solar 2 LLC (FKA MSAP 4 LLC); Route 7 Solar Farm 1 LLC; Russell Sage Solar 1 LLC; SAE Sun and Earth Energy Incorporated; Sand Lake Eastern Union Turnpike Solar 1 LLC; Schenectady Hetcheltown Road Solar 1 LLC; Schenectady Ice Rink Solar 1 LLC; Schuylerville CSD Solar 1 LLC; Scotia Glenville CSD Solar 1 LLC; Seward Pine Hill Road Solar 1 LLC; Seward Pine Hill Road Solar 2 LLC (FKA MSAP 3 LLC); Smithville Tarbell Road Solar 1 LLC; Solar Energy Properties LLC; Solar Management Group 2013, LLC; Solar Management Group, LLC; Solar Vista LLC; Vista Management Group LLC; Schenectady Hetcheltown Road Solar 2 LLC (FKA Manheim State Route 167 Solar 1 LLC); and Salem County Route 153 Solar 1 LLC. The "**Defendants**" are the Receivership Defendants, defendant Steven A. Erby, and defendant Mark Fobare.

4827-9398-3153

Receivership Order [*Doc. No.* 96], (together, the "**Appointment Orders**"),[2] seeking entry of an order (this "**Order**"), *inter alia*:

(1) Authorizing the Receiver to obtain financing in one or more advances subject and pursuant to the terms of this Order and up to twenty (20) receiver certificates of $50,000 each in the form attached to this Order as Exhibit A (each, a "**Receiver Certificate**" and collectively, the "**Receiver Certificates**"), by and among Receiver, as borrower, and Plaintiff, KeyBank National Association, as lender ("**KeyBank**");

(2) Approving the terms and conditions of the Receiver Certificates;

(3) Authorizing and directing the Receiver to execute and deliver, from time to time, all such other documents, instruments, and agreements and to perform all such other acts as may be required in connection with or as provided by the Receiver Certificates;

(4) Authorizing the repayment of the indebtedness evidenced by the Receiver Certificates and the grant(s) of security contemplated by this Order, including liens in any and all Collateral (as defined below) whether such Collateral is or was acquired or generated by the Receivership Defendants or their estates before or after the date of the Appointment Orders

(5) Modifying the stay imposed by the Appointment Orders to the extent necessary to permit KeyBank and the Receiver to implement the terms of this Order; and

(6) Granting the Receiver such other and further relief as the Court deems necessary, appropriate, equitable, and proper.

After due deliberation and sufficient cause appearing therefore,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A. On December 20, 2019, the Court entered the Appointment Orders, appointing Daniel Scouler receiver to take complete custody and control of (i) the operation, management,

---
[2]

income, property (real, personal, tangible, intangible) and assets of the Receivership Defendants of any nature whatsoever; and (ii) all of the equity interests of Defendants, Mark Fobare and Steven Erby, in the Receivership Defendants (including without limitation the right to exercise exclusive authority and control of such equity interests and all governance, management and other rights associated therewith) (collectively, the "**Receivership Property**"). The Appointment Orders further enjoined and restrained all Defendant Representatives from directly or indirectly interfering with the use, management, possession, control, and liquidation of the Receivership Property during the pendency of this action. The Court has authorized the Receiver to manage the affairs of the Receivership Defendants in accordance with his duty to maximize the value of the Receivership Defendants' business.

B.  This Court has jurisdiction over the Receivership Property and constitutional authority to enter the Order.

C.  The authority granted herein to issue the Receiver Certificates and obtain funds thereunder is critical to avoid immediate and irreparable harm to the Receivership Property and related businesses and business relationships. The entry of this Order is in the best interests of the Receivership Defendants' respective estates and their creditors as its implementation will, among other things, provide funds necessary to preserve the value of the Receivership Property pending such further disposition as may be appropriate.

D.  The Receiver is presently unable to obtain unsecured credit on the same or better terms than those represented by the Receiver Certificates. KeyBank has indicated a willingness to provide the Receiver with an initial loan of $100,000 and to consider additional loans to the Receiver (provided that the aggregate amount borrowed shall not exceed $1,000,000), which additional loans shall be in the sole discretion of KeyBank, as contemplated herein, but solely on

the terms and conditions set forth in this Order and the Receiver Certificates. After considering all of the alternatives, the Receiver has concluded, in the exercise of his best and reasonable business judgment, that the financing to be provided by KeyBank under the terms of this Order represents the best financing available to the Receiver under the circumstances.

