UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEYBANK NATIONAL ASSOCIATION,

       Plaintiff, and

CAPITAL COMMUNICATIONS FEDERAL
CREDIT UNION,

       Intervenor,
    -v-          1:19-CV-1562

MONOLITH SOLAR ASSOCIATES LLC, et al.,
       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| THOMPSON, HINE LAW FIRM-NY<br>Attorneys for Plaintiff<br>335 Madison Avenue 12th Floor<br>New York, New York 10017 | BARRY M. KAZAN, ESQ. |
| THOMPSON, HINE LAW FIRM-CLEVELAND<br>Attorneys for Plaintiff<br>3900 Key Center<br>127 Public Square<br>Cleveland, Ohio 44114 | CURTIS LEE TUGGLE, ESQ. |
| THOMPSON HINE LLP<br>Attorneys for Plaintiff<br>Austin Landing I<br>10050 Innovation Drive Suite 400<br>Miamisburg, Ohio 45342 | JONATHAN S. HAWKINS, ESQ. |
| LIPPES MATHIAS WEXLER & FRIEDMAN LLP<br>Attorneys for Intervenor Plaintiff<br>8 Southwoods Boulevard, Suite 207<br>Albany, New York 12211 | JOHN D. RODGERS, ESQ. |

STEVEN A. ERBY
Defendant *Pro Se*
6 Hallenbeck Hill
East Greenbush, New York 12061

| | |
|---|---|
| NOLAN HELLER KAUFFMAN LLP<br>Attorneys for Receiver, Daniel Scouler<br>80 State Street, 11th Floor<br>Albany, New York 12207 | JUSTIN A. HELLER, ESQ.<br>FRANCIS J. BRENNA, ESQ.<br>JOHN V. HARTZELL, ESQ.<br>BRIAN D. DEINHART, ESQ. |
| GIRVIN & FERLAZZO, P.C.<br>Attorneys for Movant Dealer Services 2.0, LLC<br>20 Corporate Woods Boulevard<br>Albany, New York 12211 | SALVATORE D. FERLAZZO, ESQ. |

DAVID N. HURD
United States District Judge

# MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION AND BACKGROUND

On December 18, 2019, plaintiff KeyBank National Association ("KeyBank" or "plaintiff") filed the present complaint against the many defendants involved in this case. Most of the defendants are power companies in the business of selling solar energy. Among the several defendants, however, is Steven A. Erby ("Erby"), one of the two founders of the power companies.

The amended complaint, the current operative pleading, alleges that the defendants had entered into—and subsequently defaulted on—lease agreements and secured transactions with KeyBank. In total, defendants owe plaintiff somewhere in the neighborhood of $6.1 million. Plaintiff brought a foreclosure action on the leases in the Northern District of New York. Plaintiff also moved for a receiver to be appointed under Federal Rule of Civil Procedure ("Rule") 66[1] to manage the varied businesses in default until such time as the foreclosure could be completed.

---

[1] The original order creating the receivership identified the authority behind the creation of the receivership as N.Y. CPLR §§ 6401-05. The Second Order Modifying the Receivership walked that statement back to a broader reliance on "relevant legal authority." The original reliance on New York's procedural rules was misplaced. It is well-settled that Rule 66 governs the appointment of a receiver by a federal district court. *U.S. Bank Nat'l Assoc. v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 254 (S.D.N.Y. 2012).

2

On December 20, 2019, United States Senior District Court Judge Thomas J. McAvoy appointed Daniel Scouler ("Scouler" or "the receiver") as receiver to manage the power companies. The receiver duly took an oath to faithfully perform the duties of a receiver on December 23, 2019. On January 8, 2020, the receiver applied for attorney's fees and reimbursement of expenses. January 14, 2020 added significant complexity to the case when Capital Communications Federal Credit Union ("Capital") was introduced as an intervenor plaintiff under Federal Rule of Civil Procedure 24(a)(2). Then, on January 21, 2020, Senior Judge McAvoy recused himself from this case.

