UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEYBANK NATIONAL ASSOCIATION,

                    Plaintiff, and

CAPITAL COMMUNICATIONS FEDERAL
CREDIT UNION,

                    Intervenor,
       -v-                            1:19-CV-1562

MONOLITH SOLAR ASSOCIATES LLC, et al.,
                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                       OF COUNSEL:

THOMPSON, HINE LAW FIRM-NY          BARRY M. KAZAN, ESQ.
Attorneys for Plaintiff
335 Madison Avenue 12th Floor
New York, New York 10017

THOMPSON, HINE LAW FIRM-CLEVELAND    CURTIS LEE TUGGLE, ESQ.
Attorneys for Plaintiff
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

THOMPSON HINE LLP                          JONATHAN S. HAWKINS, ESQ.
Attorneys for Plaintiff
Austin Landing I
10050 Innovation Drive Suite 400
Miamisburg, Ohio 45342

LIPPES MATHIAS WEXLER & FRIEDMAN LLP  JOHN D. RODGERS, ESQ.
Attorneys for Intervenor
54 State Street Suite 1001
Albany, New York 12207

THE WAGONER FIRM PLLC                   MATTHEW D. WAGONER, ESQ.
Attorneys for Defendant Steven A. Erby
150 State Street, Suite 504
Albany, New York 12207

| | |
|---|---|
| NOLAN HELLER KAUFFMAN LLP<br>Attorneys for Receiver, Daniel Scouler<br>80 State Street, 11th Floor<br>Albany, New York 12207 | JUSTIN A. HELLER, ESQ.<br>FRANCIS J. BRENNAN, ESQ.<br>JOHN V. HARTZELL, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

### I.   INTRODUCTION AND BACKGROUND

On December 18, 2019, plaintiff KeyBank National Association ("KeyBank" or "plaintiff") filed this breach of contract action seeking to foreclose on certain secured interests it had obtained against a veritable army of defendants, including solar energy producer Monolith Solar Associates LLC ("Monolith") and several other power companies with common ownership.  Plaintiff alleges that defendants have breached each of those agreements and are therefore liable to defendants to the tune of $6.1 million.  On December 20, 2019, Daniel Scouler ("Scouler" or "the receiver") was appointed as receiver under Federal Rule of Civil Procedure ("Rule") 66 to manage the power companies during the pendency of the foreclosure action.

Scouler, acting in his capacity as receiver, has recently filed three motions:  (1) a fourth application for attorneys' fees; (2) a fee application for a firm retained to provide specialized legal advice on certain labor issues; and (3) an omnibus motion for relief related to Monolith's ongoing operation.  The parties were directed to object to the omnibus motion on or before Friday, May 8, 2020.  No party did so, and thus the motions will be decided on the basis of the receiver's submissions without oral argument.

### II.   DISCUSSION

#### A.  Scouler's Requests for Attorneys' Fees.

2

The Court's March 10, 2020 Memorandum-Decision and Order ("the March 10 decision") discussed at length the legal principles that govern Scouler's fee requests. *KeyBank Nat'l Assoc. v. Monolith Solar Assocs. LLC*, 2020 WL 1157650, at *6-7 (N.D.N.Y. Mar. 10, 2020). Given that lengthy discourse, there is no need to belabor the point again. It is enough to say that to satisfy Rule 66, the receiver must provide: (1) a detailed statement of the services his attorneys rendered and the amount they claimed; (2) a statement of any partial allowance previously made to his attorneys; and (3) an affidavit disavowing any agreement or understanding as to any division of fees between the receiver and his attorneys. *Id.* at *7 (citing Local Rule of the Northern District of New York 54.4).

Scouler has provided all of the materials necessary to satisfy Rule 66. Accordingly, the Court will review the fees requested to determine their reasonableness by comparing the rates requested to a typical hourly fee paid in this district. *KeyBank*, 2020 WL 1157650, at *6. The reasonable fee ranges are: (1) between $250 and $350 for partners; (2) between $165 and $200 for associates; and (3) between $80 and $90 for paralegals. *Id.* That fee range is then multiplied by the number of hours the attorney billed, less any hours expended that the Court finds unreasonable based on an extended list of factors, which are discussed and identified in the March 10 decision. *Id.* at *6-7.

Scouler first requested to pay attorneys' fees for Nolan Heller Kauffman LLP ("NHK"), the same firm whose fees this Court reviewed in the March 10 decision. In terms of hourly rates, the receiver requests to pay: $280.00 for senior partners; $265.00 for other partners; $200.00 for associates; and $70 for paralegals. The receiver has thus reduced his fee request for associates in accordance with the March 10 decision, and every fee request falls within or under the appropriate hourly rate in this district. *KeyBank*, 2020 WL 1157650, at *6-7.

