UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEYBANK NATIONAL ASSOCIATION,

                    Plaintiff, and

CAPITAL COMMUNICATIONS FEDERAL
CREDIT UNION,

                    Intervenor,
          -v-                                          1:19-CV-1562

MONOLITH SOLAR ASSOCIATES LLC, et al.,
                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


APPEARANCES:                                  OF COUNSEL:

THOMPSON, HINE LAW FIRM-NY          BARRY M. KAZAN, ESQ.
Attorneys for Plaintiff
335 Madison Avenue 12th Floor
New York, New York 10017

THOMPSON, HINE LAW FIRM-CLEVELAND          CURTIS LEE TUGGLE, ESQ.
Attorneys for Plaintiff
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

THOMPSON HINE LLP                    JONATHAN S. HAWKINS, ESQ.
Attorneys for Plaintiff
Austin Landing I
10050 Innovation Drive Suite 400
Miamisburg, Ohio 45342

LIPPES MATHIAS WEXLER & FRIEDMAN LLP          JOHN D. RODGERS, ESQ.
Attorneys for Intervenor
54 State Street Suite 1001
Albany, New York 12207

THE WAGONER FIRM PLLC                MATTHEW D. WAGONER, ESQ.
Attorneys for Defendant Steven A. Erby
150 State Street, Suite 504
Albany, New York 12207

NOLAN HELLER KAUFMAN LLP                          JUSTIN A. HELLER, ESQ.
Attorneys for Receiver, Daniel Scouler          FRANCIS J. BRENNAN, ESQ.
80 State Street, 11th Floor                      JOHN V. HARTZELL, ESQ.
Albany, New York 12207

DAVID N. HURD
United States District Judge

## <u>MEMORANDUM–DECISION and ORDER</u>

On December 18, 2019, plaintiff KeyBank National Association ("KeyBank" or

"plaintiff") filed this breach of contract action seeking to foreclose on certain secured interests

it had obtained against Monolith Solar Associates LLC ("Monolith"), its owners, and several

other power companies with common ownership.  Dkt. 1.  Plaintiff alleges that defendants

have breached each of those agreements and are therefore liable to plaintiff to the tune of

$6.1 million.  *See id.* ¶ 2.

On December 20, 2019, Daniel Scouler ("Scouler" or "the receiver") was appointed as

receiver under Federal Rule of Civil Procedure ("Rule") 66 to manage the power companies

during the pendency of the foreclosure action.  *See generally* Dkt. 7.  At the same time, the

Court imposed a stay of all outside litigation against the receivership properties absent

express permission.  *Id.* ¶ 21; *see* Dkt. 96, ¶ 21 (including same language of stay in updated

Second Order Modifying Receivership Order).  The stay also prohibited

"all . . . persons . . . from doing any act or thing whatsoever to interfere with the [r]eceiver in

the discharge of [his] duties . . . ."  Dkt. 7, ¶ 21; Dkt. 96, ¶ 21.

On December 9, 2016, non-party Gary Hickok ("Hickok") agreed to lease rooftop

space at his business, Gary's Garage, located at 8A Apollo Drive, Albany, New York 12205,

to Monolith so that it could install a solar panel, called a PV system, on his roof.

Dkt. 124, ¶ 5.  Perhaps unsurprisingly, Monolith fell behind on its lease payments, and now

owes Hickok $13,737.63.  *Id.* ¶ 8.

Upon being named receiver, Scouler told Monolith's lessors, including Hickok, that he needed to have continued access to the company's PV system at Gary's Garage, and in exchange promised to resume rent payments beginning in April of 2020.  Dkt. 124, ¶ 9.  Although this would not reimburse the lessors for the rent they were already owed, neither would it interfere with their ability to collect that rent upon the conclusion of the receivership.  *Id.*

Although most lessors were satisfied with this arrangement, it would seem that Hickok was not.  Dkt. 124, ¶¶ 9-10.  Toward the end of March 2020, Hickok allegedly disconnected the PV system at Gary's Garage.  *Id.* ¶ 10.  On April 1, 2020, Scouler was able to contact Hickok's son, who insisted that the receiver would not have access to the leased premises until he paid all the rent that Monolith owed.  *Id.*

On April 3, 2020, counsel for Scouler wrote to Hickok explaining the scope and nature of the receiver's authority and provided him a copy of the Order Appointing Receiver.  Dkt. 124, ¶ 11.  Apparently, this first letter did nothing to change the status quo, and the receiver's counsel wrote Hickok again on May 12, 2020.  *Id.* ¶ 12.  The second letter warned that if Hickok did not allow the receiver access to the premises within seven days, he would request an order to show cause why he should not be held in civil contempt of the receivership order.  *Id.*  Monolith employees nevertheless called Hickok on the telephone on May 26 and 28, 2020, but to no avail.  *Id.* ¶ 13.  In total, the receiver projects that Monolith lost approximately $9,729.00 between April and June of 2020 because it was denied power from this PV system.  *Id.* ¶ 21(b).

