UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEYBANK NATIONAL ASSOCIATION,

Plaintiff, and

CAPITAL COMMUNICATIONS FEDERAL CREDIT UNION,

Intervenor,

-v-

1:19-CV-1562

MONOLITH SOLAR ASSOCIATES LLC, et al.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| THOMPSON, HINE LAW FIRM-NY<br>Attorneys for Plaintiff<br>335 Madison Avenue 12th Floor<br>New York, New York 10017 | BARRY M. KAZAN, ESQ. |
| THOMPSON, HINE LAW FIRM-CLEVELAND<br>Attorneys for Plaintiff<br>3900 Key Center<br>127 Public Square<br>Cleveland, Ohio 44114 | CURTIS LEE TUGGLE, ESQ. |
| THOMPSON HINE LLP<br>Attorneys for Plaintiff<br>Austin Landing I<br>10050 Innovation Drive Suite 400<br>Miamisburg, Ohio 45342 | JONATHAN S. HAWKINS, ESQ. |
| LIPPES MATHIAS WEXLER & FRIEDMAN LLP<br>Attorneys for Intervenor<br>54 State Street Suite 1001<br>Albany, New York 12207 | JOHN D. RODGERS, ESQ. |
| THE WAGONER FIRM PLLC<br>Attorneys for Defendant Steven A. Erby<br>150 State Street, Suite 504<br>Albany, New York 12207 | MATTHEW D. WAGONER, ESQ. |

NOLAN HELLER KAUFFMAN LLP
Attorneys for Receiver, Daniel Scouler
80 State Street, 11th Floor
Albany, New York 12207

JUSTIN A. HELLER, ESQ.
FRANCIS J. BRENNAN, ESQ.
JOHN V. HARTZELL, ESQ.

SMRTIC & STANYON PLLC
Attorneys for Hussy 140 LLC
289 North Main Street
Gloversville, New York 12078

CHRISTOPHER STANYON, ESQ.

NIXON PEABODY LLP
Attorneys for Hancock Whitney Equipment
Finance and Leasing, LLC
1300 Clinton Square
Rochester, New York 14604

ERIC M. FERRANTE, ESQ.
CHRISTOPHER M. DESIDERIO, ESQ.

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

On December 18, 2019, plaintiff KeyBank National Association ("KeyBank" or "plaintiff") filed this breach of contract action seeking to foreclose on certain secured interests it had obtained against Monolith Solar Associates LLC ("Monolith"), its owners, and several other power companies with common ownership. Dkt. 1. Plaintiff alleges that defendants have breached each of those agreements and are therefore liable to plaintiff to the tune of $6.1 million. *See id.* ¶ 2.

On December 20, 2019, Daniel Scouler ("Scouler" or "the receiver") was appointed as receiver under Federal Rule of Civil Procedure ("Rule") 66 to manage the power companies during the pendency of the foreclosure action. *See generally* Dkt. 7. At the same time, the Court imposed a stay of all outside litigation against the receivership properties absent express permission. *Id.* ¶ 21; *see* Dkt. 96, ¶ 21 (including same language of stay in updated Second Order Modifying Receivership Order).

On May 29, 2020, Hussy 140 LLC ("Hussy"), filed a motion to lift the stay in proceedings as to its parallel state court action against Monolith. Dkt. 123. In sum and

substance, Hussy is another voice in the expansive chorus of parties whom Monolith allegedly owes money. Dkt. 123-1, ¶¶ 3, 6-7. In particular, Hussy claims that Monolith owed it $55,000 in leases and rental fees because Hussy allowed it to rent roof space to install solar panels, or as Monolith calls them PV systems. *Id.* ¶¶ 5-6. To recover that debt, Hussy sued Monolith in state court on August 7, 2019. *Id.* ¶ 7.

On November 12, 2019, the state court held an inquest to determine the amount of damages owed to Hussy and to determine whether a warrant of eviction would be appropriate. Dkt. 123-1, ¶ 10. Apparently on December 24, 2019—four days after this Court first imposed the receivership stay—the state court entered default judgment in the amount of $48,321.25 in Hussy's favor.[1] *Id.* ¶ 11; Dkt. 140 p. 8.[2] Accordingly, Hussy has filed a motion to lift the blanket stay so that it may recover its imposed judgment and evict Monolith. Dkt. 123. That motion having been fully briefed,[3] it will now be decided on the basis of the parties' submissions without oral argument.

A district court possesses the equitable power to order a stay preventing nonparties from initiating or continuing litigation against an entity in a receivership. *S.E.C. v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010) (authorizing blanket stay of all litigation against receivership property in SEC receivership context); *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006) (authorizing blanket stay in insurance dispute absent statutory authority). This power is "effective against all persons, of all proceedings against the receivership entities" and "rests as much on [the court's] control over the property placed in receivership

---

[1] It is unclear whether Hussy has presently obtained a warrant of eviction, or whether further litigation will be necessary before that eviction will become actionable. *Compare* Dkt. 123-1, ¶¶ 10-11 (noting that state court conducted inquest to determine whether default judgment and warrant of eviction were proper but only stating that court issued default judgment); Dkt. 138-2, p. 8 (receiver arguing that Hussy only received monetary judgment from state court with no warrant of eviction), *with* Dkt. 123-1, ¶ 21 (Hussy appearing to affirm that it possesses warrant of eviction).

