```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------

KEYBANK NATIONAL ASSOCIATION,

                        Plaintiff, and

CAPITAL COMMUNICATIONS FEDERAL
CREDIT UNION,

                        Intervenor,
           -v-                                      1:19-CV-1562

MONOLITH SOLAR ASSOCIATES LLC, et al.,
                        Defendants.

-------------------------------------
```

| APPEARANCES: | OF COUNSEL: |
|---|---|
| THOMPSON, HINE LAW FIRM-NY<br>Attorneys for Plaintiff<br>335 Madison Avenue 12th Floor<br>New York, New York 10017 | BARRY M. KAZAN, ESQ. |
| THOMPSON, HINE LAW FIRM-CLEVELAND<br>Attorneys for Plaintiff<br>3900 Key Center<br>127 Public Square<br>Cleveland, Ohio 44114 | CURTIS LEE TUGGLE, ESQ. |
| THOMPSON HINE LLP<br>Attorneys for Plaintiff<br>Austin Landing I<br>10050 Innovation Drive Suite 400<br>Miamisburg, Ohio 45342 | JONATHAN S. HAWKINS, ESQ. |
| LIPPES MATHIAS WEXLER & FRIEDMAN LLP<br>Attorneys for Intervenor<br>54 State Street Suite 1001<br>Albany, New York 12207 | JOHN D. RODGERS, ESQ. |
| THE WAGONER FIRM PLLC<br>Attorneys for Defendant Steven A. Erby<br>150 State Street, Suite 504<br>Albany, New York 12207 | MATTHEW D. WAGONER, ESQ. |

| | |
|---|---|
| NOLAN HELLER KAUFFMAN LLP<br>Attorneys for Receiver, Daniel Scouler<br>80 State Street, 11th Floor<br>Albany, New York 12207 | JUSTIN A. HELLER, ESQ.<br>FRANCIS J. BRENNAN, ESQ.<br>JOHN V. HARTZELL, ESQ. |
| THE ALTMAN LAW FIRM<br>Attorneys for Gary Hickok<br>6 Walker Way<br>Albany, New York 12205 | FREDERICK M. ALTMAN, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

### I.  INTRODUCTION AND BACKGROUND

On December 18, 2019, plaintiff KeyBank National Association ("plaintiff") filed this foreclosure action against secured loans owed to it by defendants. Those defendants consisted of solar energy producer Monolith Solar Associates LLC ("Monolith") and several other power companies with common ownership, as well as the power companies' owners. Plaintiff alleges that defendants have breached each of those agreements and are therefore liable in the amount of $6.1 million. On December 20, 2019, Daniel Scouler ("Scouler" or "the receiver") was appointed as receiver under Federal Rule of Civil Procedure ("Rule") 66 to manage the power companies during the pendency of the foreclosure action ("Order Appointing Receiver").

On June 15, 2020, Scouler moved for an order to show cause why Gary Hickok ("Hickok") should not be held in civil contempt of the Court's order appointing him as receiver. Dkt. 124. Hickok had leased space on the roof of his business, Gary's Garage, at 8A Apollo Drive, Albany, New York 12205, to Monolith for the latter to install a solar panel. Dkt. 143, p. 2.[1] But predictably, given the procedural posture of this case, Monolith had fallen behind on its lease payments. *Id.* In retaliation for Monolith's failure to pay, Hickok denied the

---
[1] Pagination corresponds with CM/ECF.

2

receiver access to the solar panel on his property, despite the Order Appointing Receiver containing language prohibiting any person from "doing any act or thing whatsoever" to disrupt the receiver's management of the receivership property. *Id.* at 2-3. Hickok never responded to that order, and as a result was held in civil contempt on July 22, 2020 ("the July 22 order"). *Id.* at 8-9.

