UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
KEYBANK NATIONAL ASSOCIATION,

                      Plaintiff, and

CAPITAL COMMUNICATIONS
FEDERAL CREDIT UNION,

                      Intervenor,
        -v-                         1:19-CV-1562

MONOLITH SOLAR ASSOCIATES
LLC, et al.,
                      Defendants.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                  OF COUNSEL:

THOMPSON, HINE LAW FIRM-NY     BARRY M. KAZAN, ESQ.
Attorneys for Plaintiff
335 Madison Avenue 12th Floor
New York, New York 10017

THOMPSON, HINE LAW FIRM        CURTIS LEE TUGGLE, ESQ.
Attorneys for Plaintiff
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

THOMPSON HINE LLP            JONATHAN S. HAWKINS, ESQ.
Attorneys for Plaintiff
Austin Landing I
10050 Innovation Drive Suite 400
Miamisburg, Ohio 45342

LIPPES MATHIAS WEXLER &          JOHN D. RODGERS, ESQ.
   FRIEDMAN LLP
Attorneys for Intervenor
54 State Street Suite 1001
Albany, New York 12207


THE WAGONER FIRM PLLC            MATTHEW D. WAGONER, ESQ.
Attorneys for Defendant Steven A. Erby
150 State Street, Suite 504
Albany, New York 12207


NOLAN HELLER KAUFFMAN LLP        JUSTIN A. HELLER, ESQ.
Attorneys for Receiver, Daniel Scouler   FRANCIS J. BRENNAN, ESQ.
80 State Street, 11th Floor          JOHN V. HARTZELL, ESQ.
Albany, New York 12207


THE ALTMAN LAW FIRM              FREDERICK M. ALTMAN, ESQ.
Attorneys for Gary Hickok
6 Walker Way
Albany, New York 12205
DAVID N. HURD
United States District Judge


## MEMORANDUM-DECISION and ORDER

On December 18, 2019, plaintiff KeyBank National Association

("plaintiff") filed a foreclosure action against secured loans owed to it by

defendants, a group of solar power companies spearheaded by Monolith Solar

Associates LLC ("Monolith").  It quickly became clear that the power

companies were in no condition to repay the approximately $6.1 million in

damages plaintiff claimed they owed it for breached contracts.  Thus, Daniel

Scouler ("Scouler" or "the receiver") was appointed as receiver under Federal

Rule of Civil Procedure ("Rule") 66 to preserve the values of the power companies during this case's pendency.

On July 22, 2020, this Court held nonparty Gary Hickok ("Hickok") in civil contempt of the Court's order appointing Scouler as receiver. *KeyBank Nat'l Assoc. v. Monolith Solar Assocs. LLC* ("*KeyBank I*"), 2020 WL 4201489 (N.D.N.Y. July 22, 2020). The Memorandum-Decision and Order accompanying that order fleshed out much of the factual background for this issue, so the Court will only give the bare bones of the story now. *Id.* at *1.

In short, Hickok had leased space on the roof of his business to Monolith to house a solar panel, but Monolith had fallen behind on its payments. *Id.* Specifically, Monolith had failed to pay Hickok's $45,000.00 signing bonus to house the solar panel, as well as annual lease payments of $4,500.00 that were set to increase by 1.75% each year. Dkt. 212-4 ("Hickok Aff."), ¶ 9. The unraveling of the parties' agreed payment schedules similarly unraveled their relationship. *KeyBank I*, 2020 WL 4201489, at *1.

As a result, Hickok retained a pronounced skepticism of Monolith's intentions when Scouler took control over the receivership. *KeyBank Nat'l Assoc. v. Monolith Solar Assocs. LLC* ("*KeyBank II*"), 2020 WL 5549090, at *2 (N.D.N.Y. Sept. 16, 2020). As a consequence, he refused to permit the receiver to access his property or the solar panel on its roof. *KeyBank I*, 2020 WL 4201489, at *1.

