UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
KEYBANK NATIONAL ASSOCIATION,

               Plaintiff, and

CAPITAL COMMUNICATIONS
FEDERAL CREDIT UNION,

               Intervenor,
  -v-                                 1:19-CV-1562

MONOLITH SOLAR ASSOCIATES
LLC, et al.,
               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                         OF COUNSEL:

THOMPSON, HINE LAW FIRM      CURTIS LEE TUGGLE, ESQ.
Attorneys for Plaintiff
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

THOMPSON HINE LLP             JONATHAN S. HAWKINS, ESQ.
Attorneys for Plaintiff
Austin Landing I
10050 Innovation Drive Suite 400
Miamisburg, Ohio 45342

| | |
|---|---|
| LIPPES MATHIAS WEXLER & FRIEDMAN LLP<br>Attorneys for Intervenor<br>54 State Street Suite 1001<br>Albany, New York 12207 | JOHN D. RODGERS, ESQ.<br>JASON A. LITTLE, ESQ. |
| NOLAN HELLER KAUFFMAN LLP<br>Attorneys for Receiver, Daniel Scouler<br>80 State Street, 11th Floor<br>Albany, New York 12207 | JUSTIN A. HELLER, ESQ.<br>FRANCIS J. BRENNAN, ESQ.<br>JOHN V. HARTZELL, ESQ. |

STEVEN A. ERBY
Defendant *Pro Se*
6 Hallenbeck Hill
East Greenbush, New York 12144

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

Plaintiff KeyBank National Association ("KeyBank" or "plaintiff") brought this complaint on December 18, 2019. That complaint has since been amended to state a sprawling total of thirty-four counts, all basically alleging default on monetary obligations. The alleged defaulters were a host of solar power companies, with the flagship being Monolith Solar Associates, LLC ("Monolith" collectively the "solar companies"). At the solar companies' helm was defendant Steven Erby ("Erby"). Defendant Mark Fobare ("Fobare"

together with Erby the "individual defendants" and collectively with the solar companies "defendants") allegedly guaranteed defendants' loans.

At this Court's order, the solar companies were placed in receivership on December 20, 2019. Now, nearly two eventful years later, the receivership is in the process of winding down. To that end, KeyBank moved for summary judgment against the individual defendants on August 9, 2021. That motion, having been fully briefed, will now be decided on the submissions and without oral argument.

## II. **BACKGROUND**

In the leadup to December 2019, the solar companies were in the business of developing and operating solar projects throughout central New York.[1] Dkt. 317-2, Plaintiff's Statement of Material Facts ("PSMF"), ¶ 1. KeyBank financed those projects both through standard loans and through "the purchase and leaseback of completed solar projects[.]" *Id.* ¶ 2.

As far as standard loans are concerned, three of the solar companies executed four total notes in KeyBank's favor.[2] PSMF ¶ 3. The first of those notes was executed on June 30, 2015, and defendants owe $175,551.31 on

---

[1] The facts are taken from plaintiff's Statement of Material Facts and other record evidence. Because the individual defendants failed to respond to plaintiff's Statement of Material Facts as required by Local Rule of the Northern District of New York 56.1(b), the Court will deem those facts to be admitted where properly supported.

[2] Defendants Monolith, SAE Sun and Earth Energy Incorporated and Solar Management Group 2013, LLC were all parties to notes one, three, and four. PSMF ¶ 3. However, Monolith alone borrowed under the second note. *Id.*

3

that note with an interest rate of 7.8%.  *Id.*  The second note was executed on July 29, 2016, with defendants owing $930,081.37 at an interest rate of 5.15%.  *Id.*  The third note was executed on March 8, 2018, and defendants owe $3,606,917.02 at 4.75% above the prime interest rate.  *Id.*  The fourth and final note followed close behind on March 30, 2018, and defendants still owe $547,599.26 at 4.5% above the prime interest rate.  *Id.*  Each note provides that if the solar companies default, plaintiff is also entitled to recover collection expenses.  *Id.* ¶ 4.

