UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
KEYBANK NATIONAL ASSOCIATION,

                    Plaintiff, and

CAPITAL COMMUNICATIONS
FEDERAL CREDIT UNION,

                    Intervenor,

   -v-                              1:19-CV-1562

MONOLITH SOLAR ASSOCIATES
LLC, et al.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

THOMPSON, HINE LAW FIRM      CURTIS LEE TUGGLE, ESQ.
Attorneys for Plaintiff
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

THOMPSON HINE LLP            JONATHAN S. HAWKINS, ESQ.
Attorneys for Plaintiff
Austin Landing I
10050 Innovation Drive Suite 400
Miamisburg, Ohio 45342

| | |
|---|---|
| LIPPES MATHIAS WEXLER & FRIEDMAN LLP<br>Attorneys for Intervenor<br>54 State Street Suite 1001<br>Albany, New York 12207 | JOHN D. RODGERS, ESQ.<br>JASON A. LITTLE, ESQ. |
| NOLAN HELLER KAUFFMAN LLP<br>Attorneys for Receiver, Daniel Scouler<br>80 State Street, 11th Floor<br>Albany, New York 12207 | JUSTIN A. HELLER, ESQ.<br>FRANCIS J. BRENNAN, ESQ.<br>JOHN V. HARTZELL, ESQ. |

STEVEN A. ERBY
Defendant *Pro Se*
6 Hallenbeck Hill
East Greenbush, New York 12144

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

On December 18, 2019, plaintiff KeyBank National Association ("plaintiff") filed a complaint essentially alleging default on business debts. *See generally* Dkt. 1. The defendants to plaintiff's complaint consisted of solar power companies (the "solar companies") and their officers. Among the solar companies, Monolith Solar Associates, LLC ("Monolith") was the chief.

A mere two days later, this Court placed the solar companies in a receivership. Dkt. 7. The order setting up the receivership charged Daniel Scouler ("Scouler" or the "receiver") as receiver to oversee its operations and wind the solar companies down to maximize their profits. *Id.* ¶ 1. As of the

2

Second Order Modifying the Receivership Order, the property placed in receivership (the "receivership property") included "assets, cash, pre-paid deposits, choses in action, inventory, accounts, account receivables, operations, rights of action, and rights of management" wherever they related to running the solar companies' business. Dkt. 96, ¶ 1.

Two years have passed since this Court created the receivership. Those years have seen the receivership lumber inexorably toward resolution. Safe to say, though, there have been a few hiccups along the way, some of which have yet to clear. In particular, on September 3, 2021, Scouler drew the Court's attention to a budding dispute with New York State's Department of Transportation ("NYSDOT"). Dkt. 344.

That burgeoning conflict began on September 9, 2016, when NYSDOT entered a Master Power Purchase Agreement ("PPA") with Monolith. Dkt. 344-1 ("Scouler Dec."), ¶ 2. By the terms of that agreement, Monolith would build a solar power system for NYSDOT across seven installation sites. Dkt. 414-1 ("PPA"), p. 3.[1] Monolith would then use those sites to provide power for NYSDOT for the next fifteen years, subject to five additional two-year renewal terms. *Id.* ¶ 2.1.

---

[1] Pagination corresponds with CM/ECF.

However, like so much of Monolith's endeavors, it would seem that the PPA bore precious little fruit. In fact, according to NYSDOT, only one of nine[2] construction sites ever produced a functional solar power plant, and even that one came late. Dkt. 368, p. 2.

Now, in the twilight of Monolith's functions and as the end of the receivership draws near, Scouler has made several overtures in NYSDOT's direction in an attempt to get it to consent to the assignment of Monolith's obligations under the PPA to another solar power company, Sunlight General Capital LLC ("SGC"), who has preliminarily agreed to terms to take over the role of energy provider under the PPA. Scouler Dec. ¶ 3. The PPA expressly provides for such an assignment, but only with New York State's consent. PPA pp. 24, 36.

Apparently, though, NYSDOT has been less than responsive to Scouler's proposed sale. According to the receiver, he reached out to NYSDOT in October of 2020 to first ask whether NYSDOT might consent to SGC taking over for Monolith. Scouler Dec. ¶ 5. Based on the subsequent communications between the receiver and NYSDOT's counsel, that initial probe kicked off several months with precious little progress in getting the receiver a firm answer. *See generally* Dkt. 414-2, *passim* (email

---

[2] It is unclear on this record how the seven contracted installation sites relate to the nine construction sites NYSDOT references.

communications demonstrating several requests for updates from receiver with NYSDOT providing noncommittal responses through July 1, 2021).

Apparently desperate, on September 3, 2021, Scouler moved this Court to order NYSDOT to consider the assignment proposal in good faith. Dkt. 344. To the receiver's mind, NYSDOT's dragged feet in approving the proposed assignment amounts to a breach of the PPA's requirement that NYSDOT "shall ensure that any authorizations required . . . under th[e PPA] are provided in a timely manner." PPA, ¶ 7.2(c). On September 7, 2021, the Court ordered NYSDOT to respond to the receiver's motion no later than Wednesday, September 22, 2021. Dkt. 349.

NYSDOT responded on September 22, 2021 with a letter sent only to the Court and Scouler. Dkt. 368. In sum and substance, NYSDOT rejected the assignment, denied the Court's jurisdiction, and suggested that SGC was unfit to take the reins from Monolith. Dkt. 368, pp. 1-2.

At bottom, NYSDOT claims that it is under no obligation to consider the assignment, because Monolith breached the contract first, both by failing to timely complete its projects and by entering into a receivership, which NYSDOT styles as a "Bankruptcy Event" according to the terms of the PPA. Dkt. 368, p. 2; PPA pp. 4, 21 (noting that Bankruptcy Event includes entering receivership and qualifies as default on provider's obligations). In total, NYSDOT contends that it suffered $5.9 million in liquidated damages.