E. The terms of the financing authorized hereby are fair and reasonable under the circumstances, reflect the Receiver's exercise of prudent business judgment consistent with his fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

F. The Receiver has shown good cause for the entry of this Order and the Court concludes that entry of this Order is necessary to preserve the value of the Receivership Property in the best interests of the creditors of the Receivership Defendants. Among other things, entry of this Order will, pending such disposition of the Receivership Property as may be determined to be appropriate, minimize disruption of the Business, permit the Receiver to meet payroll and other operating expenses, and instill confidence in potential purchasers of the Receivership Property by demonstrating an ability to preserve its value. The financing arrangement authorized hereunder is vital to the Receivership Defendants' estates and operations.

G. In KeyBank's *First Amended Complaint* [Doc. 22], KeyBank has alleged that Defendants owe KeyBank in excess of $6 million (the "**Pre-Receivership KeyBank Indebtedness**") in connection with certain loans, equipment leases, guarantees, pledges, mortgages and security instruments executed by the Defendants (collectively, the "**Pre-Receivership Transaction Documents**") which sums are secured by certain assets of the Receivership Defendants (such property is the "**Pre-Receivership KeyBank Collateral**" and the liens securing such are "**Pre-Receivership KeyBank Liens**").

H. The Receiver and KeyBank have negotiated the terms and conditions of this Order and the Receiver Certificates in good faith and at arm's length, and any credit extended by KeyBank to the Receiver in connection with this Order hereafter shall be and hereby is, deemed to have been extended in "good faith."

I. All of the Obligations (as defined below) incurred and transfers made pursuant to this Order and the Receiver Certificates are made for fair consideration and reasonably equivalent value, as such phrases are used in section 548 of the Bankruptcy Code or any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law.

J. The Receiver has provided adequate and sufficient notice of the Motion by providing written notice to all creditors identified on the Receiver's declaration of service filed in conjunction of the Motion. Such notice is appropriate, adequate, and proper under the circumstances involved in this case.

**BASED ON THE FOREGOING, IT IS HEREBY ADJUDGED, ORDERED AND DECREED:**

1. The Motion is granted subject to the terms and conditions set forth in this Order. Any objections that have not previously been withdrawn are hereby overruled. This Order shall become effective immediately upon its entry.

2. Subject to the express terms and conditions contained in this Order, the Receiver is hereby authorized to execute and deliver to KeyBank from time to time the Receiver Certificates and such additional documents, instruments and agreements as may be reasonably required to effectuate the purposes of this Order as and when loans are made to the Receiver by KeyBank in accordance with the terms expressly set forth therein. The Receiver shall comply with and perform all of the express terms and conditions contained in the Receiver Certificates

and such additional documents, instruments, and agreements. The failure to reference or discuss any particular provision of the Receiver Certificates in this Order shall not affect the validity or enforceability of any such provision and the Receiver Certificates are hereby approved in their entirety and are incorporated herein by reference.

3. Without limiting the foregoing, subject to the express terms of the Receiver Certificates, the Appointment Orders and this Order, the Receiver shall be immediately authorized to borrow money under and pursuant to the terms of the Receiver Certificates, provided that the aggregate principal amount outstanding at any time shall not exceed $1,000,000 (such amounts borrowed are the "**Post-Receivership Advances**").

4. Subject to the express terms and conditions contained in the Receiver Certificates, the Appointment Orders and this Order, the Receiver may use Post-Receivership Advances to (a) fund operating and maintenance costs and other general corporate purposes (b) pay all fees and expenses required to be paid under the Receiver Certificates, (c) pay the reasonable professional fees and expenses incurred by KeyBank in connection with the preparation and negotiation of the Receiver Certificates and this Order, and (d) pay the origination fees due and payable under the Receivership Certificates.

5. All Post-Receivership Advances, all interest thereon, and all fees, costs, expenses, indebtedness, obligations and other liabilities arising or incurred on or after the date of the entry of this Order and owing by the Receiver to KeyBank under the Receiver Certificates and this Order shall hereinafter be referred to as the "Obligations." The Obligations shall: (i) be evidenced by the books and records of KeyBank in accordance with the Receiver Certificates; (ii) bear interest as set forth in the Receiver Certificates, which interest shall accrue and be payable on the maturity dates of the Receiver Certificates; (iii) be secured by virtue of the

provisions in this Order; (iv) be payable in accordance with the express terms of this Order and the Receiver Certificates; and (v) comply with and otherwise be governed by the express terms set forth in the Receiver Certificates and this Order.