During the second half of January and most of the month of February, Scouler, KeyBank, Capital, and Erby issued a flurry of motions, retractions, and oppositions. On February 27, 2020, this Court approved: (1) the Second Order Modifying the Receivership; (2) the receiver's request for funding; and (3) a joint stipulation allowing a completed foreclosure action in an unrelated state case to proceed. Those orders quieted much of the storm of motion practice because they overruled any pre-existing objections to the receivership order.

Four outstanding issues still require further resolution: (1) Erby's motion to work on the receiver's behalf; (2) Erby's motion for counsel; (3) the motion for a partial lift of the stay in proceedings other than the present action filed by Dealer Services 2.0, doing business as Lotus ("Lotus")[2]; and (4) Scouler's motions for attorney's fees.

## II. DISCUSSION

### A. ERBY'S REQUEST TO WORK FOR THE RECEIVER.

---

[2] Lotus is not a party to this action, but instead has filed a separate action in state court to recover contractual fees it alleges defendant Monolith Solar Associates owes it. That action was stayed by the original receivership order and Lotus seeks to be able to proceed with its claim. That said, it states that it would not seek to enforce any judgment it might attain from that claim until after the receivership is resolved.

3

In cases of foreclosure, a receiver may be appointed under a court's equitable powers "to ensure the conservation of the [receivership property] for both the owner's and the mortgagee's benefit . . . ." *United States v. Falls Court Props. Co.*, 2009 WL 1924771, at *4 (N.D.N.Y. July 1, 2009) (adopting report and recommendation). A "[r]eceiver acts only as an agent of th[e] [c]ourt, and his fiduciary duty is to act in the best interests of the receivership property," not in the best interests of any other party. *Lawsky v. Condor Capital Corp.*, 2015 WL 4470332, at *11 (S.D.N.Y. July 21, 2015) (citing *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988)), *appeal docketed*, No. 15-2362.

Erby asks to be able to work for the receiver in a limited capacity and to collect signatures that he argues will benefit the receivership property. That decision rests with Scouler, and at this time there is no reason to meddle in his administration of his charge. As part of the Second Order Modifying the Receivership, the receiver was bound to act as necessary for the "protection, possession, control, management[,] and operation of the [r]eceivership [p]roperty during the pendency of this receivership[.]" Second Order Modifying the Receivership, p. 5.

Of course, Scouler is an agent of the Court, and could be ordered to employ Erby as he requests. However, this Court is neither inclined nor, candidly, equipped to micromanage the receivership property to the degree that Erby's request would entail. *See SEC v. EquityBuild, Inc.*, 2019 WL 1953117, at *4 (N.D. Ill. May 2, 2019) ("The [C]ourt does not intend to dictate the [r]eceiver's every move, absent a concrete showing that he is exceeding his authority or otherwise violating the Receivership Order."). The receiver is bound by a fiduciary duty to manage the property as he thinks best for all parties. Should he decide that Erby's return to work would benefit the receivership, he is entitled to make that call. But he

4

will not be forced into a decision contrary to his judgment absent a concrete showing of a violation of the active receivership order. *Id.* Therefore, Erby's request must be denied.

## B. ERBY'S REQUEST FOR COUNSEL.

"There is no legal right to counsel in civil cases." *Snyder v. N.Y. State Educ. Dep't*, 486 F. App'x 176, 180 (2d Cir. 2012) (summary order) (citing *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986)). Under 28 U.S.C. § 1915(e), however, a court may nevertheless request that an attorney represent a person "unable to afford counsel."

A party unable to afford counsel must nevertheless satisfy the threshold requirement that his position is "likely to be of substance." *Hodge*, 802 F.2d at 61. If he has done so, the court should then consider: (1) "the indigent's ability to investigate the crucial facts"; (2) whether conflicting evidence implicating the need for cross-examination will be of particular importance to the case; (3) "the indigent's ability to present the case"; (4) "the complexity of the legal issues"; and (5) any special reason to think that appointing counsel would be more likely to lead to a just determination. *Id.* at 61-62.