3

By extension, if NHK's requested hours for payment are reasonable, then Scouler's fee request for this firm is reasonable as a whole. Much like with the receiver's prior fee request, this request is accompanied by extensive contemporaneous billable hour records denoting time in six-minute intervals. Upon review, those records, and the 61.10 billable hours they represent, reasonably reflect the receiver's general counsel's work for the month of March.

After all, as was discussed in the March 10 decision, this case involves a great deal of complexity. Moreover, over the course of the month of attorneys' fees under consideration, NHK had to examine the March 10 decision and draft the omnibus motion currently under consideration. A fee request of only 61.10 billable hours across an entire month to manage a complex receivership with two significant legal events taking place during that month does not present any indication of an unreasonable request. Accordingly, the receiver's fee request for NHK must be granted without alteration. The receiver may pay NHK $15,858.50 out of the receivership's funds.

Scouler has also requested for the first time that he be permitted to pay attorneys' fees for the additional law firm of Goldberger and Kremer ("GK"). GK is a firm specializing in labor relations and was retained by the receiver to discern the state of Monolith's collective bargaining agreement and to research the possibility of withdrawing from that agreement.

Each of GK's two named partners, Bryan J. Goldberger, Esq. ("Mr. Goldberger") and Brian S. Kremer, Esq. ("Mr. Kremer"), have billed hours for Scouler. Mr. Goldberger is a partner with thirty-five years of experience in labor law, while Mr. Kremer is a partner with nearly thirty years of experience in the same field. Each partner has requested an hourly payment rate of $280.00, the same amount which was appropriate for NHK's senior partners.

Once again, $280.00 is well within the $250 to $350 range of appropriate hourly rates in this district, and thus the rates requested for Mr. Goldberger and Mr. Kremer are reasonable.

As for the amount of hours expended, GK billed a total of 7.5 hours between February 15, 2020 and April 3, 2020.  That amount is reasonable, especially because the records are scrupulously kept to six-minute intervals.  Each record also identifies only a single activity, without any notable block billing or other questionable practices.  Accordingly, Scouler's application for attorneys' fees must be granted.  The receiver may withdraw $2,100 from the receivership fund to pay GK.

### B. Scouler's Omnibus Motion.

Finally, Scouler has submitted an omnibus motion requesting five forms of relief: (1) permission to sell eight of the receivership's surplus vehicles for a total purchase price of $48,200; (2) permission to sell spare solar modules and inverters for a total purchase price of $41,527.25; (3) prospective approval to sell other items belonging to the receivership provided that the total sale price to a single purchaser not exceed $15,000; (4) permission to retain E/W Capital NY, LLC ("E/W") to broker the sale of the receivership's solar energy projects; and (5) permission to pay a "stay bonus" to incentivize existing Monolith employees to stay on board.

Under the terms of the active receivership order, "[a]ny sale of the [r]eceivership [p]roperty other than in the ordinary course of business shall only occur upon Court approval after notice and opportunity to be heard has been provided to [d]efendants and all parties . . . with an interest in the [r]eceivership [p]roperty."  Dkt. 96, ¶ 17.  All parties in interest have been given time to object to Scouler's proposed sales, and none have done so, which suggests there is little reason not to approve these sales.

Close scrutiny of the terms themselves do not raise any significant concerns, either. Scouler researched the value of the eight vehicles he wishes to sell and estimated their total value at $54,000. A single sale of all eight vehicles to a single purchaser at a discount of only $5,800 is an efficient transaction that should serve to liquidate some of the receivership property's assets. Indeed, the receiver has justified that discount by explaining that the vehicles are, if anything, worth less than the aggregate estimate because some are in poor condition.

Just as importantly, the receiver and the purchaser have both affirmed that the transaction was carried out at arms' length. Ultimately, the proposed vehicle sale is above board both in terms of its practical utility to the receivership and the nature of the negotiations that produced it. The receiver's proposed sale of the eight vehicles for $48,200 must therefore be approved.

Much the same can be said for the sale of the spare solar parts. Scouler has affirmed that there is no use for these parts to any of the receivership properties, either now or in the foreseeable future. Again, he has also affirmed that the purchaser has no connection to any party in this case, and that the agreement was negotiated at arms' length. He has also affirmed that the price is fair, and given this Court's lack of expertise in spare solar energy parts and the lack of any objection from the other interested parties, he will be taken at his word. Accordingly, the receiver's proposed sale of the varied spare parts for $41,527.25 must also be approved.