On June 15, 2020, Scouler moved for an order to show cause why Hickok should not be held in civil contempt.  Dkt. 124.  On June 17, 2020, that order followed, requiring that Hickok show cause no later than Wednesday, July 8, 2020.  Dkt. 129.  As part of the same

3

decision, the receiver was also ordered to personally serve Hickok no later than Friday, June 26, 2020. *Id.* at 3.   On June 23, 2020, the receiver personally served Hickok.  Dkt. 137. Nevertheless, he has not made any appearance or answer to the order to show cause.  The order to show cause being unopposed, it will now be decided on the basis of the parties' submissions without oral argument.

Civil contempt is "[a] sanction imposed to compel obedience to a lawful court order or to provide compensation to a complaining party . . . ."  *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989).  "Federal courts maintain the inherent power to enforce their orders by civil contempt."  *Drew-King v. Deep Distributors of Greater NY, Inc.*, 274 F. Supp. 3d 132, 136 (E.D.N.Y. 2017) (cleaned up).

A party may be held in civil contempt for failure to comply with a court order if:  "(1) the order the contemnor failed to comply with is clear and unambiguous[;] (2) the proof of noncompliance is clear and convincing[;] and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

The receivership order—and the two orders modifying it—all contain the same clear and unambiguous language.  The Court's authority is firmly behind Scouler as he carries out his responsibilities as receiver, and any person's "doing any act or thing whatsoever" to disrupt him from his duties is flatly prohibited by the receivership order.  Dkt. 7, ¶ 21; Dkt. 96, ¶ 21.

Despite the clarity of the that order in all its incarnations, Scouler has provided clear and convincing evidence that Hickok spurned the Court's order and authority.  The receiver provided his own affidavit detailing Hickok's refusal to allow him access to the PV system at

4

Gary's Garage, *see generally* Dkt. 124, as well as his attorney's affidavit narrating his efforts to contact Hickok, Dkt. 124-1, ¶¶ 1-6.

Hickok's disconnecting the PV system and preventing the receiver from using it to generate electricity has actively harmed the receivership both by denying it a source of revenue and by setting a bad example for the receivership's other lessors.  In the absence of Hickok's dispute of these facts or arguments to the contrary, the affidavits meet the standard of clear and convincing evidence that he has interfered with the receiver's discharge of his duties.

Finally, Hickok has not attempted at all to comply with the receivership order, despite a slow and measured escalation in the pressure he was put under to do so.  First, Scouler notified all lessors that he was taking control of the receivership, provided them with a copy of the Order Appointing Receiver, and informed them he needed access to the premises. Dkt. 124, ¶ 9.  Next, when Hickok disconnected the PV system, Monolith contacted Hickok's son, and explained to him the state of the receivership while offering to begin to pay rent. *Id.* ¶ 10.  That overture was rebuffed.  *Id.*  Then, the receivership's attorneys wrote an email to Hickok to stress the importance of complying with the receivership order.  Dkt. 124-1, ¶ 2, pp. 4-5.[1]  Hickok's response was silence.  *Id.* ¶ 2.

Nevertheless, before moving for an order to show cause, the receivership's attorneys wrote Hickok another letter, sent by both email and post, which the United States Postal Service confirmed Hickok received on May 13, 2020.  Dkt. 124-1, ¶ 3, pp. 7-11.  Once Scouler moved to hold Hickok in civil contempt, he also personally served that motion on an employee of Gary's Garage on Monday, June 15, 2020.  Dkt. 124-1, p. 15.

---

[1] Pagination corresponds with CM/ECF.

But even that was not Hickok's final opportunity to comply with the receivership order. Hickok was given until July 8, 2020 to show cause why he should not be held in civil contempt by this Court's June 17, 2020 Memorandum-Decision and Order.  Dkt. 129. Scouler personally served him with that order on June 23, 2020.  Dkt. 137.  In other words, Hickok was warned that disrupting the receiver's discharge of his duties would violate an order of this Court on no fewer than six occasions, and still he has not provided so much of an explanation for his actions, let alone a reason not to hold him in contempt.  Thus, the Court is left with no choice but to hold Hickok in civil contempt of the receivership order.

That still leaves the question of how relief for his contempt must be framed.  Civil contempt fines come in two variants:  coercive or compensatory.  *Paramedics*, 369 F.3d at 657.  Although the two categories are treated differently, a contempt sanction can simultaneously aim for both coercive and compensatory goals.  *Id.* at 658.  By necessary implication, however, there can be no punitive civil contempt fines.  *Id.* at 657.

If a fine is coercive, "the court has broad discretion" to design a remedy suitable to coerce compliance with its orders.  *Paramedics*, 369 F.3d at 657 (cleaned up).  In wielding that discretion, however, the court must consider various factors, including "the character and magnitude of the harm threatened by continued contumacy," the probable effectiveness of the suggested sanction in bringing about compliance, and the contemnor's ability to pay. *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982) (cleaned up).