[2] Pagination corresponds with CM/ECF.

[3] Plaintiff, the receiver, and non-party Hancock Whitney Equipment Finance and Leasing, LLC all opposed Hussy's motion. Dkt. 135; 138; 140.

as on its jurisdiction over the parties" to the underlying claim.  *Byers*, 609 F.3d at 91.  After all, "if a district court could not control the receivership assets, the receiver would be unable to protect those assets."  *Id.* (citing *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)).

As for determining whether to lift a stay once imposed, this Court uses the test employed by the Ninth Circuit in *SEC v. Wencke*, 622 F.2d at 1369.  *See KeyBank Nat'l Assoc. v. Monolith Solar Assocs.*, 2020 WL 1157650, at *3 (N.D.N.Y. Mar. 10, 2020).  The three relevant factors in the *Wencke* test are:  (1) "whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed"; (2) "the time in the course of the receivership at which the motion for relief from the stay is made"; and (3) "the merit of the moving party's underlying claim."  *SEC v. Callahan*, 2 F. Supp. 3d 427, 437 (E.D.N.Y. 2014).

The first factor of the test "essentially balances the interests in preserving the receivership estate" against the interests of the movant.  *SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011) (summary order) (citing *United States v. Acorn tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005)).

Regarding the second factor of timing, the inquiry is fact-specific and "based on the number of entities, the complexity of the scheme, and any number of other factors."  *Stanford*, 424 F. App'x at 341.  "Where the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim."  *Wencke*, 622 F.2d at 1373-74.  By extension, as time passes and the receiver becomes better acquainted with his task, "[t]he merits of the moving party's claim may . . . loom larger in the balance."  *Id.* at 1374.

As for the third and final factor, "[a] district court need only determine whether the party has colorable claims to assert which justify lifting the receivership stay." *Acorn Tech.*, 429 F.3d at 444 (emphasis omitted). Of course, "[w]here the claim is unlikely to succeed (and the receiver therefore likely to prevail), there may be less reason to require the receiver to defend the action now rather than defer its resolution." *Wencke*, 622 F.2d at 1373.

"However, even meritorious claims may not tip the scales in favor of lifting a litigation stay where the first and second prongs of the *Wencke* . . . inquiry favor the receiver." *United States v. JHW Greentree Capital, L.P.*, 2014 WL 1669261, at *7 (D. Conn. Feb. 10, 2014) (citing *Acorn Tech.*, 429 F.3d at 444). "The movant bears the burden of proving that the balance of the factors weighs in favor of lifting the stay." *JHW Greentree*, 2014 WL 2608516, at *2.

In arguing that the first *Wencke* factor, the balance of interests, tips in its favor, Hussy contends that disruption to the receivership would be minimal because Scouler negotiated a substantial loan from KeyBank, providing the receivership with ample funds to pay the judgment. Additionally, Hussy argues that litigation has largely been completed: all that is left is enforcing the judgment and warrant of eviction. For its own hardship, by contrast, Hussy argues that it suffers harm both from not recovering the money Monolith owes it and from being unable to evict Monolith, lease its properties to a new solar company, and collect rent from that new arrangement.

KeyBank, Scouler, and non-party Hancock Whitney Equipment Finance and Leasing, LLC ("HWEFL") each advance their own reasons why they believe Hussy's arguments are misplaced. First, plaintiff insists that although it is true that it provided a loan to Monolith, in exchange for that loan plaintiff received a priority security interest in all of Monolith's previously unencumbered property. By extension, plaintiff argues Hussy cannot recover

without infringing plaintiff's superior interest. Additionally, KeyBank suggests that the default judgment may be void or voidable, because it was not indexed until January 9, 2020.

Second, Scouler argues that Hussy has failed to point to any unique interest compelling lifting the stay for it alone while the stay remains for every other would-be plaintiff. After all, Monolith owes a lot of money to a lot of lessors, and if Hussy's domino falls first there would be little reason for the other lessors not to seek the same relief. Moreover, the receiver opposes Hussy's argument that it is being deprived of present rent payments by being prevented from evicting Monolith because the receiver already offered to resume rent payments without undermining Hussy's ability to collect the rent owed, but Hussy declined. Dkt. 138-1, ¶ 4.

Third and finally, HWEFL joins the arguments advanced against Hussy's motion, but also argues that lifting the stay would be to the detriment of every other creditor of the receivership property and only to Hussy's gain. In particular, HWEFL has a security interest in the PV system on Hussy's property, and the only way that secured loan gets paid back is if the receivership property uses the PV system to generate electricity. Moreover, HWEFL goes where KeyBank dared not, and argues that Hussy's default judgment is void or voidable, because Hussy obtained the default judgment on December 24, 2019, four days after the receivership stay took effect on December 20.