As part of Hickok's contempt sanction, Scouler was permitted to apply for Hickok to pay the attorneys' fees he accumulated prosecuting that sanction no later than Wednesday, August 5, 2020. Dkt. 143, p. 9. Scouler has done so, requesting fees in the amount of $4,752.00 and costs in the amount of $568.98. Dkt. 155, ¶ 5. In total, his papers set $5,320.98 as the price to secure the contempt sanction against Hickok. *Id.*

On August 17, 2020, Hickok at last appeared through counsel. Dkt. 164. Given the gravity of his situation, Hickok promptly moved to vacate and purge the Court's contempt order on August 21, 2020. Dkt. 170. That motion and the receiver's fee request having been fully briefed, they will now be decided on the parties' submissions without oral argument.

## II. DISCUSSION

### A. Hickok's Motion to Vacate the Contempt Order.

A district court reviews a motion to vacate a contempt order under Federal Rule of Civil Procedure ("Rule") 60, the rule that contemplates relief from a final judgment. *See New York City Dist. Council of Carpenters Pension Fund v. G&M Drywall Sys. Inc.*, 2010 WL 2291490, at *7-8 (S.D.N.Y. June 1, 2010) (considering motion for relief from contempt order using Rule 60). Rule 60(b)(1) allows the district court to relieve a party "from a final judgment or order for . . . mistake, inadvertence, surprise, or excusable neglect[.]" *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012). That decision is within the "sound discretion" of the district court. *Id.*

But as is often the case in matters of judicial discretion, there are nevertheless guideposts that courts must consider in deciding Rule 60(b) motions.  In particular, the Supreme Court charges lower courts to weigh four factors in determining whether a movant's neglect was excusable:  (1) the danger of prejudice to the non-moving party; (2) the length of the delay caused by the neglect and its potential impact on judicial proceedings; (3) the reason for the delay and whether it was within the movant's "reasonable control"; and (4) whether the movant acted in good faith.[2]  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  In assessing whether neglect is excusable, it is worth noting that "clients must be held accountable for the acts and omissions of their attorneys." *Id.* at 396.

In support of his motion, Hickok affirmed that his failure to comply with the Court's order was born from mistake, inadvertence, and confusion, rather than any ill will.  Dkt. 170-1 ("Hickok Aff."), ¶ 21.  In so doing, Hickock tells a tale that is likely all too familiar to the countless creditors waiting outside Monolith's door.  He was promised a $45,000 signing bonus in exchange for allowing Monolith to install a solar panel on his property, in addition to annual payments of $4,500.00 subject to a 1.75% yearly increase.  *Id.* ¶ 9.  But Monolith never completely paid even the signing bonus, and instead strung Hickok along with promises that he would get the payment he was due if he would just hold on a little longer.  *Id.* ¶¶ 10-12.

---

[2] Neither test the parties advance is appropriate in this case. Hickok argues that the July 22 order is an interlocutory order or partial judgment, and thus not subject to Rule 60's analysis. However, a contempt order is a final order and thus must be evaluated through Rule 60's lens.  *See New York City Dist. Council of Carpenters*, 2010 WL 2291490, at *8.  Similarly, the receiver's test is one for relief from a default judgment, not for any other form of final order, such as the contempt sanctions at issue today.  *See Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) (presenting three criteria to determine whether to vacate a default judgment).  Although Hickok's failure to respond to the order to show cause may be similar to a default, it does not strictly qualify as one.  Accordingly, the Court will turn to the *Pioneer* factors.  507 U.S. at 395

4

Perhaps understandably, Hickok claims he grew frustrated and his relationship with Monolith grew combative. Hickok Aff. ¶ 14. In the beginning of this year, Hickok points to four substantial mishaps that he believes set him up for disaster. First, he sold Gary's Garage and leased its properties to purchaser. *Id.* ¶ 15. Second, Hickok's growing distrust of Monolith led him to be confused and wary as to who he was dealing with when Scouler assumed control of Monolith's business. *Id.* ¶ 14. Third, Hickok claims he was confused because Gary's Garage was an improper signatory of the lease with Monolith, because G&F Property Management, LLC—of which Hickok is a principal—owns the premises of Gary's Garage and should properly have been the signatory. *Id.* ¶¶ 6-8.