3

Worse yet, Hickok disconnected the solar panel from Monolith's grid,
denying the receivership property the electricity it could have produced.
*KeyBank I*, 2020 WL 4201489, at *1.  Of course, Hickok's course of action was
difficult to reconcile with the Court's Order Appointing Receiver, which
prohibited any person from "doing any act or thing whatsoever" to disrupt the
receiver's ability to operate the receivership.  *Id.*

But Hickok points to three ongoing conditions during the early
receivership that he believes led to this impasse.  First, Hickok points out
that he was trapped in Florida due to the COVID-19 pandemic during many
of Scouler's efforts to communicate with him.  Hickok Aff. p. 6.  Second, he
notes that he sold his business, Gary's Garage, in January of 2020.  *Id.*  Third
and finally, Hickok alleges that Gary's Garage was never the proper name of
the party that entered into the lease with Monolith, and apparently this
compounded the communicative friction between himself and the receiver.
Hickok Aff. pp. 5-6.

After extensive efforts to apprise Hickok of the potential consequences of
his obstruction of Scouler's duty, the receiver moved for an order to show
cause why Hickok should not be held in contempt.  Dkt. 124.  Hickok never
responded to that order, culminating in his being held in contempt on July
22, 2020.  *KeyBank I*, 2020 WL 4201489, at *2-3.  On August 21, 2020, Hickok

moved for relief from the contempt, claiming that he never intended to disrespect the Court's authority. *KeyBank II*, 2020 WL 5549090, at *1-4.

On September 16, 2020, Hickok's motion was denied because the Court found that the requisite analysis to lift a contempt sanction through a motion under Federal Rule of Civil Procedure ("Rule") 60(b) did not favor him. *KeyBank II*, 2020 WL 5549090, at *1-4.  In particular, the Court could not abide Scouler—and by extension the receivership as a whole—being forced to pay the attorneys' fees accrued in prosecuting the contempt action. *Id.*

Even so, the Court was not without sympathy for the uniquely frustrating position into which Monolith thrust Hickok. *KeyBank II*, 2020 WL 5549090, at *4.  As a result, the Court held that "[o]nce [Hickok] has paid the receivership's attorney's fees accumulated in obtaining the contempt order needed to compel his compliance . . . and has paid for any damages his contempt caused to the solar panel [on his property], he may renew" his motion to lift the contempt sanctions. *Id.*  Hickok paid those attorneys' fees in the amount of $5,320.98.  Dkt. 212-3 ("Altman Aff."), ¶ 3.

Scouler requested judgment on the contempt order against Hickok on November 23, 2020.  Dkt. 198.  On December 21, 2020, Hickok countered with a second motion to purge the Court's July 22, 2020 contempt order. Dkt. 212.  Scouler opposed the motion, and the Court will now consider both motions on the basis of the parties' submissions without oral argument.

5

As alluded to above, a motion to vacate a contempt order comes under Rule 60(b).  Rule 60(b)(1) allows the district court to relieve a party "from a final judgment [or] order for . . . mistake, inadvertence, surprise, or excusable neglect[.]"  *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).  That power rests within the "sound discretion" of the district court.  *Id.*

In exercising that discretion, courts are charged to consider: (1) the danger of prejudice to the non-moving party; (2) the length of the delay caused by the neglect and its potential impact on judicial proceedings; (3) the reason for the delay and whether it was within the movant's "reasonable control"; and (4) whether the movant acted in good faith.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

The Court's prior decision denying Hickok's motion to vacate the contempt order was primarily concerned with the prejudice prong of the *Pioneer* analysis.  *KeyBank II*, 2020 WL 5549090, at *3 (citing *Pioneer*, 507 U.S. at 395-96).  Those concerns were well-founded.  Saddling Scouler with the $5,320.98 in legal fees incurred by Hickok's obstinance in failing to adhere to the receiver's commands would have allowed Hickok to escape from his contempt with few consequences, if any.  Yet now that Hickok has paid those attorney's fees, the calculus is changed.