Less traditionally, defendants also owe plaintiff money through the leasebacks.  Those leasebacks work like this: KeyBank's offshoot Key Equipment Finance ("KEF") would start by purchasing a solar power project.  PSMF ¶ 2.  KEF would then lease the project's equipment to Monolith, who would in turn sell power to "offtakers."  *Id.*  If all went according to plan, the money from the offtakers would be used to maintain and operate the solar projects while allowing the solar companies to pay KEF on their leases.  *Id.*  Monolith guaranteed each of the leases, upon which it now owes a total of $1,024,179.39.  *Id.* ¶¶ 5-6.

On March 8, 2018, to help secure the loan issued on the same day, the individual defendants—Erby and Robare—personally guaranteed "the punctual and full performance" of all the solar companies' obligations to

KeyBank. Dkt. 22-1, p. 171.[3] Those obligations include "every liability" the solar companies owed to plaintiff at the time of the guaranty and after it. *Id.* In the process, the individual defendants agreed that their own obligations under the guaranty would "be absolute and unconditional irrespective of any lack of validity or enforceability of any agreement, instrument or document evidencing the [o]bligations, or any other defense" available to them. *Id.* at 172.

Despite that guaranty, defendants defaulted on several of their obligations to KeyBank. PSMF ¶ 10. Plaintiff sent defendants notices of those defaults dated August 31, 2018, September 5, 2018, and October 3, 2018. *Id.*

KeyBank nevertheless entered into a forbearance agreement with the solar companies on November 9, 2018. PSMF ¶ 11. As part and parcel of that agreement, the individual defendants reaffirmed their guaranty of defendants' obligations. PSMF ¶ 12. When the forbearance agreement was amended on December 21, 2018, the individual defendants doubled down, reaffirming their guaranty for a second time. *Id.* ¶ 11.

Apparently, defendants nevertheless defaulted on the amended forbearance agreement by January 29, 2019. PSMF ¶ 13. That defendants

---

[3] Pagination Corresponds with CM/ECF.

defaulted on their obligated payments was particularly galling to KeyBank. *Id.* In response, plaintiff once again sent defendants a notice of default. *Id.*

Despite defendants' thus far spotty track record with making payments, KeyBank and defendants entered into a still further amended forbearance agreement on April 9, 2019. PSMF ¶ 14. By that agreement's terms, defendants acknowledged their defaults and agreed to sell off projects and appoint a "chief restructuring officer" to right the ship and prevent more defaults in the future. *Id.* For their part, the individual defendants reaffirmed their guaranty obligations once again through yet another reaffirmation agreement dated the same day. *Id.* ¶ 15; Dkt. 22-2, p. 280.

As part of the final reaffirmation agreement, the individual defendants "represent[ed] and warrant[ed] to KeyBank that they "ha[ve] no claim or offset against, or defense or counterclaim to, any obligation or liability" they owed to plaintiff. Dkt. 22-2, p. 282.

And yet, despite the obligatory weight of those agreements, defendants once again defaulted. PSMF ¶ 17. According to KeyBank, defendants failed to make timely payments, never hired a chief restructuring officer that met plaintiff's approval, and failed to provide requisite cash flow and other financial information to plaintiff. *Id.* As a result, the forbearance agreement was terminated. *Id.*

In the aftermath of those agreements, KeyBank claims that the individual defendants stand liable for defendants' total debts of $6,284,328.35, not including collection expenses and interest. PSMF ¶ 18. But that figure also does not include any successful mitigation of arrearages. *Id.*

On December 18, 2019, KeyBank filed a complaint against defendants in this district. Dkt. 1. On December 20, 2019, the Court appointed Daniel Scouler as receiver to oversee the solar companies and maximize their value. Dkt. 7. Under the Court's direction, the receiver has steered the solar companies through nearly two tumultuous years.