5

Dkt. 368, p. 2. Scouler's motion has thus been fully briefed, and will now be decided on the submissions and without oral argument.

From the outset, "the district court has broad powers and wide discretion to determine relief in an equity receivership." *S.E.C. v. Vescor Cap. Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) (cleaned up) (citing *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372-73 (5th Cir. 1982) and *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 609 (9th Cir. 1978)). Indeed, a court needs a wide range of powers to be able to effectively manage the amorphous goal of a receivership: "to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets"—is broad enough to call for a flexible approach. *See Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) (discussing focus of receivership).

Given this broad discretion, "federal appellate courts 'generally uphold reasonable procedures instituted by the district court' that serve to 'promote the orderly and efficient administration of the estate for the benefit of the creditors.'" *SEC v. Amerindo Inv. Advisors Inc.*, 2016 WL 10821985, at \*2 (S.D.N.Y. May 20, 2016) (cleaned up) (citing *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)).

NYSDOT's response to Scouler's motion turns on two arguments. First, NYSDOT objects to this Court's jurisdiction over the PPA dispute. That argument is misplaced. The receiver's argument that NYSDOT is breaching the PPA by refusing to consider consenting to the assignment to SGC constitutes a right of action relating to Monolith's business. That breach is therefore receivership property and subject to this Court's broad equitable discretion. Dkt. 96, ¶ 1 (defining receivership property as including rights of action related to power companies' business); *see Liberte* 462 F.3d at 551 (noting goal of receivership to administer receivership property). This Court is therefore well within its rights to fashion an equitable remedy to see this dispute resolved.

Second, NYSDOT argues that it is under no obligation to consent to the assignment of the PPA because Monolith defaulted by entering into the receivership. That argument has more teeth, considering that the PPA itself explicitly allows NYSDOT to declare Monolith in default of the PPA. PPA pp. 4, 21.

But given the Court's broad equitable powers in managing the receivership, it is under no obligation to determine which party breached first, or more significantly, or what contractual relationship exists at the moment. *See Amerindo*, 2016 WL 10821985, at *2 (noting courts' significant

latitude in handling receivership disputes). Instead, it need only find some equitable, reasonable method of seeing these parties come to an agreement.

To the Court's mind, then, the appropriate remedy for now is for the parties to genuinely talk to each other plainly and directly. Thus, someone from NYSDOT with decision-making authority on the assignment issue is directed to meet with Scouler no later than Wednesday, January 12, 2022 to discuss the proposed assignment. The receiver is directed to submit a status report informing the Court as to whether any progress was made toward resolution no later than Friday, January 14, 2022.

As a final matter, the Court would clarify a few points in advance of the meeting. First, the Court notes that although Monolith's default on the PPA by entering receivership *allows* NYSDOT to terminate the agreement and recover liquidated damages, to the Court's knowledge NYSDOT has yet to actually terminate the agreement. *See* PPA ¶ 11.1(b). In other words, nothing yet has been done that cannot be undone.

Second, it would likely surprise all involved if NYSDOT managed to get a better deal than the one Scouler and SGC are offering. According to the receiver, the receivership and NYSDOT are each set to make $169.771.00 from the assignment to SGC, and NYSDOT would also get the benefit of SGC's efforts to actually complete the long-languishing solar projects. Scouler Dec. ¶ 18. Although the Court of course recognizes that this is not

nearly the value that NYSDOT has lost through Monolith's botched handling of the PPA, given the immense difficulties in completing Monolith's solar project—and the solar companies' dubious futures—getting any value back and any hope of completing the project seems to the Court to be an unexpected boon.

Third, according to Scouler, Monolith has no remaining assets for NYSDOT to recover in any case.  Scouler Dec. ¶ 18.  Even if there were, the Court has issued a blanket stay of external civil suits against the solar companies until the receivership winds down.  Dkt. 96, ¶ 21.  In other words, if NYSDOT does not consent to the assignment, it will have to wait—while the unfinished solar projects continue to degrade and provide it with no value in return—until after all of the solar companies' assets have been liquidated and every other party with a better claim to the receivership property has already recovered.  Those prospects do not strike the Court as particularly bright.

Fourth and finally, the Court certainly understands NYSDOT's frustration.  Virtually everyone that interacted with Monolith is disappointed with the end of its story.  In fact, NYSDOT is not even the first of that multitude of disillusioned would-have-been business partners to take that disappointment and frustration out on Scouler or the Court.  *See KeyBank Nat'l Assoc. v. Monolith Solar Assocs. LLC*, 2020 WL 4201489, at *4

(N.D.N.Y. July 22, 2020) (imposing contempt sanctions on non-party for defying court order concerning receivership), *vacated upon substantial compliance by* 2021 WL 810105 (N.D.N.Y. Mar. 3, 2021).

But Scouler and the Court are both charged to ensure that Monolith's assets are distributed fairly and to the most profit of Monolith's many, many creditors. To that end, the Court suggests that NYSDOT seriously consider taking the half of a loaf the receiver offers, or at least to see if it cannot push for a better deal. In any case NYSDOT is charged to enter into good-faith negotiations to resolve this matter promptly.

Therefore, it is

ORDERED that

1. The New York State Department of Transportation and receiver Daniel Scouler are directed to meet to discuss the possibility of reaching an agreement concerning the assignment of the Master Power Purchase Agreement no later than Wednesday, January 12, 2022; and

2. Receiver Daniel Scouler is directed to file a status report regarding the efficacy of that meeting no later than Friday, January 14, 2022.

IT IS SO ORDERED.

Dated: December 6, 2021
       Utica, New York.

David N. Hurd
U.S. District Judge