6. Upon the disposition of any Post-Receivership KeyBank Collateral (as defined below), the sale proceeds realized from such disposition shall be used: *first*, to satisfy allowed claims of creditors other than KeyBank which are secured by properly perfected, valid, non-avoidable and enforceable liens as of the date of entry of the Appointment Orders in accordance with the relative priority thereof until paid in full; *second*, to satisfy the Obligations until paid in full; and *third*, to satisfy the Pre-Receivership KeyBank Indebtedness[3] and allowed claims of creditors of the Receivership Defendants, on a *pari passu* basis, until paid in full; provided, however, that the Receiver, with KeyBank's prior written consent, may use the proceeds from the disposition of any Post-Receivership KeyBank Collateral otherwise payable to KeyBank (and which the Receiver certifies to KeyBank in writing would, in fact, otherwise be payable to KeyBank) to fund operational, administrative, liquidation or wind-down expenses of the Business. Until the date of the entry of an order terminating the Appointment Orders (the "**Receivership Termination Date**"), KeyBank shall be entitled to apply proceeds it realizes on account of the disposition of any Pre-Receivership KeyBank Collateral to the Pre-Receivership KeyBank Indebtedness until paid in full; *provided, however*, that KeyBank shall hold in reserve, in an account of KeyBank, and shall set aside from the proceeds of Pre-Receivership KeyBank Collateral it realizes amounts that, in the aggregate, equal the Obligations outstanding at such time (the "**Reserve**"), which Reserve shall be reduced through application of such funds to the

---

[3] For the avoidance of any doubt to the extent of the term "Pre-Receivership Key Bank Indebtedness" as utilized herein may be interpreted as including contractual legal fees and expenses or "Collection Expenses" as referred to in the First Amended Complaint, such expenses shall be paid to the extent allowed and ordered by the Court following proper application by Key Bank counsel.

Pre-Receivership KeyBank Indebtedness by the amount KeyBank applies to the Obligations from the disposition of Post-Receivership KeyBank Collateral. Upon the Receivership Termination Date or such earlier time as the Court may permit, KeyBank shall be entitled to apply the funds held in the Reserve to the Obligations.

7. Subject to the Reserve requirements set forth in Section 6 hereof and subject to any valid and enforceable liens of other creditors as of the date of entry the Appointment Orders, proceeds of Collateral remitted to KeyBank shall be applied: (i) *first*, to reasonable and documented out of pocket fees and expenses incurred by KeyBank in connection with the financing provided to the Receiver, including, without limitation, the reasonable professional fees and expenses incurred by KeyBank; (ii) *second*, to the Pre-Receivership KeyBank Indebtedness until paid in full; and (iii) *third*, to the Obligations until paid in full.

8. As security for the full and timely payment of all the Obligations, KeyBank is hereby granted valid, perfected and enforceable security interests and liens (collectively, "**Post-Receivership KeyBank Liens**") upon all real and personal property of the Receivership Defendants, and whether now owned or hereafter acquired or arising, whether tangible or intangible, and regardless of where located (all such property being referred to herein as the "**Collateral**"). For the avoidance of doubt, the Post-Receivership KeyBank Liens shall not prime any properly perfected, valid, non-avoidable and enforceable liens as of the date of entry of the Appointment Orders. To the extent that any Collateral is not subject to any Pre-Receivership KeyBank Liens, such Collateral is the "**Post-Receivership KeyBank Collateral.**"

9. The liens and security interests granted herein for the benefit of KeyBank are and shall be valid, perfected, enforceable, nonavoidable and effective by operation of law as of the date of this Order without any further action by the Receiver, the Receivership Defendants,

KeyBank or any other party, and without the execution, filing, or recordation of any financing statements, security agreements, mortgages, or other documents. If KeyBank hereafter requests that the Receiver execute and deliver to KeyBank financing statements, security agreements, collateral assignments, mortgages, or other instruments or documents considered by KeyBank to be reasonably necessary or desirable to further evidence the perfection of the liens and security interests granted in this Order, the Receiver is hereby authorized and directed to execute and deliver all such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and KeyBank is hereby authorized to file or record, in its sole discretion, such documents and the Receivership Certificates; provided that all such documents shall be deemed to have been filed or recorded as of the date of this Order.

10. So long as no Termination Event (as defined below) has occurred, the Receiver is authorized to use the Post-Receivership Advances in accordance with the express terms of this Order and the Appointment Orders to pay compensation and expense reimbursements of professional persons retained by the Receiver upon allowance by the Court and other operational expenses of the Business. Nothing in this paragraph shall prejudice or impair the rights of KeyBank to object to the fees and expenses of the Receiver or his professionals.

11. No portion of the Post-Receivership Advances or sale proceeds of the Pre-Receivership KeyBank Collateral may be used to (i) investigate, prepare for, commence or prosecute any action, counterclaim or objection with respect to the claims, liens or security interests of KeyBank, or the conduct of KeyBank, or (ii) investigate, prepare for, prosecute, defend or otherwise contest any claim or any action against or otherwise adverse to KeyBank.