Erby requests to use a portion of the profits generated by his proposed return to work at the receiver's direction to pay for him to attain counsel. Because the foundational request for his return to work has been denied, it follows that he cannot attain counsel with nonexistent funds. Furthermore, even if he had been allowed to return to work, the receivership property is now in the custody of the receiver, and by extension is to be preserved for the benefit of all parties. *See SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (noting that the receivership exists primarily "to preserve and protect the property pending its final disposition" for the "benefit of aggrieved investors and other creditors of the receivership entities"). Disbursing receivership funds to Erby would

5

improperly benefit him at all other parties' expense. Thus, his request to draw funds for representation from the receivership fund must also be denied.

However, at a later point in this litigation, particularly in advance of a dispositive motion or trial, Erby may move for counsel to be appointed for him provided that he can prove that he is indigent and that his defenses against KeyBank's claims are meritorious. *Hodge*, 802 F.2d at 61. Should he meet that threshold test, the merits of appointing counsel for him will be considered. *Id.* at 61-62. Until then, there is precious little for Erby to do, as no motion is now pending. His time would be best spent considering what defenses, if any, he may have to the various foreclosure actions at stake and contemplating what discovery he may seek from KeyBank to further those defenses.

### C. **LOTUS'S REQUEST FOR A PARTIAL LIFT OF THE STAY.**

A district court possesses the equitable power to order a stay preventing non-parties from initiating or continuing litigation against an entity in a receivership. *S.E.C. v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010) (authorizing blanket stay of all litigation against receivership property in SEC receivership context); *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006) (authorizing blanket stay in insurance dispute absent statutory authority). This power is "effective against all persons, of all proceedings against the receivership entities" and "rests as much on [the court's] control over the property placed in receivership as on its jurisdiction over the parties" to the underlying claim. *Byers*, 609 F.3d at 91. After all, "if a district court could not control the receivership assets, the receiver would be unable to protect those assets." *Id.* (citing *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)).

As for determining whether to lift a stay once imposed, there are two potential tests at play. First, as Scouler notes,[3] courts in this Circuit have overwhelmingly employed the three-pronged test used by the Ninth Circuit in *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984), to consider whether to lift litigative stays in the SEC receivership context. *See, e.g.*, *SEC v. Callahan*, 2 F. Supp. 3d 427, 437 (E.D.N.Y. 2014); *SEC v. Byers*, 592 F. Supp. 2d 532, 536-37 (S.D.N.Y. 2008). Additionally, the District of Connecticut has also employed this test in the context of resolving an equity interest through a receivership. *United States v. JHW Greentree Capital, L.P.*, 2014 WL 2608516, at *1, 3-4 (D. Conn. June 11, 2014).

The three relevant factors in the *Wencke* test are: (1) "whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed"; (2) "the time in the course of the receivership at which the motion for relief from the stay is made"; and (3) "the merit of the moving party's underlying claim." *Callahan*, 2 F. Supp. 3d at 437.

The first factor of the test "essentially balances the interests in preserving the receivership estate" against the interests of the movant. *SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011). Regarding the second factor of timing, the inquiry is fact-specific and "based on the number of entities, the complexity of the scheme, and any number of other factors." *Id.* "Where the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim." *Wencke*, 622 F.2d at 1373-74. By extension, as time passes and the receiver

---

[3] KeyBank also responded to Lotus's motion. However, this response was filed on February 25, 2020, despite any opposed party being ordered to respond to Lotus's motion by February 14, 2020. KeyBank's opposition will therefore not be considered. Local Rule 7.1(b)(3)

7

becomes better acquainted with his task, "[t]he merits of the moving party's claim may . . . loom larger in the balance." *Id.* at 1374.