Scouler's request to conduct other sales in amounts less than $15,000 without advance approval by this Court must be granted for similar reasons. The receiver has shown diligence and prudence in his requests thus far, and the judgment he has shown merits a certain degree of latitude to make decisions for the benefit of the receivership property.

Besides, failing to give him this freedom would pose an impediment to quick, small transactions by injecting a recurring delay period while the receiver waits for this Court's blessing. After all, bulk sales to single purchasers like those approved above do not fall out of a clear blue sky. Incentivizing the receiver to seek out only the rare bulk sale—or else to balance the worth of each transaction against the legal fees that would naturally follow from formally requesting approval through counsel—would not be in the receivership's best interest.

Most importantly, the safety measures that Scouler has provided with the omnibus motion would satisfactorily allow the Court, as well as the various other interested parties, to continue to monitor his transactions. Accordingly, the receiver may conduct sales transactions of up to $15,000 without asking for advance approval, so long as: (1) no sale may be made to any party affiliated with Monolith or the receiver; (2) no sale may be made of any property subject to a creditor lien unless the lien will be paid in full by the proceeds of the sale or all lienholders give prior written consent;[1] and (3) the receiver will include any sale permitted by this order in the subsequent interim report.

Finally, Scouler makes two requests for business practices that he contends will help to maintain the receivership property's value. First, the receiver requests to extend Monolith's ongoing contract with E/W, a New York City brokerage and financial advisory firm which has assisted Monolith in raising capital and identifying purchasers of solar projects. E/W's fee

---

[1] The receiver has submitted two starkly different formulations of this particular limiting principle. In his own affirmation, he states the limitation as above. In his omnibus motion, by contrast, the receiver frames the limitation such that the lienholder must provide prior written consent in any case, and the sale must also either pay the entirety of the lien or else another lienholder must consent to the sale. The affirmation's form is the better one. If the lien is paid off in its entirety, the lienholder would have little basis to object to the sale, regardless of whether it gave permission to make it. Otherwise, the lienholder's consent to the sale is enough to make the sale legitimate. By contrast, through the motion's formulation, the lienholder must always provide consent and only the approval of a different lienholder can allow a sale for less than the lien is worth to be completed. This limitation makes little sense, because each lienholder would need to approve the sale in any case, and it is unclear what "any other lienholder" would mean in this context.

7

under the receiver's arrangement would be the greater of either $25,000 per megawatt of energy produced by a project it arranges, prorated for sales amounting to less than a full megawatt, or 1.5% of the total purchase price paid on that project. That fee is reasonable, and especially because E/W has had an ongoing relationship with Monolith and the receiver has affirmed a lack of any prior relationship between himself and E/W, the receiver may enter into the described agreement with Monolith.

Second and finally, Scouler requests authorization to pay a "stay bonus" to certain key staff members at Monolith. Because the interested parties in this case have all been given an opportunity to object to that request and have not done so, and because the bonuses of twenty percent of a year's salary to four employees and ten percent to one more, totaling approximately $68,000, are reasonable, that request must also be granted.

### III. CONCLUSION

Despite the tempest this case first presented, the swell has passed and calm has resumed. Scouler's varied requests for relief are all reasonable and within his purview and responsibility as receiver. Thus, they are one and all granted.

Therefore, it is

ORDERED that

1. The receiver's Fourth Application for attorneys' fees for NHK is GRANTED;

2. The receiver may withdraw $15,858.50 from the receivership fund to pay NHK;

3. The receiver's First Application for attorneys' fees for special labor counsel GK is GRANTED;

4. The receiver may withdraw $2,100.00 from the receivership fund to pay GK;

5. The receiver's omnibus motion is GRANTED;

6. The receiver may sell the receivership property identified in the omnibus motion;

7. The receiver may prospectively sell receivership property so long as: (1) no sale shall exceed $15,000 to a single purchaser in a single transaction; (2) no sale may be made to a party affiliated with Monolith or the receiver; (3) no sale shall be of property subject to a lien unless the proceeds from the sale would satisfy the lien or the lienholder grants prior written consent; and (4) the receiver shall include such sales in his interim reports going forward;

8. The receiver may engage E/W to provide brokerage services for the sale of solar energy products; and

9. The receiver may pay "stay bonuses" to Monolith employees totaling approximately $68,000 as described in the omnibus motion and its attached exhibits.

IT IS SO ORDERED.

Dated: May 13, 2020
       Utica, New York.

David N. Hurd
U.S. District Judge