If a fine is compensatory, and thus payable to an opposing party rather than the court, a court's discretion is more muted.  *See Terry*, 886 F.2d at 1353.  Specifically, the party seeking a compensatory fine must demonstrate proof of loss.  *Id.*  The sanction must then correspond "at least to some degree" with the amount of damages demonstrated.  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995).  Regardless of whether a sanction is

compensatory or coercive, a court may award appropriate attorneys' fees and costs to a victim of contempt.  *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996).

If the contemnor can demonstrate that he is financially unable to comply with a civil contempt sanction, he may be excused from that sanction.  *Paramedics*, 369 F.3d at 658. However, the contemnor bears the burden of proving his inability to pay.  *United States v. Rylander*, 460 U.S. 752, 757 (1983).

 Scouler has called for Hickok to be fined in the following amounts:  (1) the receiver's attorneys' fees incurred in securing the order to show cause; (2) $4,250 per month or $141.00 per day, the projected revenue Monolith estimates it has lost from the PV system at Gary's Garage not producing electricity; (3) any additional damages Hickok has caused to the PV system upon the receiver's application for additional damages; and (4) a daily coercive fine sufficient to compel Hickok's compliance.

First, it is appropriate to award Scouler attorney's fees and costs for the expenses he accrued in prosecuting this contempt action.  *Weitzman*, 98 F.3d at 719.  The receiver may therefore make an itemized fee request with contemporaneous hourly records for the Court's review no later than Wednesday, August 5, 2020.  Hickok may oppose the motion for fees no later than Wednesday, August 19, 2020.

Second, upon review, Scouler has adequately demonstrated loss for being denied access to the Gary's Garage PV system.  The amount of $4,250 per month or $141 per day reflects only the lost profits from not being able to produce electricity using the Gary's Garage panel.  That amount was furthermore calculated based on Monolith's records and projections, which are as reliable a source as can be expected in calculating the counterfactual value of the PV system if it had been working as intended.  Lastly, that the receiver affirmed this amount to be accurate under penalty of perjury provides support for the validity of the fee

7

amount.  Accordingly, Scouler has adequately proven actual loss, and is entitled to a compensatory fine in the amount of $15,711, or $4,250 per month for April, May, and June, as well as $141 per day for July 1-21.

Third, Scouler may apply for any additional damages Hickok caused to the PV system by disconnecting it.  Should the receiver make such an application, the Court will conduct the same review again to determine the amount of actual loss caused by Hickok's contempt and will award the receiver a compensatory contempt fine if the receiver successfully proves loss.

Fourth and finally, a conditional daily fine is warranted to motivate Hickok to set aside his abiding failure to submit to the Court's authority.  If Hickok has not permitted Scouler to access the PV system by Friday, August 21, 2020, the Court will impose a $1,000 daily fine assessed beginning on that day and continuing every day until the receiver successfully accesses the PV system.  That daily fine, being coercive, will be owed to the Court, rather than to the receiver.

In any case, Hickok's refusal to allow Scouler to do his duty cannot continue.  It may seem unfair that Monolith may continue to profit from Hickok's property when it owes him substantial back rent for the use of that property, but ultimately all creditors of the receivership—including Hickok—would benefit most from allowing the receivership to do what it is designed to.  Namely, to maximize its profits and value so that some day Hickok and the other creditors can perhaps be paid what they are owed.  Regardless, until this case is resolved no creditor can take authority into his own hands that rightfully belongs to this Court.

Therefore, it is

ORDERED that

1.  Non-party Gary Hickok is held in civil contempt of this Court's Second Order
    Modifying the Receivership;

2. Gary Hickok is ordered to pay Daniel Scouler a compensatory fine of $15,711 for profits lost by Gary Hickok's denying Daniel Scouler access to the PV system located at Gary's Garage, 8A Apollo Drive, Albany, New York 12205;

3. Should Scouler not be permitted to access the PV system at Gary's Garage before August 21, 2020, the Court will assess a daily fine against Gary Hickok in the amount of $1,000 beginning that day and continuing until Scouler gains access;

4. Upon Daniel Scouler's regaining access to the PV system at Gary's Garage, should Gary Hickok have damaged that system through his contempt of the Court's receivership order, Scouler may apply for an additional fine to recover for that damage;

5. Daniel Scouler may apply for an award of attorneys' fees no later than Wednesday, August 5, 2020; which Gary Hickok may oppose no later than Wednesday, August 19, 2020; and

6. Scouler is directed to personally serve this Memorandum-Decision and Order on Gary Hickok no later than Friday, July 31, 2020.

IT IS SO ORDERED.

Dated:  July 22, 2020
  Utica, New York.

David N. Hurd
U.S. District Judge