Upon considering the positions of the assembled interested parties, the balance of interests does not tip in Hussy's favor. Every other lessor holding a PV system on its property would be situated almost identically to Hussy, save only that Hussy has obtained a default judgment and, perhaps, a warrant of eviction. However, even that distinction is a nebulous one, because as KeyBank suggests—and HWEFL outright argues—the default judgment was only granted after the Court imposed the present stay on December 20, 2019.

With only the possible yet uncertain distinction of a potentially defective judgment separating Hussy from every other creditor, it cannot be that the balance of interests is in its favor when lifting the stay as it requests would invite every other creditor to seek their own exceptions. After all, if the mere possibility of a default judgment is all that it takes to lift the receivership stay, it would not be hard to imagine that other creditors might attempt to find their own rationalizations. Is an entry of default sufficient? It would be hard to deny that point when that is all that Hussy can definitively show. If an entry of default is enough, and an entry of default is mostly a ministerial function granted as a matter of course in the proper conditions, what about a served complaint that Monolith did not timely answer? In a few short steps that have little to do with the merit or justice of a creditor's claim, broad swaths of creditors would suddenly have plausible grounds to attack the stay as it applies to them as well.

Not only that, but creditors would be actively incentivized to attack the stay. After all, every enforced judgment would reduce the receivership property's available resources directly through the damages those judgments would entail. At the same time, every eviction of PV systems from lessors' roofs would diminish Monolith's capacity to replenish those resources by reducing the number of available PV systems to produce saleable energy.

The result of such destruction of the receivership's present and future assets would be a charge en masse of creditors seeking a lift in their stays before the receivership's resource pool dries up without so much as a trickle of future income left behind for those too slow in acting to redress their own rights. Moreover, as KeyBank's argument suggests, many of Monolith's assets are encumbered by security interests, which must be appropriately and orderly repaid, rather than being handled in a first-come, first-served rush.

Furthermore, the questionable validity of Hussy's default judgment also undercuts Hussy's arguments that Scouler would not need to divert much in the way of time and resources opposing its claim. At the least, the potential voidability of the default judgment opens an avenue for the receiver to attack it. Should he do so successfully, Hussy would be no better positioned to litigate its claims than any other creditor. But even should he fail, it would cost substantial time and resources for him to make the challenge in the first place.

The final interest that Hussy advances, its inability to lease its property to other solar companies, fails for three reasons. First, once again many other lessors are in Hussy's exact position and thus also cannot find new tenants to produce solar power on their available property. Therefore, crediting this argument as a basis to challenge the stay would invite similar challenges from every other lessor.

Second, Scouler offered to resume rent payments beginning in April, which would have provided Hussy rent money without the hassle of finding and negotiating a new lease with a new solar company and without disrupting the receivership. Dkt. 138-1, ¶ 4. Hussy can hardly claim their own free choice as a hardship.

Third and finally, the receivership needs the money generated from those PV systems to repay the debts it owes to its creditors. Those other creditors have, for the most part, patiently waited out the receivership process and have not sought to place their own interests over every other creditor's. Denying them the receivership's ability to finally generate the profits needed to pay them back so that Hussy could be uniquely advantaged would be an unjust result contrary to the receivership's purpose. Accordingly, the first *Wencke* factor heavily favors that the stay remain.

As for the second factor, Hussy correctly notes that the receivership is no longer in its infancy, having been in existence for seven months. However, although Scouler has perhaps

started to get his feet under him, nevertheless courts have found periods of time exceeding a year to still be a short enough lifespan of a receivership to counsel against lifting the stay. *See SEC v. Stinson*, 2012 WL 1994770, at *3 (E.D. Pa. June 4, 2012) (noting that even twenty-one months is a short period of time in receivership context and collecting cases). Accordingly, the second *Wencke* factor also favors maintaining the status quo.

Hussy's showing on the third factor is stronger. As discussed at length above, the health of their default judgment may be suspect, but nevertheless none of the opposed parties have advanced any defense to the merits of Hussy's underlying claim. However, KeyBank, Scouler, and HWEFL's strong showing on the first two *Wencke* factors overpowers Hussy's more moderate showing on the third. *See, e.g.*, *JHW Greentree*, 2014 WL 1669261, at *7 (ruling that opponent to lifting stay's strong showing on first two *Wencke* factors overcame proponent's strong showing on third). Thus, the *Wencke* factors cut against Hussy, and its motion must be denied.

Hussy's motion presents only the latest entry in serial motion practice in this case, incurring substantial expense in legal fees and frequent attention from the Court. In light of this constant distraction, the last thing this case needs is to invite more parties to challenge the ongoing stay in proceedings. The receivership would thus be far better served being left to its own devices while Hussy joins the dozens of other creditors patiently awaiting the outcome of the receivership. Hussy's motion to lift the stay must therefore be denied.

Therefore, it is

ORDERED that

Hussy 140 LLC's motion for a partial lift in the stay of proceedings is DENIED.

IT IS SO ORDERED.

Dated: July 28, 2020
 Utica, New York.

David N. Hurd
U.S. District Judge