Fourth and finally, as with most aspects of life at present, Hickok argues that the COVID-19 pandemic provided an obstacle to his obedience of the Court's orders because it trapped him in Florida during much of the contempt proceedings. Hickok Aff. ¶ 13. Crucially, Hickok notes—and Scouler agrees—that he complied with the Order Appointing Receiver before the August 21, 2020 deadline and has reopened Gary's Garage to the receiver to inspect and repair the solar panel. *Id.* ¶ 21; Dkt. 171. Accordingly, it must be noted at the outset that Hickok is not subject to the daily coercive fine allowed by the July 22 order. Dkt. 143, p. 9.

Yet Scouler is unmoved by Hickok's narrative. First, he points out that Hickok's newly provided point of contact to ensure that the Order is complied with is the same email address to which the receiver sent notice of the Order Appointing Receiver and its stay on April 3, 2020. *Compare* Dkt. 173 ("Heller Aff."), ¶ 2, *with* Dkt. 168. Similarly, the receiver emphasizes that he had spoken to—and been rebuffed by—Patrick Hickok, Hickok's son and the designated contact person for ensuring continued compliance with the Order Appointing Receiver. Heller Aff. ¶ 8; Dkt. 168.

5

Second, he reiterates that USPS tracking services confirmed that Hickok received the May 12, 2020 letter further explaining the effect of the Order Appointing Receiver. Heller Aff. ¶ 3. Third, the receiver notes that Hickok was personally served at his residence in New York on June 23, 2020, undercutting the difficulties the pandemic caused him in handling the contempt order. *Id.* ¶ 7. Fourth and finally, the receiver spoke to Hickok's attorney on June 26, 2020, nearly two weeks before Hickok's deadline to respond to the order to show cause, but Hickok and his attorney still failed to take any steps to remedy the conduct that exposed him to potential sanctions. *Id.* ¶ 9.

All of this is to say that there are arguments for and against whether Hickok's neglect was excusable. However, despite the showing Hickok has made, the contempt order must remain. First and foremost, as Scouler correctly notes, he and every Monolith creditor other than Hickok would face substantial prejudice if the contempt order were vacated. *Pioneer*, 507 U.S. at 395. The Court is not unsympathetic to Hickok's frustration at Monolith's failures to honor its promises to him, but every other creditor sings much the same song. Hickok Aff. ¶¶ 10-12. But where Hickok took his frustration out against the receiver—whose job it was to maximize Monolith's value for the good of all creditors, Hickok included—the remaining creditors obeyed the Court's Order Appointing Receiver and allowed the receiver to go about his business.

To force the receivership fund to bear the cost of ensuring that Hickok complied with the same order that every other creditor complied with as a matter of course would prejudice Scouler to be sure, but by the very nature of the receivership it would also prejudice every other creditor. The receivership fund is intended to be distributed to the creditors to recoup them from the very losses Hickok complains of, and it would be profoundly unfair for Hickok to drain those funds from the communal pool.

6

Although it is in Hickok's favor that his delay in making his Rule 60(b) motion was of less than one month and thus did not dramatically alter the course of this litigation, that does not change the fact that the delay was entirely in Hickok's control. *Pioneer*, 507 U.S. at 395. After all, because Hickok's attorney was aware of the order to show cause in advance of his deadline to respond, Hickok could have saved everyone the trouble of wading into the realm of sanctions by simply complying with the Order Appointing Receiver and agreeing to allow Scouler access to the solar panel. Heller Aff. ¶ 9; *see Pioneer*, 507 U.S. at 396 (noting that negligence attributable to attorney is attributable to client).