To be sure, there remains at least some prejudice to Scouler and Monolith's debtors for having to bear the costs of the $15,711 in lost profits

that accumulated while the receiver could not access the solar panel on Hickok's property. *See KeyBank I*, 2020 WL 4201489, at \*4 (assessing Hickok $15,711 in compensatory fines for receivership's lost profits). But there is a qualitative difference between requiring that the receivership bear the cost of legal fees Hickok caused through his failure to respect this Court's authority and saddling the receivership with lost profits from one of its many solar panels.

The former is beyond the pale. It would have let Hickok almost completely off the hook despite a prolonged gesture of contempt. At the same time, not requiring Hickok to pay Scouler's attorney's fees would have been tantamount to punishing the receiver for enforcing a court order.

However, whether Hickok must compensate the receivership property for its lost profits is not quite so clear a question. Hickok has acknowledged that paying the full $15,711.00 in compensatory damages would be "somewhat of a hardship" to him, but he still expresses a willingness to abide by the Court's order. Dkt. 237. Although the receivership's financial security is far from certain, the Court is nevertheless confident that one lessor's depriving it of revenue, even for several months, would not cause overwhelming prejudice. After all, $15,711 is a drop in the ocean compared to the $6.1 million—at least—defendants owe. Accordingly, the first element of prejudice to the

non-movant does not cut nearly so strongly against Hickok at present as it did when he made his prior motion. *Pioneer*, 507 U.S. at 395.

Meanwhile, Hickok's delay in making his motion and his control over that delay have not appreciably changed since the September 16, 2020 Memorandum-Decision and Order. *KeyBank II*, 2020 WL 5549090, at *3. Once again, it is a point in Hickok's favor that he acted promptly in moving for relief from the contempt order. But the slight delay between the July 22, 2020 decision and his first motion to vacate the contempt order—not to mention the larger delay between Scouler informing Hickok of his obligations under the receivership and his compliance with those obligations—was entirely of Hickok's doing. *Pioneer*, 507 U.S. at 395. Thus, to whatever extent the second and third factors of the *Pioneer* analysis favor Hickok, they do so only slightly. *Id.*

As for the fourth and final *Pioneer* factor, the Court's analysis of Hickok's good faith looks much different from this vantage point than it did on his first motion. The Court gave Hickok's compliance with the Receivership Order a lukewarm assessment at best on his first bite at the apple. *KeyBank II*, 2020 WL 5549090, at *3. It takes much more than compliance with a court order upon penalty of fines to suggest good faith.

But Hickok's continued compliance with the receivership order and repeated willingness to adhere to its directives has spoken to his credit. Once

the Court denied his motion to vacate the contempt order, he promptly paid

the attorneys' fees required by the initial contempt sanctions.

Altman Aff. ¶ 3.  Although he has not paid the full compensatory fine, it was

suggested that he would not need to, so long as he paid Scouler's attorney's

fees and for any damages he caused to the solar panel on his property.[1]

*KeyBank II*, 2020 WL 5549090, at *4.  Regardless, he has expressed a

willingness to pay that fine, despite the hardship that would result.

Dkt. 237.

As a consequence, the Court is satisfied that Hickok has demonstrated

that he is approaching his obligations under the Receivership Order in good

faith.  The fourth *Pioneer* factor now tips strongly in his favor.  *Pioneer*, 507

U.S. at 395.

In total, Hickok has shown that he has acted in good faith and has timely

moved to vacate the contempt citation.  Against that showing, he is

nevertheless responsible for the minute delay in moving to lift the contempt

order and there would be at least some prejudice against Scouler and all

other potential plaintiffs if that citation were lifted.

Given the uneven shakeout of the four factors the Court must consider,

deciding whether to relieve Hickok from his contempt citation seems ripe for

---

[1] There is no indication that the solar panel was damaged in the course of Hickok's contumacy.

the Court's discretion.  *See Cunningham v. Weston*, 180 F. App'x 644, 647-48 (9th Cir. 2006) (summary order) (citing *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827 (1994); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 779-80 (9th Cir. 1983)) (noting that "it is within the [d]istrict [c]ourt's discretion to determine if [contemnor] adequately complied with the [contempt] injunction, and to purge any accrued sanctions based on that compliance").