In all that time, defendant Fobare has never appeared to contest his liability. Dkt. 36. For his part, defendant Erby has strenuously argued that KeyBank strongarmed him into bad deals throughout their business relationship. *See, e.g.*, Dkt. 46, pp. 1-2. But he has never meaningfully argued that the agreements are not binding on him. *See id.*

On August 9, 2021, KeyBank moved for partial summary judgment on Counts: (IV) for $488,000 in collections expenses; (VII) for note collection expenses; (X) for $850,000 in collection expenses; (XXXI) for the individual defendants' alleged breach of a guaranty; and (XXXII) for collections expenses under the lease agreements against the individual defendants. Dkt. 317. Erby responded with an answer to the amended complaint on September 1,

7

2021.[4]  Dkt. 340.  On September 7, 2021, plaintiff replied to Erby's response. Dkt. 347.  This decision follows.

## III. LEGAL STANDARD

Summary judgment under Rule 56 is warranted if the parties' submissions show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing FED. R. CIV. P. 56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute of a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The movant bears the burden of pointing the court to the materials that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Additionally, a court considering a summary judgment motion "must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).  Even so, a non-movant's conclusory allegations without

---

[4] Fobare has never appeared in this case at all, let alone responded to plaintiff's summary judgment motion.

support from record evidence are insufficient: the non-movant must "put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). At bottom, summary judgment tasks the Court with assessing the assembled evidence and determining whether a reasonable factfinder could find in the nonmovant's favor. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

## IV. DISCUSSION

"In order to recover under the terms of [a] guarant[y], the obligee must establish a prima facie case by providing proof of[:] (1) the underlying obligation[;] (2) the guarant[y;] and (3) the failure by the guarantor to make payment in accordance with its terms"[5] *Consol. Rail Corp. v. Primary Indus. Corp.*, 901 F. Supp. 765, 768 (S.D.N.Y. 1995).

KeyBank has supported its motion for summary judgment with an amply supported statement of material facts. *See generally* PSMF, *passim*. Erby, understandably given his *pro se* status, has not. *See generally* Dkt. 340, *passim*. Given the special solicitude owed to *pro se* parties, the Court will nevertheless strive to read Erby's response in opposition as generously as

---

[5] As plaintiff correctly points out, the notes and guaranty involved in this case were primarily negotiated in New York, all defendants except for Fobare are New York residents, the solar companies operate out of New York state, and the notes and guarantees at issue specify that they are to be construed under New York law. Under the choice of law principles this Court is bound to follow, New York law applies to plaintiff's state law claims. *See, e.g.*, *Skull Valley Band of Goshute Indians v. U.S. Bank Nat'l Ass'n*, 2020 WL 7490113, at *3 (S.D.N.Y. Dec. 21, 2020) (noting that there is no federal law for "typical state-law contract claim[s]" and instead applying law contract specifically calls for).

possible. *See Tracy v. Freshwater*, 623 F.3d 90, 92 (2d Cir. 2010) (noting "special solicitude" owed to *pro se* litigants in reversing grant of summary judgment).

Even operating under that generous lens, though, no reasonable jury could credit Erby's (unsupported and unexplained) denials of defendants' "extensive debtor/creditor relationship" with KeyBank in light of plaintiff's documentary evidence to the contrary. *Compare* PSMF ¶ 2 (describing plaintiff's methods of financing defendants with citations to affidavits), *with* Dkt. 340 ¶ 1 (Erby denying debtor/creditor relationship with plaintiff). Not only has plaintiff provided affidavits in support of that proposition, but Erby himself had previously acknowledged that defendants borrowed from plaintiff. *See* Dkt. 14, p. 2 (noting that defendants had relationship with plaintiff to provide financing much like plaintiff describes). Accordingly, plaintiff has established the existence of an underlying obligation.

Similarly inarguable is the existence of a guaranty signed by the individual defendants. Dkt. 22-1, pp. 175-76 (signing of guaranties by each individual defendant); Dkt. 222-2, p. 283 (same for reaffirmation). Those guaranties also unquestionably obligated the individual defendants to share the solar companies' debts owed to KeyBank. Dkt. 22-1, p. 171; Dkt. 22-2, pp. 280, 282.

Finally, Erby's denial that defendants defaulted on those loans cannot withstand KeyBank's showing on summary judgment. Dkt. 340, ¶ 2. After all, plaintiff has provided letters indicating defendants' failure to make required payments and follow through on its other obligations several times over since August of 2018. Dkt. 22-2, pp. 150-160, 220-28, 392-96. The lengthy record evidence of defendants' failures to live up to their end of the bargain is impossible to ignore.

In sum, then, no reasonable jury could look at KeyBank's showing, compare it to Erby's denials, and reach any conclusion other than that the individual defendants' breached their obligations despite their signed guaranties. In short, plaintiff has successfully established a prima facie showing of the individual defendants' obligations to it under the guaranties.

Erby's submissions throughout this case could nevertheless be generously read to raise a defense of economic duress. But even if the Court considered that defense—despite the guaranties specifically waiving any defense the individual defendants may have—the outcome would not change.

To the point, economic duress is an affirmative defense designed to prevent courts from "enforce[ing] an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury." *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011). At bottom, successfully

11

invoking that defense requires its would-be invoker to prove: "(1) a wrongful threat that (2) precluded the [invoker's] exercise of its free will." *Id.*

Yet a defense of economic duress cannot exceed the demands of equity. *Interpharm*, 655 F.3d at 142. That is to say, "financial pressure or unequal bargaining power will not, by itself, establish economic duress." *Id.* In other words, there must be some legally wrongful dimension to the attempted duress. *Id.* As a consequence, a plaintiff's threat to exercise a legal right in pursuit of a demand cannot give rise to economic duress. *Id.*

As KeyBank correctly notes, Erby falls well short of establishing a defense of economic duress. Rather than forcing Erby into a no-win situation without a legal right, the record evidence shows that plaintiff declined to exercise its rights to hold defendants to the fire for their defaults several times over. PSMF ¶¶ 11, 14 (plaintiff supporting notion that it entered two forbearance agreements with defendants despite ability to call their loans in default).

In other words, KeyBank had every legal right to call defendants' loan due, and any firm negotiations or harsh demands plaintiff might have made in exchange for giving defendants breathing room simply cannot amount to economic duress. *Interpharm*, 655 F.3d at 142. Accordingly, Erby has stated no viable affirmative defense to plaintiff's motion for summary judgment. That motion must be granted. *See, e.g.*, *Orix Credit All., Inc. v. Bell Realty,*

*Inc.*, 1995 WL 505891, at *3-6 (S.D.N.Y. Aug. 23, 1995) (finding no economic duress in attempt to enforce promissory note and guaranty).

## V. **CONCLUSION**

Though this case is rapidly nearing its end, there remain a few loose threads in need of resolution. Specifically, receiver Daniel Scouler is still in the process of attempting to wind the receivership down and sort out its assets. While he continues to grapple with that task, the Court will not withdraw its benediction. But as the receiver and parties have all indicated, the time to dissolve the receivership and distribute its assets among the creditors appears to be drawing close.

Therefore, it is

ORDERED that

1. Plaintiff KeyBank National Association's Motion for summary judgment against defendants Steven A. Erby and Mark Fobare is GRANTED;

2. Plaintiff KeyBank National Association is entitled to summary judgment in its favor on Counts (IV), (VII), (X), and (XXXII) for collection expenses against defendants Steven A. Erby and Mark Fobare for an amount to be determined after an order terminating the receivership; and

3. Plaintiff KeyBank National Association is entitled to judgment under Count (XXXI) for default on a guaranty against defendants Steven A. Erby and Mark Fobare in the amount of $6,284,328.35 as of June 30, 2021, plus interest at (1) the default contract rates from and after June 30, 2021 until today, (2) the default contract rates from and after the date of judgment until paid for the portion of this award attributable to debts arising under the revolving note, and (3) the statutory rate established under New York Civil Practice Law and Rules § 5004 from and after the date of judgment until paid for the remainder of this award.

IT IS SO ORDERED.

Dated: September 20, 2021
Utica, New York.

David N. Hurd
U.S. District Judge