12. Notwithstanding anything herein to the contrary, the Receiver shall no longer, pursuant to this Order or otherwise, be authorized to issue Receiver Certificates or use Post-

Receivership Advances following the date written notice is provided to the Receiver, counsel to the Receiver, and all parties that have appeared in this action (the "**Termination Date**") of the earliest to occur of any of the following events (any such event shall be referred to as a "**Termination Event**"):

(a) material non-compliance by the Receiver with any of the terms, provisions or covenants of this Order, the Appointment Orders or the Receivership Certificates;

(b) failure by the Receiver to pay interest, principal or fees when due under the Receiver Certificates;

(c) the resignation or removal of the Receiver or the Court's termination of the Receiver's authority to act as receiver in this matter;

(d) the termination of, or a material limitation imposed on the powers granted to Receiver in, the Appointment Orders;

(e) the occurrence of any material damage to, or loss of, Collateral for which insurance proceeds cannot be or are not paid to KeyBank in accordance with Paragraph 7 of this Order;

(f) the grant of any lien or claim that is or purports to be senior or *pari passu* with the Pre-Receivership KeyBank Liens or Post-Receivership KeyBank Liens;

(g) the issuance of receiver certificates other than the Receiver Certificates contemplated by this Order;

(h) the Receiver's other unauthorized borrowing except ordinary, unsecured trade credit obtained in the ordinary course;

(i) the reversal, revocation or modification of this Order or the Appointment Orders in a manner adverse to KeyBank; and/or

(j) the final maturity date of the Receiver Certificates.

13. KeyBank may waive any Termination Event or delay the Termination Date in its sole discretion; provided, that any such waiver or delay shall be in a writing signed by KeyBank.

14. In seeking to collect the Obligations, or to enforce any of the rights and remedies as a secured party or as otherwise contemplated by this Order or the Appointment Orders, and by taking any other actions pursuant to this Order or the Appointment Orders, KeyBank shall not have any liability to any third party and shall not be deemed to be in control of the operations of the Receivership Defendants or the Receiver or otherwise considered to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or the management of the Receivership Defendants or the Receivership Property, as such terms, or any similar terms, are used in the Comprehensive, Environmental Response, Compensation and Liability Act, as amended (42 U.S.C. §§ 9601, *et seq.*), or in any other federal or state statute or otherwise.

15. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed: (a) such modification, vacation, or stay, shall not affect the validity of any obligation, indebtedness, liability, security interests or liens granted or incurred by the Receiver to KeyBank on or after the date of this Order and prior to the effective date of such stay, modification or vacation, or the validity and enforceability of any security interests, liens, priority or right authorized or created hereby; and (b) any indebtedness, obligation or liability incurred by the Receiver to KeyBank on or after the date of this Order and prior to the effective date of such stay, modification or vacation shall be governed in all respects by the provisions of this Order, and KeyBank shall be entitled to all the rights, remedies, privileges and benefits, including the priority, security interests and liens granted herein and pursuant to the Receiver Certificates, with respect to any such indebtedness, obligation or liability.

16. Nothing set forth or otherwise contemplated by in this Order shall constitute or be deemed to constitute a waiver of the Receiver's right to seek any charge, lien, assessment or claim against any of Post-Receivership KeyBank Collateral or its proceeds for the purpose of satisfying the Obligations outstanding at any time.

17. The provisions of this Order shall be binding upon and inure to the benefit of KeyBank, the Receiver, the Defendants, the Defendants' creditors, all parties in interest and their respective successors and assigns.

18. The rights and remedies of KeyBank specified herein are cumulative and not exclusive of any rights or remedies that it may have under this Order, the Appointment Orders, the Receivership Certificates or any of the Pre-Receivership Transaction Documents or otherwise. To the extent any of the express terms and conditions of the Receivership Certificates or the Appointment Orders are in conflict with the express terms and conditions of this Order, the provisions and intent of this Order shall control. For the avoidance of any doubt, this Order is not intended to nor shall it be interpreted or construed to affect, alter or impair the rights of CCFCU or M&T Bank as provided by paragraphs 11 and 21 of the Second Order Modifying Receivership Order [*Doc. No.* __96_____].

19. The Receiver and KeyBank are hereby authorized to implement any non-material modifications to the Receivership Certificates without further order of this Court.

20. On or before ten (10) days following the entry of this Order, the Receiver shall, by written notice, send a copy of this Order to (i) the Defendants, (ii) the creditors in the Receiver's declaration of service filed in conjunction with the Motion, and (iii) any other party that has filed, as of the date hereof, a request for notices with the Clerk of Court.

21. The Court shall retain jurisdiction to resolve all matters concerning this Order.

Dated: February 27, 2020.

SO ORDERED:

*David N. Hurd* (signature)

DAVID N. HURD
United States District Judge
Dated:
Utica, NY