As for the third and final factor, "[a] district court need only determine whether the party has colorable claims to assert which justify lifting the receivership stay." *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 449 (3d Cir. 2005) (emphasis omitted). Of course, "[w]here the claim is unlikely to succeed (and the receiver therefore likely to prevail), there may be less reason to require the receiver to defend the action now rather than defer its resolution." *Wencke*, 622 F.2d at 1373. "However, even meritorious claims may not tip the scales in favor of lifting a litigation stay where the first and second prongs of the *Wencke* . . . inquiry favor the receiver." *JHW Greentree*, 2014 WL 1669261, at *7 (citing *Acorn Tech.*, 429 F.3d at 449). "The movant bears the burden of proving that the balance of the factors weighs in favor of lifting the stay." *JHW Greentree*, 2014 WL 2608516, at *2.

Alternatively, movant Lotus suggests the use of the "for cause" standard employed in the bankruptcy context. *See* 11 U.S.C. § 362(d)(1). Under that standard, courts must consider: (1) whether relief from the stay would result in a partial or complete resolution of the issues; (2) whether there is any connection or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim in the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of

8

harms. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *see In re Case*, 384 F. App'x 43, 44 (2d Cir. 2010) (citing *Sonnax* for the relevant factors in lifting a bankruptcy stay).

Lotus relies on this test as a limiting principle to New York's statute empowering courts to levy injunctions, N.Y. CPLR § 2201. That statute is broad and subject to little guidance. The "only limitation on a stay" under § 2201 "is the court's own sense of discretion, prudence, and justice." *Bethlehem Baptist Church v. Trey Whitfield Sch.*, 2003 WL 21262379, at *2 (Civ. Ct. City of New York May 13, 2003). Before finding an answer to which test applies, an antecedent question must first be answered. Namely, must federal or state law apply in determining whether to lift the stay?

The parties throughout this litigation have relied largely on state law and state rules. That is error. Federal law alone governs a federal receivership. *Hanna v. Plumer*, 380 U.S. 460, 471 (1965) ("When a situation is covered by one of the Federal Rules . . . the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions."); *see, e.g.*, *Can. Life Assurance Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir, 2009) ("Not only does Rule 66 require application of the federal rules in an action where the appointment of a receiver is sought, it specifically indicates a normative standard for uniform administration of receiverships in accordance 'with the historical practice of federal courts.'" (citing Rule 66)); *Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (noting "the primacy of federal law in the practice of federal receiverships").[4]

---

[4] That said, it is of course true that the receiver himself is bound to manage the receivership in accordance with the laws of the state in which the property sits. 28 U.S.C. § 959(b) (binding a receiver to adhere to "the requirements of the valid laws of the [s]tate in which such property is situated" in administering the receivership property); *Resolution Tr. Corp. v. Fountain Circle Assocs. Ltd. P'ship*, 799 F. Supp. 48, 50 (N.D. Ohio 1992)

Therefore, New York's standard cannot apply, and Lotus' references to New York's CPLR § 2201 are misplaced. Nevertheless, bankruptcy and SEC cases are both within the purview of federal law, and thus the question has not entirely been answered. Upon review of the two standards, and the circumstances surrounding their deployment, the *Wencke* test is more appropriate. Although the fit between an SEC receivership and a general receivership is not perfect, it is still a much closer comparison than that between a receivership case and a bankruptcy. The factors it considers are as a result more relevant to the actual equitable concerns at stake in this case. Critically, the District of Connecticut's reliance on the *Wencke* test in factually similar circumstances is highly persuasive. *JHW Greentree*, 2014 WL 1669261, at *3-4. Thus, the *Wencke* test will be used.

Under that test, maintaining the delicate state of affairs prevails over Lotus's interests in litigating the claim. Essentially, Lotus alleged a breach of contract claim for defendants' failure to pay a contractually obligated monthly fee for several months. To recover the lost fees, it sued in state court on December 10, 2019. The missing fees total $112,583.47, plus interest and collection costs. However, Scouler points out that the contract at issue contained a limitation of liability clause limiting damages to $7,850.

Even if Scouler is mistaken about his affirmative defense, the ecosystem among the various claimants and defendants is too volatile to disrupt. This case is ponderously complex, involving dozens of defendant entities. Moreover, as evidenced by Scouler's repeated entries on the docket, the receivership properties require a great deal of management and focus. Diverting the receiver's time and resources to attempt to fend off Lotus's claim would put the receivership property, and the several creditors the receivership was enacted to protect, at risk.

---

(noting that "Congress has specifically provided that a Federal Equity Receiver, once appointed, is to manage and operate the property according to the laws of the state where the property is located").

Additionally, Lotus identifies no particularized harm that it would suffer under the stay any greater than that which would be faced by any other creditor temporarily precluded from recovering from defendants. The balance of equities does not tip in Lotus' favor because the greater concern is allowing Scouler to proceed unencumbered by litigation.

The factor of timing also counsels against lifting the stay. Scouler was appointed receiver on December 20, 2019, fewer than two months before Lotus moved to lift the stay. Such a hasty lifting of the stay seems certain to increase the difficulty of managing the receivership disproportionately to Lotus's benefit. Again, the receivership property in this case is immense and complicated, and the receiver can hardly be expected in two months to have it sufficiently under control to be able to juggle managing its affairs and outside litigation at the same time.

However, the third factor, namely the merits of Lotus's claim, does tip in the movant's favor. After all, Scouler's proposed defense is merely a limitation of damages and does not reach the overall merits of Lotus's claim. Of course, the receiver's failure to point to a defense on the merits suggests that none exists. By extension, this factor must align with Lotus.

Nevertheless, it is beyond dispute that even where a litigant seeking to lift a receivership stay has established the merits of their claim, a strong showing of the other two factors can still compel that the stay remain. *JHW Greentree*, 2014 WL 1669261, at *7 (citing *Acorn Tech.*, 429 F.3d at 449). Such is the case on the facts before this Court. Because Lotus has failed to demonstrate that sufficient time has lapsed to allow the receiver confident command of his charged property or that the balance of the equities are in its favor, its motion must be denied.

### D. **SCOULER'S REQUEST FOR ATTORNEY'S FEES.**

Under Local Rule 54.4,[5]

> Every attorney and receiver requesting an allowance for services rendered in a civil action in which the Court has appointed a receiver shall, on filing the receiver's report with the Clerk, file a detailed statement of the services rendered and the amount claimed, with a statement of any partial allowance previously made previously made, together with an affidavit of the applicants, stating that no agreement has been made, directly or indirectly, and that no understanding exists for a division of fees between the attorney and the receiver. The petition shall be heard and allowance made on notice as the Court shall direct.

"Both [the Second Circuit] and the Supreme Court have held that . . . the product of a reasonable hourly rate and the reasonable number of hours required by the case . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The resulting product "should be in line with the rates prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation." *Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 412 (S.D.N.Y. 2003) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997)).

Naturally, this calculation depends on the hourly rates employed in the district in which the reviewing court sits. *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Courts in this district have recently determined hourly rates of: between $250 and $350 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals, to be reasonable. *Deferio v. City of Syracuse*, 2018 WL 3069200, at *3 (N.D.N.Y. June 21, 2018).

---

[5] In its since-withdrawn objection to Scouler's fee and cost request, Capital argued that the receiver had improperly retained counsel without leave in violation of N.Y. CPLR § 6401(b). Once again, that argument is meritless, because federal law controls. *LaPeter*, 563 F.3d at 842. The question of attorney's fees is therefore governed by federal law and the Northern District's Local Rules. Rule 66; Local Rule 54.4.

Once the typical hourly rate is established, the court should "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill level required by the case; (4) the preclusion of employment with other clients due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the extent of involvement in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989)).

Ultimately, a fee is presumptively reasonable if it is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons*, 575 F.3d at 174 (internal citations and quotation marks omitted).

Essentially, Scouler needed to provide: (1) a detailed statement of the services his attorneys rendered and the amount they claimed; (2) a statement of any partial allowance previously made to his attorneys; and (3) an affidavit disavowing any agreement or understanding as to a division of fees between him and his counsel. Local Rule 54.4. With both fee applications, the receiver provided an itemized list of the tasks completed and the hours expended on the case thus far, along with an hourly fee rate for each attorney and paralegal. Both fee applications also affirm that there have been no prior disbursements of fees. Lastly, both applications affirm that there has been no agreement or understanding as

to the sharing of fees between the receiver and his attorneys.  Thus, the receiver's fee application is appropriate and will be granted.

Scouler's fee request involves four attorneys:  (1) Justin A. Heller ("Heller"), a senior partner; (2) Francis J. Brenna, a partner; (3) John V. Hartzell, a partner; and (4) Brian D. Deinhart ("Deinhart"), an associate.  Concerning Heller, the receiver asks for an hourly rate of $280.00, with an hourly fee rate of $265.00 for the remaining partners.  These fee rates are well in line with typical rates within this district.  *Deferio*, 2018 WL 3069200, at *3 (finding a typical fee rate of between $250 and $350 for partners appropriate).  However, the requested fee rate of $230 per hour for Deinhart is beyond the amount associates generally command in this district.  *Id.* (finding a typical fee rate of between $165 and $200 for associates appropriate).  Thus, the fees requested for Deinhart must be reduced.  Nevertheless, given the complexity of this case and the frequent temporal urgency that it entailed, a rate of $200, the height of the common range, is appropriate.  *Id.*

As to the number of hours worked, the contemporaneous records Scouler has provided with his fee request are exhaustive, providing detailed descriptions of all tasks completed and billed at six-minute intervals.  Upon review, these records satisfactorily prove that the hours worked are reasonable, especially considering the time constraints involved and the complexity of the issues at stake.  *Arbor Hill*, 522 F.3d at 186 n.3.  Only one item exceeded four hours, and that item involved reviewing leasing documents, crafting an agreement, and communicating the terms of the proposed agreement to the receiver.  By contrast, simple matters such as phone calls and emails were often billed for no more than six or twelve minutes.

All told, Scouler's first fee request will be granted in its entirety.  The receiver's counsel is therefore entitled to $5,850.00.  The receiver's second fee request is also granted.

14

However, the fee payable for Deinhart's hours must be reduced to an hourly rate of $200. As a result, the receiver's counsel is only entitled to $21,911 on his second fee request. In total, the receiver's counsel may be paid $27,761 out of the receivership fund.[6]

## III. **CONCLUSION**

This case, nascent though it may be, has already proven capable of producing quite the litigative blizzard. Now, perhaps, the storm will calm and Scouler can go about the business of managing the receivership property while it moves forward. In the meantime, the receiver may pay his requested attorneys' fees. In all other respects, however, the status quo abides.

Therefore, it is

ORDERED that

1. Defendant Steven A. Erby's Dkt. 69 motion to work under the receiver in a limited capacity and for funding to retain counsel is DENIED;

2. Defendant Steven A. Erby may move at a later date for appointment of counsel in accordance with the *Hodge* test and 28 U.S.C. § 1915(e);

3. The Dkt. 70 motion for a partial lift of the stay in outside litigation filed by Dealer Services 2.0 doing business as "Lotus" is DENIED;

4. Receiver Daniel Scouler's motion for disbursement of attorneys' fees is GRANTED; and

---

[6] As a final note, some acknowledgement must be made of Capital's second point in its initial objection to the disbursement of attorney's fees. Namely, Capital objected that Scouler's choice of attorney was peculiar because his counsel's firm frequently and extensively represents KeyBank. That objection has been withdrawn. The Court appreciates the receiver's attorneys' assistance in catching it up on the state of this case after Senior Judge McAvoy's recusal. Nevertheless, it is worth noting that the receiver is an agent of this Court, with a fiduciary duty to the receivership property, and the receivership property alone. *Lawsky*, 2015 WL 4470332, at *11. Though there have been no indications of impropriety thus far, any appearance of impropriety will be scrutinized closely.

5. Receiver Daniel Scouler may draw $27,761 from the receivership fund to pay his counsel.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: March 10, 2020
       Utica, New York.