As to the good faith determination, as noted above Hickok has raised some legitimate difficulties in complying with the order to show cause, but not enough to completely absolve him of the delays and difficulties he has created by not obeying the Court's orders more swiftly. Accordingly, although it would be hard to say that he acted in bad faith, he certainly has not demonstrated active good faith until he was faced with the impending coercive fine. Thus, Hickok has only demonstrated one of the *Pioneer* factors that cut in his favor, and the first factor of prejudice cuts against him strongly. Accordingly, the Court declines to use its discretion to relieve him from the contempt order at this juncture. His motion must therefore be denied.[3]

For all that, the Court acknowledges that Monolith's dilapidated credibility played a substantial role in Hickok's distrust of and frustration with the receivership. Accordingly, the denial of his motion to vacate the contempt order must be without prejudice. Once he has paid the receivership's attorney's fees accumulated in obtaining the contempt order needed

---

[3] To the extent that Hickok requests the party in the caption to be changed to G&F Property Management, LLC, that request must also be denied. First, Hickok is not even in the caption of this case, because he is not a party. Second, if the request is aimed at placing the contempt citation on G&F Property Management, LLC, as opposed to on him as an individual, the order to show cause specifically identified Hickok as the one who needed to demonstrate why he should not be placed in contempt of the Order Appointing Receiver. Dkt. 143, p. 9. He failed to do so, and thus he is a contemnor regardless of whether he should not have been responsible for the lease, because he did not comply with the order to show cause.

7

to compel his compliance with the Order Appointing Receiver and has paid for any damages his contempt caused to the solar panel, he may renew that motion and the Court will consider lifting his contempt citation.

### B. The Receiver's Fee Requests.

Scouler has requested under Rule 66 to pay his attorneys, Nolan Heller Kauffman LLP ("NHK"), $16,960.00 in fees and $568.98 in expenses, totaling $17,528.98, for their recent work.[4]  Dkt. 148 ¶¶ 8-10.  Finally, he has requested to again reimburse his special labor counsel, Goldberger and Kremer ("GK") in the amount of $910.00 for additional expenses incurred between April 1, 2020 and June 30, 2020.  Dkt. 151, ¶ 7.

To satisfy Rule 66, the receiver must provide:  (1) a detailed statement of the services his attorneys rendered and the amount they claimed; (2) a statement of any partial allowance previously made to his attorneys; and (3) an affidavit disavowing any agreement or understanding as to any division of fees between the receiver and his attorneys.  *KeyBank Nat'l Assoc. v. Monolith Solar Assocs. LLC*, 2020 WL 1157650, at *7 (N.D.N.Y. Mar. 10, 2020) (citing Local Rule of the Northern District of New York 54.4).

Scouler has again provided all of the materials necessary to satisfy Rule 66. Accordingly, the inquiry turns to whether the fees he requests are themselves reasonable by determining whether the rate charged and the amount of work performed are both reasonable.  *KeyBank*, 2020 WL 1157650, at *6.  The reasonable fee ranges are: (1) between $250 and $350 for partners; (2) between $165 and $200 for associates; and (3) between $80 and $90 for paralegals.  *Id.*  That fee range is then multiplied by the number of hours the attorney billed, less any hours expended that the Court finds unreasonable

---

[4] The current fee request for NHK includes the $5,320.98 accrued in prosecuting the contempt action.  *Compare* Dkt. 155, *with* Dkt. 148.  The receiver would thus pay NHK out of the receivership for the fees associated with Hickok and then the receivership property will be reimbursed through Hickok for the expense.

based on an extended list of factors, which are discussed and identified in this Court's March 10, 2020 decision and need not be repeated here.  *Id.* at *6-7.

As for the fees generated by NHK, Scouler requests to pay:  $280.00 for senior partners; $265.00 for other partners; $200.00 for associates; and $70 for paralegals. Dkt. 148, ¶ 4.  Each of those rates has already been determined to be reasonable, and there is no reason to disturb that ruling now.  Dkt. 117, pp. 3-4.  Additionally, the receiver has once again provided exhaustive, contemporaneous records detailing how his attorneys accumulated those costs and fees.  Dkt. 148, pp. 6-10; Dkt. 155, pp. 5-14.

Each time entry refers to a discrete task, without any apparent block billing or other improper billing practices that make assessing the amount of work done more difficult.  *See Stair v. Calhoun*, 722 F. Supp. 2d 258, 271 (E.D.N.Y. 2010) (noting that billing for blocks of time during which multiple discrete tasks are completed is discouraged).  Thus, the 72.60 hours that NHK attorneys and paralegals accumulated in this matter—including the 21.8 hours expended in resolving the Hickok contempt order—are reasonable, especially in light of the rarity of civil contempt motions and the urgency that motion presented, not to mention the ongoing complexity and difficulty of this case.  Dkt. 148, p. 10; Dkt. 155, ¶ 5.

Furthermore, although $568.98 in costs is a bit of an upward departure compared to Scouler's other fee requests, that is not unexpected given the numerous mailings and services of process that reaching Hickok has required.  Dkt. 148, ¶ 9; Dkt. 155, ¶ 5. Accordingly, the receiver's fee request for NHK must be granted as requested.  The receiver may thus pay NHK $17,528.98 out of the receivership's funds.  In turn, Hickok must reimburse the receiver for the $5,320.98 in legal fees and costs incurred in prosecuting the contempt action against him.[5]

---

[5] Hickok also asks for relief from the amount of attorneys' fees he will be required to pay for his contumacy.  But in so doing, he never challenges the validity of the receiver's fee request, and instead only seeks relief based on

The same analysis applies to Scouler's request to pay GK fees in the amount of $910.00.  The only attorneys from GK who have billed hours in connection to this case are its named partners, who each have roughly thirty years of experience in labor law.  Dkt. 151, ¶¶ 4-5.  Each partner has requested fees in the amount of $280.00 per hour, which the Court has also already found to be appropriate.  Dkt. 117, pp. 4-5; DKt. 151, ¶ 6.  That ruling will also stand.

The problem, however, is that Scouler has failed to provide the Court with itemized, contemporaneous records detailing how GK accumulated the 3.25 hours for which it requests payment.  Failure to include those records is typically fatal to a fee application.  *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) ("[A]bsent unusual circumstances[,] attorneys are required to submit contemporaneous [time] records with their fee applications.").  Therefore, the receiver's request to reimburse GK from the receivership property must be denied.

However, because the affidavit accompanying the fee request mentions such records but they are not attached, presumably this was merely an oversight in filing, and thus that denial must be without prejudice.  The receiver may renew his motion to pay GK and attach contemporaneous records detailing the work they performed no later than Wednesday, September 30.

### III. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

---

equitable principles because of his mistake in failing to comply with the order to show cause.  However, as discussed above, his being excused from rectifying the consequences of his conduct would not be in the best interests of justice, and thus that request must be denied.

1. Gary Hickok's motion to vacate the contempt order is DENIED WITHOUT PREJUDICE;
2. Receiver Daniel Scouler's request that Gary Hickok pay the receivership's attorneys' fees accumulated in prosecuting the contempt order against him is GRANTED;
3. Gary Hickok is ordered to pay receiver Daniel Scouler $5,320.98 for the attorney's fees and costs accumulated in prosecuting the civil contempt action against him on or before September 30, 2020;
4. Receiver Daniel Scouler's seventh interim application for payment of attorney's fees and costs is GRANTED;
5. Receiver Daniel Scouler may pay Nolan Heller Kauffman LLP $17,528.98 out of the receivership funds;
6. Receiver Daniel Scouler's second application to pay attorney's fees to Goldberger and Kremer is DENIED WITHOUT PREJUDICE; and
7. Receiver Daniel Scouler may re-apply to pay Goldberger and Kremer's attorney's fees no later than Wednesday, September 30, 2020.

IT IS SO ORDERED.

Dated: September 16, 2020
Utica, New York.

David N. Hurd
U.S. District Judge