Scouler would disagree.  He argues that a court's discretion to revoke a compensatory fine is circumscribed.  To the receiver's point, the Second Circuit has held that "[i]f [a] fine is compensatory in purpose, the district court has less discretion" than it would for a coercive fine.[2]  *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657-58 (2d Cir. 2004).

If that quotation were the whole of the Second Circuit's discussion in *Paramedics*, the Court's hands would be tied.  369 F.3d at 658.  But there is much more to the story.  *Paramedics* does not grapple with a court's discretion in all circumstances involving a compensatory fine, but instead

---

[2] The receiver quotes *U2 Home Ent., Inc. v. Wei Ping Yuan* for this proposition.  245 F. App'x 28, 30 (2d Cir. 2007) (summary order).  Because *U2* is a summary order devoid of precedential value, *Force v. Facebook, Inc.*, 934 F.3d 53, 66 n.21 (2d Cir. 2019), the Court will instead trace that proposition to its source in *Paramedics* in addressing whether binding precedent compels a particular outcome in this case, *compare* 369 F.3d at 658 (noting district court has less discretion in assessing compensatory contempt fine), *with U2*, 245 F. App'x at 30 (same).

notes a court's more limited ability to determine the amount of a compensatory fine as opposed to a coercive one. *Id.* In that context, Scouler's quoted language only introduces the following sentence explaining that a compensatory fine "should correspond at least to some degree with the amount of damages." *Id.*

As a result, *Paramedics* does not stand for a global restriction of a court's ability to assess compensatory fines, but instead for a protection of contemnors from coercive fines disguised in compensatory garb. *See* 369 F.3 at 657-58; *see also U2*, 245 F. App'x at 30 (remanding compensatory fine for discovery to allow court to accurately estimate proof of loss). It would be a strange result indeed to take a rule designed to ensure that contemnors are not punished under the guise of compensation and use that to hold a contemnor to a citation the Court believes could be vacated.

Because the Court is not considering how much of a fine to assess Hickok, but whether to maintain the underlying contempt citation as a whole, the result is left to the Court's discretion. *See Cunningham*, 180 F. App'x at 647-48. Upon review of the requisite *Pioneer* factors, 507 U.S. at 395, the Court is satisfied that Hickok will continue to abide by its orders, and his time of spurning its authority has come to an end.

In short, the good faith Hickok has shown after the contempt order was issued has indicated that there is no further need for the order in the first

11

place.  Hickok's contempt citation and its remaining imposed fines must therefore be vacated.[3]  *Cf., e.g.*, *In re Rosahn*, 553 F. Supp. 1043, 1045 (S.D.N.Y. 1983) (conditionally lifting civil contempt citation despite lack of compliance with full scope of contempt order).  However, the Court notes that any future contumacy by Hickok or any other individual in this case will be met with precious little compassion.

Therefore, it is

ORDERED that

1. Contemnor Gary Hickok's motion to vacate his contempt citation is GRANTED;

2. This Court's July 22, 2020 order is VACATED to the extent that it cites Gary Hickok for contempt;

3. All outstanding fines assessed in the July 22, 2020 order are rescinded; and

4. Receiver Daniel Scouler's motion for a judgment against contemnor Gary Hickok is DENIED AS MOOT;

IT IS SO ORDERED.

---

[3] Because the contempt order must be vacated, the receiver's request for a judgment against Hickok for contempt must be denied as moot.  Dkt. 198.  Similarly, Hickok's alternative remedy of substituting G&F Property Management LLC as the contemnor order is also moot.  Altman Aff., ¶ 6. That said, even if the Court were to reach a different result on Hickok's contempt citation, his ancillary request would still need to be denied for the same reasons explained in the September 16, 2020 Memorandum-Decision and Order.  *KeyBank II*, 2020 WL 5549090, at *3 n.3.

Dated